Rebekah Conroy
**STONE CONROY LLC**
25 A Hanover Road, Suite 301
Florham Park, NJ 07932
(973) 400-4181
rconroy@stoneconroy.com

Jake M. Holdreith
Christopher A. Pinahs
Samuel J. LaRoque, Ph.D.
**ROBINS KAPLAN LLP**
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
(612) 349-8500

Oren D. Langer
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas
Suite 2601
New York, NY 10019
(212) 980-7400

*Attorneys for Amneal Pharms. of NY, LLC and Amneal EU, Ltd.*

Arnold B. Calmann
Katherine A. Escanlar
**SAIBER LLC**
7 Giralda Farms, Suite 360
Madison, NJ 07940
Phone: (973) 622-3333

Matthew J. Becker
Thomas K. Hedemann
Edward M. Mathias
Matthew S. Murphy
Rebecca L. Clegg
**AXINN, VELTROP & HARKRIDER LLP**
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100

Sara B. Natour
**AXINN, VELTROP & HARKRIDER LLP**
1901 L Street NW
Washington, DC 20036
(202) 912-4700

Cassie Goodnight
**AXINN, VELTROP & HARKRIDER LLP**
630 Fifth Avenue, 33rd Floor
New York, NY 10111
(212) 728-2200

*Attorneys for Norwich Pharmaceuticals, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., ALFASIGMA S.P.A. and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br>v.<br><br>AMNEAL PHARMACEUTICALS OF NEW YORK, LLC and AMNEAL EU, LIMITED,<br><br>Defendants. | Civil Action No. 1:24-cv-04607-JFM |
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>NORWICH PHARMACEUTICALS, INC.,<br><br>Defendant. | Civil Action No. 1:24-cv-07140-JFM |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. The Asserted IBS-D Claims Are Not Materially Different from the Invalidated IBS-D Claims ..... 2

1. *Norwich I* Finds the Invalidated IBS-D Claims Obvious ..... 2

2. The Asserted IBS-D Claims ..... 3

B. Polymorph Patent ..... 5

1. The Asserted Polymorph Claims Are Not Materially Different from the Invalidated Polymorph Claims Held Obvious in *Norwich I* ..... 5

2. Additional Prior Art Relevant to this Case, Namely the New Zealand Application, Renders the Polymorph Claims Invalid as Obvious. ..... 6

III. LEGAL STANDARDS ..... 6

A. Summary Judgment ..... 6

B. Collateral Estoppel ..... 7

C. Obviousness ..... 8

IV. ARGUMENT ..... 9

A. The Asserted IBS-D Claims Are Invalid as Obvious Based on Collateral Estoppel ..... 9

1. The Asserted IBS-D Claims Are Patentably Indistinct from the Invalidated IBS-D Claims. ..... 10

2. The Remaining Elements of Collateral Estoppel Are Met ..... 19

B. The Asserted Polymorph Claims Are Invalid ..... 20

1. The Asserted Polymorph Claims Are Invalid as Obvious Based on Collateral Estoppel ..... 20

2. Alternatively, Claims 7-9 of the Polymorph Patent Are Invalid as Obvious in view of The New Zealand Application ..... 27

V. CONCLUSION ..... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*,
764 F.3d 1366 (Fed. Cir. 2014)....17

*Allergan, Inc. v. Apotex, Inc.*,
2015 WL 13358250 (M.D.N.C. Aug. 31, 2015)....12

*Allergan, Inc. v. Sandoz, Inc.*,
681 F. App'x. 955 (Fed. Cir. 2017)....7

*Application of Vogel*, 422 F.2d 438 (C.C.P.A. 1970)....17

*Aspex Eyewear, Inc. v. Zenni Optical Inc.*,
713 F.3d 1377 (Fed. Cir. 2013)....8

*Biogen Int'l GmbH v. Amneal Pharms. LLC*,
487 F. Supp. 3d 254 (D. Del. 2020)....20

*Blonder-Tongue Lab'ys, Inc. v. Univ. Ill. Found.*,
402 U.S. 313 (1971)....7

*Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*,
246 F.3d 1368 (Fed. Cir. 2001)....14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....6

*In Re: Copaxone Consol. Cases*,
906 F.3d 1013 (Fed. Cir. 2018)....11, 15

*e.Digital Corp. v. Futurewei Techs., Inc.*,
772 F.3d 723 (Fed. Cir. 2014)....12

*Ecolab, Inc. v. FMC Corp.*,
569 F.3d 1335 (Fed. Cir. 2009)....24, 25, 26, 29

*Eli Lilly & Co. v. Barr Lab'ys, Inc.*,
251 F.3d 955 (Fed. Cir. 2001)....10

*Endo Pharms., Inc. v. Impax Lab'ys, Inc.*,
2016 WL 6246773 (D.N.J. Oct. 25, 2016)....20

*Google LLC v. Hammond Dev. Int'l, Inc.*,
54 F.4th 1377 (Fed. Cir. 2022).... *passim*

*Ineos USA LLC v. Berry Plastics Corp.*,
783 F.3d 865 (Fed. Cir. 2015)....................17

*Jean Alexander Cosms., Inc. v. L'Oreal USA Inc.*,
458 F.3d 244 (3d Cir. 2006)....................7

*Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*,
2016 WL 5793745 (S.D.N.Y. Sept. 30, 2016)....................20

*Molinaro v. Fannon/Courier Corp.*,
745 F.2d 651 (Fed. Cir. 1984)....................20

*Nat'l Med. Imaging, LLC v. Ashland Funding LLC*,
648 F. App'x. 251 (3d Cir. 2016) ....................7

*Ohio Willow Wood Co. v. Alps South, LLC*,
735 F.3d 1333 (Fed. Cir. 2013).................... *passim*

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007)....................25, 29

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
170 F.3d 1373 (Fed. Cir. 1999)....................7

*Procter & Gamble Co. v. Teva Pharms. USA, Inc.*,
566 F.3d 989 (Fed. Cir. 2009)....................4, 5

*Prometheus Lab'ys Inc. v. Roxane Lab'ys, Inc.*,
2013 WL 5333033 (D.N.J. Sep. 13, 2013) ....................11

*Purdue Pharma L.P. v. Accord Healthcare, Inc.*,
2024 WL 5244764 (Fed. Cir. Dec. 30, 2024),
*cert. denied*, 146 S. Ct. 95 (2025). ....................24, 25, 26, 29

*Sanofi v. Glenmark Pharms. Inc.*,
USA, 204 F. Supp. 3d 665 (D. Del. 2016),
*aff'd sub nom. Sanofi v. Watson Lab'ys Inc.*,
875 F.3d 636 (Fed. Cir. 2017)....................26, 28

*SimpleAir, Inc. v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018)....................1, 8, 10, 15

*SoftView LLC v. Apple Inc.*,
108 F.4th 1366 (Fed. Cir. 2024) ....................17

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015).................... *passim*

*Swartz v. Matal*,
2017 WL 3611715 (E.D. Va. Aug. 22, 2017),
*aff'd sub nom.*, *Swartz v. United States Pat. & Trademark Off.*,
743 F. App'x. 426 (Fed. Cir. 2018) ....................8

*Think Prods., Inc. v. ACCO Brands Corp.*,
419 F. Supp. 3d 1078 (N.D. Ill. 2019),
*aff'd*, 854 F. App'x 374 (Fed. Cir. 2021) ....................10

**Statutes and Other Authorities**

35 U.S.C. § 103 ....................8, 9

Fed. R. Civ. P. 56(a) ....................6

# I. INTRODUCTION

The doctrine of collateral estoppel precludes Plaintiffs from relitigating identical issues of patent invalidity that the United States District Court for the District of Delaware ("the Delaware Court") decided in *Norwich I*. The Asserted IBS-D Claims and the Asserted Polymorph Claims are patentably indistinct from the patent claims held invalid as obvious in *Norwich I* and thus do not present materially different issues of invalidity. Accordingly, Defendants respectfully move for summary judgment that the Asserted IBS-D Claims and the Asserted Polymorph Claims are invalid as obvious based on collateral estoppel.

In *Norwich I*, the Delaware Court held the Invalidated IBS-D Claims invalid as obvious in view of the RFIB 2001 Protocol and Pimentel 2006 prior art references. Here, the Asserted IBS-D Claims recite the same core method elements as the Invalidated IBS-D Claims: administering 550 mg of rifaximin three times per day ("TID") for 14 days to a "subject" to treat one or more symptoms of IBS or IBS-D. The Asserted IBS-D Claims apply this same method to "a female patient" for the known IBS/IBS-D symptom of "bloating" and, in dependent claims, characterize the effects of the same method and recite conventional practices like assessing baseline symptoms and asking the subject whether they have improved. These are immaterial differences. Indeed, the Asserted IBS-D Claims were terminally disclaimed over the '667 patent invalidated in *Norwich I*, which is a "strong clue" that the claims are not patentably distinct. *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168 (Fed. Cir. 2018). Because the Asserted IBS-D Claims present the same issues of invalidity that the Delaware Court addressed in *Norwich I*, summary judgment of invalidity based on collateral estoppel is appropriate.

*Norwich I* likewise held obvious the Invalidated Polymorph Claims based on prior art references including Cannata, Marchi, and the knowledge of a POSA. The Asserted Polymorph

Claims likewise present materially the same issues as those adjudicated in *Norwich I*, including routine characterization of crystalline rifaximin by XRPD, pharmaceutical composition limitations, and non-polymorph-specific teachings in Cannata and Marchi. Under these circumstances, collateral estoppel bars relitigation of obviousness, and summary judgment is warranted.

Alternatively, Amneal moves for summary judgment of obviousness of the Asserted Polymorph Claims based on the New Zealand Application reference, which discloses a nearly identical method for making the claimed rifaximin polymorph in this case.

## II. BACKGROUND

### A. The Asserted IBS-D Claims Are Not Materially Different from the Invalidated IBS-D Claims

IBS "is characterized by symptoms including abdominal pain, bloating, frequency, urgency, gas, and changed bowel habits, such as diarrhea, constipation, or alternating diarrhea and constipation." *Norwich I* DC at *16. "Subtypes of IBS include IBS with diarrhea (IBS-D)" and the "IBS-D subtype comprises about one-third of IBS patients." *Id*.

#### 1. *Norwich I* Finds the Invalidated IBS-D Claims Obvious

"Asserted Claim 3 of the '667 patent is a dependent claim that has three elements: (1) administering 550 mg of rifaximin three times a day (TID) for 14 days; (2) to treat one or more symptoms of IBS-D; (3) in a subject 65 years of age or older." *Id*. "Asserted Claim 2 of the '569 patent is a dependent claim with two elements: (1) administering 550 mg of rifaximin TID for 14 days; and (2) after stopping rifaximin, achieving a durability of response that comprises about 12 weeks of adequate relief of symptoms." *Id*. Following a full trial on the merits, the Delaware

Court held that each of these patent claims is invalid as obvious.[1] *Norwich I CAFC* affirmed the Delaware Court's decision.

*Norwich I DC* determined that two prior art references, Pimentel 2006 and the RFIB 2001 Study Protocol, disclosed all the limitations of the Invalidated IBS-D Claims. SUF ¶ 15. It found that Pimentel 2006 disclosed a randomized, double-blind, placebo-controlled study evidencing rifaximin's improvement of IBS symptoms. SUF ¶¶ 15, 19, 20. It also found that "[t]he 'RFIB 2001 Protocol' [ ] was a Phase II trial designed to administer rifaximin to patients aged 18 and over, 550-2,220 mg per day for 14 days for the treatment of IBS-D." SUF ¶¶ 15, 17, 18, 19, 20. The Delaware Court further held that a "POSA would have been motivated to combine Pimentel 2006 with the RFIB 2001 Protocol and would have had a reasonable expectation of success." SUF ¶ 16. Further, it found that "widespread off-label use reflects a motivation to use rifaximin for the treatment of IBS-D with a reasonable expectation of success," and that "a POSA would have been motivated to combine the prior art to achieve a dosage regimen within the known range." *Norwich I DC* at *18; *see also* SUF ¶ 21.

The Delaware Court considered and rejected Plaintiffs' arguments concerning the prior art. SUF ¶ 58. Likewise, it considered and rejected Plaintiffs' arguments concerning alleged skepticism in the prior art. SUF ¶ 59.

### 2. The Asserted IBS-D Claims

The Asserted IBS-D Claims require administering the same dose, 550 mg of rifaximin three times per day, for the same duration, 14 days, to substantially the same population as the Invalidated IBS-D Claims. SUF ¶¶ 2, 6, 11, 12. The Asserted IBS-D Claims recite "a female subject" whereas the Invalidated IBS-D Claims recite "a subject 65 years of age or older" ('667

[1] It is undisputed that independent claim 1 of the '667 patent (directed to "treating one or more symptoms" of IBS) and claim 1 of the '569 patent are also invalid. *See* SUF ¶¶ 10, 11, 12.

patent, claim 3) or "a subject" ('569 patent, claim 2). *Id.* A "subject 65 years of age or older" and a "subject" both encompass a "female subject." SUF ¶¶ 34-35, 49.

Claims 1-4 of the '571 patent recite treating the symptom of "bloating associated with [IBS-D]" whereas the Invalidated IBS-D Claims recited "treating one or more symptoms of [IBS-D]" ('667 patent, claim 3) or "adequate relief of symptoms" of IBS-D after removal from treatment ('569 patent, claim 2). SUF ¶¶ 2, 11, 12. Bloating is a symptom of IBS and IBS-D. SUF ¶¶ 50-51.

Claims 5-7 of the '912 patent and claims 2-4 of the '571 patent characterize using conventional practices the effect of administering rifaximin 550 mg TID for 14 days. SUF ¶¶ 3-5, 7-9. These characterizations include "an affirmative response from the subject when asked whether they had a reduction in symptoms of IBS," "a reduction of the one or more symptoms from baseline symptoms established prior to treatment," or "the reduction [ ] is achieved following 7 days after the administration of rifaximin." *Id.* None of these dependent claims modify the dosing regimen or medical condition recited in the independent claims. *See*, *e.g.*, SUF ¶¶ 44, 55.

Each of the Asserted IBS-D Patents issued from patent applications that are continuations of the '667 patent whose claims were invalidated in *Norwich I*. SUF ¶¶ 32, 47. During prosecution, the Examiner rejected the '912 and '571 patents for obviousness-type double patenting over the '667 patent. SUF ¶¶ 2-9, 24-28, 33, 48. *See Procter & Gamble Co. v. Teva Pharms. USA*, Inc., 566 F.3d 989, 999 (Fed. Cir. 2009) ("The double patenting doctrine is designed to prevent a patent owner from extending his exclusive rights to an invention through claims in a later-filed patent that are not patentably distinct from claims in the earlier filed

patent."). To overcome the rejection and obtain allowance, Plaintiffs terminally disclaimed both patents over the '667 patent. SUF ¶¶ 29-31.

### B. Polymorph Patent

#### 1. The Asserted Polymorph Claims Are Not Materially Different from the Invalidated Polymorph Claims Held Obvious in *Norwich I*

The Asserted Polymorph Claims recite solid pharmaceutical compositions comprising rifaximin δ and/or ε characterized by specified XRPD peaks in combination with pharmaceutically acceptable excipients in an oral dosage form. SUF ¶¶ 64-66.

*Norwich I DC* found that rifaximin exists in polymorphic forms; X-ray powder diffraction ("XRPD") peaks are an inherent characteristic of a polymorph; and XRPD and water content were routine analytical tests as of the priority date. SUF ¶¶ 71, 72. The Delaware Court further found that the Cannata prior art reference disclosed crystalline rifaximin, methods of making it, and that it exhibited antibacterial properties. *Id*. Specifically, the Delaware Court found that batches produced according to Cannata yielded rifaximin δ and ε, underscoring that the prior art processes encompassed the polymorphs recited in the Polymorph Patent asserted in this case. SUF ¶ 80. Likewise, the Marchi prior art reference disclosed preparation of crystalline rifaximin and pharmaceutical compositions that also included conventional excipients. SUF ¶ 72. The court concluded that Cannata in view of common knowledge disclosed each limitation of claim 4 of the '199 patent, and that Marchi in view of Cannata and common knowledge disclosed each limitation of claim 36 of the '206 patent. *Id*. It further found a POSA would reasonably expect success characterizing rifaximin and achieving pharmaceutical compositions using routine techniques in light of regulatory guidance. SUF ¶¶ 71-74. *Norwich I CAFC* affirmed *Norwich I DC's* judgments as to the Invalidated Polymorph Claims. SUF ¶¶ 23, 75.

None of the obviousness findings in *Norwich I* were polymorph specific; they would apply to any and all polymorphs of rifaximin, including the δ polymorph at issue in this case. SUF ¶ 79.

#### 2. Additional Prior Art Relevant to this Case, Namely the New Zealand Application, Renders the Polymorph Claims Invalid as Obvious.

Independently of collateral estoppel, Amneal also asserts that the Asserted Polymorph Claims are obvious in view of New Zealand Patent Application Publication No. NZ531622A ("New Zealand Application") entitled "Polymorphous forms of rifaximin, processes for their production and use thereof in medicinal preparations," and published October 29, 2004. SUF ¶¶ 81-84. The priority date of the Polymorph Patent—March 3, 2005—is approximately two years later than the latest priority date of any of the Invalidated Polymorph Claims in *Norwich I*. Therefore, the New Zealand Application was not available as prior art in *Norwich I*.

The New Zealand Application discloses methods for synthesizing rifaximin forms α, β, and γ, and explains that polymorph formation depends on crystallization and drying conditions. SUF ¶¶ 82-83. It explains that the formation of the polymorphs "depends on the conditions of time and temperature at which both the crystallization and the drying are carried out." *Id.* Example 1 of the '196 patent tracks Example 1 of the New Zealand Application step-for-step aside from drying parameters and resulting water content, details that a POSA would be motivated to find out and routinely optimize. SUF ¶¶ 85-86.

## III. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Likewise, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

**B. Collateral Estoppel**

Collateral estoppel "shields a defendant from having to litigate issues that have been fully and fairly tried in a previous action and decided adversely to a party." *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999). Because collateral estoppel is not a doctrine unique to patent law, the law of the regional circuit governs the procedural question of whether collateral estoppel applies. *Allergan, Inc. v. Sandoz, Inc.*, 681 F. App'x. 955, 959 (Fed. Cir. 2017) (nonprecedential).

The elements of collateral estoppel are: (1) previous adjudication of an identical issue; (2) such issue was actually litigated; (3) the prior determination was necessary to the decision; and (4) the party against whom preclusion applies was "fully represented" in the previous action. *Jean Alexander Cosms., Inc. v. L'Oreal USA Inc.*, 458 F.3d 244, 249 (3d Cir. 2006); *see also Blonder-Tongue Lab'ys, Inc. v. Univ. Ill. Found.*, 402 U.S. 313, 350 (1971) (overruling mutuality of estoppel requirement in a patent invalidity action). "[I]dentity of issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." *Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, 648 F. App'x. 251, 256 (3d Cir. 2016) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000)). The applicability of collateral estoppel is a question of law. *See Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015); *Jean Alexander Cosms.*, 458 F.3d at 248 ("[W]hether the basic requirements for issue preclusion are satisfied . . . is a matter of law over which we exercise plenary review." (internal citations omitted)).

Federal Circuit precedent governs any aspects of the collateral estoppel inquiry "that may have special or unique application to patent cases." *See Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013); *see also Swartz v. Matal*, No. 1:17-cv–482 (LMB/TCB), 2017 WL 3611715, at *3 (E.D. Va. Aug. 22, 2017), *aff'd sub nom.*, *Swartz v. United States Pat. & Trademark Off.*, 743 F. App'x. 426 (Fed. Cir. 2018). The Federal Circuit "does not limit collateral estoppel to patent claims that are identical[,]" and instead "it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (emphasis in original). Thus, "collateral estoppel may apply even if the patent claims 'use slightly different language to describe substantially the same invention,' so long as 'the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity.'" *Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1381 (Fed. Cir. 2022) (quoting *Ohio Willow Wood*, 735 F.3d at 1342). In other words, the question is whether the asserted claims "are essentially the same as, *i.e.*, patentably indistinct from, those in the previously adjudicated" patents. *SimpleAir*, 884 F.3d at 1169.

**C. Obviousness**

Under 35 U.S.C. § 103, a patent is invalid as obvious if "the claimed invention as a whole would have been obvious to a person of ordinary skill in the art at the time the invention was made." *Norwich I DC*, at *2 (quoting *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1479 (Fed. Cir. 1998)). "Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness." *Id.* (quoting *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013)).

To show a patent is obvious, a party "must demonstrate by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Id.* (quoting *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1347 (Fed. Cir. 2014)). "The overall inquiry into obviousness, though, must be 'expansive and flexible.'" *Id.* (quoting *KSR Int'l Co. v. Teleflex*, Inc., 550 U.S. 398, 415 (2007)). "In conducting the obviousness analysis, 'a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ.'" *Id.* (quoting *KSR* at 418).

## IV. ARGUMENT

### A. The Asserted IBS-D Claims Are Invalid as Obvious Based on Collateral Estoppel[2]

Plaintiffs seek a second bite at litigating the same issues resolved in *Norwich I* in a different forum. There is no genuine dispute that the same dosing regimen (*i.e.*, rifaximin 550 mg TID for 14 days) and medical condition (IBS-D) recited by the Invalidated IBS-D Claims are identical to the Asserted IBS-D Claims. As a matter of law, collateral estoppel bars relitigating the issue of obviousness that the Delaware Court found in *Norwich I* because any differences in the language of the Asserted IBS-D Claims "do not materially alter the question of invalidity." *See Soverain Software*, 778 F.3d at 1319; *Ohio Willow Wood*, 735 F.3d at 1342.

The remaining elements of collateral estoppel are also met: (i) the Invalidated IBS-D Claims were actually and fully litigated in *Norwich I*; (ii) the invalidity of those claims was

---

[2] To the extent the Court determines that summary judgment is not appropriate as to one or more of the asserted IBS-D Patent claims and asserted Polymorph Patent claims, Defendants reserve the right to assert in pre-trial motions or at trial that collateral estoppel bars relitigating the factual findings subsidiary to the *Norwich I* obviousness determination.

necessary to the decisions by *Norwich I DC* and *Norwich I CAFC*; and (iii) Plaintiffs were fairly represented at all times during *Norwich I*.

**1. The Asserted IBS-D Claims Are Patentably Indistinct from the Invalidated IBS-D Claims.**

**a. Claims 3 and 5-7 of the ’912 patent**

Each of the asserted claims of the ’912 patent require “administering, 550 mg of rifaximin TID for 14 days to [a] female subject.” The Invalidated IBS-D Claims recite “administering, 550 mg of rifaximin TID for 14 days to [a] subject 65 years of age or older” (claim 3 of the ’667 patent) or to an IBS-D “subject in need thereof” (claim 2 of the ’569 patent). There is no genuine dispute that a “subject 65 years of age or older” or an IBS-D “subject in need thereof” encompasses a “female subject.” SUF ¶¶ 27-31; *see Eli Lilly & Co. v. Barr Lab’ys, Inc.*, 251 F.3d 955, 971 (Fed. Cir. 2001) (holding that a claim directed to blocking serotonin uptake in animals was patentably indistinct from a claim directed to treating anxiety in humans because “[h]umans are a species of the animal genus”); *Think Prods., Inc. v. ACCO Brands Corp.*, 419 F. Supp. 3d 1078, 1084 (N.D. Ill. 2019), *aff'd*, 854 F. App'x 374 (Fed. Cir. 2021) (applying collateral estoppel to a claim term when “if anything [the invalidated claim limitation] is a narrower term than what is described in [the asserted claim limitation]”). During prosecution, the Patent Examiner determined that “male and female subjects are instantly envisaged” by a “subject 65 years of age or older,” and the applicants opted to terminally disclaim the ’912 patent over the ’667 patent. SUF ¶¶ 27-31; *see also SimpleAir*, 884 F.3d at 1168 (stating that a terminal disclaimer is “a strong clue” that new claims are patentably indistinct). Therefore, the recitation of “a female subject” in the asserted claims of the ’912 patent is not a patentably distinct difference over the Invalidated IBS-D Claims.

i. *Claim 3 of the '912 patent*

Claim 3 of the '912 patent and claim 3 of the '667 patent are identical, except for the substitution of a "female subject" for a "subject 65 years of age or older." As discussed above, this is a patentably indistinct difference relative to the Invalidated IBS-D Claims. Accordingly, claim 3 is invalid as obvious based on collateral estoppel. *See Soverain Software*, 778 F.3d at 1319; *Ohio Willow Wood*, 735 F.3d at 1342.

ii. *Claims 5 and 7 of the '912 patent*

Claims 5 and 7 of the '912 patent depend from claim 1. Like the Invalidated IBS-D Claims, claims 5 and 7 require "administering, 550 mg of rifaximin TID for 14 days to [a] female subject, thereby treating one or more symptoms of IBS." Claim 5 further recites that "treating one or more symptoms of IBS comprises a reduction of the one or more symptoms from baseline symptoms established prior to treatment." SUF ¶ 7. Claim 7 further recites "treating one or more symptoms of IBS comprises a reduction in symptoms defined by an affirmative response from the subject when asked whether they had a reduction in symptoms of IBS." SUF ¶ 9. These are not patentably distinct differences.

First, the additional recitations in claims 5 and 7 are merely characterizations of the result of "treating one or more symptoms" by administering 550 mg of TID for 14 days. The recitations in claims 5 and 7 "do[ ] not change the express dosing amount or method already disclosed in [claim 1], or otherwise result in a manipulative difference in the steps of the claim." *In Re: Copaxone Consol. Cases*, 906 F.3d 1013, 1023 (Fed. Cir. 2018) (finding that "the regimen being sufficient to reduce the frequency of relapses in the patient" was not entitled to patentable weight). "Mere laudatory terms characterizing the result of the executing step are not limiting." *Prometheus Lab'ys Inc. v. Roxane Lab'ys, Inc.*, Nos. 2:11-cv-00230-FSH, 2:11-cv-01241-FSH, 2013 WL 5333033, at *5 (D.N.J. Sep. 13, 2013) (finding that "improvement in stool consistency,

bowel movement frequency and the proportion of days with urgency" fails to add any additional steps to the method and is not "an integral part of the invention.") (internal citations and quotations omitted). Nor is there evidence that the characterizations recited in claims 5 and 7 were considered material to patentability during the prosecution of the '912 patent. Therefore, the additional recitations of claims 5 and 7 do not create a patentable distinction over the Invalidated IBS-D Claims.

Furthermore, as discussed, the Invalidated IBS-D Claims recite "treating one or more [IBS-D] symptoms" and "adequate relief of [IBS-D] symptoms" by following the *same obvious dosing regimen*. *Supra* Part II.A. The Invalidated IBS-D Claims therefore necessarily encompass the characterizations of claims 5 and 7 of the '912 patent.

Still further, even if this Court were to determine that the characterizations of claims 5 and 7 are entitled to patentable weight *and* are not encompassed by the invalidated dosing regimen, they still do not create any material differences over the Invalidated IBS-D Claims. The Federal Circuit has explained that "a difference in claim scope [is] not fatal to the application of estoppel" where any such difference is not material to the relevant invalidity question. *See Soverain Software*, 778 F.3d at 1319; *Ohio Willow Wood*, 735 F.3d at 1343; *see also Allergan, Inc. v. Apotex, Inc.*, No. 1:14-cv-1028, 2015 WL 13358250, at *2 (M.D.N.C. Aug. 31, 2015) (granting summary judgment of invalidity due to collateral estoppel where the asserted claims' eyelash darkening method did not materially differ from an invalidated method of increasing eyelash growth); *e.Digital Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723, 726 (Fed. Cir. 2014) (holding that a claim adding a microprocessor limitation did not materially differ from a limitation requiring flash memory without RAM, where preceding litigation had determined that a microprocessor does not require RAM to operate).

Here, claims 5 and 7 of the ’912 patent, at most, recite known practices for assessing a treatment and thus cannot raise a new invalidity issue to overcome collateral estoppel. IBS is a symptom-based diagnosis. To characterize the result of a treatment, a comparison of symptoms before and after an intervention is necessary. As Plaintiffs’ experts concede, comparing symptom improvement to pre-treatment symptoms is routine to treating patients for virtually any symptomatic medical condition. SUF ¶¶ 42, 46, 53, 57. The Delaware Court also addressed prior art retrospective studies by Cuoco and Barrett based on medical chart reviews that reported improvements in IBS symptoms following the real-world administration of rifaximin to IBS and IBS-D patients. *Norwich I DC* at *19. Such retrospective chart reviews would not be possible if baseline symptoms had not been obtained.

Claims 5 and 7 reflect these conventional practices for characterizing the result of administering rifaximin according to the claimed dosing regimen. There is no material dispute that establishing baseline symptoms prior to treatment and then evaluating a reduction of symptoms from that baseline is and always has been a necessary element of evaluating symptoms-focused medical conditions like IBS. SUF ¶ 42; *see Norwich I DC*, at *22 (reasoning that “patient-reported ‘adequate relief’ is used to determine IBS-D treatment success in the field[,]” where “IBS-D is a collection of symptoms and there is no biomarker to determine a successful overall treatment of IBS-D”). Nor is there any genuine dispute that a “reduction in symptoms” based on an “affirmative response” is a conventional assessment in clinical trials and medical practice for “adequate relief” of IBS symptoms. SUF ¶¶ 42, 46, 53, 57. The Federal Circuit has found that claims reciting additional elements do not change the invalidity analysis where the purportedly new claim elements merely incorporate routine aspects of the art. *Soverain Software*, 778 F.3d at 1319-20 (reasoning that “the use of hypertext . . . [is] a routine

incorporation of Internet technology into existing processes[,]" and such "routine incorporation of Internet technology in [the unadjudicated claim] does not change the invalidity analysis"). Accordingly, claims 5 and 7 of the '912 patent do not materially differ from the Invalidated IBS-D Claims and summary judgment based on collateral estoppel is warranted.

iii. *Claim 6 of the '912 patent*

Claim 6 of the '912 patent depends from claim 5 and recites that "the reduction of the one or more symptoms is achieved following 7 days after the administration of rifaximin." SUF ¶ 8. The parties do not dispute that claim 1 of the '912 patent, like invalidated claim 3 of the '667 patent, requires a 14-day duration of rifaximin therapy.[3] SUF ¶ 44. Plaintiffs contend that this "7-day limitation" "must occur during the 14-day period" and "7 days after the initial dose of rifaximin." Plaintiffs' Response to SUF ¶ 44. Plaintiffs' interpretation is improper at least because it reads nonexistent limitations into the claim. Claim 6 does not recite an "initial dose." It states that "the reduction is achieved *following* 7 days after the administration of rifaximin." Therefore, the recited reduction may occur "following 7 days after" any of the 14 days on which rifaximin is administered as recited in claim 1. SUF ¶ 44. Regardless of interpretation, however, claim 6 of the '912 patent is patentably indistinct from the methods of the Invalidated IBS-D Claims, and collateral estoppel precludes relitigating its invalidity as a matter of law.

"The express dosage amounts are material claim limitations; the statement of the intended result of administering those amounts does not change those amounts or otherwise limit the claim." *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1375 (Fed. Cir.

[3] The parties agreed that all claim terms be afforded their plain and ordinary meaning. *See* Amneal Action, Dkt. 102 (Joint Discovery Plan); Norwich Action, Dkt. 95 (same). In their expert reports, Plaintiffs and Defendants have raised different interpretations as to the plain and ordinary meaning of claim 6 of the '912 patent and claim 3 of the '571 patent. Nevertheless, even if this Court were to adopt Plaintiffs' interpretation, claim 6 of the '912 patent and claim 3 of the '571 patent do not materially differ from the Invalidated IBS-D Claims as a matter of law.

2001); *see also In re Copaxone*, 906 F.3d at 1023. Here, claim 6 of the '912 patent recites a characterization of the result from the treatment recited in claim 1 ("reduction of the one or more symptoms is achieved") and a time for that result ("following 7 days after the administration of rifaximin"). Under either Plaintiffs' or Defendants' interpretation of the claim, therefore, the recitation of an effect "achieved following 7 days after the administration of rifaximin" fails to raise a new invalidity question.

Even if claim 6 of the '912 patent modified the method, courts have held that merely adding numerical constraints to an otherwise invalid claim does not rescue that claim from invalidity. *See Ohio Willow Wood*, 735 F.3d at 1343-44 (finding that the recitation in dependent claims of, *inter alia*, a gel composition of "60-85% by weight mineral oil" and a fabric having "an elasticity of 10-400%" were equally obvious as the general fabric and gel composition limitations recited in the independent claim). Here, claim 6 of the '912 patent does nothing more than add that the reduction of symptoms following from the invalidated method "is achieved following 7 days after the administration of rifaximin"

Similarly, courts have deemed claim elements that do not fundamentally alter an invalidated claim to be insufficient to provide a material difference. In *SimpleAir*, for example, the Federal Circuit rejected the contention that "online or offline to the information providers" was patentably distinct from "online or offline from a data channel." 884 F.3d at 1168. The appellate court explained that "we do not see how this is a fundamentally different invention" given that the unadjudicated claims "still rely on the same previously asserted communications architecture with two separate pathways for online and offline communications." *Id.*; *see also Soverain Software LLC*, 778 F.3d at 1319-20 ("The additional limitation here—transmitting a hypertext statement over the Internet, rather than over a generic network—does not materially

alter the question of validity" of the unadjudicated claim). As discussed, claim 6 of the '912 patent relies on the exact same dosing regimen as the invalidated claim 3 of the '667 patent and thus does not provide a material difference.

Finally, as discussed above, claim 6 recites "the reduction is achieved *following* 7 days after the administration of rifaximin[,]" and therefore symptom relief may occur 7 days after any of the 14 days in which rifaximin is administered as per claim 1. Defs.' Reply to SUF ¶ 44. If so, claim 6 of the '912 patent also lacks any material differences from invalidated claim 2 of the '569 patent. SUF ¶¶ 8, 12. That is because the post-treatment "durability of response" comprising "about 12 weeks of adequate relief of symptoms" recited in invalidated claim 2 of the '569 patent encompasses a reduction of symptoms "following 7 days after" the last administration of rifaximin on the 14th day. With respect to the other limitations, there is no genuine dispute that the subject to whom rifaximin is administered, as recited in claim 1 of the '569 patent, includes a female subject, as recited in claim 1 of the '912 patent. SUF ¶ 34. Moreover, and as discussed above, ascertaining a reduction of symptoms relative to a baseline established prior to treatment is a routine aspect of medical practice and does not create a material difference over the invalidated claim. *See supra* Part IV.A.1.a.ii. Therefore, claim 6 of the '912 patent does not materially differ from the invalidated method of treating IBS-D that is recited in adjudicated claim 3 of the '667 patent and claim 2 of the '569 patent.

**b. Claims 1-4 of the '571 patent**

i. *Claim 1*

Asserted claim 1 of the '571 patent differs from claim 3 of the '667 patent by reciting administration to a "female subject" rather than to a "subject 65 years of age or older" and by reciting "bloating associated with [IBS-D]" rather than "one or more symptoms" of IBS-D.

SUF ¶ 48. Claim 1 of the '571 patent recites the same drug, dosing regimen, duration, and medical condition as invalidated claim 3 of the '667 patent.

Bloating is a symptom of IBS and IBS-D, which is a finding in *Norwich I* and undisputed among experts in this case. SUF ¶¶ 50, 51. A recitation of an obvious or unpatentable variant of an invalidated claim term does not change the invalidity question and therefore cannot rescue claims from collateral estoppel. *See Google LLC*, 54 F.4th at 1381-82 (finding that a recitation of a plurality of servers failed to rescue claims from collateral estoppel, where such recitation itself was obvious in view of evidence that "distributing software applications across multiple servers was well known to the artisan").

Furthermore, bloating is merely a species of the small genus of symptoms of IBS and IBS-D. SUF ¶ 51. Courts have held claims directed to a species patentably indistinct from claims directed to a small genus. *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.,* 764 F.3d 1366, 1379 (Fed. Cir. 2014) (finding the species claim invalid in obviousness-type double patenting analysis); *see also Application of Vogel*, 422 F.2d 438, 442-43 (C.C.P.A. 1970) (finding invalid for obviousness-type double patenting a pending claim directed to pork over a reference claim directed to meat); *SoftView LLC v. Apple Inc.*, 108 F.4th 1366, 1370-72 (Fed. Cir. 2024) (holding that a determination of patentable indistinction, for purposes of obviousness-type double patenting and IPR estoppel, involves the same analysis as in common law collateral estoppel). This is because "when a genus is so limited that a person of ordinary skill in the art can at once envisage each member of this limited class, . . . a reference describing the genus anticipates every species within the genus." *Abbvie Inc.*, 764 F.3d at 1379; *see also Ineos USA LLC v. Berry Plastics Corp*., 783 F.3d 865, 872 (Fed. Cir. 2015) ("disclosure of a small genus can be a disclosure of each species within the genus."). Here, the Delaware

Court found that bloating was one of a limited set of symptoms of IBS, and held claims directed to "treating one or more symptoms of [IBS-D]" invalid as obvious in view of the prior art as whole. SUF ¶ ¶ 50-51. Therefore, claim 1 of the '571 patent is patentably indistinct from invalidated claim 3 of the '667 patent.

Claim 1 of the '571 patent is also patentably indistinct from claim 2 of the '569 patent. The only limitations of claim 1 of the '571 patent not found in claim 2 of the '569 patent are treating (1) "bloating associated with [IBS-D]" that is (2) in a "female" subject. SUF ¶ 48. There is no genuine dispute that the population of subjects to whom rifaximin is administered includes females. *See* Part IV.A.1, *supra*; SUF ¶ 34. There is also no genuine dispute that, as discussed, IBS-D symptoms include bloating or that "adequate relief of [IBS-D] symptoms" would encompass relief of bloating. SUF ¶ 51. Thus, claim 1 of the '571 patent does not materially differ from claim 2 of the '569 patent.

Because claim 1 of the'571 patent does not materially differ from the Invalidated IBS-D Claims, summary judgment of invalidity based on collateral estoppel is warranted.

ii. *Claims 2 and 4 of the '571 patent*

Claim 2 of the '571 patent depends from claim 1 and recites "the treating of bloating comprises a reduction of bloating from baseline symptoms established prior to treatment." Claim 4 of the '571 patent depends from claim 2 and recites "the reduction of bloating comprises an affirmative response from the subject when asked whether they had a reduction in bloating." SUF ¶ 5. Claims 2 and 4 characterize a result of administering 550 mg of rifaximin TID for 14 days. The Invalidated IBS-D Claims recite "treating one or more [IBS-D] symptoms" or achieving "adequate relief of [IBS-D] symptoms." As already discussed, reciting a "reduction of bloating from baseline symptoms . . ." and a "reduction" based on "an affirmative response" does not result in patentably distinct differences. *See* Part IV.A.1.a.ii, *supra* (addressing claim 5 of

the ’912 patent). Even if they are entitled to patentable weight, claims 2 and 4 recite, at most, practices that are integral to medicine or clinical research. SUF ¶¶ 42, 46, 53, 57. The recitation of “bloating associated with [IBS-D]” rather than “one or more symptoms of [IBS-D]” does not change this conclusion. SUF ¶ 51. Therefore, claims 2 and 4 of the ’571 patent do not materially differ from the Invalidated IBS-D Claims and summary judgment of invalidity based on collateral estoppel is appropriate.

iii. *Claim 3 of the ’571 patent*

Claim 3 of the ’571 patent depends from claim 2 and recites “the reduction of bloating is achieved following 7 days after the administration of rifaximin.” SUF ¶ 4. As discussed, the recitation of a “reduction [ ] achieved following 7 days after the administration” is not a material difference or, alternatively, fails to alter the obviousness inquiry. *See* Part IV.A.1.a.iii, *supra* (addressing claim 6 of the ’912 patent). Claim 3 recites, at most, a characterization of a result of administering 550 mg of rifaximin TID for 14 days. The recitation of “bloating associated with [IBS-D]” rather than “treating one or more symptoms of [IBS-D]” or achieving “adequate relief of [IBS-D] symptoms,” as recited in the Invalidated IBS-D Claims, does not change this conclusion. SUF ¶ 51. Thus, claim 3 of the ’571 patent does not materially differ from the Invalidated IBS-D Claims and summary judgment of invalidity based on collateral estoppel is appropriate.

**2. The Remaining Elements of Collateral Estoppel Are Met**

**a. The Invalidated IBS-D Claims were fully litigated**

The validity of the Invalidated IBS-D Claims was actually and fully litigated in *Norwich I*. Plaintiffs and Norwich participated in a full trial on the merits, after which the Delaware Court issued the *Norwich I DC* decision holding the claims invalid as obvious. SUF ¶ 14. The Federal Circuit affirmed on appeal. SUF ¶¶ 23, 75. Where the court of the preceding litigation “gave

full and careful consideration to the issues raised" and "fully understood those issues[,]" the "actually litigated" element of collateral estoppel is met. *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 655 (Fed. Cir. 1984).

**b. The invalidity judgment was necessary.**

A finding of invalidity is necessary to the determination of an accused party's liability as to those claims. *See Endo Pharms., Inc. v. Impax Lab'ys, Inc.*, No. 2:16-cv-02526-JLL-JAD, 2016 WL 6246773, at *6 (D.N.J. Oct. 25, 2016) (granting motion to dismiss on collateral estoppel grounds a claim of infringement premised on previously invalidated claims); *Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*, Nos. 1:12-cv-06781-RJS, 1:12-cv-07734-RJS, 2016 WL 5793745, at *4-5 (S.D.N.Y. Sept. 30, 2016) (granting motion for judgment on the pleadings of invalidity where a prior litigation already invalidated one of the asserted patents, and the second patent was "largely duplicative" of the first). Therefore, the third element of the collateral estoppel inquiry is met.

**c. Plaintiffs were fully represented**

The "fully represented" element of collateral estoppel asks "whether the [estopped party] had a fair opportunity to litigate the issue" in the prior proceeding, including whether the party was represented by competent counsel. *See Biogen Int'l GmbH v. Amneal Pharms. LLC*, 487 F. Supp. 3d 254, 264-65 (D. Del. 2020). Plaintiffs were represented by competent counsel at all times during *Norwich I*, as Plaintiffs continue to be so represented in the current cases. The final element of collateral estoppel is thus met.

**B. The Asserted Polymorph Claims Are Invalid**

1. **The Asserted Polymorph Claims Are Invalid as Obvious Based on Collateral Estoppel**

a. **The Issues are Identical: The *Norwich I* Invalidity Analysis Was Not Polymorph Specific.**

Amneal raises the same invalidity argument in this case—the prior art, specifically Cannata and/or Marchi, in view of the common knowledge of a POSA, render the asserted claims obvious—that was fairly and thoroughly litigated, and the Court decided, in *Norwich I*. The only immaterial difference is that in *Norwich I* the asserted claims focused on rifaximin β (beta); here, the asserted claims focus on rifaximin δ (delta) and/or ε (epsilon). In every other respect, e.g. the use of XRPD testing to identify characteristic peaks and use of the rifaximin polymorph in a pharmaceutical composition, the Asserted Polymorph Claims and Invalidated Polymorph Claims are identical. *Norwich I DC* at *6-8; SUF ¶¶ 67-75. The table below illustrates the relevant comparable claim language.

| **Invalidated Polymorph Claims:** | **Asserted Polymorph Claims:** |
|---|---|
| **’199 patent**:<br><br>4. Rifaximin in polymorphic form β, wherein the rifaximin has x-ray powder diffraction pattern peaks at about 5.4°; 9.0°; and 20.9° 2θ and wherein the rifaximin has a water content of greater than 5%.<br><br>**’206 patent**:<br><br>34. A solid pharmaceutical composition comprising rifaximin in polymorphic Form β and a pharmaceutically acceptable excipient or carrier, wherein the rifaximin Form β has x-ray powder diffraction pattern peaks at about 5.4°; 9.0°; and 20.9° 2-θ.<br><br>36. The pharmaceutical composition of claim 34, wherein the rifaximin Form β has a water content of between about 4.5% to about 40%. | **’196 patent:**<br><br>7. A solid pharmaceutical composition comprising a therapeutically effective amount of rifaximin δ, rifaximin ε, or a combination thereof, and a pharmaceutically acceptable excipient, together disposed in a formulation for oral administration, wherein the rifaximin δ has x-ray powder diffraction pattern peaks at about 5.7°±0.2, 10.8°±0.2, 12.1°±0.2, and 17.0°±0.2, 2-θ, and wherein the rifaximin ε has x-ray powder diffraction pattern peaks at about 8.2°±0.2, 12.4°±0.2, and 16.3°±0.2 2-θ.<br><br>8. The pharmaceutical composition of claim 7, wherein the excipient is selected from the group consisting of diluting, binding, lubricating, disintegrating, coloring, flavoring, and sweetening agents.<br><br>9. The pharmaceutical composition of claim 7, wherein the formulation for oral administration is selected from the group consisting of coated or uncoated tablet, hard or soft gelatin capsule, sugar-coated pill, lozenge, wafer sheet, pellet, and powder in sealed packet. |

SUF ¶¶ 64-66; 68-69.

The difference in polymorphic form is immaterial because the Delaware Court's invalidity analysis in *Norwich I DC*, affirmed on appeal, was not polymorph specific. *See* SUF ¶ 79. *Norwich I CAFC* addressed this exact issue and found that "routine characterization to identify the polymorphic forms" cannot overcome the prior art, specifically the Cannata reference. *Norwich I CAFC* at 1066. Plaintiffs are wrong that this difference in claim language materially alters the question of invalidity and prevents collateral estoppel from invalidating the Asserted Polymorph Claims in this case. *See Soverain Software*, 778 F.3d at 1319; *see also Google LLC*, 54 F.4th at 1381-82. That is because *Norwich I DC* never limited the prior art's teachings to any single, or specific, polymorph – it instead found the prior art teachings applied ***to all of them***. Both sides' experts in this case agree that the Cannata and Marchi prior art references are not polymorph specific. SUF ¶ 79. Collateral estoppel applies, and this claim is ripe for adjudication in Amneal's favor.

*Norwich I* made clear that Cannata and Marchi apply to "crystalline rifaximin." *First,* the Delaware Court recognized that "Rifaximin exists in polymorphic forms." SUF ¶ 72. To invalidate the polymorph claims at issue in *Norwich I*, the Delaware Court found that "Cannata disclosed ***crystalline rifaximin***, methods of making it, and that it had antibacterial properties. . . ," and likewise that "Marchi disclosed methods of preparing ***crystalline rifaximin***, rifaximin's antibacterial properties, and that it could be used in pharmaceutical compositions with conventional pharmaceutically acceptable excipients or carriers." *Id.* (emphasis added). *Norwich I DC* did not limit Cannata or Marchi's teachings to a single polymorphic form of rifaximin, and Plaintiffs' expert agreed. *See* SUF ¶79. *Second*, the Delaware Court specifically found that batches produced according to the process described in Cannata resulted in the ***same***

***polymorphic forms of rifaximin*** that are at issue ***in this litigation***. *See* SUF ¶ 80. The Delaware Court not only rejected an anticipation argument in *Norwich I* precisely because Cannata was not specific to a particular polymorphic form of rifaximin but also found that the Cannata process yielded pure rifaximin δ, which is precisely the form of rifaximin claimed in the Polymorph Patent here. *Id*. Plaintiffs cannot escape the Delaware Court's findings.

*Norwich I CAFC* carefully analyzed whether the specific rifaximin polymorphic form β in that case pushed the patents beyond what was obvious in light of the prior art's teaching. *Norwich I CAFC* at 1066. The Federal Circuit explained that, even if the Delaware Court's analysis would have focused on polymorphic form β, on the one hand, or polymorphic forms δ and ε like the asserted claims in this case, on the other hand, it would not have mattered. "The scope and content of the prior art here includes preparations of crystalline rifaximin, which expert testimony supports would have yielded the β form of rifaximin," and that the "methods for characterizing the resulting crystalline rifaximin were well known and readily available to the skilled artisan." *Id.* Thus, the Federal Circuit concluded that "[t]he difference between the prior art and the claims is thus effectively nothing more than the performance of routine characterization to identify the polymorphic forms that result from the known Cannata processes." *Id.* The Court further explained that "[r]ifaximin was, after all, a known compound with a known, useful activity," that there "appears to be no dispute that the claimed polymorph [β] can be readily produced from the crystallization conditions disclosed in Cannata and that it would have been well within the abilities of the skilled artisan to procure and characterize the β form of rifaximin." *Id.*

It is well established that a "routine incorporation" of prior art knowledge into "existing processes" will not change the invalidity analysis to escape collateral estoppel. *Soverain*

*Software*, 778 F.3d at 1320. Nor will it make an otherwise obvious claim valid. *Purdue Pharma L.P. v. Accord Healthcare, Inc.*, No. 2023-1953, 2024 WL 5244764, at *8 (Fed. Cir. Dec. 30, 2024), *cert. denied*, 146 S. Ct. 95 (2025) ("Where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation.") (quoting *In re Applied Materials, Inc.*, 692 F.3d 1289, 1295 (Fed. Cir. 2012)); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1349 n.2 (Fed. Cir. 2009) ("The evidence established that one skilled in the art would have known how to vary the PAA concentration or other parameters in order to achieve the disclosed one $log_{10}$ reduction. Such experimentation is routine and cannot render an otherwise obvious claim valid.").

Therefore, the Federal Circuit's binding decision in *Norwich I* further evidences the fact that the difference between rifaximin β and δ is immaterial in the context of the Delaware Court's obviousness analysis.

#### b. ***Norwich I* Also Adjudicated the Obviousness of Any Remaining Claim Elements in the Asserted Polymorph Claims.**

In addition to the claim limitations claiming the polymorphic form, the Asserted Polymorph Patent Claims claim: (i) incorporation of the recited rifaximin in a pharmaceutical composition for oral administration; (ii) a "therapeutically effective amount of" the rifaximin; (iii) the recitation of characteristic "x-ray powder diffraction pattern peaks"; and (iv) a "pharmaceutically acceptable excipient." None of these additional limitations render the Asserted Polymorph Patent Claims non-obvious and all are invalid as obvious given the Delaware Court's decision in *Norwich I*.

"<u>Pharmaceutical composition</u>"/"<u>therapeutically effective amount of</u>"/"<u>pharmaceutically acceptable excipient.</u>" The Delaware Court determined that prior art "disclosed that rifaximin was an approved antibacterial drug in Italy in 1985 as a coated tablet comprising 200 mg of

rifaximin and pharmaceutically acceptable excipients." *Norwich I DC* at *8. The Delaware Court also determined that "[a] POSA would have had a reasonable expectation of success at achieving a pharmaceutical composition comprising rifaximin β and a pharmaceutically acceptable excipient or carrier." *See Norwich I DC* at *3. As such, limitations recited in the asserted claims of the Polymorph Patent that are directed to those limitations consist of nothing more than routine incorporation of obvious elements that do not change the invalidity analysis. *Soverain Software LLC* v, 778 F.3d at 1320; *Google*, 54 F.4th at 1382; *see also Purdue Pharma*, 2024 WL 5244764 at *8; *Ecolab*, 569 F.3d at 1349 n.2. The pharmaceutical compositions of the prior art relied on in *Norwich I* necessarily included an "effective amount" of the rifaximin polymorph active ingredient, such that the "therapeutically effective amount" claim limitations in this case also fail to alter the question of invalidity.

"X-ray powder diffraction pattern peaks." Similarly, in *Norwich I DC*, the Delaware Court found that "[x]-ray powder diffraction (XRPD) peaks are an inherent characteristic of a polymorph. Each peak in an XRPD diffractogram is a structural element of that form", that "XRPD was routine as of the priority date," and that "[a] crystalline form of a known compound can be characterized by a subset of XRPD peaks." SUF ¶¶ 71, 72. Once more, the addition of this limitation in the Asserted Polymorph Patent Claims does nothing more than incorporate routine, obvious elements into the claims. *See Norwich I DC* at *7 ("I credit the testimony of Dr. Zaworotko that the XRPD peaks and water content are 'inherent' properties of a crystal form that can be tested using routine methods.") (relying on *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007)). Plaintiffs' own experts have confirmed this. *See* SUF ¶¶ 76-77. Incorporation of such routine and obvious elements does not save the claims from being obvious on the basis of collateral estoppel in view of *Norwich I*. *See Soverain Software*, 778 F.3d at

1320; *Google*, 54 F.4th at 1382; *see also Purdue Pharma L.P.*, 2024 WL 5244764, at *8; *Ecolab*, 569 F.3d at 1349 n.2.

#### c. Secondary Considerations of Non-Obviousness Do Not Save the Asserted Polymorph Patent Claims from an Obvious Finding.

Plaintiffs' experts have not raised any arguments identifying secondary considerations of non-obviousness with respect to the asserted claims of the Polymorph Patent. *Sanofi v. Glenmark Pharms. Inc.*, USA, 204 F. Supp. 3d 665, 685 (D. Del. 2016), *aff'd sub nom. Sanofi v. Watson Lab'ys Inc.*, 875 F.3d 636 (Fed. Cir. 2017) ("Relevant secondary considerations include commercial success, long felt but unsolved needs, failure of others, praise, unexpected results, and copying, among others."). Even if they had, Plaintiffs would be collaterally estopped from making those arguments in view of the Delaware Court's finding in *Norwich I* that "[t]here is no evidence of secondary considerations of nonobviousness for the Polymorph Patents." *Norwich I DC* at *7.

#### d. The Issues Were Fairly Litigated, Necessary to the Norwich I Decision, and Plaintiffs Were Fully Represented.

The remaining three collateral estoppel factors are also satisfied. That is: (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. The issue discussed in Sections IV.B.1.a.–c. above resulted in a final written decision on the merits that carefully considered and adjudicated the issue of obviousness. *See* SUF ¶¶ 64-77. The Federal Circuit carefully reviewed and issued an equally detailed decision affirming the district court's obviousness analysis. *See* SUF ¶ 75. Plaintiffs were fully represented in the district court and appellate proceedings in that action by both Delaware counsel and national counsel,

including by their current national counsel who represented Plaintiffs during the *Norwich I CAFC* appeal.

### 2. Alternatively, Claims 7-9 of the Polymorph Patent Are Invalid as Obvious in view of The New Zealand Application.

The New Zealand Application explains that the formation of the polymorphs "depends on the conditions of time and temperature at which both the crystallization and the drying are carried out." SUF ¶ 84. Example 1 in the New Zealand Application discloses a method for preparing rifaximin form α. *See* SUF ¶ 85. The recited example, in every material way, is identical to the example that the Polymorph Patent in this case recites for making the claimed rifaximin form δ. The chart below illustrates by highlighting the sole differing point between the two references.

| **'196 Patent Example 1** | **New Zealand Application Example 1** |
|---|---|
| At the end of the addition, the mass is kept under stirring for 30 minutes at an interior temperature of 20±3° C. and then, at the same temperature, 7.72 g of concentrated hydrochloric acid are dripped until a pH equal to 2.0. | At the end of the addition, the mass is kept under stirring for 30 minutes at an interior temperature of 20±3° C. and then, at the same temperature, 7.72 g of concentrated hydrochloric acid are dripped until a pH equal to 2.0. |
| At the end of the addition, the mass is kept under stirring, always at an interior temperature equal to 20° C., for 30 minutes, then the precipitate is filtered and washed by means of a mixture made of 32 ml of demineralised water and of 25 ml of ethyl alcohol. | At the end of the addition, the mass is kept under stirring, always at an interior temperature equal to 20° C., for 30 minutes, then the precipitate is filtered and washed by means of a mixture made of 32 ml of demineralized water and of 25 ml of ethyl alcohol. |
| The so obtained "raw rifaximin" (89.2 g) is dried under vacuum at room temperature for 12 hours obtaining 64.4 g of "dried raw rifaximin" which shows a water content equal to 5.6%. The product by further drying under vacuum until the weight of 62.2 g of dried raw rifaximin having a water content equal to 3.3%, whose diffractogram corresponds to the polymorphous form δ characterized from a powder X-ray diffractogram showing peaks at | The so obtained "raw rifaximin" (89.2 g) is dried under vacuum at room temperature for 12 hours obtaining 64.4 g of "dried raw rifaximin" which shows a water content equal to 5.6% and a diffractogram corresponding to the polymorphous form β. The product by further drying under vacuum until constant weight gives 62.2 g of dried raw rifaximin having a water content equal to 2.2%, whose |

| | |
|---|---|
| values of angles 2θ of 5.7°±0.2, 6.7°±0.2, 7.1°±0.2, 8.0°±0.2, 8.7°±0.2, 10.4°±0.2, 10.8°±0.2, 11.3°±0.2, 12.1°±0.2, 17.0°±0.2, 17.3°±0.2, 17.5°±0.2, 18.5°±0.2, 18.8°±0.2, 19.1°±0.2, 21.0°±0.2, 21.5°±0.2. The product is hygroscopic. | diffractogram corresponds to the polymorphous form α. |

*See* SUF ¶ 85. Every step is the same: mass; stirring time; multiple interior temperature measurements all identical; addition and amount of HCl; pH; precipitate filtration and wash using same washing mixture; drying of same amount of raw rifaximin for same amount of time to obtain identical amounts of dried raw rifaximin, except the New Zealand Application describes "further drying" of the dried raw rifaximin to a water content of 2.2% and the Polymorph Patent describes "further drying" of the dried raw rifaximin to a water content of 3.3%. *Id*.

Plaintiffs' expert, Dr. Chyall, confirmed the substantial similarity between the '196 patent formation of rifaximin δ and the New Zealand Application formation of rifaximin α, and testified that the only difference between the prior art process compared to the '196 patent process is the manner by which a POSA would dry the dried raw rifaximin. SUF ¶ 86. Dr. Chyall also confirmed that drying is routine and would be well understood by a POSA. *Id.* Indeed, a POSA would "have to just do a little bit of work in order to optimize the conditions required to get either the alpha [polymorph form of rifaximin] or the delta [polymorph form of rifaximin], depending on what they seek to prepare." *Id*. In other words, the prior art teachings of the New Zealand Application would be easily modified by a POSA with only "a little work" to form rifaximin δ and place it into a pharmaceutical composition. The Delaware Court in *Norwich I* explicitly found that a POSA would be motivated to perform routine testing for water content and hydration formation of rifaximin. *Norwich I DC*, at *7 ("The FDA encouraged, if not required, that the solid forms of a drug substance be well-characterized during drug

development, including as to the properties of solubility, stability, and bioavailability."); *see also id*. at *1-2. It is well established that such routine testing cannot overcome obviousness. *Purdue Pharma,* 2024 WL 5244764, at *8; *Ecolab*, 569 F.3d at 1349 n.2. Therefore, it is undisputed that the New Zealand Application describes the entire process for making the claimed rifaximin δ with the exception of the drying component, which a POSA would be motivated to perform as a matter of routine analytical testing, and therefore renders the asserted Polymorph Patent claims invalid as obvious.

To the extent Plaintiffs argue that the claim limitations involving (i) incorporation of the recited rifaximin in a pharmaceutical composition for oral administration; (ii) a "therapeutically effective amount of" the rifaximin; (iii) the recitation of characteristic "x-ray powder diffraction pattern peaks"; or (iv) a "pharmaceutically acceptable excipient," these arguments must necessarily fail as well. At the outset, as discussed above, the XRPD peaks recited in claim 7 are inherent properties of the rifaximin forms. They are not sufficient to make an otherwise obvious and invalid claim nonobvious. *See Norwich I DC* at *7; *Pfizer, Inc. v. Apotex, Inc*., 480 F.3d 1348, 1364 (Fed. Cir. 2007).

The New Zealand Application expressly teaches each of the remaining elements:

| Asserted Polymorph Patent Claims: | New Zealand Application: |
|---|---|
| 7. A solid pharmaceutical composition comprising a therapeutically effective amount of rifaximin δ, rifaximin ε, or a combination thereof… | SUF ¶ 81, Exh. Q at 11:15-18 ("All the solid preparations administrable by oral route…); 10:28-11:3 ("The forms α , β a nd γ can be advantageously used in the production of medicinal preparations having antibiotic activity…) |
| 7. …and a pharmaceutically acceptable excipient…<br><br>8. The pharmaceutical composition of claim 7, wherein the excipient is selected from the group consisting of diluting, binding, lubricating, | SUF ¶ 81, Exh. Q at 11:19-26 ("The medicinal preparations for oral use contain rifaximin α or β or γ together with the usual excipients as diluting agents like mannitol, lactose and sorbitol; binding agents like starchs, gelatines, sugars, cellulose derivatives, natural gums and polyvinylpyrrolidone; lubricating agents like talc, stearates, hydrogenated vegetable oils, polyethylenglycol and colloidal |

| | |
|---|---|
| disintegrating, coloring, flavoring, and sweetening agents. | silicon dioxide; disintegrating agents like starchs, celluloses, alginates, gums and reticulated polymers; coloring, flavoring and sweetening agents.”) |
| 7. …together disposed in a formulation for oral administration…<br><br>9. The pharmaceutical composition of claim 7, wherein the formulation for oral administration is selected from the group consisting of coated or uncoated tablet, hard or soft gelatin capsule, sugar-coated pill, lozenge, wafer sheet, pellet, and powder in sealed packet | SUF ¶ 81, Exh. Q at 11:15-18 (“All the solid preparations administrable by oral route can be used in the ambit of the present invention, for instance coated and uncoated tablets, capsules made of soft and hard gelatin, sugar-coated pills, lozenges, wafer sheets, pellets and powders in sealed packets.”) |

As such, none of these additional claim elements save the Asserted Polymorph Claims from obviousness.

## V. CONCLUSION

Accordingly, Defendants respectfully request that the Court grant their Motion for Summary Judgment.

Dated: March 10, 2026


*/s/ Rebekah Conroy*
Rebekah Conroy (rconroy@stoneconroy.com)
**STONE CONROY LLC**
25 A Hanover Road, Suite 301
Florham Park, NJ 07932
Tel.: (973) 400-4181

*Attorneys for Defendants Amneal Pharmaceuticals of New York, LLC and Amneal EU, Limited*

Of Counsel:

Jake M. Holdreith
(jholdreith@robinskaplan.com)
Christopher A. Pinahs
(cpinahs@robinskaplan.com)
Samuel J. LaRoque, Ph.D.
(slaroque@robinskaplan.com)

**ROBINS KAPLAN LLP**
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
Phone: (612) 349-8500

Oren D. Langer
(olanger@robinskaplan.com)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Phone: (212) 980-7400

Of Counsel:

Matthew J. Becker
(mbecker@axinn.com)
Thomas K. Hedemann
(thedemann@axinn.com)
Edward M. Mathias
(tmathias@axinn.com)
Matthew S. Murphy
(mmurphy@axinn.com)
Rebecca L. Clegg
(rclegg@axinn.com)
**AXINN, VELTROP & HARKRIDER LLP**
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100

Sara B. Natour
(snatour@axinn.com)
**AXINN, VELTROP & HARKRIDER LLP**
1901 L Street NW
Washington, DC 20036
(202) 912-4700

Cassie Goodnight
(cgoodnight@axinn.com)
**AXINN, VELTROP & HARKRIDER LLP**
630 Fifth Avenue, 33rd Floor
New York, NY 10111
(212) 728-2200

*/s/ Arnold B. Calmann*
Arnold B. Calmann
(abc@saiber.com)
Katherine A. Escanlar
(kescanlar@saiber.com)
**SAIBER LLC**
7 Giralda Farms, Suite 360
Madison, NJ 07940
Phone: (973) 622-3333

*Attorneys for Norwich Pharmaceuticals, Inc.*