Rebekah Conroy
**STONE CONROY LLC**
25 A Hanover Road, Suite 301
Florham Park, NJ 07932
(973) 400-4181
rconroy@stoneconroy.com

Jake M. Holdreith
Christopher A. Pinahs
Samuel J. LaRoque, Ph.D.
**ROBINS KAPLAN LLP**
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
(612) 349-8500

Oren D. Langer
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas
Suite 2601
New York, NY 10019
(212) 980-7400

*Attorneys for Amneal Pharms. of NY, LLC and Amneal EU, Ltd.*

Arnold B. Calmann
Katherine A. Escanlar
**SAIBER LLC**
7 Giralda Farms, Suite 360
Madison, NJ 07940
Phone: (973) 622-3333

Matthew J. Becker
Thomas K. Hedemann
Edward M. Mathias
Matthew S. Murphy
Rebecca L. Clegg
**AXINN, VELTROP & HARKRIDER LLP**
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100

Sara B. Natour
**AXINN, VELTROP & HARKRIDER LLP**
1901 L Street NW
Washington, DC 20036
(202) 912-4700

Cassie Goodnight
**AXINN, VELTROP & HARKRIDER LLP**
630 Fifth Avenue, 33rd Floor
New York, NY 10111
(212) 728-2200

*Attorneys for Norwich Pharmaceuticals, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., ALFASIGMA S.P.A. and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>AMNEAL PHARMACEUTICALS OF NEW YORK, LLC and AMNEAL EU, LIMITED,<br><br>Defendants. | Civil Action No. 1:24-cv-04607-JFM |
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>NORWICH PHARMACEUTICALS, INC.,<br><br>Defendant. | Civil Action No. 1:24-cv-07140-JFM |

**DEFENDANTS' STATEMENT OF UNDISPUTED**
**MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Pursuant to L. Civ. R. 56.1(a), the August 5, 2025, Order (ECF 123), and Section 9 of the Your Honor's Policies and Procedures—General Guidance and Civil Matters, Defendants Amneal Pharmaceuticals of New York, LLC and Amneal EU, Limited (together "Amneal") and Norwich Pharmaceuticals, Inc. ("Norwich") (collectively, "Defendants") submit this statement of undisputed material facts in support of their Motion for Summary Judgment that the asserted claims of U.S. Patent Nos. 11,564,912 (the "'912 patent"), 11,779,571 (the "'571 patent") (together, the "IBS-D Patents"), and U.S. Patent No. 8,193,196 (the "'196 patent" or "Polymorph

Patent") are invalid as obvious on the basis of collateral estoppel.[1] Amneal alone further moves for summary judgment of invalidity of the '196 patent on the basis of obviousness.

The following facts are beyond genuine dispute and compel summary judgment on Defendants' motion:

# I. Facts Supporting Collateral Estoppel of Obviousness of the Asserted IBS-D Patent Claims[2]

## A. The Asserted IBS-D Patent Claims

1. Plaintiffs assert against Defendants claims 1-4 of the '571 patent and claims 3, 5, 6, and 7 of the '912 patent. *See* No. 3:24-cv-04607 ("Amneal Action"), D.I. 23-1, 23-2; No. 1:24-cv-07140 ("Norwich Action"), D.I. 26-1, 26-2.

**PLAINTIFFS' RESPONSE**: Admitted, except the "Amneal Action" is Case No. **1**:24-cv-04607.

2. Claim 1 of the '571 patent recites:

> 1. A method of treating bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS) in a female subject, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating bloating associated with dIBS in the female subject.

Amneal Action, D.I. 23-1 at claim 1; Norwich Action, D.I. 26-1 at claim 1.

**PLAINTIFFS' RESPONSE**: Admitted paragraph 2 accurately quotes asserted claim 1 of the '571 patent.

---

[1] Norwich joins this motion only as it concerns the IBS-D Patents. Plaintiffs do not assert any claim of infringement of the Polymorph Patent against Norwich. Therefore, Norwich does not join in Amneal's motion for summary judgment of collateral estoppel and obviousness as it concerns the '196 patent. The material undisputed facts underlying those two motions are included herein for efficiency and for the Court's ease of reference to all facts in a single pleading.

[2] Plaintiffs dispute the characterizations provided in Defendants' headings.

3. Claim 2 of the ’571 patent recites:

> 2. The method of claim 1, wherein the treating of bloating comprises a reduction of bloating from baseline symptoms established prior to treatment.

*Id*. at claim 2.

**PLAINTIFFS’ RESPONSE**: Admitted paragraph 3 accurately quotes asserted claim 2 of the ’571 patent.

4. Claim 3 of the ’571 patent recites:

> 3. The method of claim 2, wherein the reduction of bloating is achieved following 7 days after the administration of rifaximin.

*Id*. at claim 3.

**PLAINTIFFS’ RESPONSE**: Admitted paragraph 4 accurately quotes asserted claim 3 of the ’571 patent.

5. Claim 4 of the ’571 patent recites:

> 4. The method of claim 2, wherein the reduction of bloating comprises an affirmative response from the subject when asked whether they had a reduction in bloating.

*Id*. at claim 4.

**PLAINTIFFS’ RESPONSE**: Admitted paragraph 5 accurately quotes asserted claim 4 of the ’571 patent.

6. Claim 3 of the ’912 patent depends from claim 1, together reciting:

> 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a female subject, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating one or more symptoms of IBS in the female subject.
>
> 3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS.

Amneal Action, D.I. 23-2 at claim 1; Norwich Action, D.I. 26-2 at claim 1; *id.* at claim 3.

**PLAINTIFFS' RESPONSE**: Admitted paragraph 6 accurately quotes asserted claim 3 of the '912 patent.

7. Claim 5 of the '912 patent recites:

> 5. The method of claim 1, wherein the treating one or more symptoms of IBS comprises a reduction of the one or more symptoms from baseline symptoms established prior to treatment.

*Id.* at claim 5.

**PLAINTIFFS' RESPONSE**: Admitted paragraph 7 accurately quotes asserted claim 5 of the '912 patent.

8. Claim 6 of the '912 patent recites:

> 6. The method of claim 5, wherein the reduction of the one or more symptoms is achieved following 7 days after the administration of rifaximin.

*Id.* at claim 6.

**PLAINTIFFS' RESPONSE**: Admitted paragraph 8 accurately quotes asserted claim 6 of the '912 patent.

9. Claim 7 of the '912 patent recites:

> 7. The method of claim 1, wherein treating one or more symptoms of IBS comprises a reduction in symptoms defined by an affirmative response from the subject when asked whether they had a reduction in symptoms of IBS.

*Id.* at claim 7.

**PLAINTIFFS' RESPONSE**: Admitted paragraph 9 accurately quotes asserted claim 7 of the '912 patent.

**B. *Norwich I* Adjudicated Issues (IBS-D Patents)**

10. In *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430-RGA, 2022 WL 3225381 (D. Del. Aug. 10, 2022) ("*Norwich I DC*"), *aff'd,* 98 F.4th 1056 (Fed. Cir. 2024) ("*Norwich I CAFC*") (together, "*Norwich I*"), claim 3 of U.S. Patent No. 10,765,667 (the "'667

patent") and claim 2 of U.S. Patent No. 8,309,569 (the "'569 patent") (together, the "Invalidated IBS-D Claims") were found invalid as obvious.

**<u>PLAINTIFFS' RESPONSE</u>**: Admitted.

11. Invalidated claim 3 of the '667 patent depends from claim 1, together reciting:

> 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older.
> 3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS.

*See* **<u>Exhibit A</u>** (Ex. AA to First Amended Compl. (D.I. 59-1), *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 20-430 (D. Del. Nov. 13, 2020)) at claim 1; *id.* at claim 3.

**<u>PLAINTIFFS' RESPONSE</u>**: Admitted paragraph 11 accurately quotes claims 1 and 3 of the '667 patent.

12. Invalidated claim 2 of the '569 patent depends from claim 1, together reciting:

> 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms.
>
> 2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day.

*See* **<u>Exhibit B</u>** (Ex. J to First Amended Compl. (D.I. 59-1), *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 20-430 (D. Del. Nov. 13, 2020)) at claims 1-2.

**<u>PLAINTIFFS' RESPONSE</u>**: Admitted paragraph 12 accurately quotes claims 1 and 2 of the '569 patent.

13. Salix Pharmaceuticals, Inc., Salix Pharmaceuticals, Ltd., Alfasigma S.p.A., and Bausch Health Ireland Ltd. were plaintiffs in *Norwich I*. All four of these entities are plaintiffs in the Amneal Action, and Salix Pharmaceuticals, Inc., Salix Pharmaceuticals, Ltd., and Bausch Health Ireland Ltd. are plaintiffs in the Norwich Action. *See* Amneal Action, D.I. 23; Norwich Action, D.I. 26.

**PLAINTIFFS' RESPONSE**: Admitted.

14. In March 2022, the court in *Norwich I DC* held a full trial on the merits, including Norwich's invalidity defenses. On August 10, 2022, the court issued its opinion with findings of fact and conclusions of law. *See generally Norwich I DC*.

**PLAINTIFFS' RESPONSE**: Admitted the court in *Norwich I DC* issued its opinion with findings of fact and conclusions of law on August 10, 2022. Also admitted only to the extent "a full trial on the merits, including Norwich's invalidity defenses" refers to 1) Salix's assertions Norwich infringed claim 4 of U.S. Patent No. 7,612,199 ("'199 patent"), claim 36 of U.S. Patent No. 7,902,206 ("'206 patent"), claim 8 of U.S. Patent No. 8,642,573 ("'573 patent"), claim 6 of U.S. Patent No. 9,421,195 ("'195 patent"), claim 11 of U.S. Patent No. 10,335,397 ("'397 patent"), claim 2 of U.S. Patent No. 8,309,569 ("'569 patent"), and claim 3 of U.S. Patent No. 10,765,667 ("'667 patent") and 2) Norwich's assertions i) claim 4 of the '199 patent was invalid for being inherently anticipated and obvious, ii) claim 36 of the '206 patent was invalid as obvious, iii) claim 8 of the '573 patent, claim 6 of the '195 patent, and claim 11 of the '397 patent were invalid as obvious and for lacking written description, iv) claim 2 of the '569 patent was invalid as obvious, indefinite, and for lacking written description, and v) claim 3 of the '667 patent was invalid as obvious. Otherwise, disputed.

**DEFENDANTS' REPLY**: Plaintiffs' response omits Norwich's defenses concerning obviousness of claim 12 of the '397 patent and inadequate written description for claim 4 of the '199 patent. The *Norwich I DC* trial and the court's subsequent opinion addressed both of these defenses. Defendants otherwise do not dispute Plaintiffs' characterization of the *Norwich I DC* trial.

15. The court in *Norwich I DC* found that Pimentel 2006 and the RFIB 2001 Protocol disclose all limitations of the Invalidated IBS-D Claims. *Id.* at *17.

**PLAINTIFFS' RESPONSE**: Admitted the *Norwich I DC* opinion states, in reference to claim 2 of the '569 patent and claim 3 of the '667 patent that were at-issue in that litigation, "[t]he RFIB 2001 Protocol and Pimentel 2006 disclose all limitations of the IBS-D claims" at 2022 WL 3225381, *17.

16. The court in *Norwich I DC* found that a POSA would have been motivated to combine Pimentel 2006 and the RFIB 2001 Protocol with a reasonable expectation of success. *Id.*

**PLAINTIFFS' RESPONSE**: Admitted the *Norwich I DC* opinion states "[a] POSA would have been motivated to combine the RFIB 2001 Protocol and Pimentel 2006 with a reasonable expectation of success" at 2022 WL 3225381, *17 with respect to claim 2 of the '569 patent and claim 3 of the '667 patent that were at-issue in that litigation. Otherwise disputed, including to the extent paragraph 16 suggests the court in *Norwich I DC* made findings about whether "a POSA would have been motivated to combine Pimentel 2006 and the RFIB 2001 Protocol with a reasonable expectation of success" generally (it did not), or that this statement from *Norwich I DC* applies to the '912 or '571 patents whose claims differ from those adjudicated in *Norwich I DC*.

**<u>DEFENDANTS' REPLY</u>**: Plaintiffs' Response introduces matter that is nonresponsive to Defendants' SUF ¶ 16 and irrelevant to the application of collateral estoppel.

17. The court in *Norwich I DC* found that the RFIB 2001 Protocol was a Phase II trial designed to administer to adult patients a range of 550 to 2,220 mg per day of rifaximin for 14 days for the treatment of IBS-D. *Id.* at *19.

**<u>PLAINTIFFS' RESPONSE</u>**: Admitted the *Norwich I DC* opinion states that the RFIB 2001 Protocol "was a Phase II trial designed to administer rifaximin to patients aged 18 and over, 550-2,200 mg per day for 14 days for the treatment of IBS-D." *Id.* at *19. Otherwise disputed. *Norwich I DC* does not refer to any "range of 550 to 2,220 mg per day." *See id.*

18. The *Norwich I DC* court found that the RFIB 2001 Protocol included the outcome measure of providing adequate relief of symptoms. *Id.*

**<u>PLAINTIFFS' RESPONSE</u>**: Disputed. The *Norwich I DC* opinion states "[t]he protocol included the outcome measures of providing adequate relief of symptoms and evaluating a durability of response over a 12-week post-treatment period," and does not include any finding that RFIB 2001 Study Protocol itself discloses results from those "outcome measures." *Id*. Further disputed to the extent paragraph 18 suggests *Norwich I DC's* findings apply to the '912 or '571 patents. Unlike claim 2 of the '569 patent adjudicated in *Norwich I DC*, neither claims 1-4 of the '571 patent nor claims 3, 5, 6, and 7 of the '912 patent recite "a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms."

**<u>DEFENDANTS' REPLY</u>**: Plaintiffs' Response introduces matter that is nonresponsive to Defendants' SUF ¶ 18 and irrelevant to the application of collateral estoppel. Regardless, Plaintiffs' Response quotes the *Norwich I DC* court's finding that "*The protocol included the*

*outcome measures of providing adequate relief of symptoms* and evaluating a durability of response over a 12-week post-treatment period." *Norwich I DC* at *19.

19. The *Norwich I DC* court found that Pimentel 2006 disclosed a randomized, double-blind, placebo-controlled study that found rifaximin to be more effective than placebo in improving IBS, including global improvement in IBS symptoms. *Id.* at *18-19.

**PLAINTIFFS' RESPONSE:** Disputed. The *Norwich I DC* opinion describes Pimentel 2006 as "[a] randomized, double-blind, placebo-controlled study" that "found rifaximin to be more effective than placebo in improving IBS." *Id*. at *18. The court noted "Pimentel 2006 administered rifaximin, 400 mg TID for 10 days, to treat IBS patients aged 18-65." *Id*. at *19. "Pimentel 2006," as the court stated, "taught 'rifaximin results in statistically greater global improvement in IBS than placebo,' and '[i]mprovements were sustained through 10 weeks of follow-up' after 10 days of treatment." *Id*. It noted, however, that "Pimentel 2006 did not find an improvement in the symptoms of abdominal pain and diarrhea." *Id*. at *20.

**DEFENDANTS' REPLY**: Plaintiffs' Response introduces matter that is nonresponsive to Defendants' SUF ¶ 19 and irrelevant to the application of collateral estoppel. Regardless, the *Norwich I DC* opinion states "A randomized, double-blind, placebo-controlled study found rifaximin to be more effective than placebo in improving IBS. ("Pimentel 2006," JTX 53)," and "Pimentel 2006 taught, "rifaximin resulted in statistically greater global improvement in IBS than placebo," and "[i]mprovements were sustained through 10 weeks of follow-up" after 10 days of treatment." *Id.* at *18-19.

20. The *Norwich I DC* court found that a POSA would have been motivated to adjust the dose used in Pimentel 2006, where Pimentel 2006 disclosed: "Recent data suggests that the

optimal dosage of rifaximin may, in fact, be higher than that used in our study [i.e., 400 mg thrice daily].” *Id.* at *20.

**<u>PLAINTIFFS’ RESPONSE</u>**: Admitted that, in discussing motivation to select a dose, the Norwich I DC opinion states “Pimentel 2006 taught, ‘Recent data suggest that the optimal dosage of rifaximin may, in fact, be higher than that used in our study.’” *Id.* at *20. Otherwise disputed. The *Norwich I DC* opinion did not address the fact that Pimentel 2006’s statement referencing “Recent data” cited a 2005 study by Gabrielli Lauritano and colleagues which, as Defendants’ expert Dr. Harary admits, used the ***same*** highest daily dose of rifaximin (1,200 mg) as Pimentel 2006’s study. Ex. K, Harary Dep. at 28:7-15 (Q. The highest dosage in Lauritano was 1200 mgs a day. Correct? A. Yes. Q. The highest dosage in the Pimentel reference was 1200 mgs a day. Correct? A. Yes. Q. The highest reported dose used in Lauritano was the same dose used in Pimentel 2006? A. Yes.). Further disputed to the extent paragraph 18 suggests *Norwich I DC’s* statements apply to the ’912 or ’571 patents, which recite materially different claimed inventions.

**<u>DEFENDANTS’ REPLY</u>**: Plaintiffs’ response introduces matter that is nonresponsive to Defendants’ SUF ¶ 20 and irrelevant to the application of collateral estoppel.

21. The *Norwich I DC* court found that “a POSA would have been motivated to combine the prior art to achieve a dosage regimen within the known range.” *Id.* The court additionally found that “[w]idespread off-label use reflects a motivation to use rifaximin for the treatment of IBS-D with a reasonable expectation of success.” *Id.* at *19.

**<u>PLAINTIFFS’ RESPONSE</u>**: Admitted paragraph 21 accurately quotes the *Norwich I DC* opinion at *19. Disputed to the extent paragraph 21 suggests *Norwich I DC’s* statements about “motivation” and “reasonable expectation of success”—which relate only to claim 3 of the

’667 patent and claim 2 of the ’569 patent—apply to the ’912 or ’571 patents whose claims differ from those adjudicated in *Norwich I DC*. Further, the Court’s statements regarding “widespread off-label use” were based on a confidential, non-prior art poll of gastroenterologists performed by Salix, rather than prior art knowledge. *Id.* at *18-19 (referring to “gastroenterologists polled by Salix”). Defendants have not offered that evidence in support of their motion, and Plaintiffs would object to its admissibility for lack of foundation and as hearsay.

**DEFENDANTS’ REPLY**: Plaintiffs’ response introduces matter that is nonresponsive to Defendants’ SUF ¶ 21 and irrelevant to the application of collateral estoppel.

22. The *Norwich I DC* court found that “[a] POSA would have been motivated to use TID dosing to maintain an effective concentration of rifaximin in the small intestine to control bacteria levels.” *Id.* at *20.

**PLAINTIFFS’ RESPONSE**: Admitted paragraph 22 accurately quotes the *Norwich I DC* opinion at *20. Disputed to the extent paragraph 22 suggests *Norwich I DC’s* statements about “motivation”—which relate only to claim 3 of the ’667 patent and claim 2 of the ’569 patent—apply to the ’912 or ’571 patents whose claims differ from those adjudicated in *Norwich I DC*.

**DEFENDANTS’ REPLY**: Plaintiffs’ purported dispute is nonresponsive to Defendants’ SUF ¶ 22 and irrelevant to the application of collateral estoppel.

23. Plaintiffs appealed from the final judgment in *Norwich I DC* holding claim 2 of U.S. Patent 8,309,569 and claim 3 of U.S. Patent 10,765,667 invalid as obvious, and the Federal Circuit affirmed the judgment of the district court that the IBS-D claims would have been obvious in view of the RFIB 2001 Protocol and Pimentel 2006. *Norwich I CAFC* at 1064.

**<u>PLAINTIFFS' RESPONSE</u>**: Disputed to the extent paragraph 23 suggests the Federal Circuit's decision applies to the '912 or '571 patents. The Federal Circuit's findings relate only to claim 2 of the '569 patent and claim 3 of the '667 patent.

**<u>DEFENDANTS' REPLY</u>**: Plaintiffs' purported dispute is nonresponsive to Defendants' SUF ¶ 23 and irrelevant to the application of collateral estoppel.

### C. There Are No Material Differences Between the Asserted IBS-D Claims and the Invalidated IBS-D Claims

#### 1. The IBS-D Patents Issued Only After Salix Terminally Disclaimed Them Over the '667 Patent

24. During prosecution of the application becoming the '571 patent, the Examiner found that claims 37 and 41-43 of such application are not patentably distinct from claims 1-4 of the '912 patent "because '912 states a method of treating one or more symptoms of irritable bowel syndrome (IBS) in a female subject said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject." Norwich Action, D.I. 67-7 at 8-9.

**<u>PLAINTIFFS' RESPONSE</u>**: Admitted the Examiner initially rejected claims 37 and 41-43 over claims 1-4 of the '912 patent based on the doctrine of non-statutory, obviousness-type double patenting. Otherwise, disputed. The Examiner acknowledged claims 37 and 41-43 were "not identical" to those of the '912 patent and did not issue any ***statutory*** double patenting rejections. Ex. R, Non-Final Rej. (Apr. 5, 2023) at 7-10. Further, the Examiner did not issue his non-statutory, obviousness-type double patenting rejection over the '912 patent alone, but over all four related patents to which the pending application was a continuation, as well as the one related patent that was a continuation of the pending application. *Compare id.* (issuing non-statutory, obviousness-type double-patenting rejections over U.S. Patent Nos. 10,765,667, 10,456,384, 9,931,325, and 9,566,270, as well as the '912 patent), *with* '571 patent ("Related

U.S. Application Data"); '912 patent ("Related U.S. Application Data" listing itself as a "Continuation of application No. 17/197,561"—the application that issued as the '571 patent).

**DEFENDANTS' REPLY**: Plaintiffs' response introduces matter that is nonresponsive to Defendants' SUF ¶ 24 and irrelevant to the application of collateral estoppel to any asserted claim. Plaintiffs' Response does not dispute that language from the cited rejection is accurately quoted, and therefore it should be deemed admitted.

25. The rejected claims 37 and 41-43 are the same as the issued claims 1-4 of the '571 patent. *See* **Exhibit C** (XIFAX_AMN_0007015) at -7484; Amneal Action, D.I. 23-1; Norwich Action, D.I. 26-1.

**PLAINTIFFS' RESPONSE**: Admitted.

26. The Examiner additionally found that claims 37 and 41-43 of the application becoming the '571 patent are not patentably distinct from claims 1-15 of the '667 patent "because '667 states a method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older; this is anticipatory to the instant claims as male and female subjects are instantly envisaged." Norwich Action, D.I. 67-7 at 9.

**PLAINTIFFS' RESPONSE**: Admitted the Examiner initially rejected claims 37 and 41-43 over claims 1-15 of the '667 patent based on the doctrine of non-statutory obviousness-type double patenting, and that the language from that rejection is accurately quoted. Otherwise, disputed. The Examiner found claims 37 and 41-43 were "not identical" to those of the '667 patent and did not issue any ***statutory*** double patenting rejections. Ex. R, Non-Final Rej. (Apr. 5, 2023) at 7-10. Further, the Examiner did not issue his non-statutory, obviousness-type double patenting

rejection over the ’667 patent alone, but over all four related patents to which the pending application was a continuation, as well as the one related patent that was a continuation of the pending application. *Compare id.* (issuing non-statutory, obviousness-type double-patenting rejections over U.S. Patent Nos. 10,765,667, 10,456,384, 9,931,325, and 9,566,270, as well as the ’912 patent), *with* ’571 patent (“Related U.S. Application Data”); ’912 patent (“Related U.S. Application Data” listing itself as a “Continuation of application No. 17/197,561”—the application that issued as the ’571 patent).

**DEFENDANTS’ REPLY**: Plaintiffs’ response introduces matter that is nonresponsive to Defendants’ SUF ¶ 26 and irrelevant to the application of collateral estoppel.

27. During prosecution of the application becoming the ’912 patent, the Examiner found that claims 37-43 of such application are not patentably distinct from claims 1-15 of the ’667 patent “because ’667 states a method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older; this is anticipatory to the instant claims as male and female subjects are instantly envisaged.” Norwich Action, D.I. 67-8 at 9.

**PLAINTIFFS’ RESPONSE**: Admitted the Examiner initially rejected claims 37-43 over claims 1-15 of the ’667 patent based on the doctrine of non-statutory obviousness-type double patenting, and that the language from that rejection is accurately quoted. Otherwise, disputed. The Examiner found claims 37-43 were “not identical” to those of the ’667 patent did not issue any ***statutory*** double patenting rejections. Ex. S, Non-Final Rej. (Nov. 15, 2022) at 7-10. Further, the Examiner did not issue his non-statutory obviousness-type double patenting rejection over the ’677 patent alone, but over all four related patents to which the pending application was a continuation.

*Compare id.* (issuing non-statutory double-patenting rejections over U.S. Patent Nos. 10,765,667, 10,456,384, 9,931,325, and 9,566,270), *with* '912 patent ("Related U.S. Application Data").

**DEFENDANTS' REPLY**: Plaintiffs' response introduces matter that is nonresponsive to Defendants' SUF ¶ 27 and irrelevant to the application of collateral estoppel.

28. The rejected claims 37-43 are the same as the issued claims 1-7 of the '912 patent. *See* **Exhibit D** (XIFAX_AMN_0006247) at -6505-6; Amneal Action, D.I. 23-2; Norwich Action, D.I. 26-2.

**PLAINTIFFS' RESPONSE**: Admitted.

29. Salix Pharmaceuticals, Inc. ("Salix") terminally disclaimed both IBS-D Patents in response to the foregoing non-statutory double patenting rejections. *See* Norwich Action, D.I. 67-9, 67-10.

**PLAINTIFFS' RESPONSE**: Admitted Salix submitted a terminal disclaimer in the file history of the application becoming the '571 patent "[t]o facilitate prosecution." Ex. T, Applicant Args. & Remarks (Jun. 14, 2023) at 7. Also admitted Salix submitted a terminal disclaimer in the file history of the application becoming the '912 patent "[t]o facilitate prosecution." Ex. U, Applicant Args. & Remarks (Nov. 29, 2022) at 4. Otherwise disputed.

30. Salix's terminal disclaimer in the file history of the application becoming the '571 patent references, *inter alia*, the '912 patent and the '667 patent. Norwich Action, D.I. 67-9 at 2.

**PLAINTIFFS' RESPONSE**: Disputed as stated. The terminal disclaimer submitted during prosecution of the application that issued as the '571 patent refers to all five related continuation patents—U.S. Patent Nos. 10,765,667, 10,456,384, 9,931,325, 9,566,270, and the '912 patent. Ex. V, Terminal Disclaimer (Jun. 14, 2023).

**DEFENDANTS' REPLY**: Plaintiffs' response introduces matter that is nonresponsive to Defendants' SUF ¶ 30 and irrelevant to the application of collateral estoppel.

31. Salix's terminal disclaimer in the file history of the application becoming the '912 patent references, *inter alia*, the '667 patent. Norwich Action, D.I. 67-10 at 2.

**PLAINTIFFS' RESPONSE**: Disputed as stated. The terminal disclaimer submitted during prosecution of the application that issued as the '912 patent refers to all four related continuation patents—U.S. Patent Nos. 10,765,667, 10,456,384, 9,931,325, and 9,566,270. Ex. W, Terminal Disclaimer (Nov. 29, 2022).

**DEFENDANTS' REPLY**: Plaintiffs' response introduces matter that is nonresponsive to Defendants' SUF ¶ 31 and irrelevant to the application of collateral estoppel.

### D. The Asserted Claims of the '912 Patent Do Not Materially Differ From the Invalidated Claims of the '667 Patent

#### 1. Asserted Claim 3 of the '912 Patent

32. The '912 patent is a continuation of the '667 patent and has the same February 26, 2008, earliest claimed filing date as the '667 patent and '569 patent. *See* Amneal Action, D.I. 23-2; Norwich Action, D.I. 26-2; *Norwich I DC* at *17. The '912 patent is therefore subject to at least the same prior art as the '667 and '569 patents.

**PLAINTIFFS' RESPONSE**: Admitted the '912 patent is a continuation of the '667 patent and has the same earliest claimed filing date (February 26, 2008) as the '667 patent and '569 patent. Otherwise disputed. The '912 patent is not "subject to at least the same prior art as the '667 and '569 patents" at least because the claims of the '912 patent materially differ from those of the '667 and '569 patents, such that prior art that applies to the '667 or '569 patents may not apply to the '912 patent.

**<u>DEFENDANTS' REPLY</u>**: Plaintiffs' response introduces matter that is nonresponsive to Defendants' SUF ¶ 32 and irrelevant to the application of collateral estoppel.

33. Asserted claim 3 of the '912 patent only differs from invalidated claim 3 of the '667 patent by requiring, via dependency from claim 1, an administration to a "female subject" rather than to a "subject 65 years of age or older":

| '912 Patent, Claim 3 | '667 Patent, Claim 3 |
|---|---|
| 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a **female subject**, said method comprising administering, 550 mg of rifaximin TID for 14 days to the **female subject**, thereby treating one or more symptoms of IBS in the **female subject**.<br><br>3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a **subject 65 years of age or older**, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the **subject 65 years of age or older**.<br><br>3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. |

Asserted claim 3 of the '912 patent is otherwise identical to invalidated claim 3 of the '667 patent. *See* Amneal Action, D.I. 23-2 at claim 3; Norwich Action, D.I. 26-2 at claim 3; Ex. A at claim 3.

**<u>PLAINTIFFS' RESPONSE</u>:** Admitted.

34. The general population of rifaximin treatment subjects includes females. *See* **<u>Exhibit E</u>** (October 17, 2025 Rebuttal Expert Report of Dr. David A. Johnson) at ¶ 111 (hereinafter "Johnson Rebuttal Report").

**<u>PLAINTIFFS' RESPONSE</u>**: Admitted certain female subjects with different conditions have been treated with different amounts of rifaximin for different amounts of time. To the extent Defendants intended something else by "rifaximin treatment subjects" (*e.g.*, to specifically reference the "subjects" referenced by a particular patent claim), it is unclear what Defendants are alleging, and Plaintiffs therefore otherwise dispute that (unstated) allegation. It is likewise unclear

why Defendants cite the Johnson Rebuttal Report, paragraph 111. That paragraph of Dr. Johnson's report, which does not mention "rifaximin treatment subjects," is quoting a statement from Defendants' expert, Dr. Harary, and relates to Dr. Johnson's opinion that the provisional applications provide adequate written description support for the claims of the '912 and '571 patents.

**DEFENDANTS' REPLY**: Plaintiffs' response introduces matter that is nonresponsive to Defendants' SUF ¶ 34 and irrelevant to the application of collateral estoppel. Plaintiffs' expert, Dr. Johnson, has stated the following regarding "a female subject":

> Dr. Harary seems to agree and states "to the extent Plaintiffs contend or the Court determines that 'a female subject' is distinct from, or not immediately envisaged, by disclosure of 'a subject,'" the '679 and '801 provisional applications do not disclose the invention in the '571 and '912 patents. I understand from counsel that Plaintiffs do not intend to make such an argument.

Ex. E (Johnson Rebuttal Report) at ¶ 111. Plaintiffs' July 25, 2025 Objections and Responses to Defendant's First Set of Requests for Admission to Plaintiffs (Nos. 1-14) "admit rifaximin tablets were provided to female patients for the treatment of irritable bowel syndrome in the United States before February 26, 2008." Ex. XX at 10 (No. 8).

35. The population of rifaximin treatment subjects aged 65 years or older includes females. *See* **Exhibit F** (Transcript for January 9, 2026 Deposition of Dr. David A. Johnson) at 114:20-23 (hereinafter "Johnson Dep.").

**PLAINTIFFS' RESPONSE**: Admitted certain subjects aged 65 years or older with different conditions have been treated with different amounts of rifaximin for different amounts of time. To the extent Defendants intended something else by "rifaximin treatment subjects" (*e.g.*, to specifically reference the "subjects" referenced by a particular patent claim), it is unclear what

Defendants are alleging, and Plaintiffs therefore otherwise dispute that (unstated) allegation. Further, Dr. Johnson qualified his responses when asked whether "patients greater than equal to 65 years old included males and female patients" by stating "potentially" and that he "would assume" so, but he did not "have specifics on that age population." *Id*. at 114:20-115:12.

**DEFENDANTS' REPLY**: Plaintiffs' response introduces matter that is nonresponsive to Defendants' SUF ¶ 35 and irrelevant to the application of collateral estoppel. Regardless, the testimony cited in SOF 35 states:

> Q: And you agree that patients that are greater than [or] equal to 65 years old would include both female and male patients?
>
> A: Yes, potentially.

And the next question and answer states:

> Q: Well, other than male or female, is there anything else that biologically a 65-year old could be?
>
> A: Well, male or female, yes. I thought you said male and female. Sorry, misunderstood.

Exhibit F at 114:24-115:4.

**2. Asserted Claims 5-7 of the '912 Patent**

36. Asserted claims 5-7 of the '912 patent all require via dependency the method of treating "one or more symptoms of IBS" that is recited in claim 1 of the '912 patent. *See* Amneal Action, D.I. 23-2 at claims 5-7; Norwich Action, D.I. 26-2 at claims 5-7.

**PLAINTIFFS' RESPONSE**: Disputed as stated. Asserted claims 5-7 of the '912 patent depend on claim 1, which recites the "method of treating one or more symptoms of irritable bowel syndrome (IBS) in a female subject."

37. Invalidated claim 3 of the '667 patent recites a method of treating "one or more symptoms of [IBS-D.]" Ex. A at claim 3.

**PLAINTIFFS' RESPONSE**: Disputed. Claim 3 of the '667 patent recites "[t]he method of claim 1, wherein the IBS is diarrhea-predominant IBS."

38. IBS-D is a subtype of IBS. *See* **Exhibit G** (September 17, 2025 Opening Expert Report of Albert Harary, M.D.) at ¶ 47 (hereinafter "Harary Opening Report"); Ex. E (Johnson Rebuttal Report) at ¶ 72; **Exhibit H** (October 22, 2025 Rebuttal Expert Report of Eli D. Ehrenpreis, M.D.) at ¶ 31 (hereinafter "Ehrenpreis Rebuttal Report").

**PLAINTIFFS' RESPONSE**: Admitted to the extent "subtype" refers to delineations made under the Rome criteria, and otherwise disputed. Diarrhea-predominant IBS (IBS-D) is one of four so-called "subtypes" under the Rome III criteria that refer to distinct disorders. The predominant symptoms underlying IBS-D differ from the predominant symptoms underlying other IBS subtypes. *See, e.g.*, Ex. X, Crespin Dep. at 114:15-115:2 (confirming that "abnormal frequency of hard and/or lumpy stool that is difficult to pass is typically associated with IBS-C," whereas "abnormal frequency of mushy and/or watery stool is typically associated with IBS-D"); *see also* Ex. Z, Johnson Op. Rpt. (Norwich), ¶¶ 48-49 (graphically depicting sub-type classifications based on predominant bowel habit and showing that the Rome III diagnostic criteria include "Onset associated with a change in frequency of stool" and "Onset associated with a change in form (appearance) of stool"); Ex. K, Harary Dep. at 15:1-15:11 (agreeing that "all IBS-D patients experience diarrhea" and noting that "[n]ot all patients with diarrhea have IBS . . . [i]t's diarrhea combined with other symptoms that define IBS"). Ex. H, Ehrenpreis Rebuttal ¶¶ 30-31 (describing subtypes and differences in symptoms). Dr. Ehrenpreis included the following graphic highlighting symptomatic differences across subtypes:




*Id.* ¶ 31.

**DEFENDANTS' REPLY**: Plaintiffs' response introduces matter that is nonresponsive to Defendants' SUF ¶ 38 and irrelevant to the application of collateral estoppel. Regardless, the *Norwich I DC* opinion states that "[s]ubtypes of IBS include IBS with diarrhea (IBS-D), IBS with constipation (IBS-C), or IBS with alternating diarrhea and constipation (IBS-A)." *Norwich I DC* at *16. Defendants dispute that the Rome III criteria is relevant to any issue. The shared specification for the '912 and '571 patents do not recite or disclose Rome III criteria, and, in fact, explicitly refers to the Rome II criteria when discussing the clinical studies disclosed in the patent specification. *See generally* Amneal Action, D.I. 23-1, 23-2; Norwich Action, D.I. 26-1, 26-2.

39. About one-third of IBS patients have IBS-D. *See Norwich I DC* at *19 n.3; *see also* Ex. E (Johnson Rebuttal Report) at ¶ 72.

**PLAINTIFFS' RESPONSE**: Admitted.

40. The court in *Norwich I DC* found "no evidence in the record that a POSA would expect an IBS-D patient to respond differently to treatment than a patient with another form of IBS." *Norwich I DC* at *19 n.3; *see also Norwich I CAFC* at 1061 n.3 ("[Salix] concedes on appeal

that '[r]oughly one-third of IBS patients suffer from IBS-D,' and has not otherwise suggested that treatments for IBS would not inform treatments of IBS-D." (internal citations omitted)).

**PLAINTIFFS' RESPONSE**: Disputed. The quoted statement from *Norwich I DC* opinion is not a finding, but a commentary on what evidence was and was not presented. It was immediately preceded by the court noting that "the parties do not discuss whether there is any difference between the motivation to use rifaximin to treat IBS and to treat IBS-D." 2022 WL 3225381, at *19. Also disputed to the extent Defendants suggest the state of evidentiary record in *Norwich I DC* is relevant to or dispositive in this case. Dr. Johnson opines that "IBS patients may present with a variety of different symptoms, including abdominal pain, constipation, and diarrhea," Ex. E, Johnson Rebuttal ¶ 74. In 2008, POSITAs had different treatment approaches for IBS patients depending on their predominant symptoms and subtype. *See, e.g.*, *id.* ¶ 78 ("In 2008, the treatment options varied because the causes of IBS, IBS-D, and alternating IBS were unknown. A POSITA would have been aware of many hypotheses about causes of these diseases, but without knowing the underlying cause(s), she could not reasonably predict which drugs might work."); Ex. I, Ehrenpreis Dep. at 56:8-57:18 ("The treatment would depend on the predominance of symptoms. So, for example, some patients with IBS have a predominance of constipation. So they would -- other medications were used in that case."); Ex. E, Johnson Dep. at 42:23-43:22 (explaining in 2008, treatments for IBS-D included alosetron, immodium, antispasmodics, and dicyclomine, whereas IBS-C was instead treated with "a stool softener," "osmotic type of agent," laxatives," and antispasmodics). Dr. Johnson further opines "[u]nder the Rome III criteria, a POSITA would have considered bloating associated with IBS-D to be distinct from irritable bowel syndrome." Ex. E, Johnson Rebuttal ¶ 74.

**DEFENDANTS' REPLY**: Plaintiffs' Response introduces matter that is nonresponsive to Defendants' SUF ¶ 40 and irrelevant to the application of collateral estoppel. Plaintiffs have not disputed the quotations in SOF 40 are accurate and therefore this portion of the SUF ¶ 40 should be deemed admitted.

41. Asserted claim 5 of the '912 patent further recites "a reduction of the one or more symptoms from baseline symptoms established prior to treatment." Amneal Action, D.I. 23-2 at claim 5; Norwich Action, D.I. 26-2 at claim 5.

**PLAINTIFFS' RESPONSE**: Disputed as stated. Claim 5 of the '912 patent recites "[t]he method of claim 1, wherein the treating one or more symptoms of IBS comprises a reduction of the one or more symptoms from baseline symptoms established prior to treatment." Neither claim 3 of the '667 patent nor claim 2 of the '569 patent adjudicated in *Norwich I DC* include the limitation "a reduction of the one or more symptoms from baseline symptoms established prior to treatment."

| Claim 5 of the '912 patent | Claims of the '667 patent | Claims of the '569 patent |
|---|---|---|
| 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a female subject, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating one or more symptoms of IBS in the female subject. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older. | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms. |
| 5. The method of claim 1, wherein the treating one or more symptoms of IBS comprises **a reduction of the one or more symptoms from baseline symptoms established prior to treatment.** | 3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | 2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |

42. Evaluating symptom improvement via comparison to baseline symptoms is a practice integral to treating any symptomatic medical condition. *See* **Exhibit I** (Transcript for January 21, 2026 Deposition of Eli D. Ehrenpreis, M.D.) at 45:14-18 (hereinafter "Ehrenpreis Dep.") (Q: "When you see a new patient, regardless of the ailment that that person is coming to see you about, you conduct a medical history, correct." A: "Yes."); **Exhibit J** (November 12, 2025 Reply Expert Report of Dr. David A. Johnson) at ¶ 26 (hereinafter "Johnson Reply Report") ("If a physician does not identify a patient's baseline symptoms and the severity of those symptoms, they would have no basis on which to (1) diagnose the patient; (2) design a treatment plan for that patient; or (3) assess how successful the treatment has been in follow-up visits."); Ex. F (Johnson Dep.) at 34:17-35:11 ("I would always start [ ] before [a patient] got to me, retrospective view, how they feel now, but also put in perspective the rear-view mirror of how they felt over a time before they got to me, and then I can really start the analysis going forward and look at what I had as a baseline and even before a baseline and use that information as I see the patient sequentially in respect to whatever the intervention was, or the recommendation was."); *id.* at 35:18-36:5 ("Sometimes it requires me to help with a better question, but the more information I have about that patient, the better interaction the patient value of what I -- time I spent with them, the better way that I can in my mind and in my chart codify what was discussed, have a better reference when questions may arise without having a patient come back, and then reintroduce to the patient a time frame for the next step and the next visit and have a threshold, or perhaps I have to change that, the time, the location, the strategy, but I have a good baseline that I start from."); Ex. I (Ehrenpreis Dep.) at 47:5-19 (Q: "If the decision is made to prescribe a medicine [ ] now we're talking about your treating of patients, not just limited to IBS-D and IBS, but if you then decide, okay, the next treatment option is

medicine, you've gone through dietary and you've gone through the other things that you've spoken about, but now we're at the point of treating with a prescription medicine, you prescribe the medicine and then you presume the patient's going to take the medicine and then you bring the patient back to see what effect the medicine had on the patient, correct?" A: "Yes."); **Exhibit K** (Transcript for January 19, 2026 Deposition of Albert Harary, M.D.) at 140:3-6 (hereinafter "Harary Dep.") ("You need to know what they symptoms are before your treatment and afterwards, so it's sort of a basic principle of being a physician to assess these things."); *id.* at 140:25-141:3 ("[I]t's intrinsic to the practice of medicine to determine this kind of -- the response of the patient's illness, the response of the patient's symptoms to a medication."); *id.* at 141:8-11 ("[A]ny disease that you're treating with any medication, you'd have to determine these particular things; the responsive symptoms, reduction of symptoms, et cetera.").

**PLAINTIFFS' RESPONSE**: Disputed. It is unclear what Defendants mean by "integral." To the extent Defendants mean "evaluating symptom improvement via comparison to baseline symptoms" necessarily occurs in all instances a physician is "treating any symptomatic medical condition," disputed. The cited testimony does not support such an assertion. Additionally, Defendants' expert Dr. Crespin (a practicing gastroenterologist) disagrees "that establishing pre-treatment baseline symptoms and evaluating a treatment effect as a function of improvement from such baseline is 'is standard practice when treating IBS.'" Ex. Y, Crespin Rebuttal ¶ 75 (explaining that "in [his] clinical experience, physicians typically do not have the time or incentive to track patients' baseline symptoms and reductions therefrom").

**DEFENDANTS' REPLY**: Plaintiffs' Response mischaracterizes the opinion of Dr. Crespin. The passage Plaintiffs quote from Dr. Crespin's rebuttal report responds to Dr. Johnson's opinion regarding detailed symptom tracking and daily journals, for example:

> As part of the treatment strategies I use for IBS patients, I have them return for follow-up visits within 2–4 weeks of their initial appointment. In the interim, I have my patients track their condition in a daily journal and immediately report aberrant symptoms that may require additional intervention.

Ex. Z (Johnson Opening Report to Norwich) at ¶ 55; *see also id.* at ¶ 78 (cross-referencing the "Background" section); Ex. Y (Crespin Rebuttal Report) at ¶ 75 (responding to ¶ 78 of the Johnson Opening Report); *id.* at ¶ 49 ("[T]he use of assessment tools like the Rome Criteria (irrespective of the version) and Bristol Stool Scale to characterize IBS and its symptoms is generally limited to clinical trial settings rather than everyday clinical practice where such tools are far less pragmatic[,]" and "[p]hysicians in clinical practice lack the time and incentives to use such tools, as these are not exacting and require repeated assessment."); *id.* at ¶ 50 ("In my experience, physicians do not typically collect and track detailed baseline information, nor would physicians ask patients to maintain a daily symptom or stool diary, nor would physicians or patients set pre-defined criteria for measuring the success of a treatment."). Dr. Johnson himself has described his practice of requiring diaries from his patients as "maniacal." Ex. F (Johnson Dep.) at 33:19-34:4 ("I am maniacal when I talk about diet with my patients, that I want them to record what they do. When I see them back, I need that information because as I said previously, it's very difficult for a patient when they come in to see a physician or provider – may not even be the physician, to recall everything that had been done in that interval since they were last seen face to face or by Zoom or by phone call or whatever the – the interaction was to provide the – the level of a recommendation."). Moreover, Dr. Crespin's opinion and testimony support the assertion in SUF ¶ 42. *See* Ex. Y (Crespin Rebuttal Report) at ¶ 43 ("During a consultation, the physician and patient typically discuss the patient's symptoms, the potential factors giving rise to the symptoms (e.g., diet or stress), and the treatment options[,]" and "[w]hen a patient presents

with symptoms consistent with IBS and/or IBS-D, the treatment plan will typically focus on improving the patient's symptoms."); Ex. X (Crespin Dep.) at 72:11-73:10 ("Q: So a physician consultation with an IBS-D patient, that would involve identifying what IBS-D associated symptoms the patient is experiencing, correct?" A: "Correct."); *id.* at 127:22-25 (Q: "But you don't dispute that physicians collect and track some baseline symptom information when evaluating patients, correct?" A: "We do that for all diseases, correct.").

43. Asserted claim 6 of the '912 patent depends from claim 5 and further recites "the reduction of the one or more symptoms is achieved following 7 days after the administration of rifaximin." Amneal Action, D.I. 23-2 at claim 6; Norwich Action, D.I. 26-2 at claim 6.

**<u>PLAINTIFFS' RESPONSE</u>**: Admitted. Neither claim 3 of the '667 patent nor claim 2 of the '569 patent adjudicated in *Norwich I DC* included this requirement.

| Claim 6 of the '912 patent | Claims of the '667 patent | Claims of the '569 patent |
|---|---|---|
| 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a female subject, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating one or more symptoms of IBS in the female subject. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older. | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms. |
| 5. The method of claim 1, wherein the treating one or more symptoms of IBS comprises a reduction of the one or more symptoms from baseline symptoms established prior to treatment. | 3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | 2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |
| 6. The method of claim 5, **wherein the reduction of the one or more symptoms is achieved following 7 days after** | | |

| | | |
|---|---|---|
| **the administration of rifaximin.** | | |

44. Claim 1 of the '912 patent–from which asserted claim 6 of the '912 patent depends–requires 14 days of administering rifaximin regardless of any treatment effect that may occur before the end of the 14-day therapy. Amneal Action, D.I. 23-2 at claim 1; Norwich Action, D.I. 26-2 at claim 1*; see also* **Exhibit L** (Transcript for December 10, 2025 Deposition of Herbert L. DuPont, M.D.) at 84:2-11 (hereinafter "DuPont Dep.") (Q: "[Claim 1 of the '912 patent] reads, A method of treating one or more symptoms of irritable bowel syndrome in a female subject, said method comprising administering, 550 milligrams of rifaximin TID for 14 days to the female subject, thereby treating one or more symptoms of IBS in the female subject. Is that correct?" A: "Right."); Ex. K (Harary Dep.) at 139:10-18 ("[S]ections [sic, claims] five through seven of the '912 Patent and claims two to four of the '571 Patent have nothing to do with the method. And, basically, the dose is the same, the frequency is the same, the duration is the same, the patient population is the same, the disease that's being treated is the same. So, they're basically the same methods and everything; and these sections [sic, claims] that I referred to have nothing to do with the method[.]").

**PLAINTIFFS' RESPONSE**: Admitted claim 6 of the '912 patent depends on claim 1, such that practicing both claim 1 and dependent claim 6 requires "administering, 550 mg of rifaximin TID for 14 days to the female subject." Disputed to the extent Defendants intended their allegation ("regardless . . .") to suggest anything further. For clarity, Dr. Johnson notes "at the time of the invention, a POSITA would have understood that the reduction of the one or more symptoms of IBS achieved following 7 days after administration must occur during the 14 day period as required in claims 1 and 5." Ex. E, Johnson Rebuttal at ¶ 869. He further states "a

POSITA would understand that this reduction must occur 7 days after the initial dose of rifaximin." *Id*. at ¶ 870.

**DEFENDANTS' REPLY**: Plaintiffs' Response is unresponsive to Defendants' SUF ¶ 44 and irrelevant to SUF ¶ 44. Regardless, Defendants do not concede the accuracy or propriety of Dr. Johnson's opinion concerning his interpretation of claims 1, 5 or 6 of the '912 patent. Defendants maintain that such claim interpretation, which is ultimately a question of law and which was offered outside of *Markman* proceedings is improper. Claims 1 and 5 require "administering 550 mg of rifaximin TID for 14 days to the female subject, thereby treating one or more symptoms of IBS," and claim 6 recites "following 7 days after the administration of rifaximin." Plaintiffs' interpretation is improper at least because it reads nonexistent limitations into the claim. Claim 6 does not recite an "initial dose."

45. Asserted claim 7 of the '912 patent further recites that "treating one or more symptoms of IBS comprises a reduction in symptoms defined by an affirmative response from the subject when asked whether they had a reduction in symptoms of IBS." Amneal Action, D.I. 23-2 at claim 7; Norwich Action, D.I. 26-2 at claim 7.

**PLAINTIFFS' RESPONSE**: Disputed as stated, which is unclear as to what Defendants intended "further recites" to reference. Admitted that claim 7 of the '912 patent depends from claim 1 and recites "[t]he method of claim 1, wherein treating one or more symptoms of IBS comprises a reduction in symptoms defined by an affirmative response from the subject when asked whether they had a reduction in symptoms of IBS." Neither claim 3 of the '667 patent nor claim 2 of the '569 patent adjudicated in *Norwich I DC* included this requirement.

| Claim 7 of the '912 patent | Claims of the '667 patent | Claims of the '569 patent |
|---|---|---|
| 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome |

| | | |
|---|---|---|
| female subject, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating one or more symptoms of IBS in the female subject. | subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older. | (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms. |
| 7. The method of claim 1, **wherein treating one or more symptoms of IBS comprises a reduction in symptoms defined by an affirmative response from the subject when asked whether they had a reduction in symptoms of IBS.** | 3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | 2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |

46. Soliciting feedback from patients regarding symptom improvement is a practice integral to treating any symptomatic medical condition. *See* Ex. F (Johnson Dep.) at 29:3-8 ("I always ask my patients to maintain some form of a symptom diary so I can ascertain what the response would be over time. The problem, if you ask somebody at six months how are you doing, memory tends to be very short-sighted for patients, and they recall what happened yesterday."); *id.* at 29:21-30:4 ("It depends on the individual patient as to how I would ask a response. It might be a binary question that would be simple yes or no with targeted words that I would -- for symptoms that I would ask yes or no. In other categories, I may ask for different variances because patients say, well, I'm kind of better, or maybe I'm not, and in that case, I would say let's give you a scale, and I'd like you to follow the scale for me."); Ex. G (Harary Opening Report) at ¶ 377 ("[B]ased on my experience, it is common practice to schedule a follow-up visit with a patient after prescribing a medication for a chronic disease presenting with symptoms (for example, headaches, IBS, back pain) to assess the benefit. At this follow-up visit,

the clinician will ask the patient: 'are you feeling better?' and will ask about whether there has been any benefit for a specific symptom(s).").

**PLAINTIFFS' RESPONSE**: Disputed. It is unclear what Defendants mean by "integral." To the extent Defendants mean "evaluating symptom improvement via comparison to baseline symptoms" necessarily occurs in all instances a physician is "treating any symptomatic medical condition," disputed. The cited testimony does not support such an assertion. Additionally, Defendants' expert Dr. Crespin disagrees "that establishing pre-treatment baseline symptoms and evaluating a treatment effect as a function of improvement from such baseline is 'is standard practice when treating IBS.'" Ex. Y, Crespin Rebuttal ¶ 75 (explaining that "in [his] clinical experience, physicians typically do not have the time or incentive to track patients' baseline symptoms and reductions therefrom").

**DEFENDANTS' REPLY**: Plaintiffs' Response is nonresponsive to SUF ¶ 46 and irrelevant to the application of collateral estoppel. Regardless, Plaintiffs' post-trial briefing in *Norwich I DC* stated that patient-reported adequate relief is the "goal" of IBS-D treatment, and argued that "a POSA would understand 'adequate relief of symptoms' in claim 2 of the '569 patent as a term of art reflecting the goal of IBS-D treatment—a positive response when a patient is asked if rifaximin has adequately relieved his/her symptoms. Tr. 514:9-518:15 (Schoenfeld)." Exhibit AAA (Plaintiffs' Proposed Findings of Fact on Infringement and Secondary Considerations (D.I. 175), *Norwich I DC*) at ¶ 105; *see also* Exhibit YY (Day 2 and Day 3 Trial Transcripts (D.I. 169, 170), *Norwich I DC*) at 515:7-13 (hereinafter, "Schoenfeld Testimony") (Q: "Who is it that assesses whether there is adequate relief of the IBS-D symptoms?" A: "Ultimately, it's the patient. This is a disorder that's characterized by the patient's subjective

assessment of their bloating and cramping and loose, watery stools. As a physician, I may ask some specific questions to guide the discussion.").

**E. The Asserted Claims of the '571 Patent Do Not Materially Differ From the Invalidated Claims of the '667 Patent**

47. The '571 patent is a continuation of the '667 patent and has the same February 26, 2008 earliest claimed filing date as the '667 patent and '569 patent. *See* Amneal Action, D.I. 23-1; Norwich Action, D.I. 26-1; *Norwich I DC* at *17. The '571 patent is therefore subject to at least the same prior art as the '667 and '569 patents.

**PLAINTIFFS' RESPONSE**: Admitted the '571 patent is a continuation of the '667 patent and has the same earliest claimed filing date (February 26, 2008) as the '667 patent and '569 patent. Otherwise disputed. The '571 patent is not "subject to at least the same prior art as the '667 and '569 patents" at least because the claims of the '571 Patent materially differ from those of the '667 and '569 patents, such that prior art that applies to the '667 and '569 patents may not apply to the '571 patent.

**DEFENDANTS' REPLY**: Plaintiffs' response introduces matter that is nonresponsive to SUF ¶ 47 and irrelevant to the application of collateral estoppel.

**1. Asserted Claim 1 of the '571 Patent**

48. Asserted claim 1 of the '571 patent differs from claim 3 of the '667 patent only by requiring: (1) administration to a "female subject" rather than to a "subject 65 years of age or older"; and (2) treating "bloating associated with [IBS-D]" rather than treating "one or more symptoms of" IBS-D:

| '571 Patent, Claim 1 | '667 Patent, Claim 3 |
|---|---|
| 1. A method of treating **bloating associated with** diarrhea-predominant irritable bowel syndrome (dIBS) in a **female subject**, said method comprising administering, 550 mg of | 1. A method of treating **one or more symptoms of** irritable bowel syndrome (IBS) in a **subject 65 years of age or older**, said method comprising administering, 550 mg of |

| | |
|---|---|
| rifaximin TID for 14 days to the **female subject**, thereby treating **bloating associated with** dIBS in the **female subject**. | rifaximin TID for 14 days to the subject, thereby treating **one or more symptoms of** IBS in the **subject 65 years of age or older**.<br><br>3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. |

Asserted claim 1 of the ’571 patent otherwise recites the same method as invalidated claim 3 of the ’667 patent. Amneal Action, D.I. 23-1; Norwich Action, D.I. 26-1 at claim 1; Ex. A at claim 3.

**PLAINTIFFS’ RESPONSE**: Admitted the language of claim 1 of the ’571 patent differs from the language of claim 3 of the ’667 patent in that it requires treating “bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS)” and administration to a “female subject.” Otherwise disputed. These differences in claim language are material, such that it would be a mischaracterization to assert that they “otherwise recite [] the same method.” Dr. Johnson opines skilled artisans would have recognized the material difference between treating bloating associated with diarrhea-predominant irritable bowel syndrome and treating one or more symptoms of irritable bowel syndrome wherein “the IBS is diarrhea-predominant IBS.” Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 32-37; Ex. E, Johnson Rebuttal ¶¶ 118-121 (disagreeing with Defendants’ expert that “the treatment of bloating associated with IBS-D is not materially different from treating one or more symptoms of IBS or IBS-D as recited in the adjudicated claims of the ’569 and ’667 patents”).

**DEFENDANTS’ REPLY**: Plaintiffs’ Response introduces matter that is nonresponsive to SUF ¶ 48 and irrelevant to the fact asserted.

49. Adult rifaximin treatment subjects–including those who are 65 years of age or older–encompasses females. *See* ¶¶ 34-35, *supra*.

**PLAINTIFFS' RESPONSE**: Admitted certain adult female subjects who are 65 years of age or older with different conditions have been treated with different amounts of rifaximin for different amounts of time. To the extent Defendants intended something else by "rifaximin treatment subjects" (*e.g.*, to specifically reference the "subjects" referenced by a particular patent claim), it is unclear what Defendants are alleging, and Plaintiffs therefore otherwise dispute that (unstated) allegation. *See supra* Pltf.'s Resp. to SOF 34-35.

**DEFENDANTS' REPLY**: Plaintiffs' response introduces matter that is nonresponsive to SUF ¶ 49 and irrelevant to the application of collateral estoppel. *See* Defendants Reply to SOF 34-35.

50. The court in *Norwich I DC* found that IBS is "characterized by symptoms including abdominal pain, bloating, frequency, urgency, gas, and changed bowel habits, such as diarrhea, constipation, or alternating diarrhea and constipation." *Norwich I DC* at *16.

**PLAINTIFFS' RESPONSE**: Admitted paragraph 50 accurately quotes from the *Norwich I DC* opinion at *16. Disputed to the extent Defendants are implying that IBS subtypes share the same symptom profiles or all IBS patients experience the stated symptoms, neither of which the court in *Norwich I DC* found, and neither of which is correct. *See also supra* Pltf.'s Resp. to SOF 38-39 (explaining symptomatic differences between subtypes and treating them).

**DEFENDANTS' REPLY**: Plaintiffs' Response introduces matter that is nonresponsive to SUF ¶ 50 and irrelevant to the application of collateral estoppel.

51. Bloating is a symptom of IBS and IBS-D. *See* Ex. G (Harary Opening Report) at ¶ 43 ("Patients with IBS have abdominal pain, cramping, and/or bloating, usually associated with a change in bowel movements (diarrhea, constipation, or both)."); Ex. E (Johnson Rebuttal Report) at ¶ 73 ("[B]loating can be a symptom of IBS or IBS-D or a broad number of other

causalities."); Ex. F (Johnson Dep.) at 101:1-7 ("The concept is it's daily assessment, and they're assessing it based on what are problematic symptoms, which include frequency, consistency, the stool passage, mucus, bloating or feeling abdominal distension, it's -- it's -- to me, it's -- it's apparent.")); *id.* at 105:19-106:1 ("There is no word of bloating in the table presented, but I know that it was part because they're assessing symptoms of patients with irritable bowel syndrome, of which bloating is a prominent part, as well as the abnormal consistency, frequency, and things that they said are supportive of the diagnosis and they're assessing on a daily basis.").

**PLAINTIFFS' RESPONSE**: Admitted certain IBS patients experience bloating and certain IBS-D patients experience bloating. Otherwise disputed. Not all IBD patients experience bloating, and not all IBS-D patients experience bloating associated with their IBS-D. Ex. E, Johnson Rebuttal ¶ 73 ("Under the Rome III Criteria, a POSITA would have considered bloating associated with IBS-D to be distinct from irritable bowel syndrome. . . "a patient suffering from bloating would not necessarily meet the diagnostic criteria for IBS or IBS-D, even though bloating can be a symptom of IBS or IBS-D or a broad number of other causalities."); Ex. Y, Crespin Rpt. ¶ 127 ("The symptom of bloating is not necessary to a diagnosis of IBS-D."). A POSITA would not assume patients with bloating would necessarily have IBS or IBS-D. Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 33, 37. Bloating may occur independently from IBS-D and independently from IBS. Ex. K, Harary Dep. at 12:3-7; *see also id.* at 10:13-11:11, 11:17-19 (agreeing "bloating can be a symptom of several different conditions"); Ex. X, Crespin Dep. at 52:11-11-18 (testifying "lots of people have bloating without IBS-D" and explaining "there are umpteen" conditions that could be responsible, such as "diabetic gastroparesis, Crohn's, ulcerative colitis"); *id.* at 69:24-70:8 ("Bloating can occur with or without IBS-D"); Ex. E, Johnson Rebuttal ¶ 119 ("[A] patient suffering from bloating would not necessarily have IBS or IBS-D, even though bloating can be a

symptom of IBS or IBS-D."). Dr. Johnson opines skilled artisans would have recognized the material difference between treating bloating associated with diarrhea-predominant irritable bowel syndrome and treating one or more symptoms of irritable bowel syndrome wherein "the IBS is diarrhea-predominant IBS." Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 32-37; Ex. E, Johnson Rebuttal ¶¶ 118-121 (disagreeing with Defendants' expert that "the treatment of bloating associated with IBS-D is not materially different from treating one or more symptoms of IBS or IBS-D as recited in the adjudicated claims of the '569 and '667 patents"). Further, claim 2 of the '667 patent adjudicated in *Norwich I DC* does not recite bloating as a symptom of IBS. As Dr. Johson notes, "[s]ince claim 2 does not include bloating, a POSITA would have understood that bloating was not a claimed IBS symptom in the '667 patent." *Id*. at ¶ 120.

**DEFENDANTS' REPLY**: Plaintiffs' Response introduces matter that is nonresponsive to SUF ¶ 51 and irrelevant to the application of collateral estoppel.

**2. Asserted Claims 2-4 of the '571 Patent**

52. Asserted claim 2 of the '571 patent depends from claim 1 and further recites "a reduction of bloating from baseline symptoms established prior to treatment." Amneal Action, D.I. 23-1 at claim 2; Norwich Action, D.I. 26-1 at claim 2.

**PLAINTIFFS' RESPONSE**: Admitted. Neither claim 3 of the '667 patent nor claim 2 of the '569 patent adjudicated in *Norwich I DC* include this requirement.

| Claim 2 of the '571 patent | Claims of the '667 patent | Claims of the '569 patent |
|---|---|---|
| 1. A method of treating bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS) in a female subject, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating bloating associated with dIBS in the female subject. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older. | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of |

| | | |
|---|---|---|
| | | response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms. |
| 2. The method of claim 1, **wherein the treating of bloating comprises a reduction of bloating from baseline symptoms established prior to treatment.** | 3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | 2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |

53. Evaluating symptom improvement via comparison to baseline symptoms is a practice integral to treating any symptomatic medical condition. *See* ¶ 42, *supra.*

**PLAINTIFFS' RESPONSE**: Disputed. It is unclear what Defendants mean by "integral." To the extent Defendants mean "evaluating symptom improvement via comparison to baseline symptoms" necessarily occurs in all instances a physician is "treating any symptomatic medical condition," disputed. The testimony cited in paragraph 42 does not support such an assertion. Additionally, Defendants' expert Dr. Crespin disagrees "that establishing pre-treatment baseline symptoms and evaluating a treatment effect as a function of improvement from such baseline is 'is standard practice when treating IBS.'" Ex. Y, Crespin Rebuttal ¶ 75 (explaining that "in [his] clinical experience, physicians typically do not have the time or incentive to track patients' baseline symptoms and reductions therefrom").

**DEFENDANTS' REPLY**: Plaintiffs' Response mischaracterizes the opinion of Dr. Crespin. *See* Defs.' Reply to SUF ¶ 42.

54. Asserted claim 3 of the '571 patent depends from claim 2 and further recites "the reduction of bloating is achieved following 7 days after the administration of rifaximin." Amneal Action, D.I. 23-1 at claim 3; Norwich Action, D.I. 26-1 at claim 3.

**PLAINTIFFS' RESPONSE**: Admitted. Neither claim 3 of the '667 patent nor claim 2 of the '569 patent adjudicated in *Norwich I DC* include this requirement.

| Claim 3 of the '571 patent | Claims of the '667 patent | Claims of the '569 patent |
|---|---|---|
| 1. A method of treating bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS) in a female subject, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating bloating associated with dIBS in the female subject. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older. | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms. |
| 2. The method of claim 1, wherein the treating of bloating comprises a reduction of bloating from baseline symptoms established prior to treatment. | 3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | 2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |
| 3. The method of claim 2, **wherein the reduction of bloating is achieved following 7 days after the administration of rifaximin.** | | |

55. Claim 1 of the '571 patent–from which claim 3 of the '571 patent depends–requires 14 days of administering rifaximin regardless of any treatment effect that may occur before the end of the 14-day therapy. *See* ¶ 44, *supra;* Amneal Action, D.I. 23-1 at claim 1; Norwich Action, D.I. 26-1 at claim 1.

**PLAINTIFFS' RESPONSE**: Admitted claim 3 of the '571 patent depends on claim 1, and that practicing both claim 1 and dependent claim 3 requires "administering, 550 mg of rifaximin TID for 14 days to the female subject." Disputed to the extent Defendants intended their allegation ("regardless . . .") to suggest anything further. For clarity, Dr. Johnson notes "at the time of the invention, a POSITA would have understood that the reduction of the bloating achieved following 7 days after administration must occur during the 14 day period as required in claims 1

and 2." Ex. E, Johnson Rebuttal ¶ 425. He further states "a POSITA would understand that this reduction must occur 7 days after the initial dose of rifaximin." *Id.* ¶ 426.

**DEFENDANTS' REPLY**: Plaintiffs' response introduces matter that is nonresponsive to SUF ¶ 55 and irrelevant to the application of collateral estoppel.

56. Asserted claim 4 of the '571 patent depends from claim 2 and further recites that "reduction of bloating comprises an affirmative response from the subject when asked whether they had a reduction in bloating." Amneal Action, D.I. 23-1 at claim 4; Norwich Action, D.I. 26-1 at claim 4.

**PLAINTIFFS' RESPONSE**: Admitted. Neither claim 3 of the '667 patent nor claim 2 of the '569 patent adjudicated in *Norwich I DC* include this requirement.

| Claim 4 of the '571 patent | Claims of the '667 patent | Claims of the '569 patent |
|---|---|---|
| 1. A method of treating bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS) in a female subject, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating bloating associated with dIBS in the female subject. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older. | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms. |
| 2. The method of claim 1, wherein the treating of bloating comprises a reduction of bloating from baseline symptoms established prior to treatment. | 3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | 2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |
| 4. The method of claim 2, **wherein the reduction of bloating comprises an affirmative response from the subject when asked whether** | | |

| | | |
|---|---|---|
| **they had a reduction in bloating.** | | |

**DEFENDANTS' REPLY**: Plaintiffs' Response introduces matter that is nonresponsive to SUF ¶ 56 and irrelevant to the application of collateral estoppel.

57. Soliciting feedback from patients regarding symptom improvement--including improvement relative to baseline symptoms--is a practice integral to treating any symptomatic medical condition. *See* ¶ 46, *supra.*

**PLAINTIFFS' RESPONSE**: Disputed. It is unclear what Defendants mean by "integral." To the extent Defendants mean "evaluating symptom improvement via comparison to baseline symptoms" necessarily occurs in all instances a physician is "treating any symptomatic medical condition," disputed. The testimony in paragraph 46 does not support such an assertion. Additionally, Defendants' expert Dr. Crespin disagrees "that establishing pre-treatment baseline symptoms and evaluating a treatment effect as a function of improvement from such baseline is 'is standard practice when treating IBS.'" Ex. Y, Crespin Rebuttal ¶ 75 (explaining that "in [his] clinical experience, physicians typically do not have the time or incentive to track patients' baseline symptoms and reductions therefrom").

**DEFENDANTS' REPLY**: *See supra* Defs.' Reply to SUF ¶¶ 42, 46, 53. Plaintiffs' Response mischaracterizes the opinion of Dr. Crespin. *See* Defs.' Reply to SUF ¶ 42.

### F. The *Norwich I DC* Court Considered and Rejected Salix's Arguments Concerning the Prior Art that Salix Again Raises in this Case

58. The *Norwich I DC* court considered and rejected Plaintiffs' arguments concerning the prior art:

> Salix argues that a POSA would recognize these prior art sources as flawed. Cuoco, for instance, is based on the unproven premise that SIBO contributed to IBS-D. Furthermore, its methodology was poor. Barrett was a

> retrospective chart review of only 8 patients and concluded that more research was needed. Pimentel 2006 did not find an improvement in the symptoms of abdominal pain and diarrhea. An editorial by Dr. Drossman noted that Pimentel 2006's limitations made its "findings inconclusive and raise[d] questions about the clinical significance of the results." Finally, Salix argues that the RFIB 2001 Protocol did not disclose results, and "it was unrebutted that a POSA would not have reasonably expected RFIB2001 would be successful simply because the trial had begun."
>
> I am unpersuaded by these arguments. It is fair to critique sources, and a POSA would take a source's shortcomings into consideration when evaluating the evidence. Obviousness does not require perfect evidence, however, and the available evidence persuaded a significant number of doctors who would have been qualified as POSAs to use rifaximin to treat IBS. Regarding Pimentel 2006's failure to find an improvement in abdominal pain and diarrhea, the patents are not directed to specific symptoms but to "adequate relief." There are many symptoms of IBS-D. The patents themselves do not claim relief from every symptom.

*Norwich I DC* at *20 (internal trial transcript and document citations omitted).

**PLAINTIFFS' RESPONSE:** Admitted the *Norwich I DC* court stated it was "unpersuaded" by certain arguments made by Plaintiffs regarding the prior art as applied to claim 3 of the '667 patent and claim 2 of the '569 patent. Otherwise disputed, particularly to the extent Defendants suggest the *Norwich I DC* courts' findings apply to the asserted claims of the '571 and '912 patents. The claimed inventions of the asserted claims of the '571 and '912 patents materially differ from those adjudicated in *Norwich I DC*, and were not addressed by *Norwich I DC.* Ex. E, Johnson Rebuttal ¶¶ 27, 112-132. In this case, Dr. Johnson offers non-obviousness opinions based on limitations of the asserted claims of the '571 and '912 patents that the claims adjudicated in *Norwich I* did not recite. *See* Pltf.'s Additional Fact Nos. 71-79. Dr. Johnson also offers opinions that a POSITA would lack motivation to combine and a reasonable likelihood of success in achieving the claimed inventions at issue in this case. *See* Pltf.'s Additional Fact Nos. 80-82, 85-

90, 92-94. Further, neither Dr. Ehrenpreis nor Dr. Johnson testified at the *Norwich I DC* trial, and the court did not have the benefit of their analysis or conclusions. *See, e.g.*, Ex. I, Ehrenpreis Dep. at 167:13-19 ("Q. Did you testify in the Norwich I case? A. No, I did not. Q. Did the judge in the Norwich I case have the benefit of any of your analysis or conclusions? A. No, he did not."). Additionally, *Norwich I DC* acknowledged it did not address all prior art combinations raised in the *Norwich I DC* case. 2022 WL 3225381, at *18. ("Norwich proposes three prior art combinations involving three pieces of prior art…I will not address the other two combinations.").

**<u>DEFENDANTS' REPLY</u>**: Plaintiffs' Response is nonresponsive to SUF ¶ 58, fails to admit a direct quotation of the *Norwich I DC* opinion, and introduces information that is irrelevant to the issue of collateral estoppel.

59. The *Norwich I DC* court considered and rejected Plaintiffs' arguments concerning skepticism in the prior art.

> Salix also points to skepticism in the literature regarding the connection between SIBO and IBS and whether to use antibiotics to treat IBS-D. Drossman criticized the Pimentel 2006 methodology, as discussed above. A 2007 Education Practice note by Eamonn M.M. Quigley stated, "sound rationale for antibiotic therapy ha[d] not been established because the issue of SIBO in IBS ha[d] not been resolved." Indeed, Salix argues, using antibiotics would have drawbacks: antibiotics could "exacerbate symptoms" or "lead to antibiotic resistance and opportunistic infections" like c. difficile. A February 4, 2008 article by Vanner considered the evidence and concluded that there was insufficient evidence to recommend the use of antibiotics to treat IBS. Accordingly, Salix argues that the off-label use is best understood as physicians acting out of "desperation, not because they expected it to work."
>
> Upon review of the evidence, it appears that IBS is a complex disease and the pathogenesis was unknown as of the priority date. The relationship between IBS and SIBO was actively being explored, provoking a debate within the

> field. Quigley, Vanner, and Drossman do not teach away from using rifaximin to treat IBS, and Salix does not argue that they do. Based on the evidence, I do not think a POSA would elevate these sources above the other prior art available. The RFIB 2001 Press Release—which was not cited by Quigley, Vanner, or Drossman—states, "The belief that bacteria in the small bowel may play a role in the symptoms of IBS gains additional evidence with this large, multicenter trial." I do not think a POSA would have discounted prior art sources that were based upon the theory that SIBO contributed to IBS because studies such as the RFIB 2001 Protocol were testing that hypothesis at the time. More importantly, a POSA would look to the top-line results from the RFIB 2001 Protocol as evidence that rifaximin could be effective in treating IBS-D, regardless of whether the results were based upon a link between IBS-D and SIBO. Regarding the concerns of bacterial resistance, expert testimony shows that short-term administration did not raise resistance concerns. Furthermore, in 2007, a retrospective study of 84 IBS patients who were retreated with rifaximin noted that 69% of patients had a "clinical response" to rifaximin and that retreatment did not result in clinically relevant antibiotic resistance.
>
> Accordingly, I do not think these concerns would dissuade a POSA from exploring the use of rifaximin in treating IBSD. The 74% of gastroenterologists who had reported using rifaximin for IBS-D patients is real world evidence supporting the conclusion that there was a motivation to explore this treatment, despite the potential risks.

*Norwich I DC* at *21 (internal trial transcript and document citations omitted).

**PLAINTIFFS' RESPONSE:** Admitted, despite certain arguments by Salix regarding "skepticism in the literature regarding the connection between SIBO and IBS and whether to use antibiotics to treat IBS-D," the *Norwich I DC* court reached certain conclusions (stated in its opinion) regarding the "motivation" of a POSITA in reaching the methods of treatment of claim 3 of the '667 patent and claim 2 of the '569 patent. Otherwise disputed, particularly to the extent Defendants suggest the *Norwich I DC* courts' findings apply to the asserted claims of the '571 and

’912 patents. The claimed inventions of the asserted claims of the ’571 and ’912 patents materially differ from those adjudicated in *Norwich I DC*, and were not addressed by *Norwich I DC.* Ex. E, Johnson Rebuttal ¶¶ 27, 112-132. In this case, Dr. Johnson offers non-obviousness opinions based on limitations of the asserted claims of the ’571 and ’912 patents that were not required by the claims adjudicated in *Norwich I*. *See* Pltf.’s Additional Fact Nos. 71-79. Dr. Johnson also offers opinions that a POSITA would lack motivation to combine and a reasonable likelihood of success in achieving the claimed inventions at issue in this case. *See* Pltf.’s Additional Fact Nos. 80-82, 85-90, 92-94. Further, neither Dr. Ehrenpreis nor Dr. Johnson testified at the *Norwich I DC* trial, and the court did not have the benefit of their analysis or conclusions. *See, e.g.*, Ex. I, Ehrenpreis Dep. at 167:13-19.

**DEFENDANTS’ REPLY**: Plaintiffs’ Response is nonresponsive to SUF ¶ 59, fails to admit a direct quotation of the *Norwich I DC* opinion, and introduces information that is irrelevant to the issue of collateral estoppel.

60. In this case, Plaintiffs rely on the same arguments and cite the same evidence considered and rejected by the *Norwich I DC* court. Ex. E (Johnson Rebuttal Report) at ¶¶ 104, 174, 179; Ex. F (Johnson Dep.) at 184:17-185:11; Ex. I (Ehrenpreis Dep.) at 89:10-13; 91:25-93:11.

**PLAINTIFFS’ RESPONSE**: Admitted Plaintiffs rely upon the Drossman, Quigley, and Vanner articles referenced in the *Norwich I DC* opinion, but otherwise disputed. The evidence Defendants cite do not support their broad allegation “Plaintiffs rely on the same arguments and cite the same evidence.” Neither Dr. Ehrenpreis nor Dr. Johnson testified at the *Norwich I DC* trial, and the court did not have the benefit of their analysis or conclusions. *See, e.g.*, Ex. I, Ehrenpreis Dep. at 167:13-19. As discussed immediately below, (*infra* Pltf.’s Resp. to SOF No.

61), Drs. Ehrenpreis and Johnson conducted their own independent analysis and reached their own independent opinions, and did not seek to regurgitate opinions offered by Dr. Schoenfeld in *Norwich I DC*. Both experts support their opinions not only with new analysis and reasoning, but with citations to additional evidence. Dr. Johnson, for example, offers non-obviousness opinions based on limitations of the asserted claims of the ’571 and ’912 patents that were not required by the claims adjudicated in *Norwich I*. *See* Pltf.’s Additional Fact Nos. 71-79. Dr. Johnson also offers opinions that a POSITA would lack motivation to combine and a reasonable likelihood of success in achieving the claimed inventions at issue in this case. *See* Pltf.’s Additional Fact Nos. 80-82, 85-90, 92-94. Moreover, Dr. Ehrenpreis discusses how a 2007 publication by Iris Posserud et al. that was not discussed in the *Norwich I DC* trial collected data using gold standard techniques and reported it did not “not support an important role for SIBO according to commonly used clinical definitions, in IBS.” Ex. H, Ehrenpreis Report ¶ 63; Ex. WW, XIFAX_AMN_1996648.

**DEFENDANTS’ REPLY**: Plaintiffs’ Response is irrelevant to any issue of collateral estoppel because it fails to identify any argument that the district court in *Norwich I* failed to consider and cites opinions or “additional evidence” that Plaintiffs’ could have proffered in *Norwich I*. In addition, the redundancy of various opinions from Dr. Johnson to opinions and arguments addressed in *Norwich I* is apparent from Plaintiffs’ additional facts proposed herein. *See*, *e.g.*, Plaintiffs’ Additional Facts ¶¶ 80-93.

61. Large portions of the nonobviousness opinions offered by Plaintiffs’ experts Dr. Johnson and Dr. Ehrenpreis in this case are based on the opinions offered by Plaintiffs’ expert Dr. Phillip Schoenfeld in *Norwich I*. Ex. F (Johnson Dep.) at 171:10-20; *compare* Ex. H (Ehrenpreis Rebuttal Report) at ¶¶ 36, 37, 41-42, 47, 48-54, 55-60, 66-68, 70, 73, 74, 76-78, 82,

84, 85 *with* **Exhibit M** (XIFAX_AMN_ 1890152) at ¶¶ 87, 88, 89-93, 97-98, 99-100, 100-101, 106-114, 127-131, 142-148, 166-174, 210-213, 214-216, 217-221, 240.

**PLAINTIFFS' RESPONSE**: Disputed. None of the evidence cited by Defendants supports the assertion that Dr. Johnson or Dr. Ehrenpreis "based" their opinions on those "offered by Plaintiffs' expert Dr. Phillip Shoenfeld in *Norwich I*." Dr. Johnson merely listed Dr. Schoenfeld's report as one of the materials he reviewed. Ex. F], Johnson Dep. at 171:10-20; Ex. E, Johnson Materials Reviewed. Dr. Johnson recalled having reviewed that report, but could not remember anything from it that he specifically relied upon. Ex. F], Johnson Dep. at 173:10-21 ("I reviewed it. . . I don't remember exactly what I did specifically with that."). Further, the asserted claims of the '571 and '912 patents materially differ from those adjudicated in *Norwich I DC*, (Ex. E, Johnson Rebuttal at ¶¶ 27, 112-132), and Dr. Johnson's non-obviousness opinions focus on the claimed inventions of those asserted claims (not the claimed inventions adjudicated in *Norwich I*). *See* Pltf.'s Additional Fact Nos. 71-82, 85-90, 92-94. Dr. Ehrenpreis described his report as "something that I originated and that I studied throughout the iterations of the report until we obtained this final iteration." Ex. I, Ehrenpreis Dep. at 30:18-21. Dr. Ehrenpreis did not review "any expert reports from the Norwich I case," did not speak with Dr. Schoenfeld, and was even unaware Dr. Schoenfeld had submitted an expert report. *Id.* at 31:14-25, 166:18-21. Defendants' "*compare*" string-cite between Dr. Schoenfeld's report and Dr. Ehrenpreis's report does not suggest otherwise.

**DEFENDANTS' REPLY**: Plaintiffs' Response mischaracterizes Dr. Johnson's deposition testimony that unequivocally states that he considered Dr. Schoenfeld's expert report from Norwich I before he formed his opinions in this case. Ex. F (Johnson Dep.) at 171:10-20. In addition, the redundancy of various opinions from Dr. Johnson to opinions and arguments

proffered by Plaintiffs through Dr. Schoenfeld in *Norwich I* is apparent from Plaintiffs' additional facts herein. *See*, *e.g.*, Plaintiffs' Additional Facts ¶¶ 80-93.

62. Significant portions of the nonobviousness opinions offered by Plaintiffs' expert Dr. DuPont in this case are identical to the nonobviousness opinions he offered as Plaintiffs' expert in *Norwich I* on the same issues. Ex. L (DuPont Dep.) at 39:9-40:7, 41:24-42:9, 43:5-18.

**PLAINTIFFS' RESPONSE**: Admitted that some—but not all—of Dr. DuPont's expert report in this case is identical to portions of his expert report in *Norwich I*, but otherwise disputed. As Dr. DuPont testified, his report for this case "provide[s] additional analysis that wasn't found in [his] 2021 report," and he "put together parts of the new with parts of the old in one report." Ex. L, DuPont Dep. at 93:17-94:13. For example, Dr. DuPont's report in this case offers further discussion of the limitations of retrospective studies, (Ex. AA, DuPont Report ¶¶ 60-61), the low bioavailability of rifaximin, (*id.* ¶ 162), and an expanded response to the references that Defendants' expert, Dr. Harary, relied upon in this case to suggest that "a POSA would not have been concerned about or would not have expected rifaximin resistance in IBS," including discussions of the Prantera 2006 and Scarpignato references, (*id.* ¶¶ 174-176, 183, 196-203). Further, the asserted claims of the '571 and '912 patents materially differ from those adjudicated in *Norwich I DC*. Ex. E, Johnson Rebuttal ¶¶ 27, 112-132.

**DEFENDANTS' REPLY**: Plaintiffs' Response is irrelevant to any issue of collateral estoppel because it fails to identify any argument that the district court in *Norwich I* failed to consider and cites opinions or "additional evidence" that Plaintiffs' could have proffered in *Norwich I*. *See* SUF ¶ 59 (citing *Norwich I* ("Regarding the concerns of bacterial resistance, expert testimony shows that short-term administration did not raise resistance concerns."); *see also* SUF ¶ 58 (citing *Norwich I* discussion addressing Plaintiffs' critique of retrospective

studies). In addition, Dr. DuPont testified that the summary of opinions offered in the report Dr. DuPont submitted in *Norwich I* and those of the instant cases "are the same[,]" and Dr. DuPont testified that the two reports address the same issues. Ex. L (DuPont Dep.) at 43:5-13 (Q: "Does the Summary of Opinions section in your 2025 report substantively match the IBS Patents summary we reviewed in the 2021 report?" A: "They -- they are the same. They are -- are the same."); *id.* at 43:14-18 (Q: "So, Doctor, the two reports address the same issues?" A: "They are the same. They're identical.").

## II. Facts Supporting Collateral Estoppel of Obviousness of the Asserted Polymorph Patent Claims

### A. The Asserted Polymorph Patent Claims

63. Plaintiffs assert claims 7-9 from U.S. Patent No. 8,193,196 ("the '196 patent") ("the Polymorph Patent"). Case No. 24-4607, Dkt. 23-3.

**<u>PLAINTIFFS' RESPONSE</u>:** Admitted.

64. Claim 7 of the '196 patent states:

> 7. A solid pharmaceutical composition comprising a therapeutically effective amount of rifaximin δ, rifaximin ε, or a combination thereof, and a pharmaceutically acceptable excipient, together disposed in a formulation for oral administration, wherein the rifaximin δ has x-ray powder diffraction pattern peaks at about 5.7°±0.2, 10.8°±0.2, 12.1°±0.2, and 17.0°±0.2, 2-θ, and wherein the rifaximin ε has x-ray powder diffraction pattern peaks at about 8.2°±0.2, 12.4°±0.2, and 16.3°±0.2 2-θ.

Dkt. 23-3, at claim 7.

**<u>PLAINTIFFS' RESPONSE</u>:** Admitted paragraph 64 accurately quotes asserted claim 7 of the '196 patent.

65. Claim 8 of the '196 patent states:

> 8. The pharmaceutical composition of claim 7, wherein the excipient is selected from the group consisting of diluting,

> binding, lubricating, disintegrating, coloring, flavoring, and sweetening agents.

Dkt. 23-3, at claim 8.

**PLAINTIFFS' RESPONSE:** Admitted that paragraph 65 accurately quotes asserted claim 8 of the '196 patent.

66. Claim 9 of the '196 patent states:

> 9. The pharmaceutical composition of claim 7, wherein the formulation for oral administration is selected from the group consisting of coated or uncoated tablet, hard or soft gelatin capsule, sugar-coated pill, lozenge, wafer sheet, pellet, and powder in sealed packet.

Dkt. 23-3, at claim 9.

**PLAINTIFFS' RESPONSE**: Admitted paragraph 66 accurately quotes asserted claim 9 of the '196 patent.

**B. *Norwich I* Adjudicated Issues (Polymorph Patent)**

67. In *Norwich I DC*, Plaintiffs asserted claim 4 of U.S. Patent Nos. 7,612,199 (Da135) and claim 36 of U.S. Patent No. 7,902,206 (Da146) (together, "the Invalidated Polymorph Patents"). *See Norwich I DC*, 2022 WL 3225381, at *1.

**PLAINTIFFS' RESPONSE:** Admitted. However, the polymorph claims at issue in *Norwich I DC* were directed to rifaximin form β, 2022 WL 3225381, at *2, whereas the claims of the '196 patent at issue here are directed to pharmaceutical compositions that comprise rifaximin form δ, ε, or a combination thereof.

68. Claim 4 of the '199 patent states:

> 4. Rifaximin in polymorphic form β, wherein the rifaximin has x-ray powder diffraction pattern peaks at about 5.4°; 9.0°; and 20.9° 2θ and wherein the rifaximin has a water content of greater than 5%.

*Norwich I DC*, 2022 WL 3225381, at *2.

**PLAINTIFFS' RESPONSE:** Admitted.

69. Claim 36 of the ’206 patent depends on claim 34, and states:

> 34. A solid pharmaceutical composition comprising rifaximin in polymorphic Form β and a pharmaceutically acceptable excipient or carrier, wherein the rifaximin Form β has x-ray powder diffraction pattern peaks at about 5.4°; 9.0°; and 20.9° 2-θ.
>
> 36. The pharmaceutical composition of claim 34, wherein the rifaximin Form β has a water content of between about 4.5% to about 40%.

*Id*.

**PLAINTIFFS’ RESPONSE:** Admitted.

70. According to *Norwich I DC*, Judge Andrews found both asserted polymorph claims invalid as obvious over, *inter alia*, U.S. Patent No. 4,557,866, referred to as the Cannata reference. *Norwich I DC*, 2022 WL 3225381, at *6.

**PLAINTIFFS’ RESPONSE:** Admitted only that in *Norwich I DC*, Judge Andrews found “that claim 4 of the ’199 patent is obvious in light of Cannata in view of common knowledge,” *Norwich I DC*, 2022 WL 3225381, at *7, and “that a POSA would have had the motivation to combine the prior art references of Cannata, the Normix Label, or Marchi and Cannata, in view of the commonly known testing techniques, with a reasonable expectation of success in doing so . . . . Thus, Norwich has proved by clear and convincing evidence that claim 36 of the ’206 patent is invalid as obvious,” *id.* at 8. Otherwise disputed.

**AMNEAL’S REPLY**: Plaintiffs do not articulate what is “[o]therwise disputed.” Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 70.

71. According to *Norwich I DC*, the district court considered: (i) the prior art, specifically Cannata, disclosed crystalline polymorphs, methods of making them, and their use as antibacterial agents; (ii) a POSA had a reasonable expectation of success at characterizing the rifaximin polymorph and arriving at the claimed XRPD peaks; and (iii) a POSA had a reasonable

expectation of success at achieving a pharmaceutical composition comprising rifaximin β and a pharmaceutically acceptable excipient or carrier. *Id*. at *6-8.

**PLAINTIFFS' RESPONSE:** Disputed. Paragraph 71 mischaracterizes *Norwich I DC*, at least to the extent it implies the district court made factual findings regarding other rifaximin polymorphs beyond β. *Norwich I DC*, 2022 WL 3225381, at *6-8.

**AMNEAL'S REPLY**: SUF ¶ 71 does not mischaracterize *Norwich I DC*. Judge Andrews made findings about the prior art with respect to rifaximin polymorph forms other than β. Specifically, Judge Andrews found that Dr. Viscomi, one of the named inventors of the '196 patent, formulated rifaximin batches "according to Cannata," and when he retested those batches, they consisted of "(1) only the 'delta polymorph,' (2) only of the 'epsilon form,' (3) a mixture of 'the alpha and epsilon form,' and (4) a mixture of the 'alpha and delta forms,' respectively." *Norwich I DC*, 2022 WL 3225381, at *5. According to Plaintiffs' interpretation that "any amount" of rifaximin δ and/or ε is sufficient to fall within the scope of the asserted '196 patent claims (*see* Ex. N (Chyall Dep.) at 69:20-71:24; 75:11-23),[3] the Court in *Norwich I DC* found that rifaximin formulated according to the Cannata process practices claims 7-9 of the '196 patent. Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 70.

72. According to *Norwich I DC*, with respect to the Invalidated Polymorph Patents, the district court made the following findings of fact (*id*. at *3):

> a. "Rifaximin exists in polymorphic forms. Norwich's ANDA product comprises polymorphic form β."
>
> b. "X-ray powder diffraction (XRPD) peaks are an inherent characteristic of a polymorph. Each peak in an

[3] Amneal disagrees with this interpretation of the plain and ordinary meaning of the asserted claims. The claims explicitly require a "therapeutically effective amount" of rifaximin δ and/or ε, not "any" amount. Plaintiffs' interpretation would read out the claim limitation "therapeutically effective amount" in its entirety. Amneal reserves its rights on that issue if this case proceeds to trial.

> XRPD diffractogram is a structural element of that form. XRPD was routine as of the priority date."
>
> c. "A crystalline form of a known compound can be characterized by a subset of XRPD peaks. The subset of XRPD peaks at about 5.4°, 9.0°, and 20.9° 2θ was sufficient as of the priority date to distinguish rifaximin β from the other known rifaximin polymorphs."
>
> d. "Cannata disclosed crystalline rifaximin, methods of making it, and that it had antibacterial properties."
>
> e. "Marchi disclosed methods of preparing crystalline rifaximin, rifaximin's antibacterial properties, and that it could be used in pharmaceutical compositions with conventional pharmaceutically acceptable excipients or carriers."
>
> f. "Cannata in view of common knowledge discloses each and every limitation of claim 4 of the '199 patent."
>
> g. "A POSA would have had a motivation to combine Cannata with commonly known testing techniques XRPD and KF or TGA because regulatory bodies instructed applicants to characterize the solubility, stability, and bioavailability of drug candidates."
>
> h. "A POSA would have had a reasonable expectation of success at characterizing the rifaximin β polymorph and arriving at the claimed XRPD peaks at about 5.4°, 9.0°, and 20.9° 2θ and water content of greater than 5%."
>
> i. "Marchi in view of Cannata and common knowledge discloses each and every limitation of claim 36 of the '206 patent."
>
> j. "A POSA would have had a motivation to combine Cannata with Marchi in light of common knowledge."
>
> k. "A POSA would have had a reasonable expectation of success at achieving a pharmaceutical composition comprising rifaximin β and a pharmaceutically acceptable excipient or carrier."

**PLAINTIFFS' RESPONSE:** Admitted only that the subparts in paragraph 72 accurately quote *Norwich I DC*. *Norwich I DC*, 2022 WL 3225381, at *3. Disputed to the extent that paragraph 72 suggests the quoted findings of fact are a comprehensive recitation of the findings of fact in *Norwich I DC*. Further disputed to the extent that paragraph 72 suggests the quoted findings

of fact were presented consecutively in *Norwich I DC.* Further disputed to the extent paragraph 72 suggests that findings of fact concerning the ’199 patent, the ’206 patent, or rifaximin β may be adopted or applied to the ’196 patent or rifaximin δ or ε.

**<u>AMNEAL’S REPLY</u>**: Plaintiffs dispute purported “suggest[ions]” that they derive from SUF ¶ 72, not the factual assertions recited therein. Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 72.

73. According to *Norwich I DC*, “The FDA encouraged, if not required, that the solid forms of a drug substance be well-characterized during drug development, including as to the properties of solubility, stability, and bioavailability.” *Id.*

**<u>PLAINTIFFS’ RESPONSE</u>**: Admitted paragraph 73 accurately quotes *Norwich I DC*. *Norwich I DC*, 2022 WL 3225381, at *7.

74. According to *Norwich I DC*, “FDA guidance required ‘appropriate manufacturing and control procedures’ when manufacturing and storing the drug substance could result in a hydrated drug substance.” *Id.*

**<u>PLAINTIFFS’ RESPONSE</u>**: Admitted paragraph 74 accurately quotes *Norwich I DC*. *Norwich I DC*, 2022 WL 3225381, at *7.

75. Plaintiffs appealed from the final judgment in *Norwich I DC* holding claim 4 of U.S. Patent 7,612,199, and claim 36 of U.S. Patent 7,902,206 invalid as obvious and the Federal Circuit affirmed the judgment of the district court as to the existence of a reasonable expectation of success and its conclusion that the polymorph patent claims were invalid as obvious. *Norwich I CAFC* at 1067.

**<u>PLAINTIFFS’ RESPONSE</u>**: Admitted the Federal Circuit affirmed the judgment of invalidity of the claims identified in paragraph 75. Disputed to the extent paragraph 75 suggests

the Federal Circuit's opinion concerns a reasonable expectation of success in arriving at the rifaximin δ or ε polymorphs at issue in this matter. The reasonable expectation of success decided in *Norwich I DC* and affirmed in *Norwich I CAFC* was in characterizing the crystalline product of Cannata, which the evidence showed was rifaximin β. *Norwich I CAFC,* 98 F.4th at 1066 ("The scope and content of the prior art here includes preparations of crystalline rifaximin, which expert testimony supports **would have yielded the β form of rifaximin** . . . The difference between the prior art and the claims is thus effectively nothing more than the performance of routine characterization to identify the polymorphic forms that result from the known Cannata processes."); *Norwich I DC*, 2022 WL 3225381, at *7 ("I think the evidence shows that a POSA would have a reasonable expectation of success in characterizing the **polymorph β, as opposed to the other forms of rifaximin**."). Neither the trial nor appellate courts in *Norwich I* substantively discussed whether Cannata would have produced δ or ε polymorphs or whether the δ or ε polymorphs would have been obvious to a skilled artisan in view of Cannata or combinations involving Cannata. *Norwich I DC*, 2022 WL 3225381, at *2-8; *Norwich CAFC,* 98 F.4th at 1064-67.

**AMNEAL'S REPLY**: Plaintiffs dispute purported "suggest[ions]" that they derive from SUF ¶ 75, not the factual assertions recited therein. Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 75.

### C. The Legal Issues Concerning Obviousness of the Polymorph Patent in this Case Mirror The Issues Supporting the Obviousness Finding of the Invalidated Polymorph Claims in *Norwich I*.

76. Plaintiffs' expert in this case testified that X-ray powder diffraction testing was a routine and well-known analytical tool to characterize a crystal form as of the priority date, an identical finding made in *Norwich I*. **Exhibit N** (Transcript for December 12, 2025 Deposition

of Leonard Chyall, Ph.D) ((hereinafter "Chyall Dep.") at 91:7-20; *see also Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. CV 20-430-RGA, 2022 WL 3225381, at *3 (D. Del. Aug. 10, 2022) ("XRPD was routine as of the priority date.").

**PLAINTIFFS' RESPONSE:** Admitted Dr. Chyall testified that X-ray powder diffraction "is one of the most useful and reliable techniques for identifying and characterizing [the] crystal form of a compound," Ex. N (Chyall Dep.) at 91:7-20, and that paragraph 76 accurately quotes the sentence "XRPD was routine as of the priority date" from *Norwich I DC*, 2022 WL 3225381 at *3. Otherwise disputed.

**AMNEAL'S REPLY**: Plaintiffs do not articulate what is "[o]therwise disputed." Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 76.

77. Plaintiffs' expert in this case testified that an XRPD pattern is an inherent property of the crystal form, an identical finding made in *Norwich I*. Ex. N (Chyall Dep.) at 161:2-21; *see also Norwich I*, 2022 WL 3225381, at *3 ("X-ray powder diffraction (XRPD) peaks are an inherent characteristic of a polymorph. Each peak in an XRPD diffractogram is a structural element of that form.").

**PLAINTIFFS' RESPONSE:** Admitted Dr. Chyall was asked at his deposition if he saw the sentences in his report stating "Dr. Schinzer notes that the 'XRPD pattern for a given crystalline form acts as a 'fingerprint' to identify the unique crystal packing arrangement of the form,' such that the XRPD pattern 'is an inherent property of the crystal form'" and then stating "I agree with this general statement, to the extent that Dr. Schinzer is saying that the diffraction properties of a crystalline form are related to the crystal structure.'" Ex. N (Chyall Dep.) at 161:2-21. Further admitted paragraph 76 accurately quotes the sentence "X-ray powder diffraction (XRPD) peaks are an inherent characteristic

of a polymorph. Each peak in an XRPD diffractogram is a structural element of that form" from *Norwich I DC*, 2022 WL 3225381 at *3. Otherwise disputed.

**AMNEAL'S REPLY**: Plaintiffs do not articulate what is "[o]therwise disputed." Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 77.

78. One of Amneal's obviousness defenses in this case relies on the same combination of principal prior art references that Judge Andrews relied on to invalidate the Invalidated Polymorph Patents in *Norwich I*, namely Cannata in view of the Normix Label and/or Marchi and the common knowledge of a person or ordinary skill in the art. **Exhibit O** (September 15, 2025 Opening Expert Report of William C. Schinzer, Ph.D) (hereinafter "Schinzer Opening Report") at ¶¶ 218-261.

**PLAINTIFFS' RESPONSE:** Admitted the heading in Dr. Schinzer's report before paragraphs 218-261 states "Claims 7-9 of the '196 Patent Are Also Invalid as Obvious over Cannata in view of the Normix Lable and/or Marchi and Common Knowledge." Ex. O at ¶ 218 (heading). Admitted paragraph 218 of Exhibit O states the basis for Dr. Schinzer's opinion that claims 7-9 of the '196 patent are further invalid as obvious over Cannata in view of Marchi or the Normix Label and common knowledge. *See* Ex. O at ¶ 218. Admitted Dr. Schinzer states in paragraph 261 of Exhibit O "claims 7-9 of the '196 patent would have been obvious over Cannata alone or in combination with the 1987 FDA Guidance, the Normix Label and/or Marchi." *Id*. at ¶ 261. Otherwise disputed. The district court in *Norwich I DC* held claim 4 of the '199 patent obvious over Cannata in view of common knowledge and claim 36 of the '206 patent obvious over Cannata in view of the Normix Label and common knowledge, or over Marchi in view of Cannata and common knowledge. *Norwich I DC*, 2022 WL 3225381, at *7-8. Thus, the combinations of

prior art references discussed in *Norwich I DC* are different from the combination raised by Amneal.

**AMNEAL'S REPLY**: Plaintiffs do not articulate what is "[o]therwise disputed." Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 78. Plaintiffs do not dispute that Judge Andrews relied on [1] Cannata, [2] the Normix Label, [3] Marchi, and [4] the common knowledge or a POSA to invalidate the Invalidated Polymorph Patents in *Norwich I*, and that those same prior art references are relied on by Amneal to invalidate the asserted Polymorph Patent claims in this case.

79. Plaintiffs' expert in this case testified that the Cannata and Marchi processes for making rifaximin were not specific to any particular polymorph. Ex. N (Chyall Dep.) at 188:24-189:16 ("So these—these are the patents [referring to Cannata and Marchi] that just teach the skilled person how to make rifaximin. Right. This is the one with these examples have residue, and then they're crystallized under some unspecified conditions. They specify a little bit but not a lot of details. Yeah, so these are the synthetic steams [sic, schemes] that an organic chemist could use to make crystalline rifaximin, but they don't address polymorphic forms."); 191:20-25 ("Q: So neither Cannata nor Marchi teach how to obtain any particular polymorph of rifaximin? A: Certainly not in a pure phase, no, and not with the necessary data that would be required to characterize the form, such as powder diffraction peaks. These are synthetic procedures.").

**PLAINTIFFS' RESPONSE:** Admitted only that paragraph 79 accurately quotes portions of Dr. Chyall's deposition testimony. Disputed to the extent that paragraph 79 implies Dr. Chyall admitted any of processes disclosed in Cannata or Marchi would make rifaximin δ, ε, or a combination thereof. Dr Chyall testified Cannata and Marchi are "silent as to what that crystalline material is. And it likely varies, depending on how the experiments – which example is run, and

how that particular example was run in the lab."). Ex. N (Chyall Dep.) at 190:23-191:18; *see also* Ex. BB (Chyall Rebuttal) ¶¶ 155, 159-162.

**AMNEAL'S REPLY**: Plaintiffs dispute purported "impli[cations]" that they derive from SUF ¶ 79, not the factual assertions recited therein. Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 79.

80. In *Norwich I DC*, Judge Andrews found the Cannata process may be used to synthesize pure polymorph δ rifaximin, the polymorph claimed in the '196 polymorph patent in this case:

> The Viscomi Declaration does not help Norwich. It stated that *among 'samples of batches' produced according to Cannata*, when retested in 2006, there were four batches with no rifaximin β. The four batches consisted of (1) only the 'delta polymorph,' (2) only of the 'epsilon form,' (3) a mixture of 'the alpha and epsilon form,' and (4) a mixture of the 'alpha and delta forms,' respectively.

*Norwich I DC*, 2022 WL 3225381, at *5.

**PLAINTIFFS' RESPONSE:** Disputed. There were no findings of fact or conclusions of law concerning rifaximin δ in *Norwich I DC* because no claims directed to that polymorph were at issue; the claims in *Norwich I DC* were directed to rifaximin β. The quoted text is from the discussion of the evidence Norwich relied on to show that the Cannata processes invariably produced rifaximin β, and explains why the Viscomi Declaration does not help Norwich meet its burden of proof on inherent anticipation by Cannata. *Norwich I DC*, 2022 WL 3225381, at *4-5. Even if considered a finding of fact—which it is not—the statement only establishes that two batches when retested in 2006, **after the March 3, 2005 priority date of the '196 patent**, consisted of the delta polymorph or a mixture of the alpha and delta forms. Dkt. 23-3 ('196 patent). Amneal's expert Dr. Schinzer conceded that storage conditions can affect the polymorphic form of the drug substance and agreed he would be speculating if rifaximin δ were present in the tested

batches in 2001 or whether the polymorphic form changed during storage. Ex.CC (Schinzer Dep.) at 27:9-17, 63:6-15.

**AMNEAL'S REPLY**: Plaintiffs do not, and cannot, dispute that Judge Andrews's opinion in *Norwich I DC* expressly stated that certain "sample batches" that were "produced according to Cannata" consisted of "(1) only the 'delta polymorph,' (2) only of the 'epsilon form,' (3) a mixture of 'the alpha and epsilon form,' and (4) a mixture of the 'alpha and delta forms,' respectively." *Norwich I DC*, 2022 WL 3225381, at *5. The remainder of Plaintiffs' response is not relevant to the present motion for summary judgment, and therefore should be disregarded.

## III. Facts Supporting Summary Judgment of Obviousness of the Asserted Polymorph Patent Claims.

81. One of Amneal's defenses in this case is that claims 7-9 of the '196 patent are invalid as anticipated and/or rendered obvious by U.S. Patent No. 7,045,620 ("the '620 patent") or New Zealand Patent Application Publication No. NZ531622A ("New Zealand Application")." Ex. O (Schinzer Opening Report) ¶ 98; **Exhibit P** (U.S. Patent No. 7,045,620) (hereinafter the "'620 patent"); **Exhibit Q** (New Zealand Patent Application Publication No. NZ531622A )(hereinafter "New Zealand Application").

**PLAINTIFFS' RESPONSE:** Admitted Amneal's expert Dr. Schinzer has opined that claims 7-9 of the '196 patent are anticipated or rendered obvious by the '620 patent or the New Zealand Application. Otherwise disputed.

**AMNEAL'S REPLY**: Plaintiffs do not articulate what is "[o]therwise disputed." Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 81.

82. The New Zealand Application is titled "Polymorphous forms of rifaximin, processes for their production and use thereof in medicinal preparations," names Giuseppe

Viscomi, and others, as inventors, and was published October 29, 2004. Ex. Q. (New Zealand Application); Ex. O (Schinzer Opening Report) ¶ 145.

**PLAINTIFFS' RESPONSE:** Admitted paragraph 82 accurately states the title of the New Zealand Application and Exhibit Q includes a "First Page [that] has been artificially created from the NZ Bibliographic Data" that purports to identify Giuseppe C Viscomi and others as inventors and a publication date of October 29, 2004. Otherwise disputed.

**AMNEAL'S REPLY**: Plaintiffs do not articulate what is "[o]therwise disputed." Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 82.

83. The New Zealand Application discloses methods for synthesizing rifaximin forms α, β, and γ. NZ application at pp. 1a–2; Ex. O (Schinzer Opening Report) ¶ 146.

**PLAINTIFFS' RESPONSE:** Admitted the New Zealand Application discloses the existence of and methods of obtaining rifaximin forms α, β, and γ only. Otherwise disputed.

**AMNEAL'S REPLY**: Plaintiffs do not articulate what is "[o]therwise disputed." Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 83.

84. The New Zealand Application explains that the formation of the polymorphs "depends on the conditions of time and temperature at which both the crystallization and the drying are carried out." Ex. Q. (New Zealand Application) at p. 1a; Ex. O (Schinzer Opening Report) ¶ 146.

**PLAINTIFFS' RESPONSE:** Admitted only that paragraph 84 accurately quotes from p. 1a of the New Zealand Application, which discusses the α, β, and γ forms of rifaximin. Ex. Q at pp. 1a-2. Disputed to the extent paragraph 84 suggests the New Zealand Application provides motivation to look for or reasonable expectation of successfully finding a new polymorphic form of rifaximin having a water content between those characteristics of rifaximin α and rifaximin β,

such as rifaximin δ. Ex. O (Schinzer Opening) ¶¶ 177-178; Ex. N (Chyall Dep.) at 173:15-175:1; Exhibit BB (Chyall Rebuttal) ¶¶ 121, 136-139, 142.

**<u>AMNEAL'S REPLY</u>**: Plaintiffs dispute purported "suggest[ions]" that they derive from SUF ¶ 84, not the factual assertions recited therein. Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 84. But if Plaintiffs dispute regards whether the New Zealand Application, on its face, provides a "motivation to look for or reasonable expectation of successfully finding a new polymorphic form of rifaximin having a water content between those characteristics of rifaximin α and rifaximin β, such as rifaximin δ," then Amneal contends that such motivation and/or reasonable expectation is derived from the common knowledge of a POSA as well as the FDA Guidance directed to a POSA to fully characterize API, as articulated by the Court in *Norwich I*. *See* SUF ¶¶ 72-74.

85. Example 1 of the '196 patent and Example 1 of the New Zealand Application are set forth below side-by-side:

| '196 Patent Example 1 | New Zealand Application Example 1 |
|---|---|
| At the end of the addition, the mass is kept under stirring for 30 minutes at an interior temperature of 20±3° C. and then, at the same temperature, 7.72 g of concentrated hydrochloric acid are dripped until a pH equal to 2.0.<br><br>At the end of the addition, the mass is kept under stirring, always at an interior temperature equal to 20° C., for 30 minutes, then the precipitate is filtered and washed by means of a mixture made of 32 ml of demineralised water and of 25 ml of ethyl alcohol.<br><br>The so obtained "raw rifaximin" (89.2 g) is dried under vacuum at room temperature for 12 hours obtaining 64.4 g of "dried raw rifaximin" which shows a water content equal to 5.6%. The product by further drying under | At the end of the addition, the mass is kept under stirring for 30 minutes at an interior temperature of 20±3° C. and then, at the same temperature, 7.72 g of concentrated hydrochloric acid are dripped until a pH equal to 2.0.<br><br>At the end of the addition, the mass is kept under stirring, always at an interior temperature equal to 20° C., for 30 minutes, then the precipitate is filtered and washed by means of a mixture made of 32 ml of demineralized water and of 25 ml of ethyl alcohol.<br><br>The so obtained "raw rifaximin" (89.2 g) is dried under vacuum at room temperature for 12 hours obtaining 64.4 g of "dried raw rifaximin" which shows a water content equal to 5.6% and a diffractogram corresponding to |

| | |
|---|---|
| vacuum until the weight of 62.2 g of dried raw rifaximin having a water content equal to 3.3%, whose diffractogram corresponds to the polymorphous form δ characterized from a powder X-ray diffractogram showing peaks at values of angles 2θ of 5.7°±0.2, 6.7°±0.2, 7.1°±0.2, 8.0°±0.2, 8.7°±0.2, 10.4°±0.2, 10.8°±0.2, 11.3°±0.2, 12.1°±0.2, 17.0°±0.2, 17.3°±0.2, 17.5°±0.2, 18.5°±0.2, 18.8°±0.2, 19.1°±0.2, 21.0°±0.2, 21.5°±0.2. The product is hygroscopic.<br><br>'196 Patent at 7:20–57. | the polymorphous form β. The product by further drying under vacuum until constant weight gives 62.2 g of dried raw rifaximin having a water content equal to 2.2%, whose diffractogram corresponds to the polymorphous form α.<br><br>New Zealand Application at 12:6–12:28 |

Ex. O (Schinzer Opening Report) ¶ 266.

**<u>PLAINTIFFS' RESPONSE</u>:** Admitted only that paragraph 85 sets forth portions of Example 1 of the '196 patent and Example 1 of the New Zealand Application. Disputed to the extent paragraph 85 suggests such a comparison is relevant to determining the obviousness of claims 7-9 of the '196 patent. Further disputed to the extent paragraph 85 suggests the two examples are identical because they are not. Ex. N (Chyall Dep.) at 151:7-159:20. Example 1 of the '196 patent discloses drying to 3.3% water content will yield rifaximin **<u>δ</u>**, whereas Example 1 of the New Zealand Application discloses drying to 2.2% will yield rifaximin **<u>α</u>**. Amneal's expert Dr. Schinzer admitted that the New Zealand Application teaches processes to obtain rifaximin α, β, and γ only, and is silent as to the water content needed to obtain other polymorphic forms. Ex. CC (Schinzer Dep.) at 93:19-25, 94:2-8. Further disputed to the extent paragraph 85 suggests that rifaximin δ is necessarily made by Example 1 of the New Zealand Application. The New Zealand Application states the product of Example 1 is rifaximin α, which is obtained by drying form β. Ex. Q at pp. 12; Ex. BB (Chyall Rebuttal) ¶¶ 90-97, 100, 102. .

**<u>AMNEAL'S REPLY</u>**: Plaintiffs dispute purported "suggest[ions]" that they derive from SUF ¶ 85, not the factual assertions recited therein. Therefore, there is no credible or material

dispute regarding the factual assertions in SUF ¶ 85. Plaintiffs' dispute that SUF ¶ 85 is irrelevant to determining the obviousness of claims 7-9 of the '196 patent lacks credibility. Plaintiffs' own expert testified that the only difference between Example 1 of the '196 patent and Example 1 of the New Zealand Application were the drying parameters, which would be well understood by a POSA. See SUF ¶ 86. Moreover, as expressed in Dr. Schinzer's opening report, any claim limitations in claims 7-9 of the '196 patent involving (i) incorporation of the recited rifaximin in a pharmaceutical composition for oral administration; (ii) a "therapeutically effective amount of" the rifaximin; or (iii) a "pharmaceutically acceptable excipient" are also expressly disclosed by the New Zealand Application. *See* Ex. O (Schinzer Opening Report) ¶¶ 195-196; New Zealand Application at 10:28–11:3; 11:15–18; 11:19–26. Any comparison of the considerable similarities between the New Zealand Application and the '196 patent are plainly "relevant to determining the obviousness of claims 7-9 of the '196 patent."

86. When comparing Example 1 of the '196 patent and Example 1 of the prior art New Zealand Application, Plaintiffs' expert testified that the only difference was the drying parameters, which would be well understood by a person of ordinary skill in the art:

> Q: So those conditions that you're describing, where are those disclosed in the '196 patent?
>
> A: So these—these conditions here: "The product by further drying under vacuum until the weight of 62.2 grams of dried raw rifaximin having a water content equal to 3.3 percent." So here, in Example 1, this Example 1 is directed toward the delta phase. And it teaches the skilled person to dry the material and provides a weight value and under vacuum. So with that, the skilled person would have to figure out precisely in their hands, in their system, with their vacuum pump, and their—their little dish or whatever they use, the—*just a little—little minor experimental details, you know. Nothing—nothing undue in terms of the quality [sic, quantity] of experimentation, but those are the little lab type things that would need to be figured out by the skilled person, which they could do quite capably*.

> Q: Both ’196 patent Example 1 and New Zealand application Example 1 teach the product by further drying under vacuum, correct?
> A: Yes. And the details of the vacuum and then the water content of the product, that’s going to be important, as well as the temperature, which is silent.
>
> Q: And the details of the vacuum are not expressly described here either, correct?
>
> A: Right, yeah. *That’s one of those minor details that the skilled person could figure out*.
>
> Q: You agree, though, that that both the ’196 patent Example 1, and the New Zealand application Example 1, following the 5.6 percent in the New Zealand application, the diffractogram corresponding to polymorphous form beta, they just say “the product by further drying under vacuum,” right? . . . . They don't specify any temperature details, correct?
>
> A: Right. I mean, in both—in both of these, *the skilled person is going to have to just do a little bit of work in order to optimize the conditions* required to get either the alpha or the delta, depending on what they seek to prepare. And the temperature and the time and the magnitude of the vacuum and the manner that you put the material into the vacuum chamber, whether you heat it or not, these things matter. These things affect the outcome. And then ultimately, of course, you’ve got to keep an eye on the water content. So these—there are differences. That’s my point. There are differences in these experiments.
>
> Q: These things that you said matter, temperature, time, magnitude of the vacuum, manner that you put the material into the vacuum chamber, you agree that those are not expressly disclosed in the ’196 patent example, correct?
>
> A: They’re not expressly disclosed, *but as I said before, a skilled person could figure those out*.

Ex. N (Chyall Dep.) at 167:24-171:6 (emphasis added).

**<u>PLAINTIFFS’ RESPONSE</u>:** Admitted only that paragraph 86 accurately quotes a portion of Dr. Chyall’s deposition testimony. Disputed to the extent that paragraph 86 suggests Dr. Chyall admitted a POSA would have been motivated to modify the conditions of Example 1 of the New

Zealand Application with an expectation of successfully obtaining rifaximin δ. To the contrary, Dr. Chyall testified a POSA would not believe that additional polymorphic forms existed in a range of water contents already covered by α and β. Ex. N (Chyall Dep.) 171:24-172:25. Dr. Chyall also testified how the disclosures of the New Zealand Application would affect the motivations and expectations of a skilled person with respect to other yet-to-be-discovered polymorphs like rifaximin δ. Ex. N (Chyall Dep.) 173:15-175:1; Ex. BB (Chyall Rebuttal) ¶¶ 136-137. More specifically, Dr. Chyall testified that even if a skilled person had the motivation to search for new forms of rifaximin, they would not explore the same conditions that the New Zealand Application reports produce rifaximin α and β. *Id.* Further, Dr. Chyall testified that in view of the New Zealand Application a skilled person would not expect another form to be "lurking out there with substantially overlapping water contents" with rifaximin α and β. *Id.*

**AMNEAL'S REPLY**: Plaintiffs dispute purported "suggest[ions]" that they derive from SUF ¶ 86, not the factual assertions recited therein. Therefore, there is no credible or material dispute regarding the factual assertions in SUF ¶ 86. *See also* Amneal Reply to SUF ¶¶ 84-85.

Dated: March 10, 2026

/s/ *Rebekah Conroy*
Rebekah Conroy
(rconroy@stoneconroy.com)
**STONE CONROY LLC**
25 A Hanover Road, Suite 301
Florham Park, NJ 07932
Tel.: (973) 400-4181

*Attorneys for Defendants Amneal Pharmaceuticals of New York, LLC and Amneal EU, Limited*

Of Counsel:

Jake M. Holdreith
(jholdreith@robinskaplan.com)
Christopher A. Pinahs
(cpinahs@robinskaplan.com)
Samuel J. LaRoque, Ph.D.
(slaroque@robinskaplan.com)

**ROBINS KAPLAN LLP**
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
Phone: (612) 349-8500

Oren D. Langer
(olanger@robinskaplan.com)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Phone: (212) 980-7400

/s/ *Arnold B. Calmann*
Arnold B. Calmann (abc@saiber.com)
Arnold B. Calmann
(abc@saiber.com)
Katherine A. Escanlar
(kescanlar@saiber.com)
**SAIBER LLC**
7 Giralda Farms, Suite 360
Madison, NJ 07940
Phone: (973) 622-3333

*Attorneys for Norwich Pharmaceuticals, Inc.*

Of Counsel:

Matthew J. Becker
(mbecker@axinn.com)
Thomas K. Hedemann
(thedemann@axinn.com)
Edward M. Mathias
(tmathias@axinn.com)
Matthew S. Murphy
(mmurphy@axinn.com)
Rebecca L. Clegg
(rclegg@axinn.com)
**AXINN, VELTROP & HARKRIDER LLP**
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100

Sara B. Natour
(snatour@axinn.com)
**AXINN, VELTROP & HARKRIDER LLP**
1901 L Street NW
Washington, DC 20036
(202) 912-4700

Cassie Goodnight
(cgoodnight@axinn.com)
**AXINN, VELTROP & HARKRIDER LLP**
630 Fifth Avenue, 33rd Floor
New York, NY 10111
(212) 728-2200

## PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS[4]

### I. Facts in Opposition to Collateral Estoppel of Obviousness of the Asserted IBS-D Patent Claims

#### A. The Asserted Claims in this Case Materially Differ from the *Norwich I* Claims

1. Claim 1 of the '571 patent requires multiple limitations not present in claim 3 of the '667 patent and claim 2 of the '569 patent (hereinafter the "Adjudicated IBS Claims"), including treating "bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS)" and administration to a "female subject":

| '571 Patent, Claim 1 | '667 Patent, Claim 3 | '569 Patent, Claim 2 |
|---|---|---|
| 1. A method of treating **bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS) in a female subject**, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating bloating associated with dIBS in the female subject. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older.<br><br>3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms.<br><br>2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |

**DEFENDANTS' RESPONSE**: Admitted that the phrase "bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS)" and the word "female" do not appear verbatim in claims 1 and 3 of the '667 patent or claims 1 and 2 of the '569 patent. However, and as found by the Court in *Norwich I*, bloating is a symptom of IBS and IBS-D, and both "a

[4] All defined terms used herein carry the same meaning as in Plaintiffs' opposition to the MSJ.

subject" and a "subject 65 years of age or older" includes females. *See supra* SUF ¶¶ 34-35, 49-51.

2. Claim 2 of the '571 patent requires multiple limitations not present in the Adjudicated IBS Claims, including treating "bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS)," administration to a "female subject," and a "reduction of bloating from baseline symptoms":

| '571 Patent, Claim 2 | '667 Patent, Claim 3 | '569 Patent, Claim 2 |
|---|---|---|
| 1. A method of treating **bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS) in a female subject**, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating bloating associated with dIBS in the female subject.<br><br>2. The method of claim 1, wherein the treating of bloating comprises a **reduction of bloating from baseline symptoms established prior to treatment**. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older.<br><br>3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms.<br><br>2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |

**DEFENDANTS' RESPONSE**: Admitted that the phrases "bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS)" and "reduction of bloating from baseline symptoms" and the word "female" do not appear verbatim in claims 1 and 3 of the '667 patent or claims 1 and 2 of the '569 patent. Defendants incorporate Defs.' Response to Additional Fact ¶ 1 by reference. In addition, claim 2 recites a characterization of a result of administering the dosing regimen recited in claim 1. Regardless, reducing symptoms—including bloating—compared to pre-treatment baseline symptoms is integral to "treating one or more symptoms" of

or achieving "adequate relief" from any symptomatic medical condition. *See supra* SUF ¶¶ 42, 53.

3. Claim 3 of the '571 patent requires multiple limitations not present in the Adjudicated IBS Claims, including treating "bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS)," administration to a "female subject," a "reduction of bloating from baseline symptoms," and that reduction being "achieved following 7 days after the administration of rifaximin":

| '571 Patent, Claim 3 | '667 Patent, Claim 3 | '569 Patent, Claim 2 |
|---|---|---|
| 1. A method of treating **bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS) in a female subject**, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating bloating associated with dIBS in the female subject.<br><br>2. The method of claim 1, wherein the treating of bloating comprises a **reduction of bloating from baseline symptoms established prior to treatment**.<br><br>3. The method of claim 2, wherein the reduction of bloating is **achieved following 7 days after the administration of rifaximin**. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older.<br><br>3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms.<br><br>2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |

**DEFENDANTS' RESPONSE**: Admitted that the phrases "bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS)"; "reduction of bloating from baseline symptoms"; and "achieved following 7 days after the administration of rifaximin" and the word "female" do not appear verbatim in claims 1 and 3 of the '667 patent or claims 1 and 2 of the '569 patent. Defendants incorporate Defs.' Response to Additional Fact ¶¶ 1-2 by reference. In addition, claim 3 of the '571 patent does not modify the dosing regimen, which claim 1 of the '571

patent—like claim 1 of the ’667 and ’569 patents—requires to be 14 days. *See supra* SUF ¶ 55. It recites a characterization of a result of administering the dosing regimen recited in claim 1.

4. Claim 4 of the ’571 patent requires multiple limitations not present in the Adjudicated IBS Claims, including treating “bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS),” administration to a “female subject,” a “reduction of bloating from baseline symptoms,” and the “reduction in bloating comprises an affirmative response from the subject when asked”:

| ’571 Patent, Claim 4 | ’667 Patent, Claim 3 | ’569 Patent, Claim 2 |
|---|---|---|
| 1. A method of treating **bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS) in a female subject**, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating bloating associated with dIBS in the female subject.<br><br>2. The method of claim 1, wherein the treating of bloating comprises a **reduction of bloating from baseline symptoms established prior to treatment**.<br><br>4. The method of claim 2, wherein the reduction of bloating comprises an **affirmative response from the subject when asked whether they had a reduction in bloating**. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older.<br><br>3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms.<br><br>2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |

<u>**DEFENDANTS’ RESPONSE**</u>: Admitted that the phrases “bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS)”; “reduction of bloating from baseline symptoms”; and “reduction in bloating comprises an affirmative response from the subject when asked” and the word “female” do not appear verbatim in claims 1 and 3 of the ’667 patent or claims 1 and 2 of the ’569 patent. Defendants incorporate Defs.’ Response to Additional Fact ¶¶

1-2 by reference. In addition, claim 4 recites a characterization of a result of administering the dosing regimen recited in claim 1. Regardless, soliciting feedback from patients regarding their symptom improvement is integral to treating any symptomatic medical condition. *See supra* SUF ¶¶ 46, 57.

5. Dependent claim 2 of the '667 patent recites "one or more [of the IBS] symptoms **are** selected from one or more of cramping, pain, diarrhea, constipation, lumpy stool, watery stool, frequent stool production, abdominal pain, abdominal discomfort and urgency." Exhibit A at claim 2 (emphasis added).

**DEFENDANTS' RESPONSE**: Admitted.

6. Dependent claim 2 of the '667 patent does not recite either "bloating" or "bloating associated with IBS-D" as a claimed symptom, as required by the asserted claims of the '571 patent.

**DEFENDANTS' RESPONSE**: Admitted that the word "bloating" and phrase "bloating associated with IBS-D" do not appear verbatim in claim 2 of the '667 patent. Claim 2 depends from claim 1 which recites "treating one or more symptoms of IBS," and also recites "abdominal discomfort." Regardless, claim 2 of the '667 patent is not relevant to any disputed fact or issue of collateral estoppel.

7. Claim 5 of the '912 patent requires multiple limitations not present in the Adjudicated IBS Claims, including administration to a "female subject" and a "reduction of the one or more symptoms from baseline symptoms":

| '912 Patent, Claim 5 | '667 Patent, Claim 3 | '569 Patent, Claim 2 |
|---|---|---|
| 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a **female subject**, said method comprising administering, 550 mg of rifaximin | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to |

| | | |
|---|---|---|
| TID for 14 days to the female subject, thereby treating one or more symptoms of IBS in the female subject.<br><br>5. The method of claim 1, wherein the treating one or more symptoms of IBS comprises a **reduction of the one or more symptoms from baseline symptoms established prior to treatment**. | of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older.<br><br>3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms.<br><br>2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |

<u>**DEFENDANTS' RESPONSE**</u>: Admitted that the phrase "reduction of the one or more symptoms from baseline symptoms" and the word "female" do not appear verbatim in claims 1 and 3 of the '667 patent or claims 1 and 2 of the '569 patent. However, "a subject" and a "subject 65 years of age or older" includes females. *See supra* SUF ¶¶ 34-35, 49-51. In addition, claim 5 recites a characterization of a result of administering the dosing regimen recited in claim 1. Regardless, reducing symptoms compared to pre-treatment baseline symptoms is integral to treating any symptomatic medical condition. *See supra* SUF ¶¶ 42, 53.

8. Claim 6 of the '912 patent requires multiple limitations not present in the Adjudicated IBS Claims, including administration to a "female subject," a "reduction of the one or more symptoms from baseline symptoms," and that reduction being "achieved following 7 days after the administration of rifaximin":

| '912 Patent, Claim 6 | '667 Patent, Claim 3 | '569 Patent, Claim 2 |
|---|---|---|
| 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a **female subject**, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating one or more symptoms of IBS in the female subject. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older. | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises |

| | | |
|---|---|---|
| 5. The method of claim 1, wherein the treating one or more symptoms of IBS comprises **a reduction of the one or more symptoms from baseline symptoms established prior to treatment**.<br><br>6. The method of claim 5, wherein the reduction of the one or more symptoms is **achieved following 7 days after the administration of rifaximin**. | 3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | about 12 weeks of adequate relief of symptoms.<br><br>2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |

**DEFENDANTS' RESPONSE**: Admitted that the phrases "reduction of the one or more symptoms from baseline symptoms" and "achieved following 7 days after the administration of rifaximin" and the word "female" do not appear verbatim in claims 1 and 3 of the '667 patent or claims 1 and 2 of the '569 patent. Defendants incorporate Defs.' Response to Additional Fact ¶¶ 6-7 by reference. Claim 6 of the '912 patent does not modify the dosing regimen, which claim 1 of the '912 patent—like claim 1 of the '667 and '569 patents—requires to be 14 days. *See supra* SUF ¶ 44. In addition, claim 6 recites a characterization of a result of administering the dosing regimen recited in claim 1.

9. Claim 7 of the '912 patent requires multiple limitations not present in the Adjudicated IBS Claims, including administration to a "female subject" and a "reduction in symptoms defined by an affirmative response from the subject when asked":

| '912 Patent, Claim 7 | '667 Patent, Claim 3 | '569 Patent, Claim 2 |
|---|---|---|
| 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a **female subject**, said method comprising administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating one or more symptoms of IBS in the female subject. | 1. A method of treating one or more symptoms of irritable bowel syndrome (IBS) in a subject 65 years of age or older, said method comprising administering, 550 mg of rifaximin TID for 14 days to the subject, thereby treating one or more symptoms of IBS in the subject 65 years of age or older. | 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: administering 1650 mg/day of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises |

| | | |
|---|---|---|
| 7. The method of claim 1, wherein treating one or more symptoms of IBS comprises a **reduction in symptoms defined by an affirmative response from the subject when asked whether they had a reduction in symptoms of IBS**. | 3. The method of claim 1, wherein the IBS is diarrhea-predominant IBS. | about 12 weeks of adequate relief of symptoms.<br><br>2. The method of claim 1, wherein the 1650 mg is administered as 550 mg three times per day. |

**DEFENDANTS' RESPONSE**: Admitted that the phrase "reduction in symptoms defined by an affirmative response from the subject when asked" and the word "female" do not appear in claims 1 and 3 of the '667 patent or claims 1 and 2 of the '569 patent. Defendants incorporate Defs.' Response to Additional Fact ¶ 6 by reference. In addition, claim 7 recites a characterization of a result of administering the dosing regimen recited in claim 1. Regardless, the Invalidated IBS-D Claims recite "treating one or more [IBS-D] symptoms" or achieving "adequate relief of [IBS-D] symptoms" by administering the dosing regimen recited in claim 1. Further, soliciting feedback from patients regarding their symptom improvement is integral to treating any symptomatic medical condition. *See supra* SUF ¶¶ 46, 57.

10. Claim 3 of the '667 patent at issue in *Norwich I* was directed to "[a] method of treating one or more symptoms of irritable bowel syndrome (IBS)" wherein "the IBS is diarrhea-predominant IBS." Exhibit A at claim 3.

**DEFENDANTS' RESPONSE**: Defendants deny that Additional Fact ¶ 12 accurately characterizes claim 3 of the '667 patent but admit that in *Norwich I* the Delaware Court stated that "Asserted Claim 3 of the '667patent is a dependent claim that has three elements: (1) administering 550 mg of rifaximin three times a day (TID) for 14 days; (2) to treat one or more symptoms of IBS-D; (3) in a subject 65 years of age or older." *Norwich I DC* at *16.

11. Claim 3 of the '667 patent does not include any requirement that a reduction in IBS symptoms and/or a reduction in bloating associated with IBS-D be achieved relative to baseline,

achieved following 7 days after administration, or defined by an affirmative response from the subject.

**<u>DEFENDANTS' RESPONSE</u>**: Admitted that the phrases "bloating associated with IBS-D"; "achieved relative to baseline"; "achieved following 7 days after the administration"; and "defined by an affirmative response from the subject" do not appear verbatim in claims 1 and 3 of the '667 patent. To the extent Plaintiffs by the statement "does not include any requirement" intend to allege that the foregoing "requirements" cannot be encompassed by other phrasing recited in the Invalidated IBS-D Claims, including "treating one or more [IBS-D] symptoms," disputed. *See supra* Defendants' Response to Additional Facts ¶¶ 1-9.

12. Claim 2 of the '569 patent at issue in *Norwich I* was directed to "[a] method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS)" wherein "removing the subject from treatment after the 14 days results in a durability of response" that "comprises about 12 weeks of adequate relief of symptoms." Exhibit B at claim 2.

**<u>DEFENDANTS' RESPONSE</u>**: Defendants deny that Additional Fact ¶ 12 accurately characterizes claim 2 of the '569 patent but admit that in *Norwich I* the Delaware Court stated, "Asserted Claim 2 of the '569 patent is a dependent claim with two elements: (1) administering 550 mg of rifaximin TID for 14 days; and (2) after stopping rifaximin, achieving a durability of response that comprises about 12 weeks of adequate relief of symptoms." *Norwich I DC* at *16.

13. Claim 2 of the '569 patent does not include any requirement that a reduction in IBS symptoms and/or a reduction in bloating associated with IBS-D be achieved relative to baseline, achieved following 7 days after administration, or defined by an affirmative response from the subject.

**DEFENDANTS' RESPONSE**: Admitted that the phrases "bloating associated with IBS-D"; "achieved relative to baseline"; "achieved following 7 days after the administration"; and "defined by an affirmative response from the subject" do not appear verbatim in claims 1 and 2 of the '569 patent. Disputed to the extent Plaintiffs, by the statement "does not include any requirement," intend to allege that the foregoing "requirements" cannot be encompassed by other phrasing in the Invalidated IBS-D Claims, including "adequate relief of [IBS-D] symptoms." *See supra* Defendants' Response to Additional Facts ¶¶ 1-9, 11, 42, 46.

14. In *Norwich I DC*, the district court stressed the importance of the limitations at issue, including the "durability of response" limitation of the adjudicated '569 patent: "The specification describes 'durability of response' as including adequate relief from symptoms for 12 weeks." 2022 WL 3225381, at *17.

**DEFENDANTS' RESPONSE**: Admitted that Additional Fact ¶ 13 accurately quotes the *Norwich I DC* opinion describing the '569 patent specification. Defendants dispute that the cited passage "stressed the importance of the limitations at issue[.]" The quoted language from the *Norwich I DC* opinion does not support such an assertion.

15. None of the claims of the '571 patent or '912 patent require "a durability of response" that "comprises about 12 weeks of adequate relief of symptoms."

**DEFENDANTS' RESPONSE**: Admitted that the phrases "a durability of response" and "comprises about 12 weeks of adequate relief of symptoms" do not appear verbatim in the claims of the '571 and '912 patents. Defendants dispute to the extent that Plaintiffs intend to allege that the claims of the '571 patent or '912 patent, including "treating one or more [IBS / IBS-D] symptoms" by administering 550 mg of rifaximin TID for 14 days, excludes "a durability of response" that "comprises about 12 weeks of adequate relief of symptoms." . *See supra* SUF ¶¶

2-9, 11, 12; *see also* Amneal Action, D.I. 23-1 at claim 1; Norwich Action, D.I. 26-1 at claim 1; Amneal Action, D.I. 23-2 at claim 3; Norwich Action, D.I. 26-2 at claim 3; Ex. A at claim 3; Ex. B at claim 2.

16. On appeal in *Norwich I CAFC*, the Federal Circuit appeal focused on the dosage amount claimed: "The key limitation on appeal is the dosage amount that appears in the claims: 550 mg, three times per day ("TID"), for a total of 1,650 mg/day." 948 F.4th at 1061.

**DEFENDANTS' RESPONSE**: Admitted that Additional Fact ¶ 16 accurately quotes the *Norwich I CAFC* opinion. Disputed that the Federal Circuit "focused on the dosage amount claimed[.]" The quoted language from the *Norwich I CAFC* opinion does not support such an assertion. Regardless, the *Norwich I CAFC* opinion affirmed that the Invalidated IBS-D Claims, as a whole and including the recited dosing regimen, were invalid as obvious in view of the prior art. In any event, the asserted claims of the '912 and '571 patents recite or require the same dosage amount—550 mg TID—as the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 2-9, 11, 12; *see also* Amneal Action, D.I. 23-1 at claim 1; Norwich Action, D.I. 26-1 at claim 1; Amneal Action, D.I. 23-2 at claim 3; Norwich Action, D.I. 26-2 at claim 3; Ex. A at claim 3; Ex. B at claim 2.

### B. *Norwich I* Did Not Address Treating Bloating Associated with IBS-D

17. In *Norwich I DC*, none of the Adjudicated IBS Claims recited "bloating." *See* 2022 WL 322381, at *16. The claims at issue in *Norwich I* did not require treating "bloating associated with diarrhea-predominant irritable bowel syndrome." *See id.*

**DEFENDANTS' RESPONSE**: Admitted that claims 1 and 3 of the '667 patent and claims 1 and 2 of the '569 patent do not recite verbatim the word "bloating" or the phrase "bloating associated with diarrhea-predominant irritable bowel syndrome." Disputed to the extent that

Plaintiffs, by the statement "[t]he claims at-issue in *Norwich I* did not require treating 'bloating associated with diarrhea-predominant irritable bowel syndrome,'" intend to allege that the foregoing cannot be encompassed by other phrasing of the Invalidated IBS-D Claims, including "treating one or more [IBS-D] symptoms" or achieving "adequate relief of [IBS-D] symptoms" by administering the dosing regimen of claim 1. Bloating is a symptom of IBS and IBS-D. *See* SUF ¶¶ 50-51, *supra*.

18. Accordingly, *Norwich I DC* did not address the limitations of "[a] method of treating bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS)" or "thereby treating bloating associated with dIBS in the female subject." *See* 2022 WL 3225381, at *16-22. It likewise did not address any of the limitations of the dependent claims 2-4 of the '571 patent relating to "a reduction of bloating." *See id.*

**<u>DEFENDANTS' RESPONSE</u>**: Admitted that the phrases "a method of treating bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS)"; "thereby treating bloating associated with dIBS in the female subject"; and "a reduction in bloating" do not appear verbatim in claims 1 and 2 of the '569 patent or claims 1 and 3 of the '667 patent, or in claim 1 of those patents. However, Additional Fact ¶ 18 is irrelevant because there is no dispute that the claims of the '912 and '571 patents were not asserted in *Norwich I*. *Norwich I DC* addressed methods of administering 550 mg of rifaximin TID for 14 days and "thereby treating one or more [IBS-D] symptoms" or achieving "adequate relief of IBS-D symptoms." Bloating is a symptom of IBS-D. *See* SUF ¶¶ 50-51, *supra*. Subjects "65 years of age or older" includes females. *See supra* SUF ¶¶ 34-35, 49. "Treating" or achieving "adequate relief" from a symptom—including bloating—necessarily involves a reduction of that symptom. *See supra* SUF ¶¶ 42, 53.

19. The *Norwich I DC* opinion makes only two references to "bloating"—when noting symptoms of irritable bowel syndrome generally, and when quoting a press release from September 5, 2007. See 2022 WL 3225381, at *16, *19. *Norwich I DC* made no substantive finding regarding bloating associated with IBS-D in its findings of fact or obviousness analysis. *See id.* at *16-22.

**DEFENDANTS' RESPONSE**: Admitted that the word "bloating" appears twice in the *Norwich I DC* opinion. The court in *Norwich I DC* found that IBS is "characterized by symptoms including abdominal pain, bloating, frequency, urgency, gas, and changed bowel habits, such as diarrhea, constipation, or alternating diarrhea and constipation." 2022 WL 3225381, at *16; *see also supra* Additional Fact ¶ 50. The court in *Norwich I DC* also found that the RFIB 2001 Press Release disclosed, "Top-line results of this study demonstrate that . . . a 14-day course of rifaximin at 550 mg twice-a-day, provides a statistically significant improvement in both adequate relief of IBS symptoms and adequate relief of bloating, compared to placebo." 2022 WL 3225381, at *19. These conclusions evidence that the adjudicated obviousness inquiry from *Norwich I* encompasses bloating associated with IBS-D.

20. The only prior art combination for the Adjudicated IBS Claims the *Norwich I DC* opinion addresses is "Pimentel 2006 in light of the RFIB 2001 Protocol." 2022 WL 3225381, at *18 ("Norwich proposed three prior art combinations . . . I will not address the other two combinations.").

**DEFENDANTS' RESPONSE**: Admitted that Additional Fact ¶ 20 accurately quotes the *Norwich I DC* opinion. The court in *Norwich I DC* determined that the Invalidated IBS-D Claims were invalid over the combination of Pimentel 2006 in light of the RFIB 2001 Protocol, but it made findings regarding the prior art as a whole, including prior art addressed in additional

combinations.. For example, the court found that "[a] retrospective chart review [the "Cuoco" reference] of IBS patients who had tested positive for small intestine bacterial overgrowth ('SIBO') reported a significant reduction in the number of patients having IBS symptoms 4-5 months after treatment, and that 12 of 23 patients had 'complete resolution of IBS symptoms.'" 2022 WL 3225381, at *18. The *Norwich I DC* court also found that "[a]nother retrospective chart review [the "Barrett" reference] of 8 patients disclosed, 'rifaximin use resulted in complete resolution of clinical symptoms in 4 patients, with no IBS relapse (follow-up, 1 to 6 months),' and 'partial symptom improvement was observed in 4 patients, 3 of whom were treated for an additional 2 months with rifaximin 400 mg three times daily cycle therapy (2 weeks on / 1 week off [ ]) which resulted in a 50% to 70% improvement from baseline.'" *Id.* The court found that "several pieces of prior art reported success in treating IBS with rifaximin[,]" and the court found that "[t]he prior art describes positive results from a range of doses." *Id.* at *19.

21. Pimentel 2006 combined with RFIB 2001 Study Protocol is only one of the multiple obviousness combinations the Defendants' expert, Dr. Harary, relies on in this case. Ex. G, Harary Opening Report ¶¶ 41-42 (summarizing same).

**DEFENDANTS' RESPONSE**: Admitted that Defendants have asserted obviousness arguments based on Pimentel 2006 and RFIB 2001 and other combinations, including a disclosure (Weinstock Email) concerning the real-world administration of rifaximin 1800 mg per day for 14 days to a female IBS patient by a third party to a named inventor two years before the earliest claimed priority date for the '571 and '912 patents that was never disclosed to the Patent Office. *See* Ex. G (Harary Opening Report) at ¶¶ 41-42. Regardless, Additional Fact ¶ 21 is not relevant to any issue of collateral estoppel.

22. *Norwich I DC* did not determine whether Pimentel 2006 and RFIB 2001 Study Protocol disclosed a "method of treating bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS)," as is recited by the '571 patent, claim 1. *See* 2022 WL 3225381, at *16-22.

**DEFENDANTS' RESPONSE**: Admitted that the '571 patent was neither issued or asserted in *Norwich I* and therefore did not explicitly address the '572 patent, claim 1. However, *Norwich I DC* determined that Pimentel 2006 and the RFIB 2001 Study Protocol disclosed a method of "treating one or more [IBS-D] symptoms" or achieving "adequate relief of [IBS-D] symptoms" by administering 550 mg of rifaximin TID for 14 days. *See supra* SUF ¶¶ 11, 12, 15. Bloating is a symptom of IBS-D. *See supra* SUF ¶¶ 50-51; *see also* Ex. YY (Schoenfeld Testimony) at 515:7-11 (Q: "Who is it that assesses whether there is adequate relief of the IBS-D symptoms?" A: "Ultimately, it's the patient. This is a disorder that's characterized by the patient's subjective assessment of their bloating and cramping and loose, watery stools.").

23. Salix's expert, Dr. David Johnson, opines that skilled artisans would have recognized the material difference between treating bloating associated with diarrhea-prominent irritable bowel syndrome and treating one or more symptoms of irritable bowel syndrome wherein "the IBS is diarrhea-predominant IBS." Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 32-37; Ex. E, Johnson Rebuttal ¶¶ 118-121 (opining that "the treatment of bloating associated with IBS-D is not materially different from treating one or more symptoms of IBS or IBS-D as recited in the adjudicated claims of the '569 and '667 patents").

**DEFENDANTS' RESPONSE**: Disputed. Bloating is a symptom of IBS and IBS-D. *See supra* SUF ¶¶ 50-51; *see also Norwich I DC*, 2022 WL 3225381, at *16 ("Irritable bowel syndrome ('IBS') is characterized by symptoms including abdominal pain, bloating, frequency, urgency, gas,

and changed bowel habits, such as diarrhea, constipation, or alternating diarrhea and constipation.”). Regardless, Dr. Johnson’s stated opinion is immaterial and irrelevant to the issue of collateral estoppel based on the invalidity findings concerning the Invalidated IBS-D Claims, which recite the identical administration of 550 mg rifaximin TID for 14 days.

24. A POSA would not have assumed patients with bloating would necessarily have IBS or IBS-D. Action D.I. 121-2, Johnson Decl. ¶¶ 33, 37.

**DEFENDANTS’ RESPONSE**: Admitted that bloating is a symptom of IBS and IBS-D, supra SUF ¶¶ 50-51, and that bloating – like other symptoms - may be a symptom of medical conditions. However, Additional Fact ¶ 24 is irrelevant and immaterial to any disputed issue of collateral estoppel at least because the Invalidated IBS-D Claims recite treating or obtaining adequate relief of IBS-D symptoms by administering the same dosing regimen. .

25. Bloating may occur independently from IBS-D and independently from IBS. Ex. K, Harary Dep. at 12:3-7; *see also id.* at 10:13-11:11, 11:17-19 (agreeing that “bloating can be a symptom of several different conditions”); Ex. X, Crespin Dep. at 52:11-11-18 (testifying that “lots of people have bloating without IBS-D” and explaining “there are umpteen” conditions that could be responsible, such as “diabetic gastroparesis, Crohn’s, ulcerative colitis”); *id.* at 69:24-70:8 (“Bloating can occur with or without IBS-D”); Ex. E, Johnson Rebuttal ¶ 119 (“[A] patient suffering from bloating would not necessarily have IBS or IBS-D, even though bloating can be a symptom of IBS or IBS-D.”).

**DEFENDANTS’ RESPONSE**: Admitted that bloating is a symptom of IBS and IBS-D, *supra* SUF ¶¶ 50-51, and that bloating—like other symptoms—may be a symptom of medical conditions. However, Additional Fact ¶ 24 is irrelevant and immaterial to any disputed issue of

collateral estoppel at least because the Invalidated IBS-D Claims recite treating or obtaining adequate relief of IBS-D symptoms by administering the same dosing regimen.

26. Not all IBS-D patients experience bloating associated with their IBS-D. Ex. E, Johnson Rebuttal ¶ 73 ("Under the Rome III Criteria, a POSITA would have considered bloating associated with IBS-D to be distinct from irritable bowel syndrome. . . . [A] patient suffering from bloating would not necessarily meet the diagnostic criteria for IBS or IBS-D, even though bloating can be a symptom of IBS or IBS-D or a broad number of other causalities."); Ex. Y, Crespin Rebuttal Report ¶ 127 ("The symptom of bloating is not necessary to a diagnosis of IBS-D.").

**DEFENDANTS' RESPONSE**: Admitted that bloating is a symptom of IBS-D, *supra* SUF ¶¶ 50-51, and that bloating—like other symptoms— may not be experienced by each IBS-D patient each day. However, Additional Fact ¶ 24 is irrelevant and immaterial to any disputed issue of collateral estoppel at least because some patients "experience bloating" and the Invalidated IBS-D Claims recite treating or obtaining adequate relief of IBS-D symptoms by administering the same dosing regimen. Rome III criteria is irrelevant. *See* Additional Fact ¶ 38.

27. Dr. Johnson opines a skilled artisan at the time of the inventions would have been aware that the leading diagnostic guideline for classifying functional gastrointestinal disorders, Rome III, distinguished functional bloating from IBS or IBS-D. Amneal Action D.I. 121-2, Johnson Decl. ¶ 33; Ex. E, Johnson Rebuttal ¶ 119, n. 105, 290 ("Under the Rome III criteria, a POSITA would have considered bloating associated with IBS-D to be distinct from irritable bowel syndrome.") (citing explanation from a treatise by Dr. Drossman, a chairman of the Rome III committee that "IBS . . . is distinct from functional diarrhea . . . or functional bloating" and that "[e]ach condition also has different diagnostic and treatment approaches"); *see also id.* ¶¶ 73, 78 ("In 2008, the Rome III criteria was the recognized standard of care for defining IBS.").

**DEFENDANTS' RESPONSE**: Additional Fact ¶ 27 is irrelevant at least because Dr. Johnson's purported opinions do not address the invalidity findings concerning the Invalidated IBS-D Claims, which recite the identical administration of 550 mg rifaximin TID for 14 days, and are therefore immaterial to the issue of collateral estoppel. Defendants dispute that the Rome III criteria is relevant to the instant issue of collateral estoppel. *See* AdditionalFact ¶ 38. Regardless, the shared specification for the '912 and '571 patents does not recite or disclose Rome III criteria, and in fact, explicitly refers to the Rome II criteria when discussing the clinical studies disclosed in the patent specification. *See generally* Amneal Action, D.I. 23-1, 23-2; Norwich Action, D.I. 26-1, 26-2.

28. Dr. Johnson opines that Pimentel 2006 "

29. does not address the treatment of IBS-D . . . at all." Ex. E, Johnson Rebuttal ¶ 171.

**DEFENDANTS' RESPONSE**: Additional Fact ¶ 27 is irrelevant and immaterial to the issue of collateral estoppel at least because Dr. Johnson's purported opinion does not address the invalidity findings in *Norwich I* concerning the Invalidated IBS-D Claims that recite the identical administration of 550 mg rifaximin TID for 14 days for "treating one or more [IBS-D] symptoms" or achieving "adequate relief of [IBS-D] symptoms," and that were found obvious over the combination of Pimentel 2006 and the RFIB 2001 Protocol in view of the prior art as a whole. Plaintiffs' Additional Fact ¶ 27 should therefore be disregarded.

30. Dr. Johnson notes that RFIB 2001 Study Protocol "is only a study design" and "contains no information about the safety and efficacy of any rifaximin dosage to treat IBS, IBS-D or alternating IBS" or "about the reduction of bloating associated with IBS-D or other IBS symptoms specifically in a female subject." Ex. E, Johnson Rebuttal ¶ 222.

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 28 is irrelevant and immaterial to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. Defendants dispute at least because the invalidity findings in *Norwich I DC* concerning the Invalidated IBS-D Claims that recite the identical administration of 550 mg rifaximin TID for 14 days for "treating one or more [IBS-D] symptoms" or achieving "adequate relief of [IBS-D] symptoms," considered the RFIB 2001 Protocol and determined that the Invalidated IBS-D Claims were obvious over the Pimentel 2006 and the RFIB 2001 Protocol in view of the prior art as a whole. *See* Additional Fact ¶ 15, *supra*.

31. Dr. Johnson opines that RFIB 2001 Study Protocol "does not address bloating at all." Ex. E, Johnson Rebuttal ¶ 222.

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 29 is irrelevant and immaterial to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. *See, e.g.*, Defs.' Responses to Additional Facts ¶¶ 28-29. Regardless, it is disputed that the "RFIB 2001 Study Protocol 'does not address bloating at all.'" Indeed, the *Norwich I DC* opinion states:

> The protocol included the outcome measures of providing adequate relief of symptoms and evaluating a durability of response over a 12-week post-treatment period. Salix announced the successful completion of this study on September 5, 2007 (the "RFIB 2001 Press Release") and disclosed, "Top-line results of this study demonstrate that ... a 14-day course of rifaximin at 550 mg twice-a-day, provides a statistically significant improvement in both adequate relief of IBS symptoms and adequate relief of bloating, compared to placebo."

*Norwich I DC*, 2022 WL 3225381, at *19.

### C. *Norwich I* Did Not Address the Claimed Symptom Reductions

32. *Norwich I DC* did not determine whether Pimentel 2006 and RFIB 2001 Study Protocol disclosed "the treating of bloating comprises a reduction of bloating from baseline symptoms established prior to treatment ('571 patent, claim 2) or "the treating one or more symptoms of IBS comprises a reduction of the one or more symptoms from baseline symptoms established prior to treatment" ('912 patent, claim 5).

**DEFENDANTS' RESPONSE**: Disputed. *Norwich I DC* determined that Pimentel 2006 and the RFIB 2001 Study Protocol disclose a method of treating IBS-D symptoms comprising administering 550 mg of rifaximin TID for 14 days. *See supra* SUF ¶¶ 11, 12, 15. Bloating is a symptom of IBS-D. *See supra* SUF ¶¶ 50-51; *see also* Ex. YY (Schoenfeld Testimony) at 515:7-11 (Q: "Who is it that assesses whether there is adequate relief of the IBS-D symptoms?" A: "Ultimately, it's the patient. This is a disorder that's characterized by the patient's subjective assessment of their bloating and cramping and loose, watery stools."). Moreover, Judge Andrews in *Norwich I DC* considered evidence that Pimentel 2006 discloses a reduction from baseline symptoms. *Id.* at 763:13-15 ("[T]hey're [i.e., the Pimentel 2006 study] trying to assess on a weekly basis what did the patients say about how much their global IBS symptoms were improved compared to baseline."). Reducing symptoms compared to pre-treatment baseline symptoms is integral to treating any symptomatic medical condition. *See supra* SUF ¶¶ 42, 53. In addition, the *Norwich I DC* opinion states that Pimentel 2006 and the RFIB 2001 Study Protocol disclose reducing symptoms. *See* 2022 WL 3225381, at *19 ("The protocol included the outcome measures of providing adequate relief of symptoms and evaluating a durability of response over a 12-week post-treatment period."); *id.* at *18 ("A randomized, double-blind, placebo-controlled study [Pimentel 2006] found rifaximin to be more effective than placebo in improving IBS.").

33. *Norwich I DC* did not address, much less determine, whether evaluating symptom improvement via comparison to baseline symptoms is a practice integral to treating symptomatic medical conditions.

**<u>DEFENDANTS' RESPONSE</u>**: Disputed. *Norwich I DC* determined that prior art including Pimentel 2006, RFIB 2001 Study Protocol, Cuoco, and Barrett disclose the treating IBS-D symptoms. *See* 2022 WL 3225381, at *19 ("The protocol included the outcome measures of providing adequate relief of symptoms and evaluating a durability of response over a 12-week post-treatment period."); *id.* at *18 ("A randomized, double-blind, placebo-controlled study [Pimentel 2006] found rifaximin to be more effective than placebo in improving IBS."); *id.* ("A retrospective chart review [Cuoco] of IBS patients who had tested positive for small intestine bacterial overgrowth ('SIBO') reported a significant reduction in the number of patients having IBS symptoms 4-5 months after treatment, and that 12 of 23 patients had 'complete resolution of IBS symptoms.'"); *id.* ("Another retrospective chart review [Barrett] of 8 patients disclosed, 'rifaximin use resulted in complete resolution of clinical symptoms in 4 patients, with no IBS relapse (follow-up, 1 to 6 months),' and 'partial symptom improvement was observed in 4 patients, 3 of whom were treated for an additional 2 months with rifaximin 400 mg three times daily cycle therapy (2 weeks on / 1 week off [ ]) which resulted in a 50% to 70% improvement from baseline.'"). Treating symptoms necessarily involves evaluating symptom improvement via comparison to baseline symptoms. *See supra* SUF ¶¶ 42, 46, 53, 57.

34. Dr. Johnson opines that neither Pimentel 2006 nor RFIB 2001 Study Protocol discloses "a reduction of bloating associated with IBS-D from baseline symptoms established prior to treatment within a 14-day treatment period," (Ex. E, Johnson Rebuttal ¶¶ 381, 385), or "a

reduction of one or more IBS symptoms from baseline symptoms established prior to treatment within a 14 day treatment period," (*id.* ¶¶ 838, 842).

**DEFENDANTS' RESPONSE**: Disputed that "neither Pimentel 2006 nor RFIB 2001 Study Protocol discloses 'a reduction of bloating associated with IBS-D from baseline symptoms established prior to treatment within a 14-day treatment period,' [or] 'a reduction of one or more IBS symptoms from baseline symptoms established prior to treatment within a 14 day treatment period[.]" Plaintiffs' Additional Fact ¶ 33 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded.

35. *Norwich I DC* did not determine whether Pimentel 2006 and RFIB 2001 Study Protocol disclosed "the reduction of bloating is achieved following 7 days after the administration of rifaximin" ('571 patent, claim 3) or "the reduction of the one or more symptoms is achieved following 7 days after the administration of rifaximin" ('912 patent, claim 6) (together the "7 Days Limitations").

**DEFENDANTS' RESPONSE**: Disputed. Judge Andrews in *Norwich I DC* considered evidence that Pimentel 2006 discloses reductions of IBS and IBS-D symptoms "achieved following 7 days after the administration of rifaximin[.]" Ex. YY (Schoenfeld Testimony) at 763:13-15 ("[T]hey're [i.e., the Pimentel 2006 study] trying to assess on a weekly basis what did the patients say about how much their global IBS symptoms were improved compared to baseline."). Bloating is a symptom of IBS and IBS-D. In addition, *Norwich I DC* determined that Pimentel 2006 and the RFIB 2001 Study Protocol disclose a 14-day duration of rifaximin therapy 550 mg TID to treat IBS-D and obtain "adequate relief" of symptoms thereof. *See supra* SUF ¶¶ 11, 12, 15. Claim 3 of the '571 patent and claim 6 of the '912 patent do not modify the duration of treatment, which claim 1 of both patents—like the Invalidated IBS-D Claims—requires to be

14 days. *See supra* SUF ¶¶ 44, 55. Bloating is a symptom of IBS and IBS-D. *See supra* SUF ¶¶ 50-51; *see also* Ex. YY (Schoenfeld Testimony) at 515:7-11 (Q: "Who is it that assesses whether there is adequate relief of the IBS-D symptoms?" A: "Ultimately, it's the patient. This is a disorder that's characterized by the patient's subjective assessment of their bloating and cramping and loose, watery stools.").

36. The 7 Days Limitations of the '571 patent, claim 3, and the '912 patent, claim 6, relate to when the reduction of the bloating associated with diarrhea-predominant IBS or IBS symptoms is achieved. Amneal Action D.I. 121-2, Johnson Dec. ¶ 23.

**DEFENDANTS' RESPONSE**: Admitted that claim 3 of the '571 patent and claim 6 of the '912 patent recite a characterization of the result of administering the dosing regimen of claim 1, and state that reduction of the bloating associated with diarrhea-predominant IBS or IBS symptoms is "achieved following 7 days after the administration of rifaximin."

37. Dr. Johnson opines that neither Pimentel 2006 nor RFIB 2001 Study Protocol discloses "that the reduction of bloating associated with IBS-D or any IBS symptoms was achieved following 7 days after administration of rifaximin." Ex. E, Johnson Rebuttal ¶¶ 173, 222.

**DEFENDANTS' RESPONSE**: Disputed that "neither Pimentel 2006 nor RFIB 2001 Study Protocol discloses 'that the reduction of bloating associated with IBS-D or any IBS symptoms was achieved following 7 days after administration of rifaximin.'" Judge Andrews in *Norwich I DC* considered evidence that Pimentel 2006 discloses reductions of IBS and IBS-D symptoms "achieved following 7 days after the administration of rifaximin[.]" Ex. YY (Schoenfeld Testimony) at 763:13-15 ("[T]hey're [i.e., the Pimentel 2006 study] trying to assess on a weekly basis what did the patients say about how much their global IBS symptoms were improved compared to baseline."). Bloating is a symptom of IBS-D. *See supra* SUF ¶¶ 50-51;

*see also* Ex. YY (Schoenfeld Testimony) at 515:7-11 (Q: "Who is it that assesses whether there is adequate relief of the IBS-D symptoms?" A: "Ultimately, it's the patient. This is a disorder that's characterized by the patient's subjective assessment of their bloating and cramping and loose, watery stools."). In addition, *Norwich I DC* determined that Pimentel 2006 and the RFIB 2001 Study Protocol disclose a 14-day duration of rifaximin therapy to treat IBS-D and symptoms thereof. *See supra* SUF ¶¶ 11, 12, 15. Claim 3 of the '571 patent and claim 6 of the '912 patent do not modify the duration of treatment, which claim 1 of both patents—like the Invalidated IBS-D Claims—requires to be 14 days. *See supra* SUF ¶¶ 44, 55.

38. The parties did not discuss the 7 Days Limitations during *Norwich I DC*, and the district court's opinion nowhere mentions that limitation in its obviousness analysis. *See* 2022 WL 3225381, at *18-22.

**DEFENDANTS' RESPONSE**: Disputed. Judge Andrews in *Norwich I DC* considered evidence that Pimentel 2006 discloses reductions of IBS and IBS-D symptoms "achieved following 7 days after the administration of rifaximin[.]" Ex. YY (Schoenfeld Testimony) at 763:13-15 ("[T]hey're [i.e., the Pimentel 2006 study] trying to assess on a weekly basis what did the patients say about how much their global IBS symptoms were improved compared to baseline."). The *Norwich I DC* trial addressed the association of an effect achieved following 7 days after the administration of rifaximin with the durability of response recited in claim 1 of the '569 patent. *Id.* at 817:15-818:2 (describing Example 2 of the '569 patent specification as a "measure of efficacy based on the subject's answers to the weekly subject global assessment question over the four-week study duration in relation to their IBS symptoms"); *id.* at 818:7-14 ("Example 3 [sic, 2] clearly ties Figure 3 to using a dose of 14 days of rifaximin 550 milligrams three times a day[,]" and the design in Figure 3 "assess[es] the durability of response."). In any

event, the method underlying claim 3 of the '571 patent and claim 6 of the '912 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 44, 55. The *Norwich I DC* analysis determined that Pimentel 2006 and the RFIB 2001 Protocol render obvious methods of administering rifaximin 550 mg TID for 14 days to treat IBS and IBS-D and provide "adequate relief" of the symptoms thereof, as the Invalidated IBS-D Claims require. *See* Additional Fact ¶ 15, *supra*.

39. The phrases "achieved following," "7 days," and "after the administration" are not found in the *Norwich I DC* opinion. *See generally* 2022 WL 3225381. The *Norwich I DC* opinion does not include any factual findings addressing whether a reduction in IBS symptoms and/or bloating associated with IBS-D "achieved following 7 days after the administration of rifaximin" was disclosed in the alleged prior art. *See id.* at *16-22. Nor does it include any discussion regarding whether such a requirement would affect its obviousness analysis of the Adjudicated IBS Claims. *See id.*

**<u>DEFENDANTS' RESPONSE</u>**: Disputed. The phrase "7 days" is found in the *Norwich I DC* opinion. *See* 2022 WL 3225381, at *22 ("The duration of response, may be, for example, 2 days, 7 days, two weeks, 3 weeks, 4 weeks, 12 weeks, between about 1 week and about 24 weeks or longer.") (quoting the '569 patent at 11:50-53). The method underlying claim 3 of the '571 patent and claim 6 of the '912 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 44, 55. The *Norwich I DC* analysis determined that Pimentel 2006 and the RFIB 2001 Protocol render obvious methods of administering rifaximin 550 mg TID for 14 days to treat IBS and IBS-D and provide "adequate relief" of the symptoms thereof, as the Invalidated IBS-D Claims require. *See* Additional Fact ¶ 15, *supra*.

40. Neither *Norwich I DC* nor *Norwich I CAFC* contains evidence or substantive discussions about whether the RFIB 2001 Study Protocol and Pimentel 2006 disclose a reduction of IBS symptoms or bloating associated with IBS-D "following 7 days after the administration of rifaximin" or of the treatment of bloating associated with IBS-D. *Id.*; *Norwich I CAFC*, 98 F.4th at 1060-64.

**DEFENDANTS' RESPONSE**: Disputed. Judge Andrews in *Norwich I DC* considered evidence that Pimentel 2006 discloses reductions of IBS and IBS-D symptoms "achieved following 7 days after the administration of rifaximin[.]" Ex. YY (Schoenfeld Testimony) at 763:13-15 ("[T]hey're [i.e., the Pimentel 2006 study] trying to assess on a weekly basis what did the patients say about how much their global IBS symptoms were improved compared to baseline."). In any event, the method underlying claim 3 of the '571 patent and claim 6 of the '912 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 44, 55. The *Norwich I DC* analysis determined that Pimentel 2006 and the RFIB 2001 Protocol render obvious methods of administering rifaximin 550 mg TID for 14 days to treat IBS and IBS-D and provide "adequate relief" of the symptoms thereof, as the Invalidated IBS-D Claims require. *See* Additional Fact ¶ 15, *supra*.

41. Neither *Norwich I DC* nor *Norwich I CAFC* construed "following 7 days after the administration of rifaximin."

**DEFENDANTS' RESPONSE**: Admitted that the phrase "following 7 days after the administration of rifaximin" was not subject to claim construction proceedings in *Norwich I*. Defendants dispute to the extent Plaintiffs allege that the phrase "following 7 days after the administration of rifaximin" cannot be encompassed by other phrasing.

42. Claim 2 of the '569 patent at issue in *Norwich I* required "wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms." Amneal Action D.I. 1-113-3 at Da0219.

**<u>DEFENDANTS' RESPONSE</u>**: Admitted.

43. The "durability of response" requirement in *Norwich I* relates to the amount of time the reduction in IBS symptoms lasts **after** removal from treatment: "wherein **removing the subject from treatment** after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms." Amneal Action D.I. 121-2, Johnson Decl. ¶ 26 (emphasis added).

**<u>DEFENDANTS' RESPONSE</u>**: Admitted that claim 1 of the '569 patent recites "wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms." The method underlying claims 1 and 2 of the '569 patent is the same as that of the '912 and '571 patents' claims: administering 550 mg of rifaximin TID for 14 days to treat IBS and IBS-D and the symptoms thereof. *See supra* SUF ¶¶ 2-9, 11, 12; *see also* Amneal Action, D.I. 23-1 at claim 1; Norwich Action, D.I. 26-1 at claim 1; Amneal Action, D.I. 23-2 at claim 3; Norwich Action, D.I. 26-2 at claim 3; Ex. A at claim 3; Ex. B at claim 2.

44. In contrast, the claimed reduction of IBS symptoms or bloating associated with IBS-D following 7 days in this case occurs during treatment, not after removal of treatment. *Id*. at ¶¶ 23, 26.

**<u>DEFENDANTS' RESPONSE</u>**: Disputed. The words or phrases "during treatment"; "intra-treatment"; or "before removal from treatment" do not appear in claim 6 of the '912 patent or claim 3 of the '571 patent. *See supra* SUF ¶¶ 4,8. Indeed the phrase "achieved following 7 days after" leaves open-ended the time when the required effect occurs. Plaintiffs' interpretation is improper at least because it reads nonexistent limitations into the claim.

45. In his declaration, Dr. Johnson explains how at the time of the invention of the '571 and '912 patents, skilled artisans would have understood the 7 Days Limitations to be materially different from the limitation "wherein the durability of response comprises about 12 weeks of adequate relief of symptoms" found in the claims in *Norwich I*. Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 20-31.

**<u>DEFENDANTS' RESPONSE</u>**: Disputed. See SUF ¶¶ 43, 44. The phrase "achieved following 7 days after" leaves open-ended the time when the required effect occurs. Plaintiffs' interpretation is improper at least because it reads nonexistent limitations into the claim. For example, claim 6 does not recite an "initial dose" or "intra-treatment."

46. Dr. Johnson also explains that the patent claims and the shared specification of the '571 and '912 patents asserted in this case and those asserted in *Norwich I* ("IBS-D Shared Specification") make clear the differences between the 7 Days Limitations and durability of response limitation. *Id*. at ¶ 31.

**<u>DEFENDANTS' RESPONSE</u>**: Disputed. The phrase "achieved following 7 days after" leaves open-ended the time recited . Plaintiffs' interpretation is improper at least because it reads nonexistent limitations into the claim. For example, claim 6 does not recite an "initial dose" or "intra-treatment."

47. The ’571 and ’912 patents’ shared specification defines “durability of response” as “[a]dequate relief of symptoms after removal of treatment, continuous adequate relief of symptoms after removal of treatment.” *See, e.g.*, Amneal Action D.I. 1-113-3 at Da0024, Da064, Da0180, Da0210.

**DEFENDANTS’ RESPONSE**: Admitted that the specification states, “As used herein, “durability of response” includes for example, adequate relief of symptoms after removal of treatment, continuous adequate relief of symptoms after removal of treatment, or response that is greater than or superior to placebo response. A response by a subject may be considered durable, for example, if they have a response to the rifamycin class antibiotic after removal from treatment.” *See*, *e.g.*, Amneal Action, D.I. 23-2 (’912 patent) at 13:27-34. Disputed that the ’571 and ’912 patents “define” “durability of response.”

48. The ’571 and ’912 patents’ shared specification explains, “A response by a subject may be considered durable, for example, if they have a response of the rifamycin class antibiotic after removal from treatment.” *Id.*

**DEFENDANTS’ RESPONSE**: Admitted that the specification states, “As used herein, “durability of response” includes for example, adequate relief of symptoms after removal of treatment, continuous adequate relief of symptoms after removal of treatment, or response that is greater than or superior to placebo response. A response by a subject may be considered durable, for example, if they have a response to the rifamycin class antibiotic after removal from treatment.” *See, e.g.*, Amneal Action, D.I. 23-2 (’912 patent) at 13:27-34.

49. Salix’s expert, Dr. Phillip Schoenfeld, testified in *Norwich I DC* that durability of response refers to “continu[ing] to have adequate relief of [ ] symptoms beyond completing the

antibiotic course . . . for a certain number of weeks after I complete 14 days of antibiotics." *See, e.g*, Dkt. 120-4 at 518:21-25.

**DEFENDANTS' RESPONSE**: Admitted that Plaintiffs' expert, Dr. Schoenfeld testified:

> So durability of response refers to the idea that with respect to rifaximin that once I complete 14 days of treatment with antibiotics that I will continue to have adequate relief of my symptoms beyond completing the antibiotic course. If I had to take antibiotics every single day, then that would be problematic. So durability of response means I continue to have adequate relief of my symptoms for a certain number of weeks after I complete 14 days of antibiotics.

Ex. YY (Day 2 and Day 3 Trial Transcripts [1.1](D.I. 169, 170), *Norwich I DC*) at 518:21-519:4 (hereinafter, "Schoenfeld Testimony").

50. Dr. Schoenfeld also testified in *Norwich I DC* that a skilled artisan would understand "durability of response" to mean "once the antibiotic is stopped, any relief of IBS-D symptoms that occur while on the antibiotic does not immediately go away. When you complete 14 days of treatment, you continue to have relief of your IBS-D symptoms." *Id*. at 814:13-20.

**DEFENDANTS' RESPONSE**: Admitted that Dr. Schoenfeld testified:

> A POSA would understand that there is -- once the antibiotic is stopped, any relief of IBS-D symptoms that occur while on the antibiotic does not immediately go away. When you complete 14 days of treatment, you continue to have relief of your IBS-D symptoms. And when I say relief, I should emphasize that means adequate relief for reduction in the frequency of your IBS-D symptoms and a reduction in the severity of those IBS-D symptoms when they do occur.

Ex. YY (Schoenfeld Testimony) at 518:21-519:4.

51. *Norwich I DC* did not determine whether the combination of Pimentel 2006 and RFIB 2001 Study Protocol disclosed "the treating of bloating comprises a reduction of bloating

from baseline symptoms established prior to treatment" ('571 patent, claim 4) or "treating one or more symptoms of IBS comprises a reduction in symptoms defined by an affirmative response from the subject when asked whether they had a reduction in symptoms of IBS" ('912 patent, claim 7).

**DEFENDANTS' RESPONSE**: Disputed. Claim 4 of the '571 patent does not recite "the treating of bloating comprises a reduction of bloating from baseline symptoms established prior to treatment." In any event, the court in *Norwich I DC* expressly found that Pimentel 2006 and the RFIB 2001 Study Protocol disclose all limitations of the Invalidated IBS-D Claims. 2022 WL 3225381, at *17; *see also* SUF ¶ 15, *supra*. The foregoing conclusion encompasses the requirement in claim 2 of the '569 patent that "removing the subject from treatment after the 14 days [of administering rifaximin 550 mg TID] results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms." *See supra* SUF ¶¶ 10, 12. During the *Norwich I DC* trial, Dr. Schoenfeld testified: "'Adequate relief of symptoms' is a term of the art that was the primary endpoint that was used in the IBS treatment trials circa 2008 as well as reflecting what we ask patients about when we see them after a treatment." Ex. YY (Schoenfeld Testimony) at 514:9-12; *see also id.* at 515:7-13 (Q: "Who is it that assesses whether there is adequate relief of the IBS-D symptoms?" A: "Ultimately, it's the patient. This is a disorder that's characterized by the patient's subjective assessment of their bloating and cramping and loose, watery stools. As a physician, I may ask some specific questions to guide the discussion."). Dr. Schoenfeld further testified that "the patient's subjective assessment of their symptoms as well as the physician asking some additional questions about specific symptoms is going to allow an assessment of whether or not the patient's had adequate relief." Ex. YY (Schoenfeld Testimony) at 821:19-23. The court in

*Norwich I DC* "credit[ed]" this testimony "that patient-reported 'adequate relief' is used to determine IBS-D treatment success in the field." *Norwich I DC* at *22 (citing Tr. 519:15-22; 821:9-822:1). Plaintiffs also represented in briefing following the *Norwich I DC* trial: "The '569 patent teaches an objective method for 'adequate relief:' [sic] a 'yes' response from a patient asked if they have had adequate relief." Exhibit ZZ (Plaintiffs' Answering Post-Trial Brief on Validity (D.I. 181), *Norwich I DC*) at 33; *see also* Exhibit AAA (Plaintiffs' Proposed Findings of Fact on Infringement and Secondary Considerations (D.I. 175), *Norwich I DC*) at ¶ 105 ("A POSA would understand 'adequate relief of symptoms' in claim 2 of the '569 patent as a term of art reflecting the goal of IBS-D treatment—a positive response when a patient is asked if rifaximin has adequately relieved his/her symptoms."). Moreover, the method underlying claim 4 of the '571 patent and claim 7 of the '912 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 42, 46, 53, 57.

52. *Norwich I DC* did not address, much less determine, whether or not soliciting feedback from patients regarding symptom improvement is a practice integral to treating symptomatic medical conditions.

**DEFENDANTS' RESPONSE**: Disputed. The court in *Norwich I DC* found that "IBS-D is a collection of symptoms and there is no biomarker to determine a successful overall treatment of IBS-D." *Norwich I DC* at *22. Judge Andrews credited testimony from Dr. Schoenfeld that "patient-reported 'adequate relief' is used to determine IBS-D treatment success in the field." *Id.* (citing Tr. 519:15-22; 821:9-822:1); *see also* Exhibit YY (Schoenfeld Testimony) at 519:15-22 (Q: "So in clinical practice, how would the durability of response be measured?" A: "So, in clinical practice, you're essentially asking a patient, you know, how they have done since I last saw them. If the patient says to me, I felt good for the two weeks I was taking the antibiotics, but

two days after I stopped them, I went back to feeling horrible again, then there's no durability of response."). Moreover, the method underlying claim 4 of the '571 patent and claim 7 of the '912 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 42, 46, 53, 57. Plaintiffs have not identified a genuine dispute concerning how, as a practical matter, a symptomatic medical condition like IBS (including IBS-D) could be treated without feedback from patients regarding their symptom improvement. *See id.*

53. The phrases "defined by," "affirmative response," and "asked whether" are not found in the *Norwich I DC* opinion. *See generally* 2022 WL 3225381. The *Norwich I DC* opinion does not include any factual findings addressing whether a reduction in symptoms defined by or reduction in bloating comprising "an affirmative response from the subject when asked" was disclosed in the alleged prior art. *See id.* at *16-22. Nor does it include any discussion regarding whether such a requirement would affect its obviousness analysis of the Adjudicated IBS Claims. *See id.*

**DEFENDANTS' RESPONSE**: Admitted that the phrases "defined by"; "affirmative response"; and "asked whether" do not appear in the *Norwich I DC* opinion. Otherwise disputed. The court in *Norwich I DC* found that the prior art discloses all limitations of the Invalidated IBS-D Claims. *See supra* SUF ¶ 15. The method underlying claim 4 of the '571 patent and claim 7 of the '912 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 42, 46, 53, 57. The court in *Norwich I DC* additionally found that "IBS-D is a collection of symptoms and there is no biomarker to determine a successful overall treatment of IBS-D." *Norwich I DC* at *22. Judge Andrews credited testimony from Dr. Schoenfeld that "patient-reported 'adequate relief' is used to determine IBS-D treatment success in the field." *Id.* (citing Tr. 519:15-22; 821:9-822:1); *see also* Exhibit YY (Schoenfeld Testimony) at 519:15-22 (Q: "So

in clinical practice, how would the durability of response be measured?" A: "So, in clinical practice, you're essentially asking a patient, you know, how they have done since I last saw them. If the patient says to me, I felt good for the two weeks I was taking the antibiotics, but two days after I stopped them, I went back to feeling horrible again, then there's no durability of response.").

54. Dr. Johnson opines that neither Pimentel 2006 nor RFIB 2001 Study Protocol discloses "the reduction of bloating associated with IBS-D comprising an affirmative response from a subject within the 14-day treatment period," (Ex. E, Johnson Rebuttal ¶¶ 471, 475), or the "reduction of one or more IBS symptoms comprising an affirmative response from a subject within the 14-day treatment period," (*id.* ¶¶ 908, 911).

**DEFENDANTS' RESPONSE**: Disputed that "neither Pimentel 2006 nor RFIB 2001 Study Protocol discloses 'the reduction of bloating associated with IBS-D comprising an affirmative response from a subject within the 14-day treatment period,' [or] the 'reduction of one or more IBS symptoms comprising an affirmative response from a subject within the 14-day treatment period.'" Plaintiffs' Additional Fact ¶ 53 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. In any event, the court in *Norwich I DC* found that Pimentel 2006 and the RFIB 2001 Protocol disclose all limitations of the Invalidated IBS-D Claims. *See supra* SUF ¶ 15. Disputed that the recited characterizations of the results of administering the dosing regimen of claim create a patentable distinction. The method underlying claim 4 of the '571 patent and claim 7 of the '912 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 42, 46, 53, 57. Neither claim recites a temporal limitation.

**D. *Norwich I* Did Not Address the Differences Between IBS and IBS-D**

55. The claims of the ’571 patent require “treating bloating associated with diarrhea-predominant irritable bowel syndrome.” ’571 patent, cl 1. Claim 3 of the ’912 patent requires that “the IBS is diarrhea predominant IBS.” ’912 patent, cl. 3.

**DEFENDANTS’ RESPONSE**: Admitted.

56. The *Norwich I DC* opinion acknowledged that “[t]he parties d[id] not discuss whether there is any difference between the motivation to use rifaximin to treat IBS and to treat IBS-D.” 2022 WL 3225381, at *19, n. 3.

**DEFENDANTS’ RESPONSE**: Admitted that the *Norwich I DC* opinion states:

> The parties do not discuss whether there is any difference between the motivation to use rifaximin to treat IBS and to treat IBS-D. I think a POSA would have been motivated to treat IBS-D and would have had a reasonable expectation of success in doing so, even though much of the prior art describes the treatment of “IBS.” About one third of IBS patients have IBS-D, and there is no evidence in the record that a POSA would expect an IBS-D patient to respond differently to treatment than a patient with another form of IBS. (Tr. 622:21-623:1).

*Norwich I DC* at *19, n. 3.

57. In contrast, the evidence here shows the predominant symptoms underlying IBS-D differ from the predominant symptoms underlying other IBS subtypes. *See, e.g.*, Ex. X, Crespin Dep. at 114:15-115:2 (confirming that “abnormal frequency of hard and/or lumpy stool that is difficult to pass is typically associated with IBS-C,” whereas “abnormal frequency of mushy and/or watery stool is typically associated with IBS-D”); *see also* Ex. Z, Johnson Op. Rpt. (Norwich), ¶¶ 48-49 (graphically depicting sub-type classifications based on predominant bowel habit and showing that the Rome III diagnostic criteria include “Onset associated with a change in frequency of stool” and “Onset associated with a change in form (appearance) of stool”); Ex. H, Ehrenpreis Rebuttal ¶¶ 30-31 (describing subtypes and differences in symptoms); Ex. K, Harary

Dep. at 15:1-15:11 (agreeing that "all IBS-D patients experience diarrhea" and noting that "Not all patients with diarrhea have IBS . . . It's diarrhea combined with other symptoms that define IBS").

**<u>DEFENDANTS' RESPONSE</u>**: Disputed. Plaintiffs' Additional Fact ¶ 56 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. *See* SUF ¶ 38. Regardless, the *Norwich I DC* opinion found there were different subtypes of IBS, including IBS-D. *Norwich I DC* at *16.

58. Salix expert Dr. Eli Ehrenpreis included the following graphic highlighting symptomatic differences across subtypes:




*Id.* ¶ 31.

**<u>DEFENDANTS' RESPONSE</u>**: Plaintiffs' Additional Fact ¶ 57 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. *See* SUF ¶¶ 38.

59. In 2008, POSITAs had different treatment approaches for IBS patients depending on their predominant symptoms and subtype. *See, e.g.*, Ex. I, Ehrenpreis Dep. at 56:8-57:18 ("The

treatment would depend on the predominance of symptoms. So, for example, some patients with IBS have a predominance of constipation. So they would -- other medications were used in that case."); Ex. F, Johnson Dep. at 42:23-43:22 (explaining that in 2008, treatments for IBS-D included alosetron, immodium, antispasmodics, and dicyclomine, whereas IBS-C was instead treated with "a stool softener," "osmotic type of agent," laxatives," and antispasmodics).

**DEFENDANTS' RESPONSE**: Admitted that clinicians in 2008 "had different treatment approaches for IBS patients depending on their predominant symptoms and subtype," including rifaximin. *See Norwich I DC* at *19 ("Widespread off-label use reflects a motivation to use rifaximin for the treatment of IBS-D with a reasonable expectation of success" and "Several pieces of prior art reported success in treating IBS with rifaximin."). Plaintiffs' Additional Fact ¶ 58 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded.

60. Dr. Johnson also highlights that Defendants' prior art references fail to distinguish IBS subtypes and/or provide results for particular IBS subtypes. *See, e.g.*, Ex. E, Johnson Rebuttal ¶ 171 (explaining Pimentel 2006 "does not address the treatment of IBS-D or alternating IBS at all"); *see also id.* ¶¶ 145, 150, 157 (Lin patents), 161 (Pimentel 2005), 190 (Sharara), 206 (Yang), 233 (Pimentel 2011), 239 (Weinstock 2011), 257 (Viscomi).

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 59 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. Disputed that "Defendants' prior art references fail to distinguish IBS subtypes and/or provide results for particular IBS subtypes" at least because the court in *Norwich I DC* found that the prior art—namely Pimentel 2006 and the RFIB 2001 Protocol—disclose all

limitations of the Invalidated IBS-D Claims, including treating IBS and IBS-D and the symptoms thereof. *See* SUF ¶ 15, *supra*.

**E. *Norwich I* Did Not Address Female Subjects**

61. The asserted claims of the '912 patent and '571 patent require treating a "female subject." *See, e.g.*, '912 patent, cl. 1; '571 patent, cl. 1.

**DEFENDANTS' RESPONSE**: Admitted that '912 patent and '571 patents require "administering, 550 mg of rifaximin TID for 14 days to the female subject, thereby treating [one or symptoms of IBS / bloating associated with dIBS] in the female subject."

62. The words "gender," "sex," "female," "male," "woman," "women," "man" and "men" are not found anywhere in the *Norwich I DC* opinion. *See generally* 2022 WL 3225381. The *Norwich I DC* opinion does not include any factual findings addressing gender/sex, nor any discussion regarding whether gender/sex would affect its obviousness analysis of the then-asserted "IBS-D Patents." *See id.* at *16-22 (discussing obviousness of the then-asserted "IBS-D Patents").

**DEFENDANTS' RESPONSE**: Admitted that the words "gender"; "sex"; "female"; "male"; "woman"; "women"; "man"; and "men" do not appear verbatim in the *Norwich I DC* opinion, but a "female subject" is instantly envisaged by a "subject" or "subject 65 years of age or older" recited in the Invalidated IBS-D Claims. *See* SUF ¶¶ 26-27, 34-35 The method underlying the asserted claims of the '912 patent and '571 patent is the same as that of the Invalidated IBS-D Claims. *See* SUF ¶¶ 34, 35, 49, *supra*.

63. Dr. Johnson opines Pimentel 2006 (i) "did not delineate the results by gender," (Ex. E, Johnson Rebuttal ¶ 169), and (ii)"does not disclose the reduction of bloating associated with IBS-D or other IBS symptoms specifically in a female subject," (*id.* ¶ 171).

**DEFENDANTS' RESPONSE**: Disputed. Plaintiffs' Additional Fact ¶ 62 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. Regardless, the trial court in *Norwich I DC* found that "Pimentel 2006 reported sustained improvement in IBS symptoms for patients aged 18-65 for at least 10 weeks on a 400 mg TID, 10-day regimen," and a "female subject" is instantly envisaged by a "patient." *See* SUF ¶¶ 26-27, 34-35. Bloating is symptom of IBS and IBS-D. SUF ¶¶ 50-51.

64. Patients treated according to claim 1 of the '571 patent will not necessarily experience the "reduction of bloating" associated with IBS-D, as required by claim 2. Ex. X, Crespin Dep. at 65:1-20, 66:15-19 ("There are some patients whose bloating will improve and there's some who will not."); Ex. F, Johnson Dep. at 113:2-17 (confirming he has had certain "patients diagnosed with IBS-D with the symptom of bloating that did not achieve relief of IBS-D following [a] course of rifaximin," "550 milligrams three times a day for 14 days).

**DEFENDANTS' RESPONSE**: Admitted that not all patients treated with 550 mg of rifaximin TID for 14 days will experience a reduction in the symptom of bloating as recited in claim 3. Disputed that claim 2's characterization of the result of administering the dosing regimen of claim 1 creates a patentable distinction over the Invalidated IBS-Claims. Further, the '571 patent does not disclose a method wherein a reduction of bloating is necessarily achieved. *See, e.g.*, Amneal Action D.I. 23-1 ('571 patent) at 36:33-41:15 (Tables 17-24). Moreover, Plaintiffs' expert, Dr. Johnson, testified that "There's no promise that anything will work when a medication is given, an intervention is made. We treat the patient in our best opportunity to do well for the patient. The – whatever the intervention, in this case, the intervention here was rifaximin, we have no guarantee that it's going to work. We hope it does." Ex. F (Johnson Dep.) at 168:21-169:3.

**F. Defendants Failed to Provide Evidence of Inherency**

65. Patients treated according to claim 1 of the ’571 patent will not necessarily achieve a “reduction of bloating” associated with IBS-D “following 7 days after the administration of rifaximin,” as required by the claim 3. Ex. X, Crespin Dep. at 67:5-11 (agreeing that “treating a patient according to Claim 1 is not necessarily going to result in a bloating reduction at the time frame required by Claim 3”); Ex. K, Harary Dep. at 150:8-151:11 (testifying that a reduction in bloating “achieved following seven days after administration” “sometimes occurs in an individual patient and it sometimes does not”).

**DEFENDANTS’ RESPONSE**: Admitted that not all patients treated with 550 mg of rifaximin TID for 14 days will experience a reduction in the symptom of bloating following 7 days after the administration of rifaximin. Disputed that claim 3’s characterization of the result of administering the dosing regimen of claim 1 creates a patentable distinction over the Invalidated IBS-Claims. The ’571 patent does not disclose a method wherein a reduction of bloating is necessarily achieved. *See*, *e.g.*, Amneal Action D.I. 23-1 (’571 patent) at 36:33-41:15 (Tables 17-24). Moreover, Plaintiffs’ expert, Dr. Johnson, testified that “There’s no promise that anything will work when a medication is given, an intervention is made. We treat the patient in our best opportunity to do well for the patient. The – whatever the intervention, in this case, the intervention here was rifaximin, we have no guarantee that it’s going to work. We hope it does.” Ex. F (Johnson Dep.) at 168:21-169:3. Bloating is a symptom of IBS and IBS-D. *See supra* ¶¶ 50-51. *Norwich I DC* invalidated as obvious methods of treating IBS and IBS-D and the symptoms thereof. *See supra* ¶¶ 10-12.

66. Patients treated according to claim 1 of the ’571 patent will not necessarily experience the “reduction of bloating” associated with IBS-D that “comprises an affirmative response from the subject when asked,” as required by claim 4. Ex. X, Crespin Dep. at 67:13-68:1.

**DEFENDANTS' RESPONSE**: Admitted that not all patients treated with 550 mg of rifaximin TID for 14 days will experience a reduction in the symptom of bloating that comprises an affirmative response from the subject when asked. Disputed that claim 4's characterization of the result of administering the dosing regimen of claim 1 creates a patentable distinction over the Invalidated IBS-Claims. In any event, the '571 patent does not disclose a method wherein a reduction of bloating is necessarily achieved in every subject. *See*, *e.g.*, Amneal Action D.I. 23-1 ('571 patent) at 36:33-41:15 (Tables 17-24). Moreover, Plaintiffs' expert, Dr. Johnson, testified that "There's no promise that anything will work when a medication is given, an intervention is made. We treat the patient in our best opportunity to do well for the patient. The – whatever the intervention, in this case, the intervention here was rifaximin, we have no guarantee that it's going to work. We hope it does." Ex. F (Johnson Dep.) at 168:21-169:3. Bloating is a symptom of IBS and IBS-D. *See supra* ¶¶ 50-51. *Norwich I DC* invalidated as obvious methods of treating IBS and IBS-D and the symptoms thereof. *See supra* ¶¶ 10-12.

67. Patients treated according to claim 1 of the '912 patent will not necessarily experience the "reduction of the one or more symptoms," as required by claim 5. Ex. X, Crespin Dep. at 58:23-59:11 ("The patient may not respond to treatment.").

**DEFENDANTS' RESPONSE**: Admitted that not all patients treated with 550 mg of rifaximin TID for 14 days will experience a reduction in their symptoms. Disputed that claim 5's characterization of the result of administering the dosing regimen of claim 1 creates a patentable distinction. The'912 patent does not disclose a method wherein a reduction of symptoms is necessarily achieved. *See*, *e.g.*, Amneal Action D.I. 23-2 ('912 patent) at 35:55-43:54 (Tables 17-25). Moreover, Plaintiffs' expert, Dr. Johnson, testified that "[t]here's no promise that anything will work when a medication is given, an intervention is made. We treat

the patient in our best opportunity to do well for the patient. The – whatever the intervention, in this case, the intervention here was rifaximin, we have no guarantee that it's going to work. We hope it does." Ex. F (Johnson Dep.) at 168:21-169:3. In any event, *Norwich I DC* invalidated as obvious methods of treating IBS and IBS-D and the symptoms thereof. *See supra* ¶¶ 10-12.

68. Patients treated according to claim 1 of the '912 patent will not necessarily achieve a "reduction of the one or more symptoms" "following 7 days after the administration of rifaximin," as required by claim 6. Ex. X, Crespin Dep. at 59:18-60:2 ("[D]ifferent patients respond differently. Some patients respond first day, some patients respond day 15, some patients respond day 22.").

**DEFENDANTS' RESPONSE**: Admitted that not all patients treated with 550 mg of rifaximin TID for 14 days will experience a reduction in their symptoms following 7 days after the administration of rifaximin. Disputed that claim 6's characterization of the result of administering the dosing regimen of claim 1 creates a patentable distinction. The '912 patent does not disclose a method wherein a reduction of symptoms is necessarily achieved. *See*, *e.g.*, Amneal Action D.I. 23-2 ('912 patent) at 35:55-43:54 (Tables 17-25). In any event, *Norwich I DC* invalidated as obvious methods of treating IBS and IBS-D and the symptoms thereof. *See supra* ¶¶ 10-12.

69. Patients treated according to claim 1 of the '912 patent will not necessarily experience the "reduction in symptoms defined by an affirmative response from the subject when asked," as required by claim 7. Ex. X, Crespin Dep. at 60:8-21.

**DEFENDANTS' RESPONSE**: Admitted that not all patients treated with 550 mg of rifaximin TID for 14 days will experience a reduction in their symptoms defined by an affirmative response from the subject when asked. Disputed that claim 7's characterization of

the result of administering the dosing regimen of claim 1 creates a patentable distinction. The ’912 patent does not disclose a method wherein a reduction of symptoms is necessarily achieved. *See*, *e.g.*, Amneal Action D.I. 23-2 (’912 patent) at 35:55-43:54 (Tables 17-25). In any event, *Norwich I DC* invalidated as obvious methods of treating IBS and IBS-D and the symptoms thereof. *See supra* ¶¶ 10-12.

70. Figure 13 of the ’571 and ’912 patents shows, at seven and fourteen days after administration began, greater mean reduction in IBS symptoms (according to Daily Subject Global Assessment) among patients who received rifaximin, 550 mg TID, than those who received placebo:

FIG. 13




Ex. DD, Bortey Dep. at 28:12-31:6 (“So on a daily basis, subjects answer the question scored from zero to four. So zero is no deficit, four is extreme deficit with respect to the symptoms. So you take the average of the subject level on a weekly basis, and that's how you get a score for the subjects. So we do this at baseline and post-baseline, and you do the subtraction to get the change from baseline.”) (“The subtraction is what is depicted in the figure, it’s the change from baseline.”).

**DEFENDANTS' RESPONSE**: Disputed that Additional Fact ¶ 69 accurately characterizes Figure 13 of the '571 and '912 patents. For example, the data does not "show" data at "seven and fourteen days after administration began." It reports average daily scores across the group across the preceding week. Ex. DD (Bortey Dep.) at 30:6-31:6. For example, what is depicted at "Week 2" is the average of daily scores for Days 8 through 14 and does not show a symptom reduction from baseline for a "subject" on a specific day. *Id*.

71. Example 2 of the shared specification further explains that, in a prospective study "designed to evaluate the efficacy of a 14-day course of oral rifaximin at 550 mg TID in providing adequate relief from diarrhea-associated IBS (dIBS) symptoms," "[s]ubjects in the treatment group taking oral rifaximin respond 'Yes' more often than subjects who are not taking oral rifaximin" when asked about "adequate relief of your IBS symptom of bloating" "over the 4 week study duration":

> Another measure of efficacy is based on subjects' answers to the Weekly Subject Global Assessment (SGA) question over the 4 week study duration in relation to their IBS symptom of bloating. The SGA question is asked weekly as follows: "In the past 7 days, have you had adequate relief of your IBS symptom of bloating?" (Yes/No. Subjects in the treatment group taking oral rifaximin respond "Yes" more often than subjects who are not taking oral rifaximin. Other measures of efficacy include the changes in dIBS symptoms from baseline ***to each week of the 4 weeks in the study*** (e.g., abdominal pain and discomfort, ***bloating***, number of stools per day, stool consistency, urgency with loose or watery stools).

'571 patent at cols. 27-29; '912 patent at cols. 27-29; *see also* Fig. 3 (showing the "4 Week Treatment Period" including "RFX 550 2w/PBO 2w").

**DEFENDANTS' RESPONSE**: Admitted that Additional Fact ¶ 70 accurately quotes an excerpt of Example 2 of the '912 and '571 patents' shared specification, but excludes the portion of Example 2 directed to "adequate relief of dIBS symptoms," which includes bloating. In addition, Ex. 2 and Fig. 3 disclose a 14-day course of rifaximin and a two-week follow-up period

*following* the administration of rifaximin for a total four-week treatment period. Therefore, a weekly SGA question was asked in each of two weeks following the 14-day course of rifaximin.

### G. Pimentel and RFIB 2001 Study Protocol Do Not Render the Asserted Claims Obvious

72. Dr. Johnson opines that Pimentel 2006 and RFIB 2001 Study Protocol do not disclose all limitations of the '571 patent, claim 1. Ex. E, Johnson Rebuttal ¶¶ 292-295 (explaining why Pimentel 2006 "does not disclose treating IBS-D patients with 550 mg rifaximin TID for 14 days to treat bloating associated with IBS-D," including that the study "found no improvement in diarrhea or abdominal pain"); Ex. K, Harary Dep. at 24:16-21 (confirming he agrees "with Pimentel's conclusion that the VAS scores for diarrhea were not -- still statistically significant"); Ex. E, Johnson Rebuttal ¶ 296 ("While the RFIB 2001 Study Protocol mentions bloating in the exclusion criteria, it nowhere mentions bloating in the inclusion criteria of the study, let alone describes treating bloating associated with IBS-D with 550 mg TID."); *see also* Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 45-46 (Pimentel 2006), 55 (RFIB 2001 Study Protocol).

**DEFENDANTS' RESPONSE**: Disputed that "Pimentel 2006 and RFIB 2001 Study Protocol do not disclose all limitations of the '571 patent, claim 1." Plaintiffs' Additional Fact ¶ 71 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. In any event, the court in *Norwich I DC* found that Pimentel 2006 and the RFIB 2001 Protocol disclose all limitations of the Invalidated IBS-D Claims. *See supra* SUF ¶ 15. The method of claim 1 of the '571 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 48-51.

73. Dr. Johnson opines that Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional limitation recited by claim 2 of the '571 patent. Ex. E, Johnson Rebuttal ¶¶ 382-384 (explaining why Pimentel 2006 "does not disclose a reduction of bloating associated with

IBS-D" or a "reduction of bloating associated with IBS-D during a 14-day treatment period"); *id.* ¶¶ 385-386 (explaining why "the RFIB 2001 Study Protocol does not describe reduction of bloating associated with IBS-D from baseline symptoms established prior to treatment"); *see also* Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 45-46 (Pimentel 2006), 55 (RFIB 2001 Study Protocol).

**<u>DEFENDANTS' RESPONSE</u>**: Disputed that "Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional limitation recited by claim 2 of the '571 patent." Plaintiffs' Additional Fact ¶ 72 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. In addition, claim 2 recites a characterization of a result of administering the dosing regimen recited in claim 1. In any event, the court in *Norwich I DC* found that Pimentel 2006 and the RFIB 2001 Protocol disclose all limitations of the Invalidated IBS-D Claims. *See supra* SUF ¶ 15. The method underlying claim 2 of the '571 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 48-53.

74. Dr. Johnson opines that Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional 7-Day limitation recited by claim 3 of the '571 patent, including because Pimentel 2006's questionnaire was administered outside the claimed timeframe. Ex. E, Johnson Rebuttal ¶¶ 433-436 (explaining why Pimentel 2006 "does not disclose the reduction of bloating associated with IBS-D following seven days after the administration of rifaximin"); *id.* ¶¶ 437-439 (explaining why "the RFIB 2001 Study Protocol does not describe the reduction of bloating associated with IBS-D following 7 days after administration of the rifaximin"); *see also* Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 45, 47 (Pimentel 2006), 55 (RFIB 2001 Study Protocol).

**DEFENDANTS' RESPONSE**: Disputed that "Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional 7-Day limitation recited by claim 3 of the '571 patent, including because Pimentel 2006's questionnaire was administered outside the claimed timeframe." Plaintiffs' Additional Fact ¶ 73 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. In addition, claim 3 recites a characterization of a result of administering the dosing regimen recited in claim 1. In any event, the court in *Norwich I DC* found that Pimentel 2006 and the RFIB 2001 Protocol disclose all limitations of the Invalidated IBS-D Claims. *See supra* SUF ¶ 15. The method underlying claim 3 of the '571 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 48-51, 54-55.

75. Dr. Johnson opines that Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional limitation recited by claim 4 of the '571 patent. Ex. E, Johnson Rebuttal ¶¶ 468-474 (explaining why Pimentel 2006 "does not disclose reduction of bloating associated with IBS-D comprising an affirmative response from a subject within the 14-day treatment period"); *id.* ¶¶ 475-476 (explaining why "the RFIB 2001 Study Protocol does not describe the reduction of bloating associated with IBS-D comprising an affirmative response from a subject"); *see also* Ex. [_], Johnson Decl. ¶¶ 45-46 (Pimentel 2006), 55 (RFIB 2001 Study Protocol).

**DEFENDANTS' RESPONSE**: Disputed that "Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional limitation recited by claim 4 of the '571 patent." Plaintiffs' Additional Fact ¶ 74 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. In addition, claim 4 recites a characterization of a result of administering the dosing regimen recited in claim 1. In any event, the court in *Norwich I DC* found that Pimentel 2006 and the RFIB 2001 Protocol

disclose all limitations of the Invalidated IBS-D Claims. *See supra* SUF ¶ 15. The method underlying claim 4 of the ’571 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 48-51, 56-57.

76. Dr. Johnson opines that Pimentel 2006 and RFIB 2001 Study Protocol do not disclose all limitations of the ’912 patent, claim 1. Ex. E, Johnson Rebuttal ¶¶ 731-734 (explaining that Pimentel 2006 “does not disclose treating patients with 550 mg rifaximin TID for 14 days”); *id.* ¶¶ 735-736 (explaining that RFIB 2001 Study Protocol “does not describe treating IBS patients with 500 mg rifaximin TID”); *see also* Ex. Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 60 (Pimentel 2006), 64 (RFIB 2001 Study Protocol).

**DEFENDANTS’ RESPONSE**: Plaintiffs’ Additional Fact ¶ 76 is irrelevant to the present motion and immaterial to the application of collateral estoppel and should therefore be disregarded. Disputed that “Pimentel 2006 and RFIB 2001 Study Protocol do not disclose all limitations of the ’912 patent, claim 1,” at least because the court in *Norwich I DC* found that Pimentel 2006 and the RFIB 2001 Protocol disclose all limitations of the Invalidated IBS-D Claims, including the same dosing regimen to “treat” or provide “adequate relief” of IBS-D symptoms. *See supra* SUF ¶ 15. The method of claim 1 of the ’912 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 33-35.

77. Dr. Johnson opines that Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional limitation recited by claim 3 of the ’912 patent. Ex. E, Johnson Rebuttal ¶¶ 793-795 (noting that Pimentel 2006 “found no improvement in diarrhea” and “does not disclose treating one or more symptoms of IBS-D”); *id.* ¶¶ 796-797 (addressing RFIB 2001 Study Protocol); *see also* Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 60 (Pimentel 2006).

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 76 is irrelevant to the present motion and immaterial to the application of collateral estoppel and should therefore be disregarded. Disputed that "Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional limitation recited by claim 3 of the '912 patent." at least because the court in *Norwich I DC* found that Pimentel 2006 and the RFIB 2001 Protocol disclose all limitations of the Invalidated IBS-D Claims, including claim 3 of the '667 patent that recites the same dosing regimen and the same limitation as claim 3 of the '912 patent. *See supra* SUF ¶ 15. The method of claim 3 of the '912 patent is the same as that of the Invalidated IBS-D Claims. *See supra* SUF ¶¶ 33-35.

78. Dr. Johnson opines that Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional limitation recited by claim 5 of the '912 patent. Ex. E, Johnson Rebuttal ¶¶ 838-841 (explaining that "Pimentel 2006 found no improvement in several major symptoms of IBS"); *id.* ¶ 842 ("Lacking any clinical data, the RFIB 2001 Study Protocol does not describe the reduction of one or more IBS symptoms from baseline symptoms established prior to treatment . . . ."); *see also* Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 60 (Pimentel 2006), 65 (RFIB 2001 Study Protocol).

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 77 is irrelevant to the present motion and immaterial to the application of collateral estoppel and should therefore be disregarded. In addition, claim 5 recites a characterization of a result of administering the dosing regimen recited in claim 1. Disputed that "Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional limitation recited by claim 5 of the '912 patent," at least because the court in *Norwich I DC* found that Pimentel 2006 and the RFIB 2001 Protocol disclose all limitations of

the Invalidated IBS-D Claims, including "treating" or achieving "adequate relief" of IBS-D symptoms by administering the same dosing regimen. *See supra* SUF ¶ 15, 41-42.

79. Dr. Johnson opines that Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional 7-Day limitation recited by claim 6 of the '912 patent, including because Pimentel 2006's questionnaire was administered outside the claimed timeframe. Ex. E, Johnson Rebuttal ¶¶ 873-879 (explaining why Pimentel 2006 "does not disclose the reduction of one or more IBS symptoms following 7 days after administration of the rifaximin"); *id.* ¶¶ 880-882 ("Lacking any clinical data, the RFIB 2001 Study Protocol does not describe the reduction of one or more IBS symptoms following 7 days after administration of the rifaximin . . . ."); *see also* Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 61 (Pimentel 2006), 65 (RFIB 2001 Study Protocol).

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 78 is irrelevant to the present motion and immaterial to the application of collateral estoppel and should therefore be disregarded. In addition, claim 6 recites a characterization of a result of administering the dosing regimen recited in claim 1. To the extent a response is required, disputed that "Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional 7-Day limitation recited by claim 6 of the '912 patent, including because Pimentel 2006's questionnaire was administered outside the claimed timeframe," at least because the court in *Norwich I DC* found that Pimentel 2006 and the RFIB 2001 Protocol disclose all limitations of the Invalidated IBS-D Claims, including "treating" or achieving "adequate relief" of IBS-D symptoms by administering the same dosing regimen. *See supra* SUF ¶¶ 15, 43-44.

80. Dr. Johnson opines that Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional limitation recited by claim 7 of the '912 patent. Ex. E, Johnson Rebuttal ¶¶ 904-909 (explaining why "Pimentel 2006 does not disclose or suggest reduction of one or more

IBS symptoms comprising an affirmative response from a subject within the 14-day treatment period"); *id.* ¶¶ 910-912 ("Lacking any clinical data, the RFIB 2001 Study Protocol does not describe the reduction of one or more IBS symptoms comprising an affirmative response from a subject . . . ."); *see also* Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 61 (Pimentel 2006), 65 (RFIB 2001 Study Protocol).

**<u>DEFENDANTS' RESPONSE</u>**: Plaintiffs' Additional Fact ¶ 79 is irrelevant to the present motion and immaterial to the application of collateral estoppel and should therefore be disregarded. In addition, claim 7 recites a characterization of a result of administering the dosing regimen recited in claim 1. To the extent a response is required, disputed that "Pimentel 2006 and RFIB 2001 Study Protocol do not disclose the additional limitation recited by claim 7 of the '912 patent." The court in *Norwich I DC* expressly found that Pimentel 2006 and the RFIB 2001 Study Protocol disclose all limitations of the Invalidated IBS-D Claims. *See* SUF ¶ 15, *supra*. The foregoing conclusion encompasses the requirement in claim 2 of the '569 patent that "removing the subject from treatment after the 14 days [of administering rifaximin 550 mg TID] results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms." *See supra* SUF ¶¶ 10, 12. During the *Norwich I DC* trial, Plaintiffs' expert, Dr. Schoenfeld, testified: "'Adequate relief of symptoms' is a term of the art that was the primary endpoint that was used in the IBS treatment trials circa 2008 as well as reflecting what we ask patients about when we see them after a treatment." Exhibit YY (Schoenfeld Testimony ) at 514:9-12; *see also id.* at 515:7-13 (Q: "Who is it that assesses whether there is adequate relief of the IBS-D symptoms?" A: "Ultimately, it's the patient. This is a disorder that's characterized by the patient's subjective assessment of their bloating and cramping and loose, watery stools. As a physician, I may ask some specific questions to guide the discussion."). Dr. Schoenfeld further

testified that "the patient's subjective assessment of their symptoms as well as the physician asking some additional questions about specific symptoms is going to allow an assessment of whether or not the patient's had adequate relief." Ex. YY (Schoenfeld Testimony) at 821:19-23; *see also* Ex. AAA (Plaintiffs' Proposed Findings of Fact on Infringement and Secondary Considerations (D.I. 175), *Norwich I DC*) at ¶ 105 ("A POSA would understand 'adequate relief of symptoms' in claim 2 of the '569 patent as a term of art reflecting the goal of IBS-D treatment—a positive response when a patient is asked if rifaximin has adequately relieved his/her symptoms."). The court in *Norwich I DC* "credit[ed]" this testimony "that patient-reported 'adequate relief' is used to determine IBS-D treatment success in the field." *Norwich I DC* at *22 (citing Tr. 519:15-22; 821:9-822:1).

81. For each asserted claim, Dr. Johnson disagrees that a POSITA would have motivation to combine Pimentel 2006 with RFIB 2001 Study Protocol to reach the claimed invention, or have a reasonable expectation of success in doing so. Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 53, 63 (opining that "a POSITA would not have been motivated to combine that [Pimentel 2006] with the RFIB 2001 Study Protocol, let alone have a reasonable expectation of success in achieving the asserted claims"); Ex. E, Johnson Rebuttal ¶¶ 299-376 ('571 patent, claim 1), ¶¶ 387-416 ('571 patent, claim 2), ¶¶ 440-464 ('571 patent, claim 3), ¶¶ 477-495 ('571 patent, claim 4), ¶¶ 737-764 ('912 patent, claim 1), ¶¶ 798-811 ('912 patent, claim 3), ¶¶ 843-860 ('912 patent, claim 5), ¶¶ 883-900 ('912 patent, claim 6), ¶¶ 913-931 ('912 patent, claim 7).

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 80 is irrelevant to the present motion and immaterial to the application of collateral estoppel and should therefore be disregarded. *See* SUF ¶¶ 16, 20-22. To the extent a response is required, disputed that "a POSITA would [not] have motivation to combine Pimentel 2006 with RFIB 2001 Study Protocol . . . or have a

reasonable expectation of success in doing so," at least because the court in *Norwich I DC* expressly found that "[a] POSA would have been motivated to combine the RFIB 2001 Protocol and Pimentel 2006 with a reasonable expectation of success" to arrive[ ] at methods of administering rifaximin 550 mg TID for 14 days for "treating one or more [IBS-D] symptoms" or achieving "adequate relief of [IBS-D] symptoms." *Norwich I DC* at *17; *see also* SUF ¶ 16, *supra*.

82. Dr. Johnson describes extensive criticism of Pimentel 2006 by industry thought leaders at the time of the patent priority date, including Dr. Douglas Drossman ("one of the world's leading experts on IBS and IBS-D treatment") and Dr. Stephen Vanner (another "leading Gastroenterologist"). Amneal Action D.I. 121-2, Johnson Decl. ¶¶ 49-52; Ex. E, Johnson Rebuttal ¶¶ 174-177; *id.* ¶¶ 300-301 (highlighting contemporaneous critiques of Pimentel 2006 that described its findings as "inconclusive," directly questioned "the clinical significance of results," and referred to the research as an "unproven hypothesis").

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 81 is irrelevant to the present motion and to the application of collateral estoppel and should therefore be disregarded. *See* SUF ¶¶ 58-59. To the extent a response is required, disputed that there was "extensive criticism of Pimentel 2006" as of the alleged priority date of the '912 and '571 patents at least because the court in *Norwich I DC* considered and rejected Plaintiffs' allegations regarding purported shortcomings of Pimentel 2006 and other prior art and arguments concerning skepticism. 2022 WL 3225381, at *19-21; *see also* SUF ¶ 58, *supra*.

83. Dr. Johnson opines that "[g]iven these critiques by key opinion leaders and experts and the limitations of Pimentel 2006, a POSITA would not have been motivated to combine Pimentel 2006 with other references, let alone having a reasonable expectation of success in achieving the claimed inventions." *Id.* ¶ 178.

**<u>DEFENDANTS' RESPONSE</u>**: Plaintiffs' Additional Fact ¶ 82 is irrelevant to the present motion and to the application of collateral estoppel and should therefore be disregarded. To the extent a response is required, disputed that "a POSITA would not have been motivated to combine Pimentel 2006 with other references, let alone having a reasonable expectation of success in achieving" the claimed methods of treatment, and disputed to the extent Plaintiffs imply that any purported critiques were widely held in the field, at least because the court in *Norwich I DC* considered Plaintiffs' assertion of skepticism relating to rifaximin use in IBS patients and found the same to be insufficient to overcome obviousness of the Invalidated IBS-D Claims. *Norwich I DC* at *21; *see also* SUF ¶ 59, *supra*. The court in *Norwich I DC* also considered and rejected Plaintiffs' allegations regarding purported shortcomings of Pimentel 2006 and other prior art and motivations to combine Pimentel 2006 with other references. *Norwich I DC* at *19; *see also* SUF ¶ 58, *supra*.

84. Dr. Ehrenpreis also describes how "experts found the results supporting rifaximin use in IBS patients inconclusive and unconvincing," (Ex. H, Ehrenpreis Rebuttal ¶¶ 67-68, 70-71), and how "a POSA would have cause for concern regarding the publication (or lack thereof) of certain data associated with Pimentel 2006," (*id.* ¶ 69).

**<u>DEFENDANTS' RESPONSE</u>**: Plaintiffs' Additional Fact ¶ 83 is irrelevant to the present motion and to the application of collateral estoppel and should therefore be disregarded. *See* SUF ¶¶ 58-61. To the extent a response is required, disputed that "POSA would have cause for concern regarding the publication (or lack thereof) of certain data associated with Pimentel 2006 [,]" and disputed to the extent Plaintiffs imply that any purported belief that "the results supporting rifaximin use in IBS patients inconclusive and unconvincing" was widely held in the field, at least because, the court in *Norwich I DC* considered Plaintiffs' assertion of skepticism relating to

rifaximin use in IBS patients and found the same to be insufficient to overcome obviousness of the Invalidated IBS-D Claims. *Norwich I DC* at *21; *see also* SUF ¶ 59, *supra*. The court in *Norwich I DC* also considered and rejected Plaintiffs' allegations regarding purported shortcomings of Pimentel 2006 and other prior art. *Norwich I DC* at *20; *see also* SUF ¶ 58, *supra*.

85. Dr. Ehrenpreis opines that "[b]ecause of the lack of long-term studies, the inconclusive and unconvincing nature of the results purporting benefits for rifaximin use in IBS patients, and the possible dangers of long-term antibiotic use, a POSA as of February 26, 2008 would have been skeptical that rifaximin could lead to symptomatic benefit in IBS patients." *Id.* ¶ 71.

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 84 is irrelevant to the present motion and to the application of collateral estoppel and should therefore be disregarded. To the extent a response is required, disputed that "a POSA as of February 26, 2008 would have been skeptical that rifaximin could lead to symptomatic benefit in IBS patients[,]" and disputed that there was a "lack of long-term studies" and that results of studies were "inconclusive and unconvincing [in] nature[,]" and disputed to the extent Plaintiffs imply that concerns over purported "possible dangers of long-term antibiotic use" were widely held in the relevant field, at least because the court in *Norwich I DC* considered Plaintiffs' assertion of skepticism relating to rifaximin use in IBS patients and found the same to be insufficient to overcome obviousness of the Invalidated IBS-D Claims. *Norwich I DC* at *21; *see also* SUF ¶ 59, *supra*.

86. Regarding the RFIB 2001 Study Protocol, Dr. Johnson opines it does not disclose the results of the study. Amneal Action D.I. 121-2, Johnson Decl. ¶ 64; Ex. E Johnson Rebuttal ¶ 297, 309 ("It does not disclose the clinical results of any of the dosing regimen.").

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 85 is irrelevant to the present motion and to the application of collateral estoppel and should therefore be disregarded. *See* SUF ¶ 18, *supra*. To the extent a response is required, disputed at least because in *Norwich I DC*, Salix argued that the "RFIB 2001 Protocol did not disclose results" and the trial court was "unpersuaded" because the "available evidence persuaded a significant number of doctors who would have been qualified as POSAs to use rifaximin to treat IBS." *Norwich I DC* at *20. Further, the Federal Circuit in *Norwich I CAFC* rejected Salix's argument concerning a Phase II protocol and held that the RFIB 2001 Study Protocol "was not assert alone; it was asserted in combination with Pimentel." *Norwich I CAFC* at 1062.

87. Dr. Johnson further notes that Phase II studies were generally known to be a "poor predictor of drug success: >30% of drugs entering phase II studies fail to progress, and >58% of drugs go on to fail in phase III." *Id.*

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 86 is irrelevant to the present motion and to the application of collateral estoppel and should therefore be disregarded. *See* SUF ¶ 18, *supra.* Regardless, in *Norwich I*, Salix argued that the "RFIB 2001 Protocol did not disclose results" and the trial court was "unpersuaded" because the "available evidence persuaded a significant number of doctors who would have been qualified as POSAs to use rifaximin to treat IBS." *Norwich I DC* at *20.

88. Dr. Johnson further opines this "dearth" of clinical safety and efficacy data would not have provided a skilled artisan the motivation to combine the RFIB 2001 Study Protocol with Pimentel 2006 to achieve the asserted claims of the '571 patent or the '912 patent, much less a reasonable expectation of success in doing so. Amneal Action D.I. 121-2, Johnson Decl.¶¶ 58, 66; Ex. E, Johnson Rebuttal ¶¶ 300-303 (opining that a "POSITA would not have been motivated

to combine the 'unproven hypothesis' of Pimentel 2006 with the RFIB 2001 Study Protocol lacking any clinical data"); *id.* ¶¶ 309-311 ("In my opinion, a POSITA would not have believed a study would be successful just because it was initiated, particularly given the low success rate of Phase II trials . . . ."); *id.* ¶¶ 356-362 ("The RFIB 2001 Study Protocol also would not afford a POSITA that reasonable expectation of success because it contains only a study design, not clinical results.").

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 87 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. *See* SUF ¶¶ 16, 20-22. To the extent a response is required, disputed that a "'dearth' of clinical safety and efficacy data would not have provided a skilled artisan the motivation to combine the RFIB 2001 Study Protocol with Pimentel 2006 to achieve the asserted claims of the '571 patent or the '912 patent, much less a reasonable expectation of success in doing so[,]" and disputed that there was a "dearth" of clinical safety and efficacy data, at least because the court in *Norwich I DC* expressly found that "[a] POSA would have been motivated to combine the RFIB 2001 Protocol and Pimentel 2006 with a reasonable expectation of success." *Norwich I DC* at *17; *see also* SUF ¶ 16, *supra*.

89. The September 5, 2007 press release relating to the RFIB 2001 study ("RFIB 2001 Press Release") is not "by others" as required by pre-AIA 35 U.S.C. § 102(a), is not prior art and reflects work done by the inventors. "The RFIB Press Release quotes Dr. Bill Forbes, a named inventor, discussing the results of 'our' study, and was issued within one year of the priority date of the IBS-D Patents." Ex. E, Johnson Rebuttal ¶ 226.

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 88 states a legal conclusion and is irrelevant to the present motion and to the application of collateral estoppel to any asserted

claim at least because the Federal Circuit in *Norwich I CAFC* affirmed that the Invalidated IBS-D Claims were invalid as obvious without the RFIB 2001 Press Release. *Norwich I CAFC* at 1064 ("We [ ] need not decide whether or not the Press Release was prior art[.]"); *see also* SUF ¶¶ 16, 20-22, 59. Regardless, disputed that the RFIB 2001 Press Release is not prior art. *Norwich I DC* at *20.

90. Dr. Johnon opines, "[b]efore February 2008, key opinion leaders in the GI field also were skeptical that an antibiotic like rifaximin could safely and effectively treat IBS-D." Ex. E, Johnson Rebuttal ¶ 179; *see also id.* ¶¶ 304-307 (explaining how "experts in the field also questioned the use of antibiotics to treat IBS").

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 89 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. To the extent a response is required, disputed that "before February 2008, key opinion leaders in the GI field also were skeptical that an antibiotic like rifaximin could safely and effectively treat IBS-D," at least because the court in *Norwich I DC* considered Plaintiffs' assertion of skepticism relating to the use of an antibiotic to treat IBS-D and found the same to be insufficient to overcome obviousness of the Invalidated IBS-D Claims. *Norwich I DC* at *21; *see also* SUF ¶ 59, *supra*.

91. Dr. Johnson opines "[a] POSITA likewise would have been skeptical that SIBO contributed to IBS, IBS-D or alternating IBS and that antibiotics like Xifaxan® could treat IBS, IBS-D or alternating IBS by eradicating SIBO." Ex. E, Johnson Rebuttal ¶¶ 181, 304.

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 90 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. To the extent a response is required, disputed that "a POSITA [ ] would have been

skeptical that SIBO contributed to IBS, IBS-D or alternating IBS and that antibiotics like Xifaxan® could treat IBS, IBS-D or alternating IBS by eradicating SIBO" at least because the court in *Norwich I DC* considered Plaintiffs' assertion of skepticism relating to the association of SIBO and IBS (including IBS-D) and found the same to be insufficient to overcome obviousness of the Invalidated IBS-D Claims. *Norwich I DC* at *21; *see also* SUF ¶ 59, *supra*.

92. Dr. Ehrenpreis also posits that "even after additional references relating to SIBO were published, the field remained steadfastly skeptical of Dr. Pimentel's SIBO hypothesis." Ex. H, Ehrenpreis Rebuttal ¶ 72.

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 91 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. *See* SUF ¶¶ 58-59. To the extent a response is required, disputed that "even after additional references relating to SIBO were published, the field remained steadfastly skeptical of Dr. Pimentel's SIBO hypothesis," at least because the court in *Norwich I DC* considered Plaintiffs' assertion of skepticism relating to the association of SIBO and IBS (including IBS-D) and found the same to be insufficient to overcome obviousness of the Invalidated IBS-D Claims. *Norwich I DC* at *21; *see also* SUF ¶ 59, *supra*.

93. Dr. Johnson disagrees that "a POSITA would have been motivated to modify the Pimentel 2006 dosing" to "seek out the claimed 550 mg TID dosage administered over 14 days." Ex. E, Johnson Rebuttal ¶¶ 316 (explaining that "Pimentel 2006 does not suggest or even hint what the 'higher' dose might be"), 317 (explaining that "the highest reported dose used in Lauritano"—a reference Pimentel 2006 cites in a speculative statement about a "higher" dose—"was 1,200 mg of rifaximin—***the same dose used in Pimentel 2006***"). Dr. Johnson notes that Pimentel 2006

"teaches administering it [rifaximin] at a lower dose (400 mg) than the claimed 550 mg dose and for a shorter duration (10 days) than the claimed 14 days." *Id.* ¶ 318.

**<u>DEFENDANTS' RESPONSE</u>**: Plaintiffs' Additional Fact ¶ 92 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. *See* SUF ¶¶ 15-16, 20-22. To the extent a response is required, disputed that "a POSITA would [not] have been motivated to modify the Pimentel 2006 dosing" to "seek out the claimed 550 mg TID dosage administered over 14 days" at least because the district court in *Norwich I DC* expressly found that the same dosing regimen was invalid as obvious over the prior art, that "[a] POSA would have been motivated to combine the RFIB 2001 Protocol and Pimentel 2006 with a reasonable expectation of success[,]" and that "the prior art disclosed positive results in using rifaximin to treat IBS-D for a range of doses[.]" *Norwich I DC* at *17; *see also* SUF ¶¶ 16-17, 20-21, *supra*.

94. Dr. Johnson also "disagree[s] that a POSITA would have been motivated to look to the RFIB 2001 Study Protocol . . . to modify the dosing regimen described in Pimentel 2006." Ex. E, Johnson Rebuttal ¶ 319.

**<u>DEFENDANTS' RESPONSE</u>**: Plaintiffs' Additional Fact ¶ 93 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. *See* SUF ¶¶ 15-16, 20-22. To the extent a response is required, disputed that "a POSITA would [not] have been motivated to look to the RFIB 2001 Study Protocol . . . to modify the dosing regimen described in Pimentel 2006" at least because the district court in *Norwich I DC* expressly found that the same dosing regimen was invalid as obvious over the prior art, that "[a] POSA would have been motivated to combine the RFIB 2001 Protocol and Pimentel 2006 with a reasonable expectation of success[,]" and that "the prior art disclosed positive results in using

rifaximin to treat IBS-D for a range of doses[.]" *Norwich I DC* at *17; *see also* SUF ¶¶ 16-17, 20-21, *supra*.

95. Dr. Johnson opines that Defendants' expert, Dr. Harary, applies "impermissible hindsight" to arrive at the claimed dose through a "piecemeal compilation of snippets from Pimentel 2006 and the RFIB 2001 Study Protocol." *Id.* ¶¶ 318-319.

**DEFENDANTS' RESPONSE**: Plaintiffs' Additional Fact ¶ 94 is irrelevant to the present motion and to the application of collateral estoppel to any asserted claim and should therefore be disregarded. *See* SUF ¶¶ 15-16, 20-22. To the extent a response is required, disputed that Dr. Harary "applies 'impermissible hindsight' to arrive at the claimed dose through a 'piecemeal compilation of snippets from Pimentel 2006 and the RFIB 2001 Study Protocol,'" as evidenced by at least the *Norwich I* opinion finding methods of administering 550 mg rifaximin TID for 14 days for "treating one or more [IBS-D] symptoms" and achieving "adequate relief of symptoms" invalid as obvious over Pimentel 2006 and RIFB 2001 Study Protocol.

### H. The Examiner Issued the Asserted Claims After Considering *Norwich I*

96. The asserted IBS-D claims here issued **after** the district court in *Norwich I* issued its obviousness opinion. *Norwich I DC*, 2022 WL 3225381, at *7.

**DEFENDANTS' RESPONSE**: Admitted, but the "asserted IBS-D claims" were terminally disclaimed over the invalidated '667 patent. *See supra* SUF ¶¶ 24-31.

97. The patent examiner allowed those claims after considering the RFIB 2001 Protocol, Pimentel 2006 and the district court's obviousness analysis. Amneal Action D.I. 113-3 at Da0001-3, Da0041-4.

**DEFENDANTS' RESPONSE**: Disputed to the extent the scope of "those claims" is unclear. Admitted to the extent Additional Fact ¶ 96 refers to the "asserted IBS-D claims here." However, the *Norwich I CAFC* opinion affirming that the Invalidated IBS-D Claims were obvious

over Pimentel 2006 and the RFIB 2001 Study Protocol in view of the prior art as a whole was issued after these patents were granted and therefore was not considered by the Examiner.

98. During prosecution of the application becoming the ’571 patent, Salix disclosed the *Norwich I DC* opinion, No. 20-430, 2022 WL 3225381 (D. Del. Aug. 10, 2022), to the Patent Office, as well as the Pimentel 2006 and RFIB 2001 Study Protocol references. Ex. EE, IDS (Oct. 22, 2021) (Pimentel 2006 (#11), RFIB 2001 Study Protocol (#15)); IDS (Dec. 28, 2022) *Norwich I DC* opinion). The Examiner confirmed they considered these documents. Ex. FF, References Considered (Mar. 20, 2023) (“ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.J.s/”).

**DEFENDANTS’ RESPONSE**: Admitted, but the *Norwich I CAFC* opinion affirming that the Invalidated IBS-D Claims were obvious over Pimentel 2006 and the RFIB 2001 Study Protocol in view of the prior art as a whole was issued after the ’571 patent was granted and therefore was not considered by the Examiner.

99. During prosecution of the application becoming the ’571 patent, Salix disclosed the trial transcripts from *Norwich I* to the Patent Office. Ex. GG, IDS (Jun. 16, 2023) (#1-5). The Examiner confirmed they considered these documents. Ex. HH, References Considered (Aug. 11, 2023).

**DEFENDANTS’ RESPONSE**: Admitted that the Examiner indicated that the trial transcripts from *Norwich I* had been considered.

100. Notwithstanding the disclosed documents, the Examiner never issued any rejections based on Pimentel 2006 and/or RFIB 2001 Study Protocol. Ex. R, Non-Final Rej. (Apr. 5, 2023) (other grounds); Ex. II, Notice of Allowance (Aug. 24, 2023).

**DEFENDANTS' RESPONSE**: Admitted that the Examiner never issued a rejection based on Pimentel 2006 and/or RFIB 2001 Study Protocol during the prosecution of the '912 and '571 patents, but the *Norwich I CAFC* opinion affirming that the Invalidated IBS-D Claims were obvious over Pimentel 2006 and the RFIB 2001 Study Protocol in view of the prior art as a whole was issued after these patents were granted and therefore could not have been considered by the Examiner.

101. During prosecution of the application becoming the '912 patent, Salix disclosed the *Norwich I DC* opinion, No. 20-430, 2022 WL 3225381 (D. Del. Aug. 10, 2022), to the Patent Office, as well as Pimentel 2006 and RFIB 2001 Study Protocol. Ex. JJ, IDS (Aug. 22, 2022) (Pimentel 2006 (#11), RFIB 2001 Study Protocol (#15)), IDS (Nov. 29, 2022) (*Norwich I DC* opinion (#6)). The Examiner confirmed they considered these documents. Ex. KK, References Considered (Nov. 3, 2022) ("ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /M.J.s/"); Ex. LL, References Considered (Dec. 7, 2022) (same).

**DEFENDANTS' RESPONSE**: Admitted, but the *Norwich I CAFC* opinion affirming the *Norwich I DC* opinion was issued after these patents were granted and therefore was not considered by the Examiner.

102. Notwithstanding the disclosed documents, the Examiner never issued any rejections based on Pimentel 2006 and/or RFIB 2001 Study Protocol. Ex. S, Non-Final Rej. (Nov. 12, 2022) (other grounds); Ex. MM, Notice of Allowance (Dec. 22, 2022).

**DEFENDANTS' RESPONSE**: Admitted that the Examiner never issued a rejection based on Pimentel 2006 and/or RFIB 2001 Study Protocol during the prosecution of the '912 and '571 patents, but the *Norwich I CAFC* opinion affirming that the Invalidated IBS-D Claims were obvious over Pimentel 2006 and the RFIB 2001 Study Protocol in view of the prior art as a whole

was issued after these patents were granted and therefore could not have been considered by the Examiner.

## II. Facts in Opposition to Collateral Estoppel of Obviousness of the Asserted Polymorph Patent Claim.

103. In *Norwich I DC*, Salix asserted two claims directed to the polymorph β of rifaximin. 2022 WL 3225381, at *2.

<u>**AMNEAL'S RESPONSE**</u>: Admitted.

104. The claims of the Polymorph Patent at issue here are directed to rifaximin polymorphic forms δ, ε, or a combination of the two. Amneal Action D.I. 23-3, at claims 7-9.

<u>**AMNEAL'S RESPONSE**</u>: Admitted.

105. Rifaximin polymorphic **form β** is claimed in a different family of patents from the Polymorph Patent and has different properties than the polymorphic forms at issue in this matter. Exhibit BB (Chyall Rebuttal) ¶¶ 67-68, 72; Amneal Action D.I. 121-3 (Myerson Decl.) at ¶¶ 48-51.

<u>**AMNEAL'S RESPONSE**</u>: Admitted.

106. In *Norwich I DC*, the district court made the following findings:

a. "Thus, to the extent Dr. Zaworotko [Norwich's expert] was offering an opinion that Viscomi 2008 is conclusive proof that rifaximin α, δ, and ϵ are necessarily derived from rifaximin β, I do not find that conclusion to be well-supported. It is not clear and convincing proof." *Id.* at *5.

b. "I think the evidence shows that a POSA would have a reasonable expectation of success in characterizing the polymorph β, **as opposed to the other forms of rifaximin**. Although Norwich's evidence failed to show that β was produced each and every time rifaximin was prepared according to Cannata, it did strongly suggest that polymorph β is a commonly produced polymorph and the most stable form of rifaximin." *Id.* at *7.

c. "Rifaximin β is obvious over Cannata in view of common knowledge." *Id.* at *8.

**AMNEAL'S RESPONSE**: Admitted that paragraph 105 accurately quotes *Norwich I DC* (with the exception of added bolding and formatting differences).

107. On appeal, the Federal Circuit in *Norwich I CAFC* recognized its holding applied to only the β claims at issue and made the following statements:

a. "The district court held that expert testimony supported a conclusion that, in view of the prior art, (1) a skilled artisan would have had good reason to characterize the crystalline rifaximin obtained by following the Cannata protocols, (2) that such characterization was routine and could have been performed 'in one day,' and (3) that doing so would have led the skilled artisan to have "detected rifaximin β." 98 F.4th at 1065.

b. "The scope and content of the prior art here includes preparations of crystalline rifaximin, which expert testimony supports would have yielded the β form of rifaximin." ("[T]he as-synthesized form of rifaximin reported by Examples 1, 6, 7, and 9 [of Cannata] were necessarily rifaximin form Beta, because of the methods used, the solvent system used, and it was later confirmed by later work, including work from the named inventors."). *Id.* at 1066 (referring to the record in *Norwich I DC* at J.A. 3391−92).

c. "Salix further refers to the district court's finding that polymorph β is a commonly produced polymorph and the most stable form of rifaximin as an undisputed fact." *Id.*; *see also Norwich I DC* at *7.

d. "There thus appears to be no dispute that the claimed polymorph can be readily produced from the crystallization conditions disclosed in Cannata and that it would have been well within the abilities of the skilled artisan to procure and characterize the β form of rifaximin." *Norwich I CAFC*, 98 F.4th at 1066.

e. "To be sure, **we do not hold that there is always a reasonable expectation of success in accessing or characterizing polymorphs**. We are simply reviewing the district court's decision before us as to its factual finding of a reasonable expectation of success, and in so doing, have not been left with a definite and firm conviction that a mistake was made in reaching that finding." *Id.* at 1066-67.

**AMNEAL'S RESPONSE**: Admitted that paragraph 106 accurately quotes *Norwich I CAFC* (with the exception of added bolding and formatting differences). Disputed that the analysis in *Norwich I CAFC* is applicable only to rifaximin β. *See* SUF ¶¶ 71, 79. Furthermore, subparagraph "e" applies to API other than rifaximin, not to polymorphs of rifaximin. *See Norwich I DC* at *7 ("The FDA encouraged, if not required, that the solid forms of a drug substance be well-characterized during drug development, including as to the properties of solubility, stability, and bioavailability.").

108. Neither the trial nor appellate court in *Norwich I* substantively discusses whether Cannata would have produced δ or ε polymorphs, or whether the δ or ε polymorphs would have been obvious to a skilled artisan in view of combinations based on Cannata advanced by Norwich. *Norwich I DC*, 2022 WL 3225381, at *2-8; *Norwich CAFC,* 98 F.4th at 1064-67.

**AMNEAL'S RESPONSE:** Disputed. *See* SUF ¶ 80.

109. The district court specifically limited its findings on reasonable expectation of success to rifaximin β. *Norwich I DC*, 2022 WL 3225381, at *7 ("I think the evidence shows that a POSA would have a reasonable expectation of success in characterizing the **polymorph β, as opposed to the other forms of rifaximin**.").

**AMNEAL'S RESPONSE:** Admitted that *Norwich I* does not reference other polymorphs specifically when discussing reasonable expectations of success. Disputed as to the remainder of the assertion, as *Norwich I* relied on prior art that is not polymorph specific when making its obviousness finding, including assessing a POSA's reasonable expectation of success. *See* SUF ¶¶ 71-72.

110. *Norwich I DC* concerned different patents, different claims, and different polymorphs. *See, e.g.,* Ex. N (Chyall Dep.) at 187:3-188:22; Amneal Action D.I. 121-3 (Myerson Decl.) ¶¶ 48-50.

**AMNEAL'S RESPONSE:** Admitted that *Norwich I DC* concerned different patents, different claims, and different polymorphs. Those differences are immaterial for the present motion.

111. There were no findings of fact or conclusions of law concerning rifaximin δ or ε in *Norwich I*. *Norwich I DC*, 2022 WL 3225381, at *2-8; *Norwich CAFC,* 98 F.4th at 1064-67.

**AMNEAL'S RESPONSE:** Disputed. *Norwich I* found that the prior art Cannata and/or Marchi processes made rifaximin crystals, including δ or ε polymorphs. Dr. Viscomi confirmed that in his Declaration. *See* SUF ¶ 80.

**III. Facts in Opposition to Summary Judgment of Obviousness of the '196 Patent**

112. None of the prior art references raised by Amneal describe the existence or characteristics of rifaximin δ or ε. Exhibit CC (Schinzer Dep.) at 42:1-24, 154:10-18; *see also id.* at 49:4-6 (Marchi), 52:1-4 (Cannata), 95:25-96:5 (New Zealand Application).

**AMNEAL'S RESPONSE**: Admitted that the New Zealand Application, Normix Label, and FDA Guidance do not describe rifaximin δ and/or ε specifically. The Cannata, Marchi, Normix Label, and FDA Guidance references are not polymorph specific. Disputed that the Cannata and/or Marchi references do not describe how to make rifaximin δ or ε. *See* SUF ¶ 80.

113. None of the prior art references raised by Amneal teach the specific water content needed to obtain rifaximin δ. Exhibit CC Schinzer Dep. at 123:25-124:25.

**AMNEAL'S RESPONSE**: Admitted that the New Zealand Application, Normix Label, and FDA Guidance do not describe rifaximin δ and/or ε specifically and therefore do not explicitly recite the water content for either polymorph. The Cannata, Marchi, Normix Label, and FDA Guidance references are not polymorph specific. Disputed that the Cannata and/or Marchi references do not describe how to make rifaximin δ or ε, and its inherent properties, e.g. water content. *See* SUF ¶ 80.

114. Amneal expert Dr. William Schinzer's obviousness opinions based on Cannata depend on his opinion that Cannata's processes produce rifaximin forms δ and ε. Ex. O (Schinzer Opening Report) ¶¶ 218-219, 224, 230; Ex. CC (Schinzer Dep.) at 167:18-168:16 ("it's clear that we're going to find delta and epsilon and we can get it from Cannata's process…if your question says is it an important element that I believe, my opinion is that Cannata's process can make delta and epsilon, that's true"), 177:21-178:18.

**AMNEAL'S RESPONSE**: Admitted. *See also* SUF ¶ 80.

115. Dr. Schinzer relies on a January 17, 2006 Declaration by Giuseppe C. Viscomi ("Viscomi Declaration") to support that Cannata's processes "frequently" produce rifaximin δ and ε. Ex. O (Schinzer Opening Report) ¶¶ 236, 261 ("The Viscomi Declaration confirms that the Cannata process frequently produces rifaximin forms δ and ε.").

**AMNEAL'S RESPONSE**: Admitted that Dr. Schinzer relies on the Viscomi Declaration to confirm that the Cannata and/or Marchi processes result in rifaximin δ and ε, which Judge Andrews also found in *Norwich I*. *See* SUF ¶ 80.

116. The district court in *Norwich I DC* found Norwich's evidence, which included the Viscomi Declaration, "strongly suggest[ed] that polymorph β is a commonly produced polymorph" by the Cannata processes. 2022 WL 3225381, at *7.

**AMNEAL'S RESPONSE**: Admitted that *Norwich I DC* states that polymorph β is commonly produced by the Cannata processes. Disputed that the Viscomi Declaration is evidence that supports that finding, as Judge Andrews relied on this declaration for the opposite conclusion, *i.e.*, that polymorph β is not necessarily produced by the prior art and that polymorph δ and ε, the same polymorphs at issue in this case, were also produced by the Cannata and/or Marchi processes. *See* SUF ¶ 80.

117. The Viscomi Declaration is not prior art to the '196 patent and reflects work done by one or more inventors of the '196 patent.

**AMNEAL'S RESPONSE**: Admitted.

118. The batches tested in the Viscomi Declaration were not made according to an example from Cannata. Ex. N (Chyall Dep.) at 178:25-182:25.

**AMNEAL'S RESPONSE:** Disputed. Dr. Viscomi declared to the USPTO that the "Rifaximin [was] prepared according the old patents US '866 [Cannata] and US '785 [Marchi]…." Ex._NN (Viscomi Decl.) ¶ 7.

119. Dr. Viscomi testified that that the samples discussed in the Viscomi Declaration "were taking points from the old patents" but "[a]s far as I know, there is no one example [from Cannata] that describes exactly what was done to prepare this batch." Exhibit OO (Viscomi Dep.) at 124-126. Dr. Schinzer did not consider this testimony. Ex. CC (Schinzer Dep.) at 181:8-11.

**<u>AMNEAL'S RESPONSE</u>:** Admitted as to the accuracy of Dr. Viscomi's testimony and that Dr. Schinzer did not consider this testimony. Dr. Viscomi's testimony from Norwich I is irrelevant to the instant motion because it contradicts Judge Andrew's findings in Norwich I DC and Dr. Viscomi's sworn declaration to the PTO, which states that "Rifaximin [was] prepared according the old patents US '866 [Cannata] and US '785 [Marchi]…." Ex._NN (Viscomi Decl.) ¶ 7.

120. Dr. Schinzer admitted he did not know whether the batches tested in the Viscomi Declaration were "absolutely representative" of what the prior art processes produced. Ex. CC (Schinzer Dep.) at 178:20-179:17; *see also id.* at 68:24-69:17 ("we don't know which batch was manufactured according to which, you know, Marchi or Cannata process…").

**<u>AMNEAL'S RESPONSE</u>**: Admitted as to the accuracy of the quoted portion of Dr. Schinzer's testimony. Disputed as to Salix's mischaracterizations and paraphrasing of that testimony.

121. Dr. Schinzer admitted that storage conditions can affect the polymorphic form of the drug substance. Ex. CC (Schinzer Dep.) at 27:9-17.

**<u>AMNEAL'S RESPONSE</u>**: Admitted that Dr. Schinzer testified *in general* that storage conditions can affect the polymorphic form of the drug substance. Disputed that when asked specifically about the context of the Viscomi Declaration, Dr. Schinzer testified that he did not believe that the samples were improperly stored such that the polymorphic form would change. Ex. CC (Schinzer Dep.) at 63:6-64:6, 69:19-70:11.

122. Dr. Schinzer admitted it would be "speculation" as to whether the rifaximin batches tested in the Viscomi Declaration were directly produced by the prior art processes or

"convert[ed] in the bottle" and that he assumed the batches were stored "in a reasonable container." Ex. CC (Schinzer Dep.) at 178:20-181:7.

**AMNEAL'S RESPONSE**: Admitted as to the accuracy of the quoted portions of Dr. Schinzer's testimony. Disputed as to Salix's mischaracterizations and improper paraphrasing of that testimony. Dr. Schinzer testified that it would be speculative to assume either way, and that he gave Dr. Viscomi the benefit of the doubt that he would keep the rifaximin stored properly. However, when asked the same question in the context of the Viscomi Declaration, Dr. Schinzer testified that he did not believe that the samples were improperly stored such that the polymorphic form would change. Ex. CC (Schinzer Dep.) at 63:6-64:6, 69:19-70:11.

123. EP 0161534 ("EP '534") claims priority to the same Italian patent application as Cannata and makes substantively identical disclosures. Ex. O (Schinzer Opening Report) ¶ 137, n. 1.

**AMNEAL'S RESPONSE**: Admitted.

124. Dr. Schinzer considered the '196 patent file history but did not consider the data in the file history that rifaximin synthesized according to Example 7 or Examples 7 and 9 of EP '534 did not produce rifaximin forms δ and ε. Exhibit PP ('196 patent file history XIFAX_AMN_00008044) at -8579-582, -8931-944; *see also id.* at -8984-985 (arguing that polymorphic forms δ and ε "were not disclosed either explicitly or inherently" by EP '534); Ex. CC (Schinzer Dep.) at 78:15-20, 80:8-82:13; Ex. BB (Chyall Rebuttal) ¶¶ 150-151, 154-155, 158.

**AMNEAL'S RESPONSE**: Admitted.

125. Dr. Schinzer testified that he relied on the disclosures of the '196 patent for his opinion that the Cannata process makes rifaximin δ or ε. Ex. CC (Schinzer Dep.) at 166:19-167:15 ("Viscomi [Declaration] confirms what you might think by comparing the processes which couldn't be more identical until you get to the stopping point of drying"); 168:18-169:1 ("it's really

important in my report, those columns where we're comparing '196 Examples 1 and 2 and [New Zealand Application] Example 1 and we come down there and it couldn't be more verbatim."), 170:1-7 (Q: "Is it your testimony that by relying on the… New Zealand Application and its similarities to the '196 patent… a person of skill in the art would understand Cannata can give you delta or epsilon? A: As confirmed by Viscomi [Declaration], right."); 170:8-22 ("… if you just look at the process in… New Zealand, wow, it could hardly be closer in almost every respect to '196…").

**AMNEAL'S RESPONSE:** Disputed. Dr. Schinzer's unedited deposition testimony states the opposite:

> Q. So are you relying on the discussion in the '196 patent as to the formation of delta and epsilon to form your obviousness opinions?
>
> A. ***No***. Like I say, it's informing. It's confirming. But if you just look at the process in '620 or New Zealand, wow, it could hardly be closer in almost every respect to '196. So we're in the parking lot parked next to delta and epsilon is one car down and we're supposed to look at the area around where we target. So maybe we're targeting alpha. And I think that there's the motivation. We add the Normix Label to say can we further push this to a drug product that might be stable. I think the Normix Label gives us a great start.

Ex. CC (Schinzer Dep.) at 170:8-22. Dr. Schinzer opined, just like Judge Andrews found, that the prior art processes of Cannata and/or Marchi made crystalline rifaximin, and specifically—as confirmed by the Viscomi Declaration – the exact δ and ε that are claimed in the '196 patent. *See* SUF ¶ 80.

126. Dr. Schinzer's motivation to combine Cannata with the Normix Label is based on the similarity between the '196 patent Example 1 and Example 1 of the New Zealand Application. Ex. CC (Schinzer Dep.) at 170:8-22 ("so we're in the parking lot parked next to delta and epsilon is one car down and we're supposed to look at the area around where we target. So maybe we're targeting alpha. And I think that there's the motivation.").

**AMNEAL'S RESPONSE:** Disputed. Dr. Schinzer's motivation to combine Cannata with knowledge of a POSA is based on, among other things, FDA Guidance instructing practitioners to fully characterize API in terms of solubility, stability, bioavailability, etc. *See* SUF ¶¶ 72-74; *see also* Ex. CC (Schinzer Dep.) at 102:11-103:24.

127. Dr. Schinzer relied on the disclosures of the '196 patent, including by comparing Example 1 of the '196 patent with Example 1 of the New Zealand Application in reaching his opinions based on the New Zealand Application. Ex. O (Schinzer Opening Report) ¶¶ 172-179, 191-192; Ex. CC (Schinzer Dep.) at 114:12-116:12; 129:16-19 ("let's say for the purposes of argument, we know all about… alpha, beta, delta, epsilon"); 139:15-140:23 ("I cannot reconcile what I read in New Zealand and '620 and then the '196 patent and say, Wow, at some point in time during that process all we had was delta and we just keep going to get alpha."); 174:10-14.

**AMNEAL'S RESPONSE**: Disputed. Dr. Schinzer relied on the New Zealand Application to render obvious the asserted claims of the ''196 patent. *See* SUF ¶¶ 81-85.

128. The '620 patent is not available as prior art to the '196 patent for obviousness purposes because they "were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person," namely Alfa Wasserman S.p.A. *See* 35 U.S.C. 103(c) (pre-AIA); Ex. P ('620 patent); Amneal Action, D.I. 23-3 ('196 patent).

**AMNEAL'S RESPONSE:** Disputed as irrelevant. The '620 patent is not relevant to Amneal's motion for summary judgment.

129. The New Zealand Application is silent concerning the existence, water content, and XRPD peaks of rifaximin δ. Ex. CC (Schinzer Dep.) at 93:19-25, 94:2-8, 154:10-18; Ex. BB (Chyall Rebuttal) ¶¶ 98-100.

**<u>AMNEAL'S RESPONSE</u>**: Amneal admits that the New Zealand Application does not explicitly reference water content and XRPD peaks for rifaximin δ. The asserted claims of the '196 patent do not include any claim limitations concerning water content, and characteristic XRPD peaks, by Plaintiffs' expert's own admission, are inherent to any given polymorph. Ex. N (Chyall Dep.) at 161:2-21, 162:13-20. However, it is worth repeating that Plaintiffs' own expert testified that the only difference between Example 1 of the '196 patent and Example 1 of the New Zealand Application were the drying parameters, which would be well understood by a person of ordinary skill in the art. SUF ¶ 86.

130. Example 1 of the New Zealand Application produces rifaximin α. Ex. Q (New Zealand Application) at 12:25-28.

**<u>AMNEAL'S RESPONSE</u>**: Admitted.

131. Example 1 of the New Zealand Application must be modified in order to obtain rifaximin δ. Ex. CC (Schinzer Dep.) at 130:4-7.

**<u>AMNEAL'S RESPONSE</u>:** Admitted that the only modification to Example 1 of the New Zealand Application necessary to make rifaximin δ is to the drying procedures, said modifications being well understood to a POSA as Plaintiffs' expert opined. SUF ¶ 86.

132. Dr. Schinzer did not describe a motivation to modify Example 1 of the New Zealand Application in a manner that yields rifaximin δ in his expert reports. Ex. O (Schinzer Report) ¶¶ 211-217; Ex. BB (Chyall Rebuttal) ¶ 120.

**<u>AMNEAL'S RESPONSE</u>:** Disputed. Dr. Schinzer's motivation to combine the New Zealand Application with knowledge of a POSA is based on, among other things, FDA Guidance instructing practitioners to fully characterize API in terms of solubility, stability, bioavailability, etc. *See* SUF ¶¶ 72-74; *see also* Ex. CC (Schinzer Dep.) at 102:11-103:24.

133. Dr. Schinzer's obviousness analysis based on the New Zealand Application relies on his conclusion that the New Zealand Application process produces rifaximin δ and ε. Ex. O (Schinzer Report) at ¶¶ 197-199, 201, 210, 212.

**<u>AMNEAL'S RESPONSE</u>:** Disputed. The only modification to Example 1 of the New Zealand Application necessary to make rifaximn δ is to the drying procedures, said modifications being well understood to a POSA as Plaintiffs' expert opined. *See* SUF ¶ 86.

134. Dr. Schinzer concludes that rifaximin δ is necessarily made as the wet rifaximin is dried to rifaximin form α according to the New Zealand Application process. Ex. O (Schinzer Report) at ¶¶ 193, 208.

**<u>AMNEAL'S RESPONSE</u>**: Disputed. Dr. Schinzer does not dispute that the New Zealand Application discloses a process for making rifaximin α. Dr. Schinzer' obviousness opinion is based on the undisputed fact that the manufacturing process in the New Zealand Application that makes rifaximin α and the manufacturing process in the '196 patent that makes rifaximin δ are identical with one difference: the drying procedure. That procedure and its modification and optimization is well understood and well within the knowledge of a POSA. SUF ¶¶ 81-86.

135. To support this conclusion, Dr. Schinzer relies on the "more preferable" water content of rifaximin δ disclosed by the '196 patent and the "preferable" water content of rifaximin α disclosed by the New Zealand Application. Ex. O (Schinzer Report) at ¶¶ 191, 193; Ex. CC (Schinzer Dep.) at 115:18-116:12, 162:16-164:5.

**<u>AMNEAL'S RESPONSE</u>**: Disputed. Dr. Schinzer does not dispute that the New Zealand Application discloses a process for making rifaximin α. Dr. Schinzer' obviousness opinion is based on the undisputed fact that the manufacturing process in the New Zealand Application that makes rifaximin α and the manufacturing process in the '196 patent that makes rifaximin δ are identical

with one difference: the drying procedure. That procedure and its modification and optimization is well understood and well within the knowledge of a POSA. SUF ¶¶ 81-86.

136. There is no evidence that rifaximin δ converts to rifaximin α upon drying.

**AMNEAL'S RESPONSE**: Disputed as irrelevant.

137. The '196 patent, the inventors' testimony and peer-reviewed publications reflect that, upon drying, rifaximin δ does not convert to rifaximin α but rather converts to rifaximin ε. Amneal Action D.I. 23-3 ('196 patent) at Example 2; Exhibit QQ (Viscomi 2008) at Fig. 4; Ex. OO (Viscomi Dep.) at 57-58; Exhibit RR (Confortini Dep.) at 66; Exhibit SS (Braga 2012) at Scheme 2; Ex. BB (Chyall Rebuttal) ¶ 103.

**AMNEAL'S RESPONSE**: Disputed as irrelevant. *See* SUF 86.

138. Dr. Schinzer did not consider the testimony of co-inventors Dr. Viscomi and Dr. Confortini.

**AMNEAL'S RESPONSE**: Admitted.

139. Dr. Schinzer's obviousness analysis does not account for how the motivations of a POSA would have changed after the New Zealand Application, which describes and characterizes three polymorphs of rifaximin.

**AMNEAL'S RESPONSE**: Disputed. Dr. Schinzer's motivation to combine New Zealand Application with knowledge of a POSA is based on, among other things, FDA Guidance instructing practitioners to fully characterize API in terms of solubility, stability, bioavailability, etc. *See* SUF ¶¶ 72-74; *see also* Ex. CC (Schinzer Dep.) at 102:11-103:24.

140. Dr. Schinzer's obviousness analysis does not account for what the New Zealand Application teaches a POSA about rifaximin form α, β, and γ. Ex. BB (Chyall Rebuttal) ¶¶ 100, 117-118, 121-123, 127, 130, 132, 142.

**AMNEAL'S RESPONSE:** Disputed. Dr. Schinzer does not dispute that the New Zealand Application discloses a process for making rifaximin α. Dr. Schinzer' obviousness opinion is based on the undisputed fact that the manufacturing process in the New Zealand Application that makes rifaximin α and the manufacturing process in the '196 patent that makes rifaximin δ are identical with one difference: the drying procedure. That procedure and its modification and optimization is well understood and well within the knowledge of a POSA. SUF ¶¶ 81-86.

141. The New Zealand Application teaches that rifaximin α and rifaximin β exist in ranges of water content that encompasses the water content range for rifaximin δ. Ex. O (Schinzer Report) ¶ 191.

**AMNEAL'S RESPONSE**: Disputed as irrelevant. Water content is not a claim limitation in the asserted '196 patent claims.

142. In order to reach his conclusion that the water content ranges for rifaximin α and rifaximin δ "touch but don't overlap" Dr. Schinzer "restricted" himself to the preferable or more preferable ranges of water content for rifaximin α and β as opposed to the full ranges reported in the New Zealand Application and the '196 patent. Ex. CC (Schinzer Dep.) at 162:16-164:5.

**AMNEAL'S RESPONSE**: Disputed as irrelevant. Water content is not a claim limitation in the asserted '196 patent claims.

143. Dr. Schinzer's obviousness analysis does not account for how the statements in the New Zealand Application discuss the importance of identifying and characterizing polymorphic forms of rifaximin, or how the fact that Normix is a rifaximin product that has been marketed by AlfaSigma since the late 1980s would impact the motivations of a skilled artisan to search for additional polymorphic forms. Ex. BB (Chyall Rebuttal ¶¶ 121-130, 146); Exhibit TT (Schinzer Reply) ¶ 34 ("I point to the Normix label in my Opening Report as motivating a POSA and showing

a reasonable expectation of success in putting rifaximin into a pharmaceutical formulation, not as motivating a search for additional polymorphic forms.").

**AMNEAL'S RESPONSE**: Disputed to the extent it mischaracterizes Dr. Schinzer's opinion. *See* SUF ¶¶ 81-85.

144. Dr. Schinzer's obviousness analysis does not account for how the combination of the New Zealand Application, which discloses rifaximin α, and the fact that Normix uses rifaximin α as the active ingredient would impact the motivation of a skilled artisan to use a different and new polymorphic form of rifaximin in a pharmaceutical formulation. Ex. BB (Chyall Rebuttal) ¶¶ 62, 144-148; Ex. TT (Schinzer Reply) ¶ 34.

**AMNEAL'S RESPONSE**: Disputed to the extent it mischaracterizes Dr. Schinzer's opinion. *See* SUF ¶¶ 81-85.

145. Polymorphism is unpredictable generally, and as a non-stoichiometric hydrates, the rifaximin crystal system is particularly unpredictable. Ex. BB (Chyall Rebuttal ¶¶ 134-135, 137); Ex. CC (Schinzer Dep.) at 35:18-36:20 ("Now, can I predict exactly what we're going to get and how many of those [polymorphs] we're going to get? Not necessarily."); *see also* Exhibit UU (Kahr Rebuttal) ¶ 31; Exhibit VV (Kahr Dep.) at 62:25-63:13, 64:24-65:15; Ex. SS (Braga 2012) at p. 6405).

**AMNEAL'S RESPONSE**: Disputed. Dr. Schinzer testified that polymorph screening is straight forward and that "there are very well-known ways to screen for polymorphs." Ex. CC (Schinzer Dep.) at 35:18-37:2.

146. Dr. Schinzer has no response regarding this unpredictability other than relying on what the '196 patent itself discloses. Ex. TT (Schinzer Reply) ¶ 38.

**AMNEAL'S RESPONSE:** Disputed. Dr. Schinzer testified that polymorph screening is straight forward and that "there are very well-known ways to screen for polymorphs." Ex. CC (Schinzer Dep.) at 35:18-37:2.

Dated: February 24, 2026

Respectfully submitted,
By: *s/ Harvey Bartle IV*

Harvey Bartle IV (NJ ID No. 028792003)
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ 08540-6241
Phone: (609) 919-6600
OF COUNSEL
Michael J. Abernathy
Wan-Shon Lo
Maria Doukas
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive
Chicago, IL 60606-1511
Phone: (312) 324-1000

Margaret A. McGreal
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5000

*Attorneys for Plaintiffs Salix Pharmaceuticals, Inc., Salix Pharmaceuticals, Ltd., and Bausch Health Ireland Ltd.*