**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., ALFASIGMA S.P.A. and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>AMNEAL PHARMACEUTICALS OF NEW YORK, LLC and AMNEAL EU, LIMITED,<br><br>Defendants. | Civil Action No. 1:24-cv-04607-JFM |
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>NORWICH PHARMACEUTICALS, INC.,<br><br>Defendant. | Civil Action No. 1:24-cv-07140-JFM |

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**OF COLLATERAL ESTOPPEL**

**TABLE OF CONTENTS**

**Page**


**I. PRELIMINARY STATEMENT .......... 1**

**II. LEGAL STANDARDS .......... 2**

**A. Summary Judgment and Collateral Estoppel .......... 2**

**B. Collateral Estoppel of Obviousness Requires Resolving Factual Inquiries Under Graham .......... 4**

**III. THE COURT SHOULD DENY SUMMARY JUDGMENT ON THE IBS-D CLAIMS .......... 5**

**A. Background: the Asserted IBS-D Claims Materially Differ from Norwich I .... 5**

**1. The Asserted Claims Recite New Substantive Limitations .......... 6**

**2. The New Substantive Limitations Relate to Distinct Conditions .......... 7**

**3. Salix's Non-Obviousness Arguments Center on the New Limitations. 7**

**B. The New Limitations Materially Alter the Invalidity Analysis .......... 9**

**1. The Parties Dispute Whether the New Limitations Materially Differ From the Adjudicated Claims .......... 11**

**2. Defendants' Remaining Arguments Misapply the Law .......... 19**

**IV. THE COURT SHOULD DENY SUMMARY JUDGMENT ON THE POLYMORPH CLAIMS .......... 24**

**A. Background: the Asserted Polymorph Claims Materially Differ from Norwich I .......... 24**

**B. Collateral Estoppel Does Not Apply to the Polymorph Patents Because the Different Limitations Materially Alter the Invalidity Analysis .......... 24**

**1. The Claimed Polymorphic Forms δ and/or ε Present New Validity Issues .......... 25**

**2. Norwich I Did Not Find the Cannata Processes Produced Rifaximin δ .......... 26**

**3. The Motivation and Reasonable Expectation of Success Analyses Present New Invalidity Issues .......... 27**

**4. Collateral Estoppel Does Not Apply to Unrelated Patents .......... 27**

**C. Disputed Material Facts Preclude Granting Amneal's Motion for Summary Judgment of Obviousness Based on the New Zealand Application .......... 28**

**V. CONCLUSION .......... 31**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbvie Inc. v. Kennedy Tr. for Rheumatology Rsch.*,
2014 WL 3360722 (S.D.N.Y. July 9, 2014), *aff'd* 599 F. App'x 956 (Fed. Cir. 2015) ......4, 23

*Allergan, Inc. v. Apotex, Inc.*,
2015 WL 13358250 (M.D.N.C. Aug. 31, 2015)......16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)......3

*Application of Vogel*, 422 F.2d 438 (C.C.P.A. 1970)......23

*B-K Lighting, Inc. v. Fresno Valves & Castings, Inc.*,
375 F. App'x 28 (Fed. Cir. 2010)......10, 11, 26

*Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. - Pension Fund v. Centra*,
983 F.2d 495 (3d Cir. 1992)......3

*Bourns, Inc. v. United States*,
537 F.2d 486 (Ct. Cl. 1976)......4, 5, 9

*Bristol-Meyers Squibb Co. v. Ben Venue Labs., Inc.*,
246 F.3d 1368 (Fed. Cir. 2001)......20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......3

*Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*,
84 F.4th 979 (Fed. Cir. 2023)......4, 5, 9, 26

*e.Digital Corp. v. Futurewei Techs., Inc.*,
772 F.3d 723 (Fed. Cir. 2014)......16

*Global Tubing LLC v. Tenaris Coiled Tubes LLC*,
167 F.4th 1357 (Fed. Cir. 2026)......10

*Google LLC v. Hammond Dev. Int'l, Inc.*,
54 F.4th 1377 (Fed. Cir. 2022)......9, 11

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)......*passim*

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Grunenthal GMBH v. Alkem Labs, Ltd.*,
919 F.3d 1333 (Fed. Cir. 2019)....................24

*In Re: Copaxone Consolidated Cases*,
906 F.3d 1013 (Fed. Cir. 2018)....................20

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016)....................5, 26

*Interconnect Plan. Corp. v. Feil*,
774 F.2d 1132 (Fed. Cir. 1985).................... *passim*

*Kauffman v. Moss*,
420 F.2d 1270 (3d Cir. 1970)....................3

*KSR Int'l v. Teleflex, Inc.*,
550 U.S. 398 (2007)....................28, 30

*L'Oréal USA, Inc. v. Olaplex, Inc.*,
844 F. App'x 308 (Fed. Cir. 2021)....................13, 16, 19, 20

*Nat'l State Bank v. Fed. Rsrv. Bank of N.Y.*,
979 F.2d 1579 (3d Cir. 1992)....................9

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2014)....................9, 13

*Pharmacyclics LLC v. Alvogen, Inc.*,
2022 WL 16943006 (Fed. Cir. Nov. 15, 2022)....................24

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
882 F.3d 1056 (Fed. Cir. 2018)....................28

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*,
411 F.3d 1332 (Fed. Cir. 2005)....................17

*Prometheus Laboratories Inc. v. Roxane Laboratories, Inc.*,
2013 WL 5333033 (D.N.J. Sept. 23, 2013) ....................20

*Purdue Pharma L.P. v. Mylan Pharms., Inc.*,
2017 WL 784989 (D. Del. Mar. 1, 2017), *adopted* 2017 WL 2569604
(D. Del. June 13, 2017)
.................... *passim*

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Quad Env't Techs. Corp. v. Union Sanitary Dist.*,
946 F.2d 870 (Fed. Cir. 1991)....................21, 22

*Salix Pharms., Ltd. v. Norwich Pharms., Inc.*,
2022 WL 3225381 (D. Del. Aug. 10, 2022), *affirmed* 98 F4th 1056 (Fed. Cir. 2024)
("Norwich I")....................25, 26, 27, 29

*SimpleAir v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018)....................11, 21, 22

*SoftView LLC v. Apple Inc.*,
108 F.4th 1366 (Fed. Cir. 2024)....................22, 23

*Source Search Techs. LLC v. Lending Tree*,
588 F.3d 1063 (Fed. Cir. 2009)....................27

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015)....................16

*Valve Corp. v. Ironburg Inventions Ltd.*,
2025 WL 1177824 (Fed. Cir. Apr. 23, 2025)....................4

*Voda v. Cordis Corp.*,
476 F.3d 887 (Fed. Cir. 2007)....................3

*Witkowski v. Welch*,
173 F.3d 192 (3d Cir. 1999)....................3

**STATUTES**

35 U.S.C. § 103....................5

**OTHER AUTHORITIES**

37 CFR § 42.73(d)(3)(i)....................22

Fed. R. Civ. P. 56(c)....................2, 3

## TABLE OF ABBREVIATIONS

| Term | Abbreviation |
|---|---|
| Salix Pharmaceutical Inc., Salix Pharmaceuticals, Ltd., Alfasigma S.p.A., Bausch Health Ireland Ltd. | Salix |
| Amneal Pharmaceuticals of New York, LLC, Amneal EU, Limited | Amneal |
| Norwich Pharmaceuticals, Inc. | Norwich |
| Amneal Pharmaceuticals of New York, LLC, Amneal EU, Limited, Norwich Pharmaceuticals, Inc. | Defendants |
| Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment of Invalidity | Mem.<br>(*citations refer to ECF pagination*) |
| Defendants' Statement of Undisputed Material Facts | SUF |
| Plaintiff's Statement of Additional Facts | PAF |
| *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, 2022 WL 3225381 (D. Del. Aug. 10, 2022) | *Norwich I DC* |
| *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, 98 F.4th 1056 (Fed. Cir. 2024) | *Norwich I CAFC* |
| U.S. Patent No. 11,779,571 | '571 patent |
| U.S. Patent No. 11,564,912 | '912 patent |
| Claims 1-4 of the '571 patent and claims 3 and 5-7 of the '912 patent | asserted IBS-D claims |
| U.S. Patent No. 8,193,196 | '196 patent |
| Claims 7-9 of the '196 patent | asserted polymorph claims |
| U.S. Patent No. 10,765,667 | '667 patent |

## TABLE OF ABBREVIATIONS
**(continued)**

| Term | Abbreviation |
|---|---|
| U.S. Patent No. 8,309,569 | ’569 patent |
| U.S. Patent No. 7,612,199 | ’199 patent |
| U.S. Patent No. 7,902,206 | ’206 patent |
| Claim 3 of the ’667 patent, claim 2 of the ’569 patent (IBS); and<br>Claim 4 of the ’199 patent, and claim 36 of the ’206 patent (polymorph) | *Norwich I* claims |
| “wherein the reduction of bloating is achieved following 7 days after the administration of rifaximin” (’571 patent, claim 3); and<br>“wherein the reduction of the one or more symptoms is achieved following 7 days after the administration of rifaximin” (’912 patent, claim 6) | 7 Days Limitation |
| person of ordinary skill in the art | POSA |
| obviousness-type double patenting | ODP |
| irritable bowel syndrome | IBS |
| diarrhea predominant irritable bowel syndrome | IBS-D |
| constipation predominant irritable bowel syndrome | IBS-C |
| alternating diarrhea and constipation predominant irritable bowel syndrome | IBS-A or IBS-M |
| x-ray powder diffraction | XRPD |
| U.S. Patent No. 7,045,620 | ’620 patent |

## I. PRELIMINARY STATEMENT

Defendants short-cut a fact-intensive obviousness dispute by stretching collateral estoppel beyond its limits. *Norwich I* did not adjudicate the claim limitations now central to validity—limitations that materially change the *Graham* analysis and raise numerous new genuine disputes of material fact to be decided at trial.

***First***, the asserted IBS-D claims add new, substantive limitations that were not recited—or decided—in *Norwich I*. Those limitations include treating bloating associated with IBS-D in female subjects; specific patient-reported reductions from baseline symptoms; and a timing requirement that reductions be achieved following 7 days after rifaximin administration. *Norwich I* never addressed whether the prior art discloses these new limitations. The new limitations thus materially change the obviousness inquiry to consider different clinical conditions, endpoints, and timing—precisely the type of differences that require freshly analyzing the scope and content of the prior art, the distinctions between that art and the new claims, motivations to combine, and reasonable expectations of success.

***Second***, these new substantive limitations present classic factual *Graham* disputes precluding summary judgment. Salix's gastroenterology expert—Dr. David Johnson—explains the Pimentel 2006 and the RFIB 2001 Study Protocol prior art combination in *Norwich I* does ***not*** (i) disclose treating bloating associated with IBS-D in female patients, (ii) delineate outcomes by gender, (iii) address reductions from baseline determined by affirmative response, nor (iv) show achievement of reductions following 7 days. Defendants nowhere address the *Graham* factors or the underlying prior art disclosures as to these limitations, instead presuming *Norwich I* controls. But that presumption is the very issue in dispute and cannot be resolved on summary judgment.

***Third***, Defendants' overcasting of collateral estoppel to avoid the *Graham* analysis fails on multiple fronts. Dependent claims requiring concrete symptom reductions, baseline

assessment, affirmative-response determinations, and a 7-day achievement window are limiting and must be given patentable weight; they are not aspirational "intended results." Defendants even concede these requirements are not inherent—patients treated with 550 mg rifaximin TID for 14 days will not necessarily experience the reductions the dependent claims require. Nor can Defendants convert prosecution terminal disclaimers into estoppel or collapse the collateral-estoppel test into obviousness-type double patenting. The relevant inquiries here are the factual ones under each *Graham* factor. The record shows the new claims present new, disputed issues.

***Fourth***, Defendants' collateral estoppel theory fares no better against the polymorph claims, which arise from an unrelated patent directed to distinct rifaximin polymorphs (forms δ and ε) with different characteristic XRPD peaks and properties—not the rifaximin polymorph β at issue in *Norwich I*. *Norwich I*'s findings centered on characterizing β from following Cannata's processes—not δ or ε. Those differences preclude estoppel.

***Fifth***, Amneal's separate obviousness motion based on the New Zealand Application is riddled with factual disputes, including motivation to modify disclosed processes to obtain undisclosed forms δ and ε, and reasonable expectation of success amid acknowledged polymorph unpredictability. These disputes also foreclose summary judgment.

In sum, the new claims add new substantive limitations that materially alter the *Graham* analysis; the prior art record contains factual disputes; and the polymorph claims concern different inventions altogether. The Court should deny summary judgment.

## II. LEGAL STANDARDS

### A. Summary Judgment and Collateral Estoppel

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under

Rule 56(c), the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A genuine issue exists when a reasonable trier of fact, viewing the record evidence, could rationally find in favor of the non-moving party in light of its burden of proof. *Id*. at 322–26; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–52 (1986). The non-moving party must show where the record presents a genuine issue of material fact. *Celotex*, 477 U.S. at 322–26. Substantive law will identify the material facts. *Anderson*, 477 U.S. at 248.

"Issue preclusion, formerly titled collateral estoppel, proscribes relitigation when the identical issue already has been fully litigated." *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. - Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992). "Issue preclusion may be invoked when: (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Id.* (citation omitted). The Third Circuit "caution[s] against [] invocation [of collateral estoppel] in most [cases] without extreme care. Indeed, doubts about its application should usually be resolved against its use." *Witkowski v. Welch*, 173 F.3d 192, 206 (3d Cir. 1999) (citing *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir. 1970) ("Reasonable doubt as to what was decided . . . should be resolved against using it as an estoppel.").

Whether a patent case presents "new issues" is unique to patent law, so Federal Circuit law controls. *See Voda v. Cordis Corp.*, 476 F.3d 887, 892 (Fed. Cir. 2007); *Interconnect Plan.*

*Corp. v. Feil*, 774 F.2d 1132, 1137 (Fed. Cir. 1985). "[I]t is well settled that each claim of a patent is entitled to a presumption of validity and is to be treated as a complete and independent invention." *Interconnect*, 774 F.2d at 1137 (citations omitted). The Federal Circuit has cautioned against the "pitfall" of treating previously invalidated claims as prior art. *See id.* "A domino approach in which each successively narrower claim is compared with the one before it, not with the prior art, is inappropriate since it improperly gives prior-art effect to the subject matter of an invalid claim." *Id.* (quoting *Bourns, Inc. v. United States*, 537 F.2d 486, 493 (Ct. Cl. 1976)) (internal citation omitted).[1]

### B. Collateral Estoppel of Obviousness Requires Resolving Factual Inquiries Under *Graham*

"Where obviousness is the basis for the prior invalidity holding, an inquiry into the identity of the validity issue is more properly phrased in terms of the ***factual inquiries*** mandated by

[1] *See also Abbvie Inc. v. Kennedy Tr. for Rheumatology Rsch.*, 2014 WL 3360722, at *3 (S.D.N.Y. July 9, 2014), *aff'd* 599 F. App'x 956 (Fed. Cir. 2015) ("The analysis does not turn, however, solely on a comparison of (a) the prior art with (b) the differences between a previously adjudicated claim and the one at issue. Doing so would erroneously treat the adjudicated claims as prior art.") (citation omitted).

*Graham* . . . as a prerequisite to such a validity determination."[2] *Interconnect*, 774 F.2d at 1136 (citing, *inter alia*, *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966)). The factual inquiry:

> should be whether the nonlitigated claims present new issues as to the art pertinent to the nonlitigated claims; as to the scope and content of that art; as to the differences between the prior art and the nonlitigated claims; and as to the level of ordinary skill in that art.

*Id.*; *see also Valve Corp. v. Ironburg Inventions Ltd.*, 2025 WL 1177824, at *4 n. 7 (Fed. Cir. Apr. 23, 2025). Indeed, the *Graham* factors raise "factual questions." *Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 984 (Fed. Cir. 2023); *Purdue Pharma L.P. v. Mylan Pharms., Inc.*, 2017 WL 784989, at *4-5 (D. Del. Mar. 1, 2017), *adopted* 2017 WL 2569604 (D. Del. June 13, 2017) (declining to apply collateral estoppel because of factual issues regarding inherency, terminal disclosures and differences in claim language). "Whether a skilled artisan would have been motivated to combine references is also a fact question . . . ." *Cyntec*, 84 F. 4th at 984. So, too, is the "presence or absence of a reasonable expectation of success." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016) (internal citation omitted).

Where the claims are "not substantially identical to the original claims, the invention as a whole, as now claimed, must be evaluated in terms of 35 U.S.C. § 103." *Interconnect*, 774 F.2d at 1137. If "the unadjudicated claims present any new issues," then "to afford due process" there must be "a trial on the merits." *Bourns,* 537 F.2d at 492 (citation omitted).

## III. THE COURT SHOULD DENY SUMMARY JUDGMENT ON THE IBS-D CLAIMS

### A. Background: the Asserted IBS-D Claims Materially Differ from *Norwich I*

[2] Emphasis is added throughout unless noted otherwise.

### 1. The Asserted Claims Recite New Substantive Limitations

Salix asserts claims 1-4 of the ’571 patent and claims 3, 5, 6, and 7 of the ’912 patent. SUF ¶¶ 1-9. The asserted claims include multiple new limitations that substantively differ from the adjudicated claims in *Norwich I*. *See generally* PAF ¶¶ 1-4, 5-9; SUF ¶ 33.

Unlike *Norwich I*, all claims of the ’571 patent require treating a female subject with “bloating associated with diarrhea-predominant irritable bowel syndrome” specifically, rather than IBS or IBS-D generally. PAF ¶¶ 1-4. Certain newly asserted claims require the “female subject” to achieve a “reduction” in “bloating from baseline symptoms” (PAF ¶¶ 2, 4 (’571 patent, cls. 2, 4)), or “symptoms from baseline symptoms” (PAF ¶¶ 7, 9 (’912 patent, cls. 5, 7)), and require determining that reduction based on an “affirmative response” from the subject (PAF ¶¶ 4, 9). Other asserted claims require the “female subject” to achieve the claimed “reduction” from baseline at a particular time—“following 7 days after the administration of rifaximin” (“7 Days Limitation”). PAF ¶¶ 3, 8 (’571 patent, cl. 3, ’912 patent, cl. 6).

Salix prosecuted these claims before the Patent Office ***after*** the *Norwich I DC* decision. PAF ¶ 96. Salix disclosed—and the Examiner considered—the *Norwich I* trial transcripts, *Norwich I DC* opinion, and the Pimentel 2006 and RFIB 2001 Study Protocol references. PAF ¶¶ 98-99, 101. Despite those disclosures, the Examiner never rejected any claims based on Pimentel 2006 or the RFIB 2001 Study Protocol. PAF ¶¶ 100, 102.

As Defendants admit, the *Norwich I* claims recited ***none*** of the new substantive limitations. PAF ¶¶ 1-4, 5-9; SUF ¶ 33; *see also* PAF ¶ 11 (no claimed reductions or the 7 Days Limitation), PAF ¶ 17 (no treating “bloating” associated with IBS-D). The *Norwich I* court did not consider the new claim limitations, much less whether the combination of Pimentel 2006 and the RFIB 2001 Study Protocol would have rendered them obvious. PAF ¶ 62 (*Norwich I DC* did not address

gender/sex); PAF ¶¶ 18, 22 (did not address "bloating"); PAF ¶¶ 32, 51 (did not address achieving reductions in "bloating" or "symptoms from baseline"); PAF ¶¶ 34-35, 38, 40 (did not address the 7 Days Limitation).[3]

### 2. The New Substantive Limitations Relate to Distinct Conditions

Irritable bowel syndrome ("IBS") includes specific conditions that reflect distinct disorders: diarrhea predominant IBS ("IBS-D"), constipation predominant IBS ("IBS-C"), and alternating diarrhea and constipation predominant IBS ("IBS-A" or "IBS-M"). SUF ¶ 38; PAF ¶¶ 57-58. The predominant symptoms of IBS-D differ from the predominant symptoms of other IBS disorders. *Id.* As Defendants admit, clinicians "had different treatment approaches for IBS patients depending on their predominant symptoms and subtype." PAF ¶ 59.

In 2008, the leading diagnostic guideline for classifying functional gastrointestinal disorders—Rome III—also distinguished functional bloating from IBS or IBS-D. PAF ¶ 27. A POSA would not have assumed patients with bloating would necessarily have IBS or IBS-D. PAF ¶ 24. On the contrary, a POSA would have known bloating can occur independently from IBS-D and from IBS or be a symptom associated with IBS-D or another IBS subtype. *See* PAF ¶ 25; *see also* JA0581 (Ex. Z, Johnson Opening ¶ 49) (Rome IV diagram depicting same). Thus, IBS-D patients did not necessarily experience bloating associated with their IBS-D. PAF ¶ 26.

### 3. Salix's Non-Obviousness Arguments Center on the New Limitations

[3] The *Norwich I* opinion merely mentions some words from the new limitations a handful of times. PAF ¶ 62 (no instances of gender-related terms); PAF ¶ 19 (only two instances of "bloating"), ¶ 53 (no instances of "affirmative response"); PAF ¶ 39 (one instance of "7 days").

*Norwich I* relied on the combination of Pimentel 2006 and the RFIB 2001 Study Protocol to invalidate the *Norwich I* claims.[4] Salix's expert, Dr. David Johnson, demonstrates how those references fail to teach the new claim limitations in the asserted claims.

Dr. Johnson is a licensed gastroenterologist for over 49 years who has co-authored 17 national guidelines, served as President of the American College of Gastroenterology (2006-2007), and co-chaired the American College of Gastroenterology National Fellows Meeting (1991-2008) in the years immediately preceding the asserted patents' priority date. Amneal Dkt. 121-2, ¶ 1.

Dr. Johnson opines Pimentel 2006 and the RFIB 2001 Study Protocol fail to disclose the new independent claim limitations. He explains how Pimentel 2006 "found no improvement in diarrhea or abdominal pain," "does not disclose the reduction of bloating associated with IBS-D or other IBS symptoms specifically in a female subject," and "did not delineate the results by gender." PAF ¶¶ 63, 72. He similarly opines the RFIB 2001 Study Protocol contains no information "about the reduction of bloating associated with IBS-D or other IBS symptoms specifically in a female subject" and "does not address bloating at all." PAF ¶¶ 30-31.

Dr. Johnson also opines Pimentel 2006 and the RFIB 2001 Study Protocol fail to disclose the new dependent claim limitations. In particular, he opines these references fail to disclose the reductions in "bloating" and "symptoms from baseline" based on an affirmative response (claims 2 and 4 of the '571 patent and claims 5 and 7 of the '912 patent). PAF ¶¶ 34, 54, 73, 75, 78, 80.

---

[4] Pimentel 2006 describes an 87-patient study of 400 mg rifaximin or placebo TID (1200 mg/day) for 10 days for IBS patients. Pimentel 2006 reported "[n]o major differences in abdominal pain, diarrhea, or constipation were observed between the [rifaximin and placebo] groups." JA0122 (Ex. E, Johnson Rebuttal ¶ 170). The RFIB 2001 Study Protocol describes the design of a future phase II study to evaluate 275 mg BID (550 mg/day), 550 mg BID (1100 mg/day) or 1100 mg BID (2200 mg/day) rifaximin for 14 days for the treatment of IBS-D. It does not include any results. JA0136 (Ex. E, Johnson Rebuttal ¶ 221).

He likewise opines these references fail to disclose such reductions being "achieved following 7 days after administration of rifaximin" (claim 3 of the '571 patent and claim 6 of the '912 patent). PAF ¶¶ 37, 74, 79.

Dr. Johnson additionally offers non-obviousness opinions based on the new limitations factoring into the claimed inventions as a whole. For each asserted claim, he opines a POSA would have had (i) no motivation to combine Pimentel 2006 with the RFIB 2001 Study Protocol to reach the claimed invention, and (ii) no reasonable expectation of success in doing so. PAF ¶ 81.

From a POSA's perspective, Dr. Johnson also disputes Defendants' argument that the new claims include no "material differences" from those at-issue in *Norwich I*. For example, he opines there is a "material difference between treating bloating associated with diarrhea-prominent irritable bowel syndrome," as in the newly asserted claims, and "treating one or more symptoms of irritable bowel syndrome wherein 'the IBS is diarrhea-predominant IBS,'" as in *Norwich I*. SUF ¶ 48, PAF ¶ 23. And he opines a POSA would have understood the new 7 Days Limitation materially differs from the "durability of response" limitation of the *Norwich I* claims. PAF ¶ 45.

**B. The New Limitations Materially Alter the Invalidity Analysis**

Although they concede the asserted claims contain multiple limitations not recited in the *Norwich I* claims, (PAF ¶¶ 1-4, 6-9), Defendants argue collateral estoppel still bars litigating the new IBS-D claims. Collateral estoppel, however, does not apply merely because claims recite some of "the same core method elements."[5] *See* Mem. at 7. Collateral estoppel can apply only if the differences in the claim limitations do not materially alter the *Graham* obviousness analysis. *Interconnect*, 774 F.2d at 1136; *Purdue Pharma*, 2017 WL 784989, at *5.

[5] As discussed throughout, Defendants' characterizations of certain claim limitations as being "core" or "material," and others as "immaterial," are factually disputed.

Defendants nowhere address the *Graham* factors.[6] Tellingly, Defendants' argument fails to examine the underlying prior art references (Pimentel 2006 and RFIB 2001 Study Protocol), let alone analyze any "differences between the prior art and the claims at issue" (second *Graham* factor) relating to the new limitations. *See* Mem. at 15-26; *Cyntec*, 84 F.4th at 984. These "unexplained gaps" in Defendants' motion alone warrant its denial. *See Nat'l State Bank v. Fed. Rsrv. Bank of N.Y.*, 979 F.2d 1579,1581–83 (3d Cir. 1992).

Had they addressed *Graham*, Defendants would have had to confront various disputed factual issues.[7] The parties factually dispute whether the different limitations in the asserted claims "are material to the patentability of the ['571 and '912 patents]" and whether the *Norwich I* prior art combination discloses the new limitations. *Purdue*, 2017 WL 784989 at *5; *see Global Tubing LLC v. Tenaris Coiled Tubes LLC*, 167 F.4th 1357, 1375 (Fed. Cir. 2026). These "genuine issue[s] of fact . . . ma[k]e summary judgment inappropriate." *B-K Lighting, Inc. v. Fresno Valves & Castings, Inc.*, 375 F. App'x 28, 32 (Fed. Cir. 2010) ("conflict in expert declarations regarding whether the [prior art] disclosed [the claim limitation] created a genuine issue of material fact") (collecting cases).

Instead, Defendants repeatedly attempt to dismiss Dr. Johnson's analysis of the new limitations under *Graham* as "immaterial" and "irrelevant" because the *Norwich I* claims were

---

[6] Defendants' failure to address the governing legal standard is inexplicable. Salix's opposition to Amneal's original motion for summary judgment cited both *Interconnect* and *Bourns*. Amneal Dkt. 121 at 12-13. Defendants also cite cases that rely on this same line of authority. *See, e.g.*, *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2014) ("[I]t is the identity of the issues that were litigated that determines whether collateral estoppel should apply" (citing *Bourns*)) (emphasis omitted).

[7] Even Defendants' own authority characterizes collateral estoppel as "a legal conclusion based on ***underlying facts***" and further states "collateral estoppel may implicate ***underlying facts.***" *Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1381 (Fed. Cir. 2022); Mem. at 12-14 (citing same) (emphasis omitted).

found invalid. *See generally* PAF ¶¶ 23-31, 63, 72-75. But that assertion merely begs the question: does *Norwich I* apply to the new limitations? Without analyzing the *Graham* factors or the prior art, Defendants improperly assume it applies. They ignore how Dr. Johnson's opinions about the new limitations raise new factual diputes under *Graham*—issues *Norwich I* did not consider or decide.

**1. The Parties Dispute Whether the New Limitations Materially Differ From the Adjudicated Claims**

**a. The Bloating Associated With IBS-D Limitation Presents New Validity Issues**

All asserted claims of the '571 patent require treating bloating associated with IBS-D in a female subject. PAF ¶¶ 1-4. The *Norwich I* claims, however, involved treating one or more IBS or IBS-D symptoms generally, not treating this specific condition in these patients. *Id.* As a result, *Norwich I* did not consider whether the prior art discloses treating bloating associated with IBS-D specifically and in female subjects. PAF ¶ 22; *see also* PAF ¶¶ 17-19 (admitting the *Norwich I* claims do not recite "bloating").[8]

By characterizing bloating associated with IBS-D as merely "a species of the small genus of symptoms of IBS" that insignificantly differs from treating IBS generally (Mem. at 23), Defendants inappropriately ask the Court to resolve factual disputes regarding how a POSA would have interpreted the prior art. *See B-K Lighting*, 375 F. App'x at 32 (whether a reference disclosed a limitation created a genuine issue of material fact). At trial, Salix expects the parties' experts to vigorously contest whether a POSA would have understood the *Norwich I* prior art to disclose the

[8] *Google* is inapposite. *See* Mem. at 23 (citing *Google LLC*, 54 F.4th at 1381-82). There, the Federal Circuit noted the previously litigation found the prior art disclosed the "plurality of servers" limitation and Google failed to challenge that determination on appeal. By contrast, *Norwich I* did not find bloating associated with IBS-D obvious.

treatment of bloating associated with IBS-D, as claimed in the '571 patent. *See* PAF ¶¶ 72-75 (Dr. Johnson opining Pimentel 2006 and the RFIB 2001 Study Protocol do not disclose any of the '571 patent limitations).

In Dr. Johnson's opinion, a POSA would have considered treating bloating associated with IBS-D materially different from treating one or more symptoms of IBS or IBS-D. *See* PAF ¶ 23 (citing JA0104 (Ex. E, Johnson Rebuttal ¶ 118) ("Dr. Harary opines the treatment of bloating associated with IBS-D is not materially different from treating one or more symptoms of IBS or IBS-D as recited in the adjudicated claims of the '569 and '667 patents. I disagree.")), SUF ¶ 48.[9] Dr. Johnson explains a POSA would have been aware that Rome III—the leading diagnostic guideline for classifying functional gastrointestinal disorders—distinguished functional bloating from IBS or IBS-D. PAF ¶ 27 ("Under the Rome III criteria, a [POSA] would have considered bloating associated with diarrhea-predominant irritable bowel syndrome to be distinct from irritable bowel syndrome."). According to Dr. Johnson, a POSA therefore would not have assumed patients with bloating would necessarily have IBS or IBS-D, because bloating may occur independently from those conditions. PAF ¶¶ 24-25.[10]

Dr. Johnson explains the RFIB 2001 Study Protocol "contains ***no information about . . . the reduction of bloating associated with IBS-D***." PAF ¶ 30; *see also* PAF ¶ 31 (the study "does

[9] The parenthetical in PAF ¶ 23 is incorrect and should read "disagreeing that 'the treatment of bloating associated with IBS-D is not materially different from treating one or more symptoms of IBS or IBS-D as recited in the adjudicated claims of the '569 and '667 patents'" consistent with Dr. Johnson's Rebuttal ¶ 118 (JA0104, Ex. E).

[10] Defendants' expert, Dr. Harary, agrees "bloating can be a symptom of several different conditions," and bloating "may not be experienced by each IBS-D patient each day." *Compare* SUMF ¶ 51, *with* PAF ¶ 26; Resp. to SUMF ¶ 51. Defendants also concede (i) clinicians "had different treatment approaches for IBS patients depending on their predominant symptoms" in 2008 (PAF ¶ 59), and (ii) *Norwich I* does not include any factual findings addressing gender or sex (PAF ¶¶ 61-63).

not address bloating at all"). As he notes, "the RFIB 2001 Study Protocol mentions bloating in the ***exclusion*** criteria, it nowhere mentions bloating in the inclusion criteria of the study, let alone describes treating bloating associated with IBS-D with 550 mg TID." PAF ¶ 72.

Dr. Johnson similarly opines a POSA would not have understood Pimentel 2006 to disclose treating bloating associated with IBS-D because the study "found ***no improvement in diarrhea*** or abdominal pain"—the core diagnostic IBS-**D** symptoms—amongst study subjects. PAF ¶ 72; *see also* PAF ¶¶ 28-29 ("Pimentel 2006 does not address the treatment of IBS-D . . . at all."). Dr. Johnson also opines Pimentel 2006 fails (i) to disclose the reduction of bloating associated with IBS-D specifically in a female patient, and (ii) to delineate its results by gender.[11] PAF ¶¶ 61-63. Defendants' expert, Dr. Harary, agrees that Pimentel 2006 concluded its clinical data for diarrhea was not statistically significant. PAF ¶ 72.

Defendants' attempt to dismiss Dr. Johnson's analysis as "immaterial" and "irrelevant" due to the invalidity of *Norwich I* claims is flawed. Defendants cannot meet their burden on summary judgment by ignoring factual disputes. Dr. Johnson's opinions on bloating associated with IBS-D introduce new *Graham* factor considerations, distinguishing the '571 patent claims from the obviousness issues in *Norwich I*. *See generally* PAF ¶¶ 23-31, 63, 72-75.

#### b. The 7 Days Limitation Presents New Validity Issues

Claim 3 of the '571 patent and claim 6 of the '912 patent contain the 7 Days Limitation, which requires the female subject to achieve a reduction in bloating associated with IBS-D or other symptoms at a specific time—following 7 days after administration of rifaximin. Although the

[11] Certain of these factual disputes also apply to other asserted claims, For example, claim 3 of the '912 patent also requires treating a "female subject" and treating IBS-D specifically. SUF ¶ 33; PAF ¶¶ 55, 56-60, 63. The *Norwich I DC* opinion addressed neither requirement individually, nor the now-asserted inventions as a whole. PAF ¶¶ 56, 62 (IBS-D), 62-63 (gender).

parties agree *Norwich I* did not address this limitation, Defendants nevertheless contend *Norwich I* controls for three main reasons.

*First*, Defendants wrongly contend these dependent claims merely recite an "intended result" that does not "limit the claim." Mem. at 20-21. As discussed below (Section III.B.2.a), however, these claims require a concrete result to occur at a particular time. *See L'Oréal USA, Inc. v. Olaplex, Inc.*, 844 F. App'x. 308, 324 (Fed. Cir. 2021).

*Second*, Defendants argue "adding numerical constraints" does not rescue a claim from invalidity. Mem. at 16, 25 (citing *Ohio Willow Wood*, 735 F.3d at 1343-44).[12] But the 7 Days Limitation does not merely add a numerical limit. Instead, it requires the female patient to achieve a reduction of symptoms at a specific point during treatment. PAF ¶¶ 3, 8. After reviewing the *Norwich I* transcript, opinion, and prior art, the Examiner found this limitation non-obvious. PAF ¶¶ 98-102. Dr. Johnson agrees. He opines Pimentel 2006 does not disclose the 7 Days Limitation because its questionnaire "was administered outside the claimed timeframe." PAF ¶¶ 74, 79. And he opines the RFIB 2001 Study Protocol does not disclose this limitation because it lacks any clinical data as to when a reduction in symptoms occurs. *Id.* Defendants' disagreement with Dr. Johnson's opinions (*see* PAF ¶¶ 35, 37, 74, 79), confirms genuine disputes of material fact exist regarding the 7 Days Limitation—*i.e.*, a new *Graham* issue *Norwich I* did not address.

---

[12] Defendants' reliance on *Ohio Willow Wood* is misplaced. The Federal Circuit did not hold dependent claims reciting numerical limits do not present a materially different "issue" for collateral estoppel purposes. 735 F.3d at 1343-44. Instead, the court was reviewing the district court's grant of summary judgment of obviousness (not collateral estoppel). *Id.* Further, unlike the numerical limits in *Ohio Willow Wood*, the 7 Days Limitation is not a "feature[] . . . well-known in the prior art." *Id.* (citation omitted).

*Third*, Defendants contend the "durability of response" limitation at issue in *Norwich I* "encompasses" the 7 Days Limitation.[13] Mem. at 22. This argument strains credulity because the two limitations have different focuses: duration of relief *v.* onset of relief. As the shared specification teaches and Dr. Johnson explains, the *Norwich I* "durability of response" limitation refers to "continuous adequate relief of symptoms after removal of treatment." PAF ¶¶ 46-50. The *Norwich I* claims required a response to ***persist for months*** (12 weeks) after "removing the subject from treatment." PAF ¶¶ 42-43. The 7 Day Limitation, by contrast, requires a female subject to achieve the reduction "following 7 days after administration of rifaximin." PAF ¶ 36.

Dr. Johnson explains a POSA would have understood the 7 Days Limitation to materially differ from the "durability of response" limitations.[14] PAF ¶¶ 44-50. A subject could have a durable response after 12 weeks, regardless of when she "achieved" a symptom reduction. A subject could likewise "achieve" a reduction "following 7 days after administration of rifaximin," regardless of how long that response to treatment ultimately lasts. The limitations impose different requirements and therefore present different factual *Graham* issues.

#### c. The Baseline and Affirmative Response Claims Present New Validity Issues

---

[13] The "durability of response" limitation refers to the limitation in claim 1 of the '667 Patent: "wherein removing the subject from treatment ***after*** the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms." PAF ¶ 42.

[14] Defendants refer to a potential interpretive dispute over the 7 Day Limitation, but argue it is irrelevant. Mem. at 20, n. 3. The 7 Day Limitation and *Norwich I* 12-week "durability of response" limitations materially differ under either construction, so Salix reserves full argument on that potential dispute. Defendants' discussion, however, does not fairly reflect Salix's position. Mem. at 20. Defendants' incorrect interpretation ignores how the dependent claims—by referring to "the administration of rifaximin"—reference the "administering" step of the independent claim and the specification describes "administration" as "***introducing*** a GI specific antibiotic to a subject." PAF ¶¶ 3, 8; Amneal Action D.I. 23-1 at 24 ('571 patent at 12:37-39).

The remaining asserted claims require a reduction of bloating associated with IBS-D or other symptoms from baseline symptoms established before treatment (claim 2 of the '571 patent and claim 5 of the '912 patent) based on the female subject's affirmative response (claim 4 of the '571 patent and claim 7 of the '912 patent). The parties agree these limitations were not at issue in *Norwich I*. PAF ¶ 18; *see also* PAF ¶ 53 (Defendants conceding "defined by," "affirmative response," and "asked whether" do not appear in the *Norwich I* opinion). Once again, collateral estoppel does not apply because the *Graham* inquiry raises factual disputes about the applicability of the prior art to these new limitations. *See* PAF ¶¶ 32, 73, 75, 78, 80.

As discussed in Section III.B.1.a, Dr. Johnson disputes whether the prior art discloses the treatment of bloating associated with IBS-D. He further opines the prior art fails to disclose the bloating or symptom reductions claimed in these dependent claims. As he explains, "[l]acking any clinical data, the RFIB 2001 Study Protocol does not describe the reduction" of symptoms from baseline based on an affirmative response" and Pimentel 2006 found no improvement in several major IBS symptoms. PAF ¶¶ 72, 73, 75, 78, 80. Defendants also cite references by Cuoco and Barrett (Mem. at 19), but Dr. Johson raises disputes regarding the new limitations for those references too.[15] Defendants disagree, contending Pimentel 2006 and the RFIB 2001 Study Protocol together disclose those reductions and affirmative response within a 14-day treatment period. PAF ¶¶ 34, 54.

---

[15] *See, e.g.*, JA0133(Ex. E, Johnson Rebuttal ¶ 197) (Cuoco "has no information about the reduction of bloating associated with IBS-D or other IBS symptoms specifically in a female subject," "does not even mention bloating," and "does not disclose that the reduction of bloating associated with IBS-D or any IBS symptoms was achieved following 7 days after administration of rifaximin"); JA0170 (Ex. E, Johnson Rebuttal ¶ 345) (Barrett "does not include any contemporaneous patient reports on symptoms or disclose the treatment of female patients," and does not propose any benefit for the condition "bloating associated with IBS-D").

Defendants try to sidestep these new factual disputes in multiple ways. *First*, they wrongly argue these dependent claims are "not limiting." Mem. at 17-18, 24-25. As discussed in Section III.B.2.a, these claims recite concrete, determined results. *See L'Oréal*, 844 F. App'x. at 324.

*Second*, Defendants argue—without factual support—the methods described in the *Norwich I* claims "necessarily encompass the characterizations" recited in these new dependent claims. Mem. at 12; *see also* PAF ¶¶ 11, 13, 33, 52-53. But this point, too, is disputed. Defendants concede "not all patients treated with 550 mg of rifaximin TID for 14 days will experience" the concrete reductions the claims require. PAF ¶¶ 64-69.

*Third*, Defendants argue any "difference" between these limitations "is not material to the relevant invalidity." Mem. at 18. But their authority is inapposite. In each cited case, the ostensibly "new" limitation had been directly addressed in the prior litigation.[16] In contrast, *Norwich I* neither considered the concrete reductions recited in these dependent claims nor determined them "from baseline" or by an "affirmative response."

Defendants also fail to consider the obviousness of each claimed invention "as a whole," despite the requirement to do so. *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1337 (Fed. Cir. 2005). Rather, Defendants improperly deconstruct each claim into "its component parts," *id.*, plucking out the dependent claim limitations individually and arguing the recited reduction from baseline and affirmative response reflect "conventional" practices (Mem.

---

[16] *Allergan, Inc. v. Apotex, Inc.*, 2015 WL 13358250, at *2 (M.D.N.C. Aug. 31, 2015) (new limitation claiming darkened eye lashes was at issue in prior litigation which "was not limited to just 'mere eyelashes;' also at issue were such things as length, thickness, and pigment, i.e., darkness"); *e.Digital Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723, 726 (Fed. Cir. 2014) ("[T]he addition of a microprocessor was expressly considered by the Colorado Court"); *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319-20 (Fed. Cir. 2015) (limitation to transmit hypertext over internet is not materially different because patentee conceded having not "invent[ed] the internet, or hypertext, or the URL" in the first litigation) (internal citation and quotations omitted).

at 19, 22, 25-26). But the conventionality of these limitations, as part of the claimed inventions as a whole, is a disputed factual question. SUMF ¶ 42. In any event, Defendants' own expert disagrees that "establishing pre-treatment baseline symptoms and evaluating a treatment effect as a function of improvement from such baseline is 'standard practice when treating IBS.'" *Id*.

#### d. The Motivation to Combine and Reasonable Expectation Analyses Present New Validity Issues

Evaluating obviousness based on the claimed invention "as a whole" is an "important requirement" that "avoids "import[ing] hindsight into the obviousness determination." *Princeton*, 411 F.3d at 1337. Defendants' brief ignores this requirement because the motivation to combine and reasonable-expectation-of-success analyses present additional factual disputes *Norwich I* did not address.

For each asserted claim, Dr. Johnson opines a POSA (i) would not have been motivated to combine Pimentel 2006 and the RFIB 2001 Study Protocol to reach the claimed invention, and (ii) would not have had a reasonable expectation of success in doing so. PAF ¶ 81. He cites various reasons, including Phase II clinical studies being "generally known to be a poor predictor of drug success" (PAF ¶ 87); extensive contemporaneous critiques of Pimentel 2006 (PAF ¶¶ 82-83); Pimentel 2006 finding no improvement in the hallmark IBS-D symptom, diarrhea (PAF ¶ 72, SUMF 19); the lack of motivation to modify Pimentel 2006's dosing (PAF ¶ 93); the RFIB 2001 Study Protocol's lack of any safety or efficacy data (PAF ¶¶ 86, 94); the general "dearth" of clinical safety and efficacy data (PAF ¶ 88); and skepticism surrounding antibiotics like rifaximin (PAF ¶¶ 90-91).

Dr. Johnson's opinion relies on limitations not at issue in *Norwich I*. His analysis of motivation to combine and expectation of success for the '571 patent, for example, highlights the prior art's deficient disclosures regarding the treatment of bloating associated with IBS-D.

JA0169, JA0172, JA0177, JA0179 (Ex. E, Johnson Rebuttal ¶¶ 342-43, 353, 371, 375). He similarly highlights the prior art's deficient disclosures relating to the 7 Day Limitation, repeatedly noting Defendants' cited references do "not disclose achieving a reduction of bloating associated with IBS-D following 7 days after administration." JA0194, JA0195-JA0202 (Ex. E, Johnson Rebuttal ¶¶ 441-42, 445, 448-453, 456-457, 463-464).

As they did with each new limitation, Defendants try to dismiss Dr. Johnson's opinions, which properly assess the claimed inventions as a whole, as "irrelevant" and "immaterial." PAF ¶ 81. But again, their argument presupposes that *Norwich I* governs. *Id.* The *Norwich I* court's rulings on motivation to combine and expectation of success pertained only to the *Norwich I* claimed inventions, ***not*** the newly claimed inventions "as a whole" (including their new limitations) now asserted. *See* SUF ¶ 59. Dr. Johnson's opinions on motivation to combine and expectation of success raise factual disputes based on the new claim limitations, which were not addressed in *Norwich I*. *See* PAF ¶¶ 81-83, 86-88, 90-91, 93-94. The obviousness inquiry here thus involves even more "issues" beyond *Norwich I*.

### 2. Defendants' Remaining Arguments Misapply the Law

Analyzing the *Graham* factors requires substantively considering the new limitations and how they differ from Defendants' asserted prior art. Despite their attempt, Defendants fail to justify ignoring the new limitations now at issue.

#### a. The Asserted Dependent Claims Are Limiting

Defendants argue the asserted dependent claims are not limiting because they "are merely characterizations of the result" of treating patients using the claimed dose (Mem. at 11, 18) or a "statement of intended result" (*id.* at 14-15, 18-19). But the Federal Circuit rejected this same argument in *L'Oréal USA, Inc. v. Olaplex, Inc.*

In *L'Oréal*, the dependent claims recited "specific amounts of reduction in breakage compared to hair bleached with the bleaching formulation without the active agent." 844 F. App'x at 324. L'Oréal argued these were "mere statements of intended result, . . . [that] cannot create patentability if the claims on which they depend are unpatentable." *Id.* The Federal Circuit disagreed for two reasons. First, the claims "state[d] specific requirements rather than a general purpose or aspirational result for the claimed method." *Id.* (internal citation and quotations omitted). Second, because the claims were dependent, "treat[ing] the limitations as of no legal effect would be to interpret each of these dependent claims as entirely a nullity." *Id.* The Federal Circuit applied the "fairer understanding": the dependent claims limited the independent claims "to options that produce the concretely specified results—thus making a difference in the manipulative steps." *Id.*

The dependent claims asserted here similarly limit the claimed methods to instances where they "produce the concretely specified results" for the reduction of bloating associated with IBS-D or IBS symptoms and thus "mak[e] a difference in the manipulative steps." *Id.* Claims 2 and 4 of the '571 patent and claims 5 and 7 of the '912 patent require a concrete result ("reduction of bloating" or "reduction of the one or more symptoms") determined in a concrete way ("from baseline symptoms established prior to treatment" or by "affirmative response from the subject when asked"). Claim 3 of the '571 patent and claim 6 of the '912 patent similarly require a concrete result ("reduction of bloating" or "reduction of the one or more symptoms" from baseline) to occur at a concrete point in time ("following 7 days after administration of rifaximin"). Defendants readily concede "not all patients treated with 550 mg of rifaximin TID for 14 days will experience" the concrete reductions required by these dependent claims. PAF ¶¶ 64-69.

Defendants' cited authority does not apply. Mem. at 17-18 (citing *Bristol-Meyers*, *Copaxone*, and *Prometheus*). As the Federal Circuit explained in *L'Oreal*, "the language at issue" in that line of cases "identified a property in only very general terms and appeared in the very same claim that stated the other more concrete requirements." 844 F. App'x at 324 (citing, *e.g.*, *Bristol-Meyers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374-75 (Fed. Cir. 2001)).[17] *L'Oreal* distinguished the dependent claims from language like "an antineoplastically effective amount" and "efficiently" which "essentially duplicates the dosage amounts recited in the claims and did not inform the mechanics of how the [method] is executed . . . or d[id] not change the claimed method or require any additional required structure or condition for the claims." *Id.* (internal citation and quotations omitted).

Similarly, the limitation at issue in *In Re: Copaxone Consolidated Cases* was not a dependent claim reciting a concrete result, but rather an independent claim reciting administering a "therapeutically effective regimen." 906 F.3d 1013, 1023 (Fed. Cir. 2018). The district court in *Prometheus Laboratories Inc. v. Roxane Laboratories, Inc.* likewise found the limitations reciting "improvement" do "not contain any obvious steps or additional processes." 2013 WL 5333033, at *5 (D.N.J. Sept. 23, 2013).

In contrast, each asserted dependent claim here requires the recited additional conditions to occur beyond the antecedent method steps—an actual "reduction" of "bloating" or "symptoms," determining that reduction "from baseline" or by the subject's "affirmative response," and achieving that reduction "following 7 days after administration of rifaximin." These claims are therefore limiting and entitled to patentable weight.

[17] Notably, Judge Dyk was on the deciding panel in both *L'Oreal* and *Bristol-Meyers*.

### b. Defendants Improperly Conflate the Double Patenting Inquiry With the Collateral Estoppel Inquiry

Defendants ask the Court to infer some concession by Salix that no patentable distinction exists because Salix filed terminal disclaimers to overcome ODP rejections during prosecution. *See* Mem. at 16. Courts have repeatedly rejected this argument.

An ODP rejection "means that the claims of a later patent application are deemed obvious from the claims of an earlier patent." *Quad Env't Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 873 (Fed. Cir. 1991) (citation omitted). Terminal disclaimers filed to overcome an ODP rejection are "neither an admission of the propriety of the rejections nor an admission that the inventions claimed . . . are not 'independent and distinct.'" *Purdue Pharma*, 2017 WL 784989, at *7; *Quad*, 946 F.2d at 873-74 (terminal disclaimers are a "convenient response"; it "is improper to convert this simple expedient of 'obviation' into an admission or acquiescence or estoppel on the merits."). Thus, as a matter of law, Salix did not admit to obviousness by filing a terminal disclaimer.

Defendants' reliance on *SimpleAir v. Google LLC* is also misguided. 884 F.3d 1160 (Fed. Cir. 2018). Relying on an isolated phrase ("strong clue"), they invite the Court to draw an impermissible inference from Salix's terminal disclaimers. *See id.* at 1168; Mem. at 16. But *SimpleAir* ***forecloses*** this result. 884 F.3d at 1167-68 ("[O]ur cases foreclose the inference that filing a terminal disclaimer functions as an admission regarding the patentability of the resulting claims.") (collecting cases). The facts here also foreclose the inference. The Examiner based his rejections on related continuations, acknowledging the claims were "not identical," and Salix made clear it submitted disclaimers only "[t]o facilitate prosecution." SUF ¶¶ 26-27, 29; *Purdue Pharma*, 2017 WL 784989, at *7 (declining to apply collateral estoppel under similar

circumstances). Drawing a factual inference from terminal disclosures at summary judgment—and in movant's favor—would constitute error.

Defendants' use of the phrase "patentably indistinct" also improperly conflates the inquiries for collateral estoppel and ODP. *See* Mem. at 10-11, 16, 23. "Only the claims are compared in a rejection for double patenting." *Quad*, 946 F.2d at 873. Collateral estoppel of obviousness involves a ***different inquiry***—an analysis of whether the *Graham* factors present different issues, including "whether the nonlitigated claims present new issues as to . . . the scope and content of th[e] art" and "differences between the prior art and the nonlitigated claims." *Interconnect*, 774 F.2d at 1136 (internal citation omitted).

By citing *SoftView*, Defendants incorrectly argue ODP and collateral estoppel involve the "same analysis." *See* Mem. at 23. *SoftView* merely recognizes "not patentably distinct" and "substantially the same" are similar terminology; it does not say the ***collateral estoppel*** and ***ODP*** inquiries are the same. *SoftView LLC v. Apple Inc.*, 108 F.4th 1366, 1372-73 (Fed. Cir. 2024) (explaining ODP analysis "involved comparing the claims before it with the previously cancelled claims," but collateral estoppel "would have involved comparing the claims before the Board with the prior art[.]"). The Federal Circuit also rejected SoftView's argument "that section 42.73(d)(3)(i) should be construed as adopting common law principles of collateral estoppel." *Id.* at 1371.

Defendants' reliance on ODP authority to support its collateral estoppel argument thus fails. *See, e.g.*, Mem. at 16 (citing *Eli Lilly*); *id.* at 23 (citing *Abbvie* and *Vogel*). If anything, Defendants' authority highlights the factual character of the parties' disputes over the new limitations. For example, *Application of Vogel* demonstrates even subtle differences in claim language can result in a patentably distinct invention. 422 F.2d 438, 442 (C.C.P.A. 1970) (finding

claim to "pork" patentable over prior claim to "beef" because certain "considerations with respect to pork might not be applicable to beef").

* * *

In sum, the numerous factual disputes regarding the application of the *Graham* factors to the asserted IBS-D claims preclude summary judgment of collateral estoppel.

## IV. THE COURT SHOULD DENY SUMMARY JUDGMENT ON THE POLYMORPH CLAIMS

### A. Background: the Asserted Polymorph Claims Materially Differ from *Norwich I*

Salix asserts claims 7-9 of the '196 patent, which require (i) solid pharmaceutical compositions comprising rifaximin polymorphic **forms δ, ε**, or a combination of the two and (ii) certain characteristic XRPD peaks. SUF ¶¶ 63-66. In contrast, the *Norwich I* polymorph claims, which belong to a different patent family than the '196 patent, recited an entirely different polymorph—**form β**—with different XRPD peaks. SUF ¶¶ 67-69; PAF ¶¶ 103, 105, 110.

### B. Collateral Estoppel Does Not Apply to the Polymorph Patents Because the Different Limitations Materially Alter the Invalidity Analysis

Collateral estoppel applies only if the differences in the claim limitations do not materially alter the *Graham* obviousness analysis. *Interconnect*, 774 F.2d at 1136; *Purdue Pharma*, 2017 WL 784989, at *5. But like the IBS-D claims, Amneal fails to address the *Graham* factors as part of its argument on the polymorph claims, which alone warrants denying summary judgment. Amneal's failure to address the *Graham* factors is unsurprising, as a proper analysis reveals numerous disputed material facts precluding summary judgment. Faced with these factual disputes, Amneal erroneously dismisses the difference in the polymorphic forms claimed in the '196 patent and the form adjudicated in *Norwich I* as "immaterial" and misrepresents the findings in *Norwich I* as "not polymorph specific." Mem. at 28.

### 1. The Claimed Polymorphic Forms δ and/or ε Present New Validity Issues

The asserted claims of the ’196 patent require polymorph form δ, ε, or a combination of the two, as well as characteristic XRPD peaks of these forms. SUF ¶¶ 63-66. The *Norwich I* claims, however, recite polymorph form β. SUF ¶¶ 67-69. Thus, *Norwich I* did not consider whether the prior art disclosed polymorph form δ or ε, or whether these polymorphic forms would have been obvious to a POSA. PAF ¶ 108. While Amneal recognizes the ’196 patent claims and *Norwich I* claims recite different polymorphs, Mem. at 27, it nonetheless asserts the differences between polymorphic ***form β*** and polymorphic ***forms δ and ε*** is “immaterial.” Mem. at 27; PAF ¶¶ 103-104. Amneal’s argument fails for two reasons.

*First*, as Amneal concedes, polymorphic form β “has different properties than the polymorphic forms at issue in this matter.” PAF ¶ 105. Those differences include their respective stability, characteristic XRPD peaks, water content, and bioavailability. Amneal Dkt. 121-3 (Myerson Decl.) ¶¶ 28, 48-53. These differences are critical to the obviousness analysis. *See, e.g.*, *Grunenthal GMBH v. Alkem Labs, Ltd.*, 919 F.3d 1333 (Fed. Cir. 2019) (recognizing one form of a polymorph can be known while another is not); *Pharmacyclics LLC v. Alvogen, Inc.*, 2022 WL 16943006, at *6, *10 (Fed. Cir. Nov. 15, 2022) (recognizing discovering new crystalline forms of a polymorph can be challenging and unpredictable).

*Second*, Amneal’s assertion that the difference in polymorphic form “is immaterial because the Delaware Court’s invalidity analysis in *Norwich I DC*, affirmed on appeal, was not polymorph specific” misrepresents the record. Mem. at 28. Amneal selectively cites a portion of the Federal Circuit opinion, *id.*, while ignoring the Federal Circuit’s discussion ***focused on form β.*** Indeed, in addressing the *Graham* factors, the Federal Circuit stated the “scope and content of the prior art here include[] preparations of crystalline rifaximin, which expert testimony supports would have

***yielded the β form of rifaximin***." *Norwich I CAFC,* 98 F.4th at 1066 (emphasis added) The Court should therefore deny summary judgment on these claims, which present new factual disputes.

**2. *Norwich I* Did Not Find the Cannata Processes Produced Rifaximin δ**

Amneal also erroneously contends the *Norwich I* district court "specifically found that batches produced according to the process described in Cannata resulted in the ***same polymorphic forms of rifaximin*** that are at issue ***in this litigation***." Mem. at 28-29 (emphasis in original). Not so. Neither Cannata nor Marchi mentions rifaximin polymorphs at all, let alone teach the processes produce rifaximin δ or ε. PAF ¶¶ 108, 112. Moreover, as Salix's expert opines, data in the file history of the '196 patent shows rifaximin synthesized according to examples in Cannata and Marchi ***failed*** to produce rifaximin δ or ε. PAF ¶¶ 123-124.

Amneal bases its argument that the Cannata process produces rifaximin polymorphic form δ or ε on the district court's discussion of a ***non-prior art*** declaration from one of the inventors of the polymorph patents—the Viscomi Declaration. SUF ¶ 80; PAF ¶ 117. Salix disputes whether the Viscomi Declaration batches were made according to a process disclosed in Cannata or Marchi. PAF ¶¶ 118-120. Indeed, as Amneal's own expert admitted, because storage conditions affect the polymorphic form of rifaximin, he could only speculate whether the rifaximin batches referenced in the Viscomi Declaration were produced by the prior art processes. PAF ¶¶ 121-122.

In sum, the parties dispute whether Cannata or Marchi's processes produce rifaximin δ or ε and thus disclose polymorph forms δ and ε required in the asserted claims. Amneal's arguments concerning "routine incorporation" and the remaining claim elements, (Mem. at 23-25), depend on first resolving whether rifaximin δ and ε were produced by prior art processes. Because genuine disputes over the prior art's disclosures are classic factual issues, the Court should deny summary judgment. *B-K Lighting,* 375 F. App'x at 32.

### 3. The Motivation and Reasonable Expectation of Success Analyses Present New Invalidity Issues

Compounding its deficient *Graham* inquiry, Amneal fails to present motivation to combine and reasonable expectation of success analyses specific to the claimed δ or ε polymorphs. As Salix's expert opines, a POSA would not have been motivated to characterize the rifaximin produced by Cannata with a reasonable expectation of successfully identifying δ or ε forms with the claimed XRPD peaks, JA0628-JA0630 (Ex. BB, Chyall Rebuttal ¶¶ 154-157), thus raising additional disputed material facts. *See, e.g.*, *Cyntec*, 84 F.4th at 984; *Intelligent Bio-Sys.,* 821 F.3d at 1366.

In *Norwich I,* the district court made clear its finding on reasonable expectation of success applied ***only*** to form β: "the evidence shows that a POSA would have had a reasonable expectation of success in characterizing the polymorph β, ***as opposed to the other forms of rifaximin***." *Salix Pharms., Ltd. V. Norwich Pharms., Inc.* 2022 WL 3225381, at *7 (D. Del. Aug. 10, 2022); PAF ¶ 109. The Federal Circuit likewise focused on the β form, stating "[t]here thus appears to be no dispute that ***the claimed polymorph*** can be readily produced from the crystallization conditions disclosed in Cannata and that it would have been well within the abilities of the skilled artisan to procure and characterize ***the β form of rifaximin***." 94 F.4th at 1066. The Federal Circuit further explained "we ***do not*** hold that there is always a reasonable expectation of success in accessing or characterizing polymorphs." *Id*. at 1066-67 (emphasis added); PAF ¶ 107. Thus, the obviousness inquiry involves more factual issues beyond *Norwich I*, further warranting denial of summary judgment.

### 4. Collateral Estoppel Does Not Apply to Unrelated Patents

Amneal does not dispute the *Norwich I* patents involved a ***different*** patent family with a ***different*** priority date from the '196 patent. PAF ¶ 105; Mem. at 12. Collateral estoppel does not

apply where the second litigation involves "an unrelated patent, with different asserted claims, and dissimilar claim constructions" because the issues are "wholly different." *Source Search Techs. LLC v. Lending Tree,* 588 F.3d 1063, 1074 (Fed. Cir. 2009).

### C. Disputed Material Facts Preclude Granting Amneal's Motion for Summary Judgment of Obviousness Based on the New Zealand Application

Amneal also erroneously argues the asserted polymorph claims are invalid as obvious in view of the New Zealand Application. Mem. at 33. The New Zealand Application discloses the existence of and methods for obtaining only rifaximin forms α, β, and γ. SUF ¶ 83. It does not disclose rifaximin δ or ε or how to obtain them. PAF ¶ 112.

Amneal bases its obviousness argument on a comparison of the New Zealand Application ***with the '196 patent itself*** and its disclosures of the existence of and methods for obtaining rifaximin δ and ε. Mem. at 33-34; SUF ¶ 85. Amneal admits its polymorph expert Dr. Schinzer's "obviousness opinion is based on the undisputed fact that the manufacturing process in the New Zealand Application that makes rifaximin α and the manufacturing process in the '196 patent that makes rifaximin δ are identical with one difference: the drying procedures." PAF ¶ 140. The Supreme Court has rejected this approach as impermissible hindsight.[18] *KSR Int'l v. Teleflex, Inc.,* 550 U.S. 398, 426 (2007) ("[T]o judge [an asserted prior art reference] against the [patent-at-issue] is to engage in the very hindsight bias . . . [that] must be avoided."). This error alone is sufficient basis for the Court to deny summary judgment.

Amneal's obviousness argument also raises numerous material factual disputes, which further preclude summary judgment.

*First,* Amneal contends Example 1 in the New Zealand Application, which discloses a

[18] Salix is filing a contemporaneous *Daubert* motion to exclude Dr. Schinzer's opinions.

method for preparing rifaximin α, is "identical" "in every material way" to Example 1 of the '196 patent. Mem. at 33. But Amneal's own highlighting shows how the examples materially differ by producing different polymorphic forms with different water contents. Mem. at 34-35. As Amneal admits, the New Zealand Application fails to teach the specific water content required to obtain rifaximin δ or ε, or the existence of these polymorphs. PAF ¶ 113.

*Second,* despite these deficiencies, Amneal argues "the prior art teachings of the New Zealand Application would be easily modified by a POSA with only 'a little work' to form rifaximin δ and place it into a pharmaceutical composition." Mem. at 34. But Amneal fails to explain *why* a skilled artisan would have been motivated to modify the New Zealand Application to arrive at the claimed δ or ε rifaximin polymorphs. Amneal's argument that "drying is routine and would be well understood by a POSA" misses the point. Mem. at 38; *see also* PAF ¶¶ 129-135. The correct inquiry is whether a POSA would have been motivated to modify the New Zealand Application at the time of the invention, without the benefit of hindsight, to produce rifaximin δ and formulate it into a solid pharmaceutical composition. *Polaris Indus., Inc. v. Arctic Cat, Inc.,* 882 F.3d 1056, 1068-69 (Fed. Cir. 2018) (PTAB erred by focusing "on what a skilled artisan would have been *able* to do, rather than what a skilled artisan would have been *motivated* to do at the time of the invention" (emphasis in original)). Regardless of how "easy" it would have been for a POSA to modify the drying conditions in Example 1 (Mem. at 34), the parties dispute whether a POSA would have been motivated to do so in the first place, much less in the specific way needed to achieve rifaximin δ. SUF ¶¶ 84, 86; PAF ¶¶ 132-135; JA0616-JA0618 (Ex. BB, Chyall Rebuttal ¶¶ 118-121).

*Third*, Amneal relies on the motivation articulated in *Norwich I* to support its assertion that a POSA would have been motivated to arrive at the claimed δ or ε polymorphic forms based on

the teaching of the New Zealand Application. Mem. at 34-35; SUF ¶84.[19] Amneal's reliance on *Norwich I* again misses the mark. In *Norwich I,* the court pointed to the FDA encouraging, if not requiring, the drugs to be well-characterized during drug development to support its finding that motivation existed to characterize rifaximin β. Mem. at 28-29 (citing *Norwich I DC*, at *7). The New Zealand Application already characterizes rifaximin and discloses three polymorphic forms: rifaximin α, β, and γ, with no mention of rifaximin δ or ε. *See* SUF ¶ 84; JA0511-JA0515 (Ex. Q, New Zealand Application, at 1:2-2:4, 3:7-29); *compare* JA0467-JA0468 (Ex. O, Schinzer Rpt. ¶¶ 199-201) *with* JA0618-JA0620 (Ex. BB, Chyall Rebuttal, ¶¶ 121-122, 127). Amneal fails to explain why a POSA would have been motivated to modify the New Zealand Application to arrive at the claimed δ or ε rifaximin polymorphs.

Indeed, Salix's expert, Dr. Chyall, opines how a POSA's knowledge, the FDA Guidance, and other references would ***not*** have motivated a POSA reading the New Zealand Application to create and characterize additional polymorphs of rifaximin. JA0618-JA0621 (Ex. BB, Chyall Rebuttal ¶¶123-132). To the contrary, he opines the New Zealand Application "would ***discourage*** a skilled person from screening for new polymorphic forms," particularly by modifying the drying conditions. JA0617-JA0618 (Ex. BB, Chyall Rebuttal ¶¶ 121-122).

*Fourth,* Amneal fails to address whether a POSA would have had a reasonable expectation of successfully obtaining rifaximin δ or ε from modifying the New Zealand Application, raising another disputed material fact. Mem. at 33-36. Dr. Chyall opines a POSA would have had no expectation that additional forms with similar water content to the rifaximin α and β described in

[19] Amneal's reply to this fact misstates the motivation articulated in *Norwich I*. Nowhere does that opinion say the FDA Guidance directed a POSA to "***fully*** characterize" the active pharmaceutical ingredient. Rather the motivation was to "characterize the rifaximin produced by the Cannata processes." 2022 WL3225381 at *7.

the New Zealand Application "would exist," much less that the claimed δ and ε forms could be obtained from following the New Zealand Application processes. JA0616-JA0617 (Ex. BB, Chyall Rebuttal ¶¶ 118-119); *see also* JA0621-JA0623, JA0625 (Ex. BB, Chyall Rebuttal ¶¶ 133-137, 143). Whether polymorphism is unpredictable generally and whether rifaximin polymorphism specifically is unpredictable are additional material disputed facts (PAF ¶¶ 145-146), affecting the reasonable expectation of success analysis, particularly if Amneal is relying on an "obvious to try" theory. *See KSR,* 550 U.S. at 421.

Because Amneal's obvious arguments rely on hindsight and raise multiple issues of material fact under *Graham*, the Court should deny summary judgment.

## V. CONCLUSION

The Court should deny Defendants' motion for summary judgment in all respects.

Respectfully submitted,

Dated: March 31, 2026

*/s/ Harvey Bartle IV*
Harvey Bartle IV
**MORGAN, LEWIS & BOCKIUS LLP**
(*A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP*)
502 Carnegie Center
Princeton, NJ 08540-6241
Phone: (609) 919-6600

OF COUNSEL
Michael J. Abernathy
Wan-Shon Lo
Maria E. Doukas
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive
Chicago, IL 60606-1511
Phone: (312) 324-1000

Margaret A. McGreal
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5000

*Attorneys for Plaintiffs Salix Pharmaceuticals, Inc., Salix Pharmaceuticals, Ltd., Alfasigma, S.p.A., and Bausch Health Ireland, Ltd.*

**CERTIFICATE OF SERVICE**

I, Harvey Bartle IV, do hereby certify that on March 31, 2026, I caused a true and correct copy of the foregoing to be served upon all counsel of record via CM/ECF.

*s/ Harvey Bartle IV*
Harvey Bartle IV