Rebekah Conroy
**STONE CONROY LLC**
25 A Hanover Road, Suite 301
Florham Park, NJ 07932
(973) 400-4181
rconroy@stoneconroy.com

Jake M. Holdreith
Christopher A. Pinahs
Samuel J. LaRoque, Ph.D.
**ROBINS KAPLAN LLP**
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
(612) 349-8500

Oren D. Langer
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas
Suite 2601
New York, NY 10019
(212) 980-7400

*Attorneys for Amneal Pharms. of NY, LLC and Amneal EU, Ltd.*

Arnold B. Calmann
Katherine A. Escanlar
**SAIBER LLC**
7 Giralda Farms, Suite 360
Madison, NJ 07940
Phone: (973) 622-3333

Matthew J. Becker
Thomas K. Hedemann
Edward M. Mathias
Matthew S. Murphy
Rebecca L. Clegg
**AXINN, VELTROP & HARKRIDER LLP**
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100

Sara B. Natour
**AXINN, VELTROP & HARKRIDER LLP**
1901 L Street NW
Washington, DC 20036
(202) 912-4700

Cassie Goodnight
**AXINN, VELTROP & HARKRIDER LLP**
630 Fifth Avenue, 33rd Floor
New York, NY 10111
(212) 728-2200

*Attorneys for Norwich Pharmaceuticals, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., ALFASIGMA S.P.A. and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br>v.<br><br>AMNEAL PHARMACEUTICALS OF NEW YORK, LLC and AMNEAL EU, LIMITED,<br><br>Defendants. | Civil Action No. 1:24-cv-04607-JFM |
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>NORWICH PHARMACEUTICALS, INC.,<br><br>Defendant. | Civil Action No. 1:24-cv-07140-JFM |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT**
**<u>OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY</u>**

# TABLE OF CONTENTS


I. Introduction .......... 1

II. Asserted IBS-D Claims .......... 1

A. Collateral Estoppel Applies Because the Asserted IBS-D Claims Do Not Materially Differ from the *Norwich I* Invalidated IBS-D Claims. .......... 1

1. The Invalidated IBS-D Claims Encompass "Female[s]" and "Bloating" ... 2

2. The Asserted Dependent Claims Merely Recite Intended Results that Do Not Modify the Method Held Invalid in *Norwich I* .......... 3

B. Plaintiffs Misstate and Misapply Collateral Estoppel Law .......... 5

C. A Graham Inquiry Would Not Change the Outcome. .......... 6

III. The Asserted Polymorph Claims Are Not Materially Different From the Invalidated Polymorph Claims. .......... 8

IV. The New Zealand Application Combined With the Knowledge of a POSA Render the Asserted Polymorph Claims Obvious. .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*B-K Lighting, Inc. v. Fresno Valves & Castings, Inc.*,
375 Fed. App'x 28 (Fed. Cir. 2010)........6

*Bourns, Inc. v. United States*,
537 F.2d 486 (Ct. Cl. 1976)........5

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
246 F.3d 1368 (Fed. Cir. 2001)........3

*In re Copaxone Consolidated Cases*,
906 F.3d 1013 (Fed. Cir. 2018)........3, 4

*Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*,
84 F.4th 979 (Fed. Cir. 2023)........6

*Global Tubing LLC v. Tenaris Coiled Tubes LLC*,
167 F.4th 1357 (Fed. Cir. 2026)........6

*Google LLC v. Hammond Development Int'l, Inc.*,
54 F.4th 1377 (Fed. Cir. 2022)........2

*Horizon Medicines LLC v. Dr. Reddy's Lab'ys, Inc.*,
No. CV 15-3324 (SRC), 2022 WL 577957 (D.N.J. Feb. 24, 2022)........7, 10

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016)........6

*Interconnect Planning Corp. v. Feil*,
774 F.2d 1132 (Fed. Cir. 1985)........2, 5

*KSR Int'l v. Teleflex, Inc.*,
550 U.S. 398 (2007)........11, 12

*L'Oreal USA, Inc. v. Olaplex, Inc.*,
844 F. App'x 308 (Fed. Cir. 2021)........3

*Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*,
336 F.3d 1373 (Fed. Cir. 2003)........4

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013)........2, 5, 9, 10

*Prolitec Inc. v. ScentAir Technologies, LLC*,
770 F. Supp. 3d 730 (D. Del. 2025)........11

*Prometheus Lab'ys, Inc. v. Roxane Lab'ys, Inc.*,
Civ. Nos. 11-230, -1241, 2013 WL 5333033 (D.N.J. Sept. 23, 2013)........3

*Purdue Pharma L.P. v. Mylan Pharms. Inc.*,
No. 15-1155, 2017 WL 784989 (D. Del. Mar. 1, 2017)........5

*Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*,
No. 22-CV-61, 2023 WL 11891335 (N.D.W.V. Apr. 19, 2023)........4

*SimpleAir, Inc. v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018)........8

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015)........2, 9

*Valve Corp. v. Ironburg Inventions Ltd.*,
No. 2023-1725, 2025 WL 1177824 (Fed. Cir. Apr. 23, 2025)........5, 6

*Westwood Chemical, Inc. v. United States*,
525 F.2d 1367 (Ct. Cl. 1975)........2, 9

**Statutes and Other Authorities**

35 U.S.C. § 103........5

Fed. R. Civ. P. 12(b)(6)........5

Fed. R. Evid. 702........11

MPEP § 2141........11

## TABLE OF ABBREVIATIONS

| **Term** | **Abbreviation** |
|---|---|
| Norwich | Defendant Norwich Pharmaceuticals, Inc. |
| Amneal | Amneal Pharms. of NY, LLC and Amneal EU, Ltd. |
| Defendants | Collectively, Norwich and Amneal |
| Plaintiffs | Collectively, Salix Phamaceuticals, Ltd, Salix Pharmaceuticals, Inc., Alfasignma S.P.A. and Bausch Health Ireland Ltd. |
| Op. Br. | Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment of Invalidity |
| Opp. | Opposition to Motion for Summary Judgment of Collateral Estoppel |
| the '199 patent | U.S. Patent No. 7,612,199 |
| the '206 patent | U.S. Patent No. 7,902,206 |
| the '196 patent or Polymorph Patent | U.S. Patent No. 8,193,196 |
| the '569 patent | U.S. Patent No. 8,309,569 |
| the '667 patent | U.S. Patent No. 10,765,667 |
| the '912 patent | U.S. Patent No. 11,564,912 |
| the '571 patent | U.S. Patent No. 11,779,571 |
| Asserted IBS-D Patents | Collectively, the '912 and '571 patents |
| Asserted IBS-D Claims | Claims 3 and 5-7 of the the '912 patent, and Claims 1-4 of the '571 patent |
| Invalidated IBS-D Patents | Collectively, '667 patent and '569 patent |
| Invalidated IBS-D Claims | Claim 3 of the '667 patent, and Claim 2 of the '569 patent |
| Asserted Polymorph Claims | Claims 7-9 of the '196 patent |
| Invalidated Polymorph Patents | Collectively, the '199 patent and the '206 patent |

| | |
|---|---|
| Invalidated Polymorph Claims | Claim 4 of the '199 patent, and claim 36 of the '206 patent |
| *Norwich I* | Collectively, the district court decision in *Salix Pharm., Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430-RGA, 2022 WL 3225381 (D. Del. Aug. 10, 2022), and the decision affirming the same in *Salix Pharms., Ltd. v. Norwich Pharms. Inc.*, 98 F.4th 1056 (Fed. Cir.), *cert. denied*, 145 S. Ct. 567, 220 L. Ed. 2d 216 (2024), *and cert. denied*, 145 S. Ct. 983, 220 L. Ed. 2d 362 (2024) |
| *Norwich I DC* | The district court decision in *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430-RGA, 2022 WL 3225381, at *1 (D. Del. Aug. 10, 2022), *aff'd*, 98 F.4th 1056 (Fed. Cir. 2024) |
| *Norwich I CAFC* | The United States Court of Appeals, Federal Circuit decision affirming the same in *Salix Pharms., Ltd. v. Norwich Pharms. Inc.*, 98 F.4th 1056 (Fed. Cir.), *cert. denied*, 145 S. Ct. 567, 220 L. Ed. 2d 216 (2024), *and cert. denied*, 145 S. Ct. 983, 220 L. Ed. 2d 362 (2024). |
| Marchi | U.S. Patent No. 4,341,785 |
| Cannata | U.S. Patent No. 4,557,866 |
| New Zealand Application | New Zealand Patent Application Publication No. NZ531622A |
| POSA | Person of ordinary skill in the art |

## I. INTRODUCTION

Plaintiffs seek to resurrect the same method that was invalidated in *Norwich I*. To prolong market exclusivity, Plaintiffs make repetitive non-obviousness claims in a different forum and under a new expert's opinions. These claims, rejected previously, fail to create the requisite material differences to preclude summary judgment.

Under the pretense that case law requires a fresh *Graham* analysis to ascertain applicability of collateral estoppel, Plaintiffs seek to have the Court re-adjudicate fact issues decided in *Norwich I*. This approach would cause the *Graham* inquiry to subsume collateral estoppel itself. Plaintiffs' argument is circular: because Plaintiffs presuppose that the Asserted IBS-D Claims materially differ from the Invalidated IBS-D Claims, they believe that the Asserted IBS-D Claims invoke different subsidiary facts. The reality is the opposite. The asserted claims do not materially differ from the invalidated claims, and thus the asserted claims fail to present a new invalidity issue.

The same is true for the Asserted Polymorph Claims. The only difference is the claimed polymorph. But the *Graham* analysis in *Norwich I*, which relied on prior art that is not specific to any one polymorph, would mirror any *Graham* analysis that would take place at trial here. No fact can change that.

## II. ASSERTED IBS-D CLAIMS

### A. Collateral Estoppel Applies Because the Asserted IBS-D Claims Do Not Materially Differ from the *Norwich I* Invalidated IBS-D Claims.

The Invalidated and Asserted IBS-D Claims require the same method of treatment: administering rifaximin 550 mg three times/day ("TID") for 14 days to a subject experiencing symptoms of IBS or IBS-D, and nothing more. Op. Br. at 3-4, 10, 16-17. It is black letter law that using "slightly different language to describe substantially the same invention" does not

foreclose the application of collateral estoppel. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342-43 (Fed. Cir. 2013). Where, as here, the claimed method is identical, no additional inquiry is needed to resolve the identity of issues. *See Google LLC v. Hammond Development Int'l, Inc.*, 54 F.4th 1377, 1382 (Fed. Cir. 2022); *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319-20 (Fed. Cir. 2015).

Plaintiffs incorrectly contend that *Interconnect* requires a full-blown *Graham* analysis for estoppel to apply. Opp. at 9 n.6 (citing *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1136 (Fed. Cir. 1985)). On the contrary, *Westwood*, the case on which *Interconnect* relies, explicitly held that if asserted and adjudicated claims "are of identical scope, it readily follows that no new issues bearing on the obviousness determination are presented . . . ." *Westwood Chemical, Inc. v. United States*, 525 F.2d 1367, 1375 (Ct. Cl. 1975). *Westwood* further explains that examining the asserted claims through the lens of prior art is only required where "a comparison [to the adjudicated claims] may reveal some differences of a substantive nature." Thus, contrary to Plaintiffs' assertion, a *Graham* analysis need not substrate every collateral estoppel defense premised on the obviousness of adjudicated claims; rather, such an inquiry is required only where there are material differences between the claims. Here, material differences do not exist and collateral estoppel precludes Plaintiffs' attempt to relitigate identical issues.

### 1. The Invalidated IBS-D Claims Encompass "Female[s]" and "Bloating"

Each Invalidated IBS-D Claim recites administering rifaximin to a "subject" or "subject 65 years of age or older" having IBS-D symptoms. Each independent Asserted IBS-D Claim recites the identical method, but the subject is "female." There is no material dispute that a "female" is among the "subject" or "subject 65 years of age or older" that the Invalidated IBS-D Claims are directed to treat. *See* SUF ¶ 35. Plaintiffs fail to identify a material difference between

a "female subject" and a "subject" (of any age), and do not allege any unexpected result achieved in a "female subject."

The '571 patent claims "treating bloating associated with [IBS-D]," whereas the Invalidated IBS-D Claims recited "treating one or more symptoms of [IBS-D]" or "adequate relief of symptoms." There is no material dispute that bloating is a symptom of IBS-D. *See* SUF ¶¶ 50, 51. Because the "administering" step is identical, the'571 patent claims do not substantively differ from the Invalidated IBS-D Claims. *Contra* Opp. at 5-6, 8.

### 2. The Asserted Dependent Claims Merely Recite Intended Results that Do Not Modify the Method Held Invalid in *Norwich I*

The asserted dependent claims (SUF ¶¶ 3-5, 7-9) do not substantively differ from the Invalidated IBS-D Claims because they merely recite an intended result of the invalidated method that is not entitled to patentable weight. Op. Br. at 11-12, 18-19; *see In re Copaxone Consolidated Cases*, 906 F.3d 1013, 1023 (Fed. Cir. 2018); *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1375-76 (Fed. Cir. 2001); *Prometheus Lab'ys, Inc. v. Roxane Lab'ys, Inc.*, Civ. Nos. 11-230, -1241, 2013 WL 5333033, at *5 (D.N.J. Sept. 23, 2013). Specifically, the "reduction from baseline," reduction "following 7 days after administration," and "affirmative response" claims do not modify the "administering" step of the independent claims, which is the same "administering" step as recited in the Invalidated IBS-D Claims. *See* Op. Br. at 11-12, 14-15, 18, 19; *contra* Opp. at 19-21.

Plaintiffs' reliance on *L'Oreal USA, Inc. v. Olaplex, Inc.*, 844 F. App'x 308 (Fed. Cir. 2021) is misplaced. Opp. at 19-21. In *L'Oreal*, the independent claim recited a method for bleaching hair comprising "mixing" a "bleaching formulation" containing "a bleach powder" and "a developer" with "maleic acid" and "applying the mixture to the hair." 844 Fed. Appx. at 312-13. It further recited a "concentration" range for the "maleic acid" as opposed to a static amount.

*Id*. The dependent claims stated that "following" the application step the "breakage of the hair is decreased by at least [5%, 10%, 20%, 50%] compared to hair bleached [without maleic acid]," or added a second active agent. *Id*. Therefore, the claims "limit[ed] the options covered . . . by the claims on which they depend to options that produce the concretely specified results – thus making a difference in the manipulative steps." *Id*. at 325. In other words, the dependent claims limited the amounts of ingredients required by the method.

Here, in contrast, the "administering" step is not modified by any dependent claim. *In re Copaxone*, 906 F.3d at 1023 (holding that the disputed phrase "does not change the claimed method or require any additional required structure or condition for the claims, and is therefore non-limiting"); *see Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1381 (Fed. Cir. 2003) (explaining that the disputed term did not "inform the mechanics of how the [method] is executed"). For example, in *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, the dependent claims [did] not require a "change or modification to the underlying dosing regimen if the test result [was] obtained, or not." No. 22-CV-61, 2023 WL 11891335, at *12-13 (N.D.W.V. Apr. 19, 2023) (holding dependent claim directed to "measur[ing] a letter score result [ ] does not change the manipulative steps of the claim"). Contrary to Plaintiffs' assertion, the dependent claims therefore do not "make a difference in the manipulative steps" in the common method recited in the Invalidated and Asserted IBS-D Claims. Opp. at 19-20. For example, even on Plaintiffs' mistaken view of the "following 7 days after administration of rifaximin" limitation, the dependent claim still requires the exact same step of administering rifaximin 550 mg TID for 14 days for infringement to occur.[1]

[1] Contrary to Plaintiffs' misleading suggestion, the recitations in the dependent claims do not have to be inherent to be directed to merely intended results. Opp. at 1-2. For example, regardless of whether a subject receiving the common method of administration experiences a

### B. Plaintiffs Misstate and Misapply Collateral Estoppel Law.

Plaintiffs' contention that collateral estoppel necessitates a *Graham* analysis such that disputed facts would make summary judgment inappropriate (Opp. at 9-10) is contrary to law. *See*, *e.g.*, *Ohio Willow Wood*, 735 F.3d at 1342-43 (affirming summary judgment that prior obviousness determination applied via collateral estoppel, where "patents use slightly different language to describe substantially the same invention").

Plaintiffs' reliance on *Interconnect* and *Bourns* is also misplaced. *See*, *e.g.*, Opp. at 4-5, 9 n.6, 22. In *Interconnect*, the reissue claims were not "substantially identical" to the parent claims and, therefore, the court conducted an ordinary obviousness inquiry under 35 U.S.C. § 103. 774 F.2d at 1137, 1141. The *Bourns* court granted summary judgment based on collateral estoppel after comparing the claims and determining that any "differences between the adjudicated and unadjudicated claims relate only to things known in the art." *See Bourns, Inc. v. United States*, 537 F.2d 486, 493, 497 (Ct. Cl. 1976). But *Bourns* did not require a *Graham* inquiry within its collateral estoppel analysis. *See id.* at 493. It explained that "[w]here the differences revealed by a comparison of the claims do not vary the relevant issues bearing on obviousness, collateral estoppel should apply." *Id*.

*Purdue* involved a motion to dismiss under F.R.C.P. 12(b)(6), a procedural stage at which the court lacked a factual record from which to gauge materiality to patentability. *Purdue Pharma L.P. v. Mylan Pharms. Inc.*, No. 15-1155, 2017 WL 784989, at *5, *9 (D. Del. Mar. 1, 2017). This was particularly salient in *Purdue* because the invalidated claims of the previously litigated patents were product-by-process claims, opposed to product claims, obviating the need to address patentability of certain product characteristics. *See id.* at *6. In *Valve*, the court

---

reduction in symptoms "following 7 days after administration," that is still an intended result of that administration.

remanded for separate inquiries concerning collateral estoppel and obviousness, if necessary. *Valve Corp. v. Ironburg Inventions Ltd.*, No. 2023-1725, 2025 WL 1177824, at *5 (Fed. Cir. Apr. 23, 2025). Plaintiffs' other cited cases do not address collateral estoppel at all. *See generally Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, 84 F.4th 979 (Fed. Cir. 2023); *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359 (Fed. Cir. 2016); *Global Tubing LLC v. Tenaris Coiled Tubes LLC*, 167 F.4th 1357 (Fed. Cir. 2026); *B-K Lighting, Inc. v. Fresno Valves & Castings, Inc.*, 375 Fed. App'x 28 (Fed. Cir. 2010).

### C. A Graham Inquiry Would Not Change the Outcome.

Even if the Court were to undertake a *Graham* analysis, the relevant factual findings in *Norwich I* are applicable here and indisputable. *See* Op. Br. at 2-3; SUF ¶¶ 15-23. Pimentel 2006 and the RFIB 2001 Study Protocol disclosed all the limitations of the Invalidated IBS-D Claims, including administering rifaximin 550 mg TID for 14 days to a subject or subject 65 years of age or older to treat or achieve adequate relief of IBS-D symptoms. *See* SUF ¶¶ 11, 12, 15, 17-19. *Norwich I DC* rejected Plaintiffs' arguments – identical ones Plaintiffs raise again here – about purported shortcomings with Pimentel 2006 and the RFIB 2001 Study Protocol. *Compare* SUF ¶ 58 *with* Opp. at 8, 12-13, 15, 17-18. *Norwich I CAFC* affirmed, noting Pimentel 2006 found "greater improvement in IBS symptoms" and "lower bloating scores after treatment." *Norwich I CAFC* at 1061; SUF ¶ 23; *see also* JA0824 (Ex. YY at 764:16-22) (Plaintiffs' expert, Dr. Schoenfeld, testifying in *Norwich I* that Pimentel 2006 discloses that "there had been significant improvement in bloating, based on the way these visual analog scales were used to try to assess improvement" and that the "hallmark symptoms" of IBS-D included "bloating").

*Norwich I DC* found that a POSA would have had motivation and a reasonable expectation of success arriving at the foregoing method. SUF ¶¶ 16, 20-22. *Norwich I CAFC* affirmed that a POSA would have had a reasonable expectation of success in combining the prior

art to administer rifaximin 550 mg TID for 14 days to subjects to treat IBS-D symptoms, and expressly rejected the same arguments Plaintiffs now seek to relitigate. *Compare Norwich I CAFC* at 1061-64 *with* Opp. at 9, 18-19.

The additional limitations to "females" and "bloating" in the Asserted IBS-D Claims cannot undo those determinations. SUF ¶¶ 34-35, 49, 50-51; *contra* Opp. at 11-13. Plaintiffs do not dispute that Pimentel 2006 and the RFIB 2001 Study Protocol include female subjects (*see* PAF ¶¶ 72, 76; *see also* SUF ¶ 34), or that bloating is a symptom of IBS-D (*see* SUF ¶ 51). Although Plaintiffs assert that Pimentel 2006 does not "delineate" results by gender and that the RFIB 2001 Study Protocol does not disclose results, *Norwich I* found the claimed method of treating IBS-D in "subjects 65 years of age or older" obvious over Pimentel 2006 and the RFIB 2001 Study Protocol even in the absence of any delineated result for such subjects. *Norwich I DC* at *20 ("A POSA would have expected the effect observed in Pimentel 2006 to apply to older patients too. (Tr. 679:12-16)."). Plaintiffs fail to establish a genuine issue of fact that a "female"– who is indisputably a member of "subjects" and "subjects 65 years of age and older" – or a female with the IBS-D symptom of "bloating" would substantively affect the obviousness determination. *See Horizon Medicines LLC v. Dr. Reddy's Lab'ys, Inc.*, No. CV 15-3324 (SRC), 2022 WL 577957, at *6, *9 (D.N.J. Feb. 24, 2022) (granting summary judgment of invalidity on collateral estoppel grounds where the court "need not credit conclusory statements by experts and need not find such statements sufficient to raise material factual disputes").

To obtain the Asserted IBS-D Patents, Plaintiffs terminally disclaimed multiple related patents that recite the same "administering" step (i.e., rifaximin dosing regimen) but alter the symptom or patient subgroup.[2] *See* SUF ¶¶ 24-28. Although a terminal disclaimer is not an

---

[2] The Examiner's alleged "review" of the *Norwich I DC* opinion is irrelevant. *Contra* Opp. at 14. Regardless, the *Norwich I CAFC* decision issued after the Asserted IBS-D Patents had issued.

admission and does not create a presumption that the claims are patentably indistinct, it is nevertheless a "strong clue." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168 (Fed. Cir. 2018). This Court should not "lightly presume that patent applicants forfeit the right to alienate their patents, and in certain cases years of exclusivity, as a mere procedural expedient." *Id*.

Even if the asserted dependent claims are limiting, they do not recite any limitations that result in patentable distinctions over the Invalidated IBS-D Claims. *See* Op. Br. at 12-14, 15-16, 17-19; *contra* Opp. at 13-17. A "reduction" of an IBS symptom ('912 patent, claim 5) or "bloating associated with [IBS-D]" ('571 patent, claim 2) from "baseline" does not create a patentable distinction, individually or in combination with other claim elements. Op. Br. at 11-14, 18-19; SUF ¶¶ 42, 50-51, 53. Indeed, *Norwich I* found that the Barrett prior art reference disclosed that rifaximin treatment "resulted in a 50-70% [symptom] improvement from baseline." Similarly, eliciting an "affirmative response" concerning the effect of treatment for a symptom-based condition is conventional. Op. Br. at 11-14, 18-19; SUF ¶¶ 46, 50-51, 57. In addition, the words "first" or "initial" do not appear in dependent claims reciting a "reduction" "achieved *following* 7 days after the administration of rifaximin." Op. Br. at 14-16. 19; SUF ¶ 44. Each asserted claim requires "administering" rifaximin three times daily for 14 days. Temporally, the "reduction" is open-ended: "following 7 days after administration." Thus, the "reduction" is encompassed by "treating one or more symptoms" or "adequate relief of symptoms" as recited in the Invalidated IBS-D Claims.

## III. THE ASSERTED POLYMORPH CLAIMS ARE NOT MATERIALLY DIFFERENT FROM THE INVALIDATED POLYMORPH CLAIMS.

The only difference between the Invalidated Polymorph Claims and the Asserted Polymorph Claims is the former recites rifaximin β and the latter rifaximin δ and/or ε. *See* Opp. at 24-26. It is also undisputed that the prior art references, Cannata and Marchi, used to

invalidate the Invalidated Polymorph Claims are the same references that Amneal relies on here, and that their teachings are not limited to a specific polymorph. SUF ¶ 79. Plaintiffs' suggestion that the difference between rifaximin β and δ/ε "materially alter the question of invalidity" rings hollow and runs counter to Judge Andrews' findings:

> I think the evidence is clear and convincing that a POSA would have been motivated to characterize the ***rifaximin produced by the Cannata processes***. Cannata disclosed that rifaximin had strong antibacterial properties and low bioavailability, motivating a POSA to evaluate the substance as a potential drug candidate. The FDA encouraged, if not required, that ***the solid forms of a drug substance*** be well-characterized during drug development, including as to the properties of solubility, stability, and bioavailability.

*Norwich I DC*, at *7 (internal citations omitted; emphasis added). The emphasized language in the preceding paragraph applies to all rifaximin polymorphs. Moreover, the Federal Circuit found that "Salix does not appear to dispute that there would have been a motivation to explore potential polymorphic ***forms*** of rifaximin." *Norwich I CAFC*, at 1066 (emphasis added). A new analysis under *Graham* cannot change this.

The test for collateral estoppel is not whether the comparable patents are related, and the *Source Search* case cited by Plaintiffs does not stand for that proposition. Opp. at 28. The underlying question concerns comparing whether "the issues that were litigated," not whether the "patent claims … are identical." *Ohio Willow Wood*, 735 F.3d at 1342. When there are no substantive differences between the previously litigated claims and those at issue in the current litigation, the Court need not conduct a new *Graham* analysis and may rely on the analysis of the first court. *See Soverain*, 778 F.3d at 1320; *Westwood*, 525 F.2d at 1380 ("Further, such minor differences as exist between the litigated claims and those here in issue are so insubstantial that the issues of validity under *Graham v. John Deere* must be considered to be the same."). Other than the stated polymorph, there are no differences between the Invalidated Polymorph Claims

and the Asserted Polymorph Claims. While Plaintiffs are correct that polymorphs of the same molecule may have different properties, *e.g.*, stability, solubility, water content, etc., they have not shown that to be the case, and, more importantly, the Asserted Polymorph Claims do not recite any such properties.

*Norwich I* conducted a *Graham* analysis and determined that Cannata disclosed "crystalline rifaximin." SUF ¶¶ 71, 72. Judge Andrews further acknowledged that the Cannata process made rifaximin δ and ε, which are the precise polymorphs asserted/claimed here. SUF ¶ 80. And both parties' experts agree that a polymorph of rifaximin's associated XRPD peaks are inherent to that polymorph. SUF ¶¶ 76-77. The Federal Circuit affirmed that characterizing a particular polymorph by XRPD peaks was "routine," and a POSA "would have had good reason to characterize the crystalline rifaximin obtained by following the Cannata protocols." *Norwich I CAFC*, at 1064-65. Redoing the *Graham* analysis from *Norwich I* changes nothing.

Plaintiffs are also wrong that Amneal has not presented a proper motivation to combine and reasonable expectation of success analysis. The Courts' findings in *Norwich I* related to motivation to combine and reasonable expectation of success equally apply here and do not preclude summary judgment. Because the scope of Cannata's teachings apply to all crystalline rifaximin, including rifaximin δ and ε, Judge Andrews' findings regarding motivation to combine Cannata with the knowledge of POSA are of the same scope. *Norwich I DC*, at *7 (*see* excerpt on p. 9, *supra*). Those findings therefore apply as much to rifaximin β as they do to rifaximin δ/ε.[3] The same is true with establishing a reasonable expectation of success. The Federal Circuit affirmed that "[h]ere, the district court found a reasonable expectation of success in

[3] Plaintiffs do not articulate any basis for their argument that the motivation to combine or expectation of success would be different for the Asserted Polymorph Claims, and therefore fail to meet their burden in opposing summary judgment. *Horizon Medicines*, 2022 WL 577957, at *9 (discussing *Ohio Willow Wood*, 735 F.3d at 1343).

characterizing the crystalline product of Cannata for potential polymorphism using routine, conventional methods and skill." *Norwich I CAFC*, at 1066. Plaintiffs' reliance on the Federal Circuit's statement in *Norwich I CAFC* that "we do not hold that there is always a reasonable expectation of success in accessing or characterizing polymorphs" does not say otherwise. The Federal Circuit did not intend to set broad precedent applying to polymorphs in other, non-rifaximin cases. This is not an issue here, where the prior art analysis is nearly identical.

## IV. THE NEW ZEALAND APPLICATION COMBINED WITH THE KNOWLEDGE OF A POSA RENDER THE ASSERTED POLYMORPH CLAIMS OBVIOUS.

Plaintiffs' arguments concerning the New Zealand Application boil down to two points: (i) Amneal's expert, Dr. Schinzer, relies on improper hindsight; and (ii) Amneal fails to explain a POSA's motivation to modify and reasonable expectation of success. Both are wrong.

First, Dr. Schinzer does not rely on hindsight.[4] An obviousness analysis necessarily requires that one ascertains the differences (if any) between the claimed invention and the prior art. *KSR Int'l v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007); MPEP § 2141 (summarizing). That requires comparing the claimed invention, the '196 patent, with the prior art, the New Zealand application. Amneal's illustration that the scope of the disclosures is nearly identical is evidence of obviousness, not hindsight. Plaintiffs pointing out that the two examples have differing water contents is of no moment. Water content is not a claimed limitation in the Asserted Polymorph Claims. Moreover, water content is part of the drying process, requiring nothing more than routine optimization according to *Norwich I* (*Norwich I DC*, at *7) and Plaintiffs' own expert

---

[4] Amneal will address this point more fully in its opposition to Plaintiffs' *Daubert* motion. In short, Plaintiffs' argument concerning hindsight goes to the weight of Dr. Schinzer's opinions, not its admissibility. Dr. Schinzer advances a reasoned analysis of the motivation to combine prior art references that crosses the admissibility threshold under Fed. R. Evid. 702, even if Plaintiffs believe the analysis is infected by hindsight; that latter dispute belongs to the merits. *Prolitec Inc. v. ScentAir Technologies, LLC*, 770 F. Supp. 3d 730, 755-757 (D. Del. 2025).

(SUF ¶ 86). Critically, Plaintiffs do not contest that optimizing drying conditions to make a specific polymorphic form of rifaximin, be it form α or form δ, was routine and well understood by a POSA. Routine testing is not patentable, and Plaintiffs do not—because they cannot—contest that fact. This also undermines Plaintiffs' contention that there would not be a reasonable expectation of success.

Second, Plaintiffs' motivation argument confuses the issue. At first, Plaintiffs argue that Amneal provides no motivation to modify the New Zealand Application (Opp. at 29), but then they argue that the motivation it does rely on from *Norwich I* "misses the mark" (*id*. at 30). There are no "rigid rule[s]" for determining motivation to modify a reference. *KSR*, 550 U.S. at 417 ("But when a court transforms the general principle into a rigid rule that limits the obviousness inquiry, as the Court of Appeals did here, it errs."). As argued in Amneal's opening brief (Op. at 28), the motivation to modify the New Zealand Application is the same one enunciated in *Norwich I DC*, at *7 ("The FDA encouraged, if not required, that the solid forms of a drug substance be well-characterized during drug development, including as to the properties of solubility, stability, and bioavailability. … FDA guidance required 'appropriate manufacturing and control procedures' when manufacturing and storing the drug substance could result in a hydrated drug substance."). For the same reason that a POSA would be motivated to combine Cannata and the knowledge of a POSA, so too would a POSA be motivated to modify the New Zealand Application using the knowledge of a POSA, in this case to characterize fully the drug substance, including all of its polymorphs, an undisputably routine exercise for a POSA.

Dated: April 7, 2026

/s/ *Rebekah Conroy*
Rebekah Conroy (rconroy@stoneconroy.com)
**STONE CONROY LLC**
25 A Hanover Road, Suite 301
Florham Park, NJ 07932
Tel.: (973) 400-4181

*Attorneys for Defendants Amneal Pharmaceuticals of New York, LLC and Amneal EU, Limited*

Of Counsel:

Jake M. Holdreith
(jholdreith@robinskaplan.com)
Christopher A. Pinahs
(cpinahs@robinskaplan.com)
Samuel J. LaRoque, Ph.D.
(slaroque@robinskaplan.com)

**ROBINS KAPLAN LLP**
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
Phone: (612) 349-8500

Oren D. Langer
(olanger@robinskaplan.com)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Phone: (212) 980-7400

/s/ *Arnold B. Calmann*
Arnold B. Calmann
(abc@saiber.com)
Katherine A. Escanlar
(kescanlar@saiber.com)
**SAIBER LLC**
7 Giralda Farms, Suite 360
Madison, NJ 07940
Phone: (973) 622-3333

*Attorneys for Norwich Pharmaceuticals, Inc.*

Of Counsel:

Matthew J. Becker
(mbecker@axinn.com)
Thomas K. Hedemann
(thedemann@axinn.com)
Edward M. Mathias
(tmathias@axinn.com)
Matthew S. Murphy
(mmurphy@axinn.com)
Rebecca L. Clegg
(rclegg@axinn.com)
**AXINN, VELTROP & HARKRIDER LLP**
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100