Rebekah Conroy
**STONE CONROY LLC**
25 A Hanover Road, Suite 301
Florham Park, NJ 07932
(973) 400-4181
rconroy@stoneconroy.com

Jake M. Holdreith
Christopher A. Pinahs
**ROBINS KAPLAN LLP**
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
(612) 349-8500

Oren D. Langer
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas
Suite 2601
New York, NY 10019
(212) 980-7400

*Attorneys for Amneal Pharms. of NY, LLC and Amneal EU, Ltd.*

Arnold B. Calmann
Katherine A. Escanlar
**SAIBER LLC**
7 Giralda Farms, Suite 360
Madison, NJ 07940
Phone: (973) 622-3333

Matthew J. Becker
Thomas K. Hedemann
Edward M. Mathias
Matthew S. Murphy
Rebecca L. Clegg
**AXINN LLP**
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100

Sara B. Natour
**AXINN LLP**
1901 L Street NW
Washington, DC 20036
(202) 912-4700

Cassie Goodnight
**AXINN LLP**
630 Fifth Avenue, 33rd Floor
New York, NY 10111
(212) 728-2200

*Attorneys for Norwich Pharmaceuticals, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., ALFASIGMA S.P.A. and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br>v.<br><br>AMNEAL PHARMACEUTICALS OF NEW YORK, LLC and AMNEAL EU, LIMITED,<br><br>Defendants. | Civil Action No. 1:24-cv-04607-JFM |
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>NORWICH PHARMACEUTICALS, INC.,<br><br>Defendant. | Civil Action No. 1:24-cv-07140-JFM |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

## TABLE OF CONTENTS


I. ISSUE PRECLUSION APPLIES IN WHOLE BECAUSE IDENTICAL FACTUAL ISSUES WERE ACTUALLY LITIGATED AND DECIDED IN *NORWICH I*. ....... 1

A. *Norwich I* Resolved Factual Issues Dispositive of Whether the Asserted IBS-D Claim are Obvious. ....... 1

1. *Norwich I* resolved identical questions in finding the Invalidated IBS-D Claims obvious ....... 1

2. Claims 1 and 3 of the ’912 patent and claim 1 of the ’571 patent substantively overlap with the Invalidated IBS-D Claims ....... 3

3. Claim 5 of the ’912 patent and claim 2 of the ’571 patent recite “a reduction . . . from baseline” that is not limiting and is directed to conventional medical practice. ....... 5

4. *Norwich I* resolved any fact issue bearing on the obviousness of claim 6 of the ’912 patent and claim 3 of the ’571 patent. ....... 6

5. The “affirmative response” recited in claim 7 of the ’912 patent and claim 4 of the ’571 patent is not limiting and is directed to conventional medical practice. ....... 8

6. Collateral estoppel would apply to subsidiary factual issues resolved by *Norwich I*. ....... 9

B. *Norwich I* Resolved Factual Issues Dispositive of Whether the Asserted Polymorph Claims are Obvious. ....... 10

II. FOOTNOTE 3 TO THE *NORWICH I DC* OPINION DOES NOT PREVENT THE APPLICATION OF ISSUE PRECLUSION HERE. ....... 15

III. CLAIM PRECLUSION IS NOT APPLICABLE HERE, BUT THE *SIMPLEAIR* CASE IS INSTRUCTIVE. ....... 16

IV. THE “NEW LIMTIATIONS” SUPPORT DEFENDANTS’ ALTERNATIVE NONINFRINGEMENT POSITIONS. ....... 17

A. The Asserted IBS-D Claims Are Either Invalid or Not Infringed Based on the “New Limitations.” ....... 17

B. The Asserted Polymorph Claims Are Either Invalid or Not Infringed Based on the “New Limitations.” ....... 18

V. CONCLUSION ....... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hikma Pharmaceuticals USA, Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580 (2026) ........ 17, 18

*Nat'l Med. Imaging, LLC v. Ashland Funding LLC*,
648 F. App'x 251 (3d Cir. 2016) ........ 3

*Ohio Willow Wood Co. v. Alps South, LLC*,
735 F.3d 1333 (Fed. Cir. 2013) ........ 4, 16

*Purdue Pharma L.P. v. Healthcare Inc.*,
2024 WL 4120717 (D. Del. Sept. 9, 2024) ........ 9

*SimpleAir, Inc. v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018) ........ 16

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015) ........ 16

## TABLE OF ABBREVIATIONS

| **Term** | **Abbreviation** |
|---|---|
| Norwich | Defendant Norwich Pharmaceuticals, Inc. |
| Amneal | Amneal Pharms. of NY, LLC and Amneal EU, Ltd. |
| Defendants | Collectively, Norwich and Amneal |
| Salix | Collectively, Salix Phamaceuticals, Ltd, Salix Pharmaceuticals, Inc., Alfasignma S.P.A. and Bausch Health Ireland Ltd. |
| Op. Br. | Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment of Invalidity (Dkt. 138-1 of Case No. 24-4607; Dkt. 142-1 of Case No. 24-7140) |
| Opp. | Opposition to Motion for Summary Judgment of Collateral Estoppel (Dkt. 139 of Case No. 24-4607; Dkt. 143 of Case No. 24-7140) |
| Reply Br. | Defendants' Reply Memorandum of Law in Support of Their Motion for Summary Judgment of Invalidity (Dkt. 144 of Case No. 24-4607; Dkt. 145 of Case No. 24-7140) |
| the '199 patent | U.S. Patent No. 7,612,199 |
| the '206 patent | U.S. Patent No. 7,902,206 |
| the '196 patent or Polymorph Patent | U.S. Patent No. 8,193,196 |
| the '569 patent | U.S. Patent No. 8,309,569 |
| the '667 patent | U.S. Patent No. 10,765,667 |
| the '912 patent | U.S. Patent No. 11,564,912 |
| the '571 patent | U.S. Patent No. 11,779,571 |
| Asserted IBS-D Patents | Collectively, the '912 and '571 patents |
| Asserted IBS-D Claims | Claims 3 and 5-7 of the the '912 patent, and Claims 1-4 of the '571 patent |
| Invalidated IBS-D Patents | Collectively, '667 patent and '569 patent |

| | |
|---|---|
| Invalidated IBS-D Claims | Claim 3 of the ’667 patent, and<br>Claim 2 of the ’569 patent |
| Asserted Polymorph Claims | Claims 7-9 of the ’196 patent |
| Invalidated Polymorph Patents | Collectively, the ’199 patent and the ’206 patent |
| Invalidated Polymorph Claims | Claim 4 of the ’199 patent, and claim 36 of the ’206 patent |
| *Norwich I* | Collectively, the district court decision in *Salix Pharm., Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430-RGA, 2022 WL 3225381 (D. Del. Aug. 10, 2022), and the decision affirming the same in *Salix Pharms., Ltd. v. Norwich Pharms. Inc.*, 98 F.4th 1056 (Fed. Cir.), *cert. denied*, 145 S. Ct. 567, 220 L. Ed. 2d 216 (2024), *and cert. denied*, 145 S. Ct. 983, 220 L. Ed. 2d 362 (2024) |
| *Norwich I DC* | The district court decision in *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430-RGA, 2022 WL 3225381, at *1 (D. Del. Aug. 10, 2022), *aff'd*, 98 F.4th 1056 (Fed. Cir. 2024) |
| *Norwich I CAFC* | The United States Court of Appeals, Federal Circuit decision affirming the same in *Salix Pharms., Ltd. v. Norwich Pharms. Inc.*, 98 F.4th 1056 (Fed. Cir.), *cert. denied*, 145 S. Ct. 567, 220 L. Ed. 2d 216 (2024), *and cert. denied*, 145 S. Ct. 983, 220 L. Ed. 2d 362 (2024). |
| Marchi | U.S. Patent No. 4,341,785 |
| Cannata | U.S. Patent No. 4,557,866 |
| New Zealand Application | New Zealand Patent Application Publication No. NZ531622A |
| POSA | Person of ordinary skill in the art |

Pursuant to the Court's August 25, 2026, Order, Dkt. 150[1], Defendants Amneal Pharmaceuticals of New York, LLC and Amneal EU, Limited (together, "Amneal") and Norwich Pharmaceuticals, Inc. and Alvogen, Inc. (together, "Norwich") (collectively, "Defendants") submit this supplemental briefing and contextual evidence in further support of their motion for summary judgment of invalidity on the basis of collateral estoppel.

## I. ISSUE PRECLUSION APPLIES IN WHOLE BECAUSE IDENTICAL FACTUAL ISSUES WERE ACTUALLY LITIGATED AND DECIDED IN *NORWICH I.*

Unless stated otherwise, this section of Defendants' supplemental briefing responds to the Court's question 1(a)-(d) from its August 25, 2026, Order, Dkt. 150. Section I(A) addresses the Asserted IBS-D Claims and Section I(B) addresses the Asserted Polymorph Claims.

### A. *Norwich I* Resolved Factual Issues Dispositive of Whether the Asserted IBS-D Claim are Obvious.

The specific factual questions bearing on the obviousness of the Asserted IBS-D Claims include: (i) whether Pimentel 2006 and the RFIB 2001 Protocol disclose the limitations in the Asserted IBS-D Claims; (ii) whether a POSA would have been motivated to combine Pimentel 2006 and the RFIB 2001 Protocol to arrive at the method of administering rifaximin 550 mg, three times per day (TID), for 14 days to treat one more symptoms of IBS or IBS-D, including bloating, in a female subject; and (iii) whether a POSA would have had a reasonable expectation of success in doing so.

#### 1. *Norwich I* resolved identical questions in finding the Invalidated IBS-D Claims obvious.

The Invalidated IBS-D Claims recite the same treatment method claimed in the Asserted IBS-D Claims: administering 550 mg of rifaximin TID for 14 days to a subject having IBS-D.

[1] For brevity, Defendants cite docket entries of Case No. 24-4607 alone.

*Norwich I* found that "Pimentel 2006 and the RFIB 2001 Protocol disclose all limitations of the [Invalidated] IBS-D Claims." SUF 15. "Pimentel 2006 administered rifaximin, 400 mg TID for 10 days, to treat IBS patients aged 18-65. Pimentel 2006 taught, 'rifaximin resulted in statistically greater global improvement in IBS than placebo,' and '[i]mprovements were sustained through 10 weeks of follow-up' after 10 days of treatment." *Norwich I DC* at *18-19 . The RFIB 2001 Protocol "was a Phase II trial designed to administer rifaximin to patients aged 18 and over, 550-2,220 mg per day for 14 days for the treatment of IBS-D." SUF 17. It "included the outcome measures of providing adequate relief of symptoms and evaluating a durability of response over a 12-week post-treatment period." SUF 18. *Norwich I* also found that "the prior art disclosed positive results in using rifaximin to treat IBS-D for a range of doses," and that "[t]he asserted IBS-D claims describe a dosing regimen within the known range." *Norwich I DC* at *17.

*Norwich I* determined that "a POSA would have been motivated to combine the RFIB 2001 Protocol and Pimentel 2006 with a reasonable expectation of success." SUF 16. It stated that "Pimentel 2006 reported sustained improvement in IBS symptoms for patients aged 18-65 for at least 10 weeks on a 400 mg TID, 10-day regimen," and that "[t[he RFIB 2001 Protocol included . . . a 14-day dosing regimen of 550 to 2200 mg per day, and the treatment of patients with IBS-D in particular." *Norwich I DC* at *19. It also found that "[w]idespread off-label use reflects a motivation to use rifaximin for the treatment of IBS-D with a reasonable expectation of success." *Id.* Collectively, *Norwich I* found that there was "strong evidence that a POSA would have a motivation to use rifaximin for the treatment of IBS-D." *Id.*

*Norwich I* also found that "a POSA would have had the motivation to select an optimal dosing regimen from within the known range" and that a POSA "would have been motivated to combine the prior art to achieve a dosage regimen within the known range." *Norwich I DC* at

*19-20. It found that the prior art, including Pimentel 2006, Cuoco, Barrett, and the RFIB 2001 Protocol, "disclosed positive results in using rifaximin to treat IBS-D for a range of doses" and that "[t]he asserted IBS-D claims describe a dosing regimen within the known range." *Id.* at *17. It further found that "Pimentel 2006 taught, 'Recent data suggest that the optimal dosage of rifaximin may, in fact, be higher than that used in our study.'" *Id.* at *20. Concerning TID dosing, *Norwich I* found that TID dosing was known in the art and that a POSA would have been motivated to use TID dosing. *Id.* at *19-20; SUF 22.

*Norwich I* rejected Salix's "attacks" and alleged evidence of secondary considerations and also found that the prior art did not teach away from the claimed invention. *Norwich I DC* at *17, 21; SUF 58, 59, 60. It held the Invalidated IBS-D Claims obvious. *Norwich I DC* at *22; SUF 10, 23. *See Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, 648 F. App'x. 251, 256 (3d Cir. 2016) (establishing that the "facts of both cases are indistinguishable as measured by [same general legal rules]" fulfills identity of issues for purposes of collateral estoppel).

**2. Claims 1 and 3 of the '912 patent and claim 1 of the '571 patent substantively overlap with the Invalidated IBS-D Claims**

The Asserted IBS-D Claims are directed to the same method—consisting of the same drug, dosing regimen, and indications—as the Invalidated IBS-D Claims:

| | **’912 patent (claims 1 and 3)** | **’571 patent (claim 1)** | **’667 patent (claims 1, 3)** | **’569 patent (claims 1-2)** |
|---|---|---|---|---|
| **Drug** | Rifaximin | Rifaximin | Rifaximin | Rifaximin |
| **Dosing** | 550 mg TID for 14 days | 550 mg TID for 14 days | 550 mg TID for 14 days | 550 mg TID for 14 days |
| **Condition** | IBS (cl. 1)<br>IBS-D (cl. 3) | IBS-D (cl. 1) | IBS (cl. 1)<br>IBS-D (cl. 3) | IBS-D |
| **Subject** | “female” | “female” | “65 years of age or older” | “subject” |
| **Result** | “treating one or more symptoms of [IBS / IBS-D]” | “treating bloating associated with dIBS” | “treating one or more symptoms of [IBS / IBS-D]” | “12 weeks of adequate relief of [IBS-D] symptoms” |
| | ***Asserted Claims*** | | ***Held obvious in Norwich I*** | |

The factual issues underlying *Norwich I*’s obviousness finding are identical to the factual issues bearing on obviousness for the Asserted IBS-D Claims. *See* Asserted IBS-D Claim Chart attached as Exhibit 1. The inclusion of limitations relating to “females” and “bloating” does not change that. There is no dispute that the “subjects” and “subjects 65 years of age of older” limitations from the Invalidated IBS-D Claims includes “females.” SUF 26, 27, 34, 35. Thus, limiting the claims to “females” does not materially alter the question of obviousness. The recitation of a “female” in the Asserted IBS-D Claims cannot avoid the application of collateral estoppel without contravening the precedent set forth in *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).

The addition of claim limitations specific to “bloating” also does not materially affect any question of obviousness because each of the Invalidated IBS-D Claims is directed to “treating one or more symptoms” of IBS-D or achieving “adequate relief” of symptoms of IBS-D. Bloating is a known symptom of IBS-D. SUF 50, 51. *Norwich I* found that IBS “is characterized by symptoms including abdominal pain, bloating, frequency, urgency, gas, and changed bowel habits, such as diarrhea, constipation, or alternating diarrhea and constipation.” SUF 50. The

Federal Circuit stated that Pimentel 2006 found "lower bloating score[s] after treatment." *Norwich I CAFC*, 98 F.4th at 1062.

The doctrine of collateral estoppel bars Salix from relitigating the same issues of obviousness with respect to claims 1 and 3 of the '912 patent and claim 1 of the '571 patent.

**3. Claim 5 of the '912 patent and claim 2 of the '571 patent recite "a reduction . . . from baseline" that is not limiting and is directed to conventional medical practice.**

Dependent claim 5 of the '912 patent and dependent claim 2 of the '571 patent are directed to "a reduction of [a symptom / bloating] from baseline established prior to treatment":

| | **'912 patent (claim 5)** | **'571 patent (claim 2)** | **'667 patent (claims 1, 3)** | **'569 patent (claims 1-2)** |
|---|---|---|---|---|
| **Result** | "a reduction of the one or more [IBS] symptoms from baseline symptoms established prior to treatment" | "a reduction of bloating from baseline symptoms established prior to treatment" | "treating one or more symptoms of [IBS / IBS-D]" | "12 weeks of adequate relief of symptoms" |
| | ***Asserted Claims*** | | ***Held obvious in Norwich I*** | |

Defendants maintain that these dependent claims merely characterize or state a desired result from administering rifaximin 550 mg TID for 14 days and therefore are non-limiting. Op. Br. 11-12, 18-19, Dkt. 138-1; Reply Br. 3-4, Dkt. 144. Even if these claims were entitled to patentable weight, assessing a treatment result against a baseline obtained prior to an intervention is a conventional medical practice. SUF 42. Salix's expert admits this practice is routine. SUF 42, 46, 53, 57. Further, prior art references, including the Cuoco and Barrett references, cited in *Norwich I DC* necessarily compared treatment results to baseline symptoms to report results of retrospective studies. *Norwich I DC* at *19. Therefore, "treating one or more symptoms" or achieving "adequate relief of symptoms," as recited in claims 1 and 3 of the '667 patent and claims 1-2 of the '569 patent, encompass the result recited in claim 5 of the '912 patent and

claim 2 of the ’571 patent, and do not raise a fact issue affecting the question of obviousness. *See* Asserted IBS-D Claim Chart attached as Exhibit 1.

**4. Norwich I resolved any fact issue bearing on the obviousness of claim 6 of the ’912 patent and claim 3 of the ’571 patent.**

Dependent claim 6 of the ’912 patent and dependent claim 3 of the ’571 patent are directed to “the reduction . . . achieved following 7 days after the administration of rifaximin”:

| | **’912 patent (claim 6)** | **’571 patent (claim 3)** | **’667 patent (claims 1, 3)** | **’569 patent (claims 1-2)** |
|---|---|---|---|---|
| **Result** | “the reduction of the one or more [IBS] symptoms is achieved following 7 days after the administration of rifaximin” | “the reduction of bloating is achieved following 7 days after the administration of rifaximin” | “treating one or more symptoms of [IBS (cl. 1) / IBS-D (cl. 3)]” | “12 weeks of adequate relief of symptoms” |
| | ***Asserted Claims*** | | ***Held obvious in Norwich I*** | |

Defendants maintain that claim 6 of the ’912 patent and claim 3 of the ’571 patent merely characterize or state a desired result from administering rifaximin 550 mg TID for 14 days to treat symptoms of IBS-D and do not state any affirmative method step, and therefore are non-limiting. Op. Br. 14-16, 19, Dkt. 138-1; Reply Br. 3-4, Dkt. 144.

**a. The Court should interpret “the administration of rifaximin” as referring to the full 14-day rifaximin regimen.**[2]

Each independent Asserted IBS-D Claim requires “administering” rifaximin for 14 days and “thereby” treating one or more symptoms of IBS-D. The treatment of one or more symptoms therefore follows *after* the 14-day regimen of rifaximin. This follows for at least two reasons. First, the antecedent basis for “the administration” in claim 6 of the ’912 patent and claim 3 of

[2] This section responds to the Court’s Question No. 4 seeking an explanation “why the Court should or should not interpret ‘the administration of rifaximin’ as referring to the full 14-day rifaximin regimen.” Dkt. 150 at 2-3.

the '571 patent is "administering" as recited in each independent claim. Therefore, the natural reading of these claims is to require the completion of the 14-day regimen recited in claim 1.[3]

Second, Salix's litigation-inspired construction would impermissibly read a nonexistent limitation (i.e., a "first" or an "initial" dose) into these claims. Moreover, a different treatment effect before the conclusion of the 14-day regimen based on a nonexistent limitation would conflict with the independent claim. Neither the patent specification nor the prosecution history provides a basis for departing from the plain and ordinary meaning, and none of Salix's citations to the patent specification when read in full context supports its proposed construction.

b. ***Norwich I DC* necessarily addressed the same issue.**

*Norwich I* found that "treating one or more symptoms" and achieving "12 weeks of adequate relief of symptoms" by administering rifaximin 550 mg TID for 14 days to an IBS-D subject was obvious. Therefore, collateral estoppel would apply even under Salix's unsupported construction because these dependent claims merely state an intended result of administering rifaximin 550 mg TID for 14 days to an IBS-D subject – the same method held obvious in *Norwich I*. Op. Br. 14-16, Dkt. 138-1; Reply Br. 3-4, Dkt. 144; *see also* Asserted IBS-D Claim Chart attached as Exhibit 1.

The Court's proposed construction of "following 7 days after the administration of rifaximin" necessarily resolves any dispute over the application of collateral estoppel. For example, invalid claim 2 of the '569 patent recites a "durability of response" limitation that requires "12 weeks of adequate relief of symptoms." Salix and its expert admit that "the *Norwich I* 'durability of response' limitation refers to 'continuous adequate relief of symptoms after

[3] The phrase "achieved following 7 days after" should mean that the reduction is achieved at a time *following* 7 days after completion of the 14-day course of rifaximin. SUF 44. However, collateral estoppel would apply whether the reduction is "achieved 7 days after" or "*following* 7 days after" for the reasons discussed herein.

removal of treatment." Opp. 15, Dkt. 139. Continuous adequate relief of symptoms for 12 weeks necessarily subsumes a reduction of symptoms following 7 days after the 14-day course of rifaximin, as show in the following figure.




A subject could not obtain the "durability of response" required by the invalidated '569 patent without achieving adequate relief "following 7 days after the administration of rifaximin." Accordingly, claim 6 of the '912 patent and claim 3 of the '571 patent do not raise any genuine fact issues bearing on the obviousness determination. *See* Asserted IBS-D Claim Chart attached as Exhibit 1.

### 5. The "affirmative response" recited in claim 7 of the '912 patent and claim 4 of the '571 patent is not limiting and is directed to conventional medical practice.

Dependent claim 7 of the '912 patent and claim 4 of the '571 patent recite a "reduction" in symptoms based on "an affirmative response":

| | **'912 patent (claim 7)** | **'571 patent (claim 4)** | **'667 patent (claims 1, 3)** | **'569 patent (claims 1-2)** |
|---|---|---|---|---|
| **Result** | "a reduction in symptoms defined by an affirmative response from the subject when asked whether they had a reduction in symptoms of IBS" | "the reduction of bloating comprises an affirmative response from the subject when asked whether they had a reduction in bloating" | "treating one or more symptoms of [IBS (cl. 1) / IBS-D (cl. 3)]" | "12 weeks of adequate relief of symptoms" |
| | ***Asserted Claims*** | | ***Held obvious in Norwich I*** | |

Defendants maintain that these dependent claims merely characterize or state a desired result from administering rifaximin 550 mg TID for 14 days to treat symptoms of IBS-D and do not state any affirmative method step, and therefore are non-limiting. Op. Br. 11-12, 18-19, Dkt. 138-1; Reply Br. 3-4, Dkt. 144. There is no genuine dispute of material fact that "a reduction in symptoms" based on an "affirmative response" is a conventional assessment in the clinical trials and medical practice for assess "adequate relief" of IBS or IBS-D symptoms. SUF 42, 46, 50-51, 53, 57. Accordingly, claim 7 of the '912 patent and claim 4 of the '571 patent do not raise any genuine fact issues bearing on the obviousness determination. *See* Asserted IBS-D Claim Chart attached as Exhibit 1.

**6. Collateral estoppel would apply to subsidiary factual issues resolved by *Norwich I*.**

For the reasons set forth above, collateral estoppel applies in whole, and the Court should grant summary judgment of obviousness. To the extent this Court determines that summary judgment is inappropriate—and in response to the Court's Question 1.d from its August 25 Order, Dkt. 150 at 2—collateral estoppel nevertheless bars relitigating any factual issues determined to have been decided in *Norwich I*. *See* Op. Br. at 9 n.2, Dkt. 138-1. . Where "some of the same issues presented in [a] case were litigated in [a prior case], and the resolution of those issues was necessary to the result" in the prior case, the decision in the prior case "has collateral estoppel effect as to those issues." *Purdue Pharma L.P. v. Accord Healthcare Inc.*, 2024 WL 4120717, at *18 (D. Del. Sept. 9, 2024). As the factual issues underpinning obviousness in the instant case and those of *Norwich I* are materially the same, an approach

which begins with identifying the common subsidiary factual issues between the cases would reach the same conclusion that collateral estoppel bars relitigating obviousness.[4]

**B. *Norwich I* Resolved Factual Issues Dispositive of Whether the Asserted Polymorph Claims are Obvious.**

The factual questions bearing on the obviousness of the Asserted Polymorph Claims include: (i) are the limitations in the Asserted Polymorph Claims—a solid pharmaceutical composition comprising a therapeutically effective amount of rifaximin δ and/or ε, having specific XRPD peaks—found in the prior art; (ii) would a POSA have been motivated to combine the prior art references—Cannata, Marchi, Normix Label, and knowledge of a POSA—that describe those limitations; and (iii) would a POSA have had a reasonable expectation of success in doing so? The specific factual issues in the instant litigation are identical to those actually litigated in *Norwich I* where the answer to each question was *yes*. *See* Asserted Polymorph Claim Chart attached as Exhibit 2.

*Norwich I* found the following: (i) Cannata produced various polymorphic forms including "only the delta polymorph" and "only of the epsilon form;" (ii) "a POSA would have been motivated to characterize the rifaximin produced by the Cannata processes;" and (3) a POSA would have had a reasonable expectation of success in doing so. *See Norwich I DC*, 2022 WL 3225381, at *5-8 (D. Del. Aug. 10, 2022), *aff'd*, 98 F.4th 1056 (Fed. Cir. 2024); SUF 71, 72, 73, 75, 80. Applying those factual determinations to the Asserted Polymorph Claims, which only differ from the Invalidated Polymorph Claims in polymorphic form, is dispositive. As such, issue preclusion applies "in whole," and Salix is estopped from taking another bite at the apple and

[4] To the extent the Court finds that there are material differences in the factual issues underpinning obviousness in the current case compared to those decided in *Norwich I*, Defendants reserve the right to argue at trial or another appropriate stage that the Asserted IBS-D Claims are obvious, where collateral estoppel narrows the factual issues underpinning obviousness which were decided in *Norwich I*.

relitigating the obviousness of Asserted Polymorph Claims. The following chart evidences how the *Norwich I* findings rendering obvious the Invalidated Polymorph Claims are also applicable to the Asserted Polymorph Claims in this case:

| **Asserted Claim** | **Held Obvious in *Norwich I*** | | |
|---|---|---|---|
| **’196 Patent (claim 7)** | **’199 Patent (claim 4)** | **’206 Patent (claim 34)[5]** | ***Norwich I* Findings Applicable Here** |
| A solid pharmaceutical composition comprising… | | 34. A solid pharmaceutical composition comprising … | |
| a therapeutically effective amount of rifaximin δ, rifaximin ε, or a combination thereof, … | Rifaximin in polymorphic form β, … | rifaximin in polymorphic Form β … | Cannata’s process for making rifaximin produced batches that “consisted of (1) only the ‘delta polymorph,’ (2) only of the ‘epsilon form,’ (3) a mixture of ‘the alpha and epsilon form,’ and (4) a mixture of the ‘alpha and delta forms,’ respectively.” *Norwich I DC* at *5; SUF 80.<br><br>“[T]he evidence is clear and convincing that a POSA would have been motivated to characterize the rifaximin produced by the Cannata processes.” *Norwich I DC* at *7; SUF 72, 73.<br><br>“The difference between the prior art and the claims is thus effectively nothing more than the performance of routine characterization to identify the polymorphic |

[5] In *Norwich I*, the court invalidated claim 36 of the ’206 patent, which depends from claim 34, shown here. Claim 36 added a water content limitation that is not relevant to this case. *See* SUF 67, 69.

| Asserted Claim | Held Obvious in *Norwich I* | | |
|---|---|---|---|
| **’196 Patent (claim 7)** | **’199 Patent (claim 4)** | **’206 Patent (claim 34)[5]** | ***Norwich I* Findings Applicable Here** |
| | | | forms that result from the known Cannata processes. In this regard, Salix does not appear to dispute that there would have been a motivation to explore potential polymorphic forms of rifaximin.” *Norwich I CAFC* at 1066; SUF 75. |
| and a pharmaceutically acceptable excipient, together disposed in a formulation for oral administration, … | | and a pharmaceutically acceptable excipient or carrier, … | |
| wherein the rifaximin δ has x-ray powder diffraction pattern peaks at about 5.7°±0.2, 10.8°±0.2, 12.1°±0.2, and 17.0°±0.2, 2-θ, and wherein the rifaximin ε has x-ray powder diffraction pattern peaks at about 8.2°±0.2, 12.4°±0.2, and 16.3°±0.2 2-θ. | wherein the rifaximin has x-ray powder diffraction pattern peaks at about 5.4°; 9.0°; and 20.9° 2θ and wherein the rifaximin has a water content of greater than 5%. | wherein the rifaximin Form β has x-ray powder diffraction pattern peaks at about 5.4°; 9.0°; and 20.9° 2-θ. | “X-ray powder diffraction (XRPD) peaks are an inherent characteristic of a polymorph. Each peak in an XRPD diffractogram is a structural element of that form. XRPD was routine as of the priority date.” *Norwich I DC* at *3; SUF 72, 77. |

Claims 7 and 8 of the ’196 patent recite specific excipients and oral dosage forms. For the reasons stated in Amneal’s summary judgment briefing at Op. Br. at 24-26, Dkt. 138-1, the findings from *Norwich I* would also adjudicate the obviousness of all remaining claim elements in the Asserted Polymorph Claims, and Salix does not dispute that in its opposition. *See* Asserted Polymorph Claim Chart attached as Exhibit 2.

*First*, Salix cannot dispute that *Norwich I DC* that Cannata teaches a process for making rifaximin that forms, among others, “only the ‘delta polymorph,’” [and] only the ‘epsilon

form'"—the purported inventive polymorphs in this case. *Norwich I DC* at *5; SUF 80. The obviousness dispute here involves the same factual question and same prior art: does Cannata's process produce rifaximin δ and/or ε specifically? *Norwich I* resolved that question and relied on that finding to resolve one of the invalidity challenges in that case. *Id.* Salix cannot now argue otherwise.

*Second*, *Norwich I DC* held that "a POSA would have been motivated to characterize the rifaximin produced by the Cannata processes." *Norwich I DC* at *7; *see also Norwich I CAFC*, 98 F.4th at 1065 (explaining that narrow obviousness dispute in *Norwich I* "centered around *characterizing* the crystalline form resulting from [the Cannata] process"). The courts in *Norwich I DC* and *Norwich I CAFC* agreed that the answer to this factual question, i.e., whether a POSA would be motivated to characterize the rifaximin produced by Cannata, was "yes." *Norwich I DC* at *7; *Norwich I CAFC*, 98 F.4th at 1066 (stating that "Salix does not appear to dispute that there would have been a motivation to explore potential polymorphic forms of rifaximin"); SUF 71, 72. The basis supporting that, as is the case here, is the FDA "encourag[ing], if not requir[ing], that the solid forms of a drug substance be well-characterized during drug development." *Norwich I DC* at *7; SUF 73, 74. Thus, *Norwich I* found a POSA would have been motivated to characterize *all polymorphic forms* produced by Cannata.[6] That finding is dispositive in this case because it is not polymorph-specific: a POSA would be motivated to characterize *all* polymorphic forms Cannata produces, including rifaximin δ and rifaximin ε, and Salix is precluded from arguing otherwise.

*Third*, *Norwich I* found that a POSA would have had "a reasonable expectation of success in characterizing the crystalline product of Cannata for potential polymorphism." *See*

[6] Further evidence of *Norwich I's* approach to this factual issue is its reliance on Marchi, which is similarly described as polymorph-agnostic. *See Norwich I DC* at *7; SUF 79.

*Norwich I CAFC*, 98 F.4th at 1066; SUF 72, 75. As noted above, *Norwich I* expressly recognized that the Cannata process may result in the formation of multiple polymorphs, including pure rifaximin δ and rifaximin ε. *Norwich I DC* at *5-7; *Norwich I CAFC*, 98 F.4th at 1065-66; SUF 80. It also acknowledged that each polymorph possesses "inherent properties," e.g., XRPD peaks, that identify a product's polymorphic form. The court then reasoned that a POSA could identify these "inherent properties" using "routine testing methods." *Norwich I DC* at *7; *Norwich I CAFC*, 98 F.4th at 1065 (finding no clear error in conclusion that a POSA had "a reasonable expectation of success in characterizing the crystalline product of Cannata for potential polymorphism using routine, conventional methods and skill"); SUF 72, 76, 77. The availability of these "routine testing methods" allowed the court to conclude that a POSA would reasonably expect to succeed at characterizing the polymorphic form of the crystalline product of Cannata. *Id*. The same factual question is present in this case and resolved by *Norwich I* for the same reasons. Therefore, a POSA would have reasonably expected to "characterize" the polymorphic forms recited in the Asserted Polymorph Claims through "routine methods" and Salix is precluded from relitigating this factual issue.

*Norwich I*'s resolution of the above factual issues has the preclusive effect of estopping Salix from litigating the same disputes in this case. As such, *Norwich I*'s holdings that the prior art results in polymorph δ and/or ε, a POSA would be motivated to characterize the polymorphs yielded by the prior art, and reasonably expect to succeed in doing so, are dispositive of the instant obviousness dispute. Accordingly, the Asserted Polymorph Claims are invalid as obvious in light of Cannata/Marchi and the knowledge of a POSA. *See* Asserted Polymorph Claim Chart attached as Exhibit 2.

## II. FOOTNOTE 3 TO THE *NORWICH I DC* OPINION DOES NOT PREVENT THE APPLICATION OF ISSUE PRECLUSION HERE.

The Court's Question 2 from its August 25, Order, Dkt. 150 at 2, cites to the first sentence of footnote 3 from *Norwich I DC*. The rest of that footnote, reprinted in its entirety below, answers the Court's question:

> The parties do not discuss whether there is any difference between the motivation to use rifaximin to treat IBS and to treat IBS-D. I think a POSA would have been motivated to treat IBS-D and would have had a reasonable expectation of success in doing so, even though much of the prior art describes the treatment of "IBS." About one third of IBS patients have IBS-D, and there is no evidence in the record that a POSA would expect an IBS-D patient to respond differently to treatment than a patient with another form of IBS.

*Norwich I DC*, at *19 n.3. Therefore, *Norwich I* found claims directed to IBS-D invalid as obvious. *Norwich I DC* acknowledged that IBS-D is a subtype of IBS and that about one-third of IBS patients have IBS-D. *Id.* at *16; SUF 39. In addition, it expressly found that the RFIB 2001 Protocol – a reference in the obviousness combination – disclosed administering rifaximin to treat IBS-D. *Norwich I DC* at *19. *Norwich I CAFC*, upon evaluating the Pimentel 2006 reference's disclosure of treating IBS in connection with invalidating claims reciting treatment of IBS-D, acknowledged that "Salix did not argue a difference between a motivation to use rifaximin to treat IBS versus IBS-D[.]" *Norwich I CAFC*, 98 F.4th at 1061 n.3. Salix "concede[d] on appeal that 'roughly one-third of IBS patients suffer from IBS-D[,]" and Salix did not "otherwise suggest[] that treatments for IBS would not inform treatments for IBS-D." *Id.* Thus, as either a matter of judicial record or as an undisputed fact in the instant case, the motivation to use rifaximin to treat IBS-D was adjudicated in *Norwich I*.

The scope of IBS is broader than the scope of IBS-D, as demonstrated by the invalid claims of the '667 patent. For example, invalid dependent claim 3 of the '667 patent is directed

specifically to IBS-D whereas independent claim 1 was directed to IBS. Therefore, a method directed to IBS was necessarily invalid as obvious if a method directed to IBS-D was held obvious. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1315 (Fed. Cir. 2015) (invalidity of dependent claim extends to the broader claim from which it depends). Claims 1 and 3 of the asserted '912 patent present the same relationship between IBS and IBS-D as found in invalid claims 1 and 3 of the '667 patent. Salix admitted that claim 1 of the '667 patent was held invalid based on *Norwich I*. Case No. 24-7140, Dkt. 121 ¶ 36 (admission that U.S. District Court for District of Delaware invalidated claims 1 and 3 of the '667 patent), ¶ 39 (same admission as to the Federal Circuit's affirmance).

## III. CLAIM PRECLUSION IS NOT APPLICABLE HERE, BUT THE *SIMPLEAIR* CASE IS INSTRUCTIVE.

Defendants do not seek summary judgment based on claim preclusion. Rather, Defendants principally cited *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160 (Fed. Cir. 2018) for the proposition that a "terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent." *See, e.g.*, *SimpleAir*, 884 F.3d at 1168. The fact that the Asserted IBS-D Claims were terminally disclaimed over the Invalidated IBS-D claims is evidence that the two sets of limitations, although not identical, lack a patentably distinct difference.[7]

[7] Defendants' Memorandum of Law in Support of Summary Judgment also cites *SimpleAir* because it explains how to determine whether the scope of the asserted and previously invalidated patent claims is essentially the same. *See* Op. Br. 8, 15, Dkt. 138-1. While the legal standard for collateral estoppel and claim preclusion differs, both require a showing that there is no patentably distinct difference between the previously invalidated claims and the asserted claims. *Compare Ohio Willow Wood Co.*, 735 F.3d at 1342 ("If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies."), *with SimpleAir*, 884 F.3d at 1167 ("[A] judgment in the first suit will trigger claim preclusion only if the scope of the asserted patents claims in the two suits is essentially the same.").

## IV. THE "NEW LIMTIATIONS" SUPPORT DEFENDANTS' ALTERNATIVE NONINFRINGEMENT POSITIONS.

This section addresses the Court's Question No. 5 seeking an explanation "how the 'new' limitations in the asserted patent claims affect the infringement analysis here." Dkt. 150 at 3.

### A. The Asserted IBS-D Claims Are Either Invalid or Not Infringed Based on the "New Limitations."

Rifaximin, 550 mg tablets, are approved to "treat irritable bowel syndrome with diarrhea (IBS-D) in adults." *Norwich I DC* at *1. The recommended dosage of rifaximin for the IBS-D Indication is one "550 mg tablet taken orally three times a day for 14 days." *Id*. at *16. Defendants' proposed product labels will contain this IBS-D Indication and recommended dosage. For the avoidance of doubt, this is the same method of administration that was held invalid as obvious in *Norwich I*.

In *Norwich I*, Norwich's proposed drug label contained the IBS-D Indication and recommended dosage. It was found to induce the infringement of claim 3 of the '667 patent because "adults," as it appears in the IBS-D Indication, included "subjects 65 years of age or older." *Norwich I DC* at *17. Here, Defendants do not contest infringement of claims 1 and 3 of the '912 patent, if valid, because "adults" includes "females," JA0586, Dkt. 138-3, and IBS-D is a species of IBS, *Norwich I DC* at *16. However, these claims are invalid and thus cannot be infringed.

To prove inducement of the other Asserted IBS-D Claims, Salix must establish that Defendants' product labels contain "affirmative" statements evincing specific intent for a third party to directly infringe. As the Supreme Court recently held, "inducement cannot be based only on vague language combined with speculation about how others may act." *Hikma Pharmaceuticals USA, Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 592 (2026) (citations and quotations omitted). "[T]he key question is whether a defendant actively encouraged

infringement through its statements, not merely how others may understand those statements." *Id*. at 590 n.3 (rejecting Federal Circuit's "focus on whether the relevant statements could be read by medical providers as instructions to infringe").

To the extent Salix's infringement contention is based on the IBS-D Indication and recommended dosage (e.g., 550 mg TID for 14 days) resulting in "treating bloating associated with dIBS," claim 1 of the '571 patent is invalid as obvious based on collateral estoppel for the reasons discussed above. Alternatively, Defendants' proposed drug labels do not contain any affirmative instruction for a third party to administer rifaximin to treat "bloating associated with dIBS," as required by the asserted claims of the '571 patent.

The "new limitations" recited in dependent claims 5-7 of the '912 patent and claims 2-4 of the '571 patent state a result based on administering rifaximin 550 mg TID for 14 days to adult IBS-D patients to treat or obtain "adequate relief" of IBS-D symptoms, and collateral estoppel must apply for the reasons described above. Alternatively, if these results are entitled to patentable weight and recite a method step, Defendants' product labels do not actively encourage a direct infringement of claims 5-7 of the '912 patent and claims 2-4 of the '571 patent.

### B. The Asserted Polymorph Claims Are Either Invalid or Not Infringed Based on the "New Limitations."

Amneal did not move for summary judgment of no infringement on the Asserted Polymorph Claims but addresses that issue in general as part of this supplemental briefing, as requested by the Court's Question 5. *See* Dkt. 150 at 3. The instant motion for summary judgment is case dispositive. Should the Court deny that motion, Amneal would nonetheless prevail because Salix cannot meet its burden of proving that Amneal's ANDA product includes a therapeutically effective amount of rifaximin δ.[8]

---

[8] It is undisputed that Amneal's accused product does not include rifaximin ε.

Salix have not produced evidence showing that Amneal infringes the "new" claim limitations of the Asserted Polymorph Claims. Claim 7 of the Asserted Polymorph Claims recites four specific X-ray Powder Diffraction peaks associated with each of the claimed rifaximin δ and/or ε polymorphs:

> A solid pharmaceutical composition comprising a therapeutically effective amount of rifaximin δ, rifaximin ε, or a combination thereof, and a pharmaceutically acceptable excipient, together disposed in a formulation for oral administration, wherein the rifaximin δ has x-ray powder diffraction pattern peaks at about 5.7°±0.2, 10.8°±0.2, 12.1°±0.2, and 17.0°±0.2, 2-θ, and wherein the rifaximin ε has x-ray powder diffraction pattern peaks at about 8.2°±0.2, 12.4°±0.2, and 16.3°±0.2 2-θ.

SUF 64. To prove infringement, Salix must show the presence in Amneal's accused product of each of the four XRPD peaks recited in the claim. After repeatedly testing Amneal's accused product at the synchrotron facility in Europe, not one of the samples exhibits the presence of all four claimed peaks. Thus, Salix has not put forward credible evidence showing by a preponderance of the evidence that Amneal's ANDA Product contains XRPD peaks characteristic of rifaximin δ, let alone in any therapeutically effective amount. These deficiencies highlight Amneal's noninfringement of the "new" polymorph claim limitations and are fatal to Salix's infringement claims.

## V. CONCLUSION

For the foregoing additional reasons and the grounds previously submitted by Defendants, the Court should grant Defendants' summary judgment motions.

Dated: September 16, 2026

*<u>/s/ Rebekah Conroy</u>*
Rebekah Conroy (rconroy@stoneconroy.com)
**STONE CONROY LLC**
25 A Hanover Road, Suite 301
Florham Park, NJ 07932
Tel.: (973) 400-4181

*Attorneys for Defendants Amneal Pharmaceuticals of New York, LLC and Amneal EU, Limited*

Of Counsel:

Jake M. Holdreith
(jholdreith@robinskaplan.com)
Christopher A. Pinahs
(cpinahs@robinskaplan.com)
**ROBINS KAPLAN LLP**
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
Phone: (612) 349-8500

Oren D. Langer
(olanger@robinskaplan.com)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Phone: (212) 980-7400

*<u>/s/ Arnold B. Calmann</u>*
Arnold B. Calmann
(abc@saiber.com)
Katherine A. Escanlar
(kescanlar@saiber.com)
**SAIBER LLC**
7 Giralda Farms, Suite 360
Madison, NJ 07940
Phone: (973) 622-3333

*Attorneys for Norwich Pharmaceuticals, Inc.*

Of Counsel:

Matthew J. Becker
(mbecker@axinn.com)
Thomas K. Hedemann
(thedemann@axinn.com)
Edward M. Mathias
(tmathias@axinn.com)
Matthew S. Murphy
(mmurphy@axinn.com)
Rebecca L. Clegg
(rclegg@axinn.com)
**AXINN LLP**
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100

Sara B. Natour
(snatour@axinn.com)
**AXINN LLP**
1901 L Street NW
Washington, DC 20036
(202) 912-4700

Cassie Goodnight
(cgoodnight@axinn.com)
**AXINN LLP**
630 Fifth Avenue, 33rd Floor
New York, NY 10111
(212) 728-2200