**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., ALFASIGMA S.P.A. and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>AMNEAL PHARMACEUTICALS OF NEW YORK, LLC and AMNEAL EU, LIMITED,<br><br>Defendants. | Civil Action No. 1:24-cv-04607-JFM |
| SALIX PHARMACEUTICALS INC., SALIX PHARMACEUTICALS, LTD., and BAUSCH HEALTH IRELAND LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>NORWICH PHARMACEUTICALS, INC.,<br><br>Defendant. | Civil Action No. 1:24-cv-07140-JFM |

**PLAINTIFFS' SUPPLEMENTAL OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF COLLATERAL ESTOPPEL**

# TABLE OF CONTENTS

**Page**


**I. QUESTION 1: ISSUE PRECLUSION DOES NOT APPLY HERE** .......... 2

**A. The Asserted IBS-D Claims** .......... 2

**B. The Asserted Polymorph Claims** .......... 5

**C. Issue Preclusion Does Not Determine Obviousness** .......... 6

**II. QUESTION 2: *NORWICH I* ACKNOWLEDGES LIMITS TO WHAT THE PARTIES ACTUALLY LITIGATED** .......... 9

**III. QUESTION 3: CLAIM PRECLUSION DOES NOT APPLY, AND *SIMPLEAIR* DOES NOT ALTER THE ISSUE PRECLUSION TEST** .......... 11

**IV. QUESTION 4: THE COURT SHOULD CONSTRUE THE 7 DAYS LIMITATION TO REFER TO THE INTRODUCTION OF RIFAXIMIN TO THE FEMALE SUBJECT** .......... 11

**A. The Claim Language Supports Salix's Interpretation** .......... 11

**B. The Specification Defines "Administration" as Introducing the Drug** .......... 12

**C. Defendants' Inconsistent Position Relies on Faulty Logic and Is Litigation-Driven** 14

**V. QUESTION 5: THE NEW LIMITATIONS AFFECT THE INFRINGEMENT ANALYSIS** .......... 15

**A. The New Limitations in the IBS-D Claims Make Inducement a Disputed Factual Question** .......... 16

**B. The New Limitations in the Polymorph Claims Make Direct Infringement a Disputed Factual Question** .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bourns, Inc. v. United States*,
537 F.2d 486 (Ct. Cl. 1976) ....................7

*Hikma Pharmaceuticals USA, Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580 (2026)....................2, 16

*In re Selenious Acid Litig.*,
No. 24-cv-07791 (BRM) (CLW), 2025 WL 1900949 (D.N.J. July 8, 2025) ....................17

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016)....................4

*Interconnect Plan. Corp. v. Feil*,
774 F.2d 1132,1137 (Fed. Cir. 1985)....................10

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*,
141 F.4th 1367 (Fed. Cir. 2025) ....................4, 10

*Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*,
458 F.3d 244 (3d Cir. 2006)....................6, 9, 11

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007)....................8

*Lab'y Corp. of Am. Holdings v. Qiagen Scis., LLC*,
148 F.4th 1350 (Fed. Cir. 2025) ....................12

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*,
403 F.3d 1364 (Fed. Cir. 2005)....................12

*Ohio Willow Wood Co. v. Alps South, LLC*,
735 F.3d 1333 (Fed. Cir. 2013)....................7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....................12

*Salix Pharms., Ltd. v. Norwich Pharms., Inc. ("Norwich I")*,
No. 20-430-RGA, 2022 WL 3225381 (D. Del. Aug. 10, 2022) .................... passim

*Salix Pharms. v. Norwich Pharms., Inc. ("Norwich I CAFC")*,
98 F.4th 1056 (Fed. Cir. 2024) ....................6, 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*SimpleAir, Inc. v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018)....................1, 11

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015)....................7, 8

*SynQor, Inc. v. Artesyn Techs., Inc.*,
709 F.3d 1365 (Fed. Cir. 2013)....................13

## TABLE OF ABBREVIATIONS

| Term | Abbreviation |
|---|---|
| Amneal Pharmaceuticals of New York, LLC, Amneal EU, Limited | Amneal |
| Norwich Pharmaceuticals, Inc. | Norwich |
| Amneal Pharmaceuticals of New York, LLC, Amneal EU, Limited, Norwich Pharmaceuticals, Inc. | Defendants |
| Defendants’ Memorandum of Law In Support Of Their Motion For Summary Judgement Of Invalidity, Dkt. 138-1 | Mem. |
| Plaintiffs’ Opposition To Motion for Summary Judgment Of Collateral Estoppel (Corrected), Dkt. 139 | Opp. |
| Defendants’ Reply In Support Of Their Motion For Summary Judgment of Invalidity, Dkt. 144 | Reply |
| Plaintiff’s Response to Defendants’ Statement of Undisputed material Facts, Dkt. 138-2 (Amneal Docket) | PAF |
| Joint Appendix, Dkt. 138-3 | JA__ |
| Court’s August 25, 2026 Order Inviting Supplemental Briefing, Dkt. 150 | Order |
| Defendants’ Supplemental Memorandum of Law in Support of Their Motion for Summary Judgment of Invalidity, Dkt. 151 | Defs.’ Suppl. Mem. |
| *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 20-430-RGA, 2022 WL 3225381 (D. Del. Aug. 10, 2022) | *Norwich I* |
| *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, 98 F.4th 1056 (Fed. Cir. 2024) | *Norwich I CAFC* |

**TABLE OF ABBREVIATIONS**
**(continued)**

| | |
|---|---|
| U.S. Patent No. 11,779,571 | ’571 patent |
| U.S. Patent No. 11,564,912 | ’912 patent |
| Claims 1-4 of the ’571 patent and claims 3 and 5-7 of the ’912 patent | asserted IBS-D claims |
| U.S. Patent No. 8,193,196 | ’196 patent |
| Claims 7-9 of the ’196 patent | asserted polymorph claims |
| U.S. Patent No. 10,765,667 | ’667 patent |
| U.S. Patent No. 8,309,569 | ’569 patent |
| U.S. Patent No. 7,612,199 | ‘199 patent |
| U.S. Patent No. 7,902,206 | ’206 patent |
| U.S. Patent No. 7,045,620 | ’620 patent |
| Claim 3 of the ’667 patent, claim 2 of the ’569 patent (IBS); and<br>Claim 4 of the ’199 patent, and claim 36 of the ’206 patent (polymorph) | *Norwich I* claims |
| “wherein the reduction of bloating is achieved following 7 days after the administration of rifaximin” (’571 patent, claim 3); and<br>“wherein the reduction of the one or more symptoms is achieved following 7 days after the administration of rifaximin” (’912 patent, claim 6) | 7 Days Limitation |
| Person of Ordinary Skill in the Art | POSA |
| Irritable bowel syndrome | IBS |
| diarrhea predominant irritable bowel syndrome | IBS-D |
| X-ray powder diffraction | XRPD |

## INTRODUCTION

Defendants seek summary judgment invalidating every asserted claim for obviousness based solely on collateral estoppel from *Norwich I*. But *Norwich I* did not decide this case. Issue preclusion extends only those factual issues that are **identical, actually litigated, and necessary** to the prior judgment. The asserted claims here recite substantive limitations *Norwich I* never adjudicated. The IBS-D claims require, among other things, the treatment of female subjects, a reduction of bloating from baseline symptoms, the reduction achieved within the period recited by the 7 Days Limitation, and an affirmative response assessment. The polymorph claims concern rifaximin forms **δ** and ε—not the **β** form adjudicated in *Norwich I*.

The factual comparison the Court requested confirms the point. As Exhibits 1 and 2 demonstrate, most of the factual issues bearing on obviousness here were never litigated or decided in *Norwich I*. They include whether the prior art discloses the new limitations; whether a POSA would have been motivated to combine that art to **achieve the specific inventions claimed**, with a reasonable expectation of success; and the secondary considerations bearing on non-obviousness. *Norwich I* may preclude relitigation of certain subsidiary facts, but that merely **narrows** the present obviousness inquiry—it does not **resolve** it. Defendants reach the opposite conclusion only by generalizing *Norwich I*'s findings beyond the issues actually decided, rather than comparing the underlying factual determinations as this Court expressly directed. *See* Order at 2 n.1.

The answers to the Court's remaining questions confirm summary judgment is unwarranted. Footnote 3 of the *Norwich I* opinion acknowledges the parties did not litigate the motivation to treat IBS-D as distinct from IBS. *SimpleAir* is a claim preclusion decision; it did not relax issue preclusion's separate identity requirement. On claim construction, the intrinsic evidence establishes the 7 Days Limitation runs from the **introduction** of rifaximin to the subject,

not the **completion** of the 14-day regimen. And the new limitations independently raise genuine infringement disputes. Defendants' own alternative non-infringement theories—including their reliance on *Hikma Pharmaceuticals USA, Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580 (2026)—confirm the new limitations present factual questions for trial. The Court should deny the summary judgment motion.

## I. QUESTION 1: ISSUE PRECLUSION DOES NOT APPLY HERE

Issue preclusion does not resolve the obviousness of either the asserted IBS-D claims or the asserted polymorph claims. *Norwich I* decided a discrete set of subsidiary factual issues, and Salix does not ask this Court to relitigate those findings. But the obviousness inquiries here turn on additional factual questions neither litigated nor necessary to the prior judgment. Applying the Court's four-part framework and comparing "the underlying factual determinations implicated in each obviousness analysis" (Order at 2 n.1) shows issue preclusion applies at most to a limited set of subsidiary findings.

Defendants reach the opposite conclusion only by collapsing distinct factual inquiries into generalized assertions of equivalence. *See* Defs.' Suppl. Mem. § I. Their approach effectively assumes that each new limitation is immaterial and, from that premise, declares the obviousness issues identical. That is precisely the sort of conclusory comparison the Court instructed the parties to avoid. The required comparison is between the actual factual determinations underlying the two obviousness analyses. And on that comparison, the issues do not match.

### A. The Asserted IBS-D Claims

**Answer to Order Question 1.a for IBS-D Claims.** At least 16 specific factual issues bear on obviousness of the IBS-D claims. *See* Ex. 1 (providing (a) the specific factual issues bearing on obviousness here, (b) those previously litigated in *Norwich I,* (c) any overlap between the two sets of issues, and (d) any preclusive effect of such overlap). 11 of those issues—such as whether

the RFIB 2001 Protocol and Pimentel 2006 disclose all limitations of the asserted IBS-D claims—have either no overlap or only partial overlap with those previously litigated in *Norwich I*. Ex. 1. The specific factual issues include:

1. Whether Pimentel 2006 and the RFIB 2001 Protocol disclose **each** limitation of the asserted IBS-D claims—including the reduction of **bloating associated with IBS-D** in a **female subject**, a reduction **from baseline symptoms established prior to treatment**, and a reduction achieved within the timeframe recited by the 7 Days Limitation.

2. Whether a POSA would have been motivated to combine Pimentel 2006 and the RFIB 2001 Protocol to arrive at **the specific claimed methods**—not merely to administer rifaximin 550 mg TID for 14 days to treat IBS or IBS-D generally.

3. Whether a POSA would have had a reasonable expectation of success in achieving **the specific claimed methods**, given (among other things) Pimentel 2006 found no improvement in the hallmark IBS-D symptom of diarrhea and did not delineate results by gender or address bloating in females, the RFIB 2001 Protocol was an unexecuted Phase II design lacking safety or efficacy data, and Phase II protocols are a poor predictor of success.

4. The secondary considerations of non-obviousness directed to the asserted claims—including skepticism, long-felt but unmet need, unexpected results, and commercial success—none of which *Norwich I* evaluated as to the specific claimed methods.

**Answer to Order Question 1.b for IBS-D Claims.** *Norwich I* decided a defined set of subsidiary facts about a different claim set directed to administering rifaximin 550 mg three times a day for 14 days to treat "one or more symptoms" of IBS/IBS-D. The court found Pimentel 2006 and the RFIB 2001 Protocol disclosed the limitations of those claims; the prior art disclosed positive results across a known range of doses and the claimed regimen fell within that range; a POSA would have been motivated to combine the references and to select an optimal regimen within the known range with a reasonable expectation of success; and Salix's secondary considerations evidence, as directed to those claims, did not overcome that showing. *Norwich I*, 2022 WL 3225381, at *17-22.

*Norwich I* made **no** findings about the treatment of bloating associated with IBS-D, about results in female subjects, about a reduction from baseline, or about the timing recited by the 7 Days Limitation. Those limitations were not in the claims before that court and were not previously litigated in *Norwich I*.

**<u>Answer to Order Question 1.c for IBS-D Claims.</u>** The factual issues in *Norwich I* and here overlap only in part. Plaintiffs do not dispute the preclusive effect of *Norwich I*'s findings on the discrete, overlapping subsidiary issues: (1) the scope and content of the prior art; (2) what Pimentel 2006 and the RFIB 2001 Protocol disclose; and (3) that the prior art disclosed the 550 mg three times daily, 14-day dosing regimen within a known range. *See* Ex. 1.

But there is no overlap on the issues the new limitations implicate: (1) whether the prior art discloses reducing bloating associated with IBS-D in a female subject, from baseline, within the recited timeframe; (2) whether a POSA would have been motivated to achieve that specific result with a reasonable expectation of success; and (3) the secondary considerations directed to those limitations. *Id.*

Defendants' framing (Defs.' Suppl. Mem. at 1) achieves "identity" only by defining the claimed invention at a level of generality that omits the very limitations at issue—precisely the "domino approach" the Federal Circuit rejects, in which each narrower claim is compared to the one before it rather than to the prior art. That framing also contravenes *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 141 F.4th 1367, 1379 (Fed. Cir. 2025), and *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016), which require the motivation and expectation inquiries to be tied to the claimed invention and not a generic method distilled from it.

Defendants declare the new limitations immaterial or mere statements of intended result. *See* Defs.' Suppl. Mem. at 4-6. But those are factually disputed merits arguments, not identity-of-

issues arguments. Whether a limitation is entitled to patentable weight, and whether the prior art discloses it, are factual questions that *Norwich I* never reached because these limitations were not before it. A limitation cannot be both absent from the adjudicated claims and yet actually litigated while adjudicating them.

### B. The Asserted Polymorph Claims

**<u>Answer to Order Question 1.a for Polymorph Claims.</u>** The polymorph claims are directed to solid pharmaceutical compositions comprising rifaximin polymorphic forms δ, ε, or a combination of the two, characterized by their own XRPD peaks. *Norwich I* involved claims directed to the rifaximin polymorphic β form. At least 12 specific factual issues bear on obviousness of the polymorph claims. *See* Ex. 2 (providing (a) the specific factual issues bearing on obviousness here, (b) whether those issues were addressed in *Norwich I*, and (c) whether any *Norwich I* findings are applicable). The specific factual issues include:

1. How commonly, if at all, rifaximin δ or ε is in fact produced by the Cannata or Marchi processes.

2. Whether a POSA would have had a reasonable expectation of successfully obtaining rifaximin δ or ε—as opposed to the β form on which *Norwich I* turned—by practicing those processes.

3. How the disclosures of the New Zealand Application—a reference postdating the *Norwich I* polymorph claim priority date and addressing the existence, water-content ranges, and interconversion of rifaximin α, β, and γ—would have affected a POSA's motivation to seek, and expectation of obtaining, new and different polymorphs such as δ and ε.

*See* Ex. 2.

**<u>Answer to Order Question 1.b for Polymorph Claims.</u>** In *Norwich I*, the court found the Cannata processes did not produce rifaximin β each and every time practiced; a POSA would have been motivated to characterize the rifaximin produced by Cannata; and a POSA would have had a reasonable expectation of success "in characterizing the polymorph β, **as opposed to the other forms of rifaximin**," because (1) the evidence "strongly suggest[ed]" Cannata "commonly

produced" β and (2) β was the most stable form. *Norwich I*, 2022 WL 3225381, at *5-7 (emphasis added); *Norwich I CAFC*, 98 F.4th at 1065-66. Separately, on inherent anticipation, the court held only the Cannata process does not necessarily produce β every time it is performed. The sole fact determination for that ruling was some Cannata batches were not β, and their actual polymorphic makeup— δ, ε, or otherwise—was inconsequential. *Id.* at *4-5. The court thus never necessarily decided what polymorphic forms the Cannata process yields, so there is no issue preclusive finding.

**Answer to Order Question 1.c for Polymorph Claims.** The dispositive facts here concern different polymorphs (δ and ε, not β), a different prior art record (including the New Zealand Application, which claims priority to and provides substantially the same disclosures as the rifaximin β patents in *Norwich I*), and different motivations and expectations. *Norwich I*'s reasonable expectation of success finding was expressly limited to β "as opposed to the other forms," and rested on evidence β was the commonly produced form. *Norwich I*, 2022 WL 3225381, at *7. The finding does not reach δ or ε. Indeed, that β was the common form indicates δ and ε were uncommon if produced, which supports non-obviousness.

Defendants' contrary position depends on portraying *Norwich I*'s motivation to characterize finding as applicable to all polymorphic forms Cannata might produce, including rifaximin δ and ε. Defs.' Suppl. Mem. at 13. But motivation to characterize whatever Cannata yields is not the same factual issue as a reasonable expectation of obtaining and characterizing δ or ε in particular—the issue the asserted claims present and the issue *Norwich I* expressly declined to decide for "the other forms of rifaximin." *Norwich I*, 2022 WL 3225381, at *7.

### C. Issue Preclusion Does Not Determine Obviousness

**Answer to Order Question 1.d for All Claims.** Issue preclusion only reaches issues that are identical, were "actually litigated," and were "necessary to the prior [judgment]." *Jean*

*Alexander Cosms., Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (internal citation omitted). A patentee that has "been heard on all the factual issues necessary to an obviousness determination" need not be heard again merely because a different claim is involved; but a patentee that has not been so heard remains entitled to litigate obviousness. *Bourns, Inc. v. United States*, 537 F.2d 486, 492, 495 (Ct. Cl. 1976) (recognizing secondary considerations "not available in the first suit" may defeat "an estoppel plea").

Here, issue preclusion reaches at most a few subsidiary findings—the scope and content of the prior art, what Pimentel 2006 and the RFIB 2001 Protocol disclose, the known dosing range, and that a POSA could make a composition of a known polymorph and would have been motivated to characterize what Cannata produced. *See* Exs. 1, 3. Those subsidiary findings do not resolve the obviousness issue for either claim set, because Salix has not previously been heard on all the factual issues necessary to that determination.

This conclusion follows the governing standard. Collateral estoppel applies only where "the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity," and a patentee remains free to litigate obviousness where it "explain[s] how the additional limitation would change an invalidity analysis." *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (citation omitted); *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015) (citation omitted). Here, the differences **do** materially alter that question: *Norwich I* never addressed whether the prior art discloses—or whether a POSA would have been motivated, with a reasonable expectation of success, to achieve—the new limitations. Defendants' own principal authority, *Ohio Willow Wood*, thus confirms that issue preclusion does not apply.

Defendants' remaining arguments do not cure this fatal flaw. Defendants first argue that certain limitations—the reduction-from-baseline and affirmative-response limitations—are non-limiting because measuring a result against a baseline and eliciting an affirmative response are "conventional" practices that Salix's expert supposedly conceded were routine. Defs.' Suppl. Mem. at 5-6, 8-9. That argument fails for three reasons. *First*, these limitations never appeared in the *Norwich I* claims, so that court made no finding about them that could bind Salix here. *Second*, whether a limitation recites conventional subject matter is a merits question under *Graham*, not a question of issue identity. *Third*, the record shows the issue is disputed: Defendants previously conceded that these results are not inherent—a subject given rifaximin 550 mg TID for 14 days will not necessarily achieve the claimed reductions—which confirms that the new elements are limiting and raise their own factual disputes. PAF ¶¶ 64-69.

Nor does the Federal Circuit's observation that Pimentel 2006 reported a "lower bloating score" after treatment supply any missing findings. *Norwich I CAFC*, 98 F.4th at 1062. A single post-hoc bloating score in a mixed IBS population is not a determination that the prior art discloses reducing bloating associated with IBS-D, in a female subject, from baseline, within the period recited by the 7 Days Limitation—and *Norwich I* made no such finding. These issues are also disputed, as Salix's expert, Dr. Johnson, opines that Pimentel 2006 "does not disclose the reduction of bloating associated with IBS-D . . . specifically in a female subject" and "did not delineate the results by gender." PAF ¶¶ 63, 72.

Because obviousness must be assessed on the invention "as a whole," any overlap with *Norwich I* narrows the inquiry; it does not resolve it. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406-07 (2007). Salix has explained how each new limitation would change the invalidity analysis, thus preserving its right to litigate obviousness. *Soverain*, 778 F.3d at 1319.

## II. QUESTION 2: *NORWICH I* ACKNOWLEDGES LIMITS TO WHAT THE PARTIES ACTUALLY LITIGATED

The *Norwich I* footnote weighs against issue preclusion, not for it. In the very sentence the Court quoted, the *Norwich I* district court acknowledged "[t]he parties do not discuss whether there is any difference between the motivation to use rifaximin to treat IBS and to treat IBS-D." *Norwich I*, 2022 WL 3225381, at *19 n.3. That acknowledgment matters because issue preclusion applies "only to issues that were 'actually litigated' in prior proceedings," so "there is little risk that preclusive effect will be given to determinations that the parties did not deem important or that were not subject to evidentiary proof." *Jean Alexander*, 458 F.3d at 254. An issue the prior court expressly recognized the parties did not litigate is, by definition, outside the doctrine's reach. The footnote thus confirms at least one new issue that defeats Defendants' motion as to the IBS-D claims: the motivation questions that control the asserted claims were not actually litigated in *Norwich I*.

Defendants point to the court's statement in the same footnote that "I think a POSA would have been motivated to treat IBS-D and would have had a reasonable expectation of success in doing so." Defs.' Suppl. Mem. at 15. That sentence cannot bear the weight Defendants place on it. The court prefaced it by noting the parties had not discussed the point. It offered an observation on an unbriefed question, not after review of an adversarial record. Issue preclusion requires an issue be actually litigated and necessary to the judgment; a court's *sua sponte* aside on a question the parties did not raise is neither. *Jean Alexander*, 458 F.3d at 249, 254. Defendants would give preclusive force to the one kind of statement the doctrine excludes from its reach.

Moreover, the footnote speaks only to a general motivation to treat IBS-D rather than IBS. It says nothing about the motivation questions from the new limitations, such as treating bloating associated with IBS-D in a female subject, achieving a reduction from baseline, and achieving

reduction within the timeframe recited by the 7 Days Limitation. The footnote is silent on those issues because those new limitations were not before the *Norwich I* court.

Defendants contend on appeal "Salix did not argue a difference between a motivation to use rifaximin to treat IBS versus IBS-D" and conceded roughly one-third of IBS patients have IBS-D. Defs.' Suppl. Mem. at 15. But that concession went only to the general inference treatments for IBS inform treatments for IBS-D. It did not address the new limitations in the IBS-D claims.

Read in context, the footnote confirms Defendants are asking the Court to adopt "[a] domino approach in which each successively narrower claim is compared with the one before it, not with the prior art[.]" *Interconnect Plan. Corp. v. Feil*, 774 F.2d 1132,1137 (Fed. Cir. 1985) (citation omitted). Defendants stretch a single, footnoted aside about motivation to treat IBS-D into an obviousness finding said to govern every asserted claim. But the inquiry of motivation and reasonable expectation of success must focus on arriving at the specific claimed invention. *Janssen Pharms.*, 141 F.4th at 1379. A footnote addressing only IBS and IBS-D in general cannot supply the specific obviousness findings the asserted claims require.

Finally, the issue the *Norwich I* court described as undiscussed has been litigated here. And the record precludes summary judgment. Defendants' own expert concedes the predominant symptoms underlying IBS-D differ from the predominant symptoms underlying other IBS subtypes, and clinicians in 2008 had different treatment approaches for IBS patients depending on their predominant symptoms and subtype, including with rifaximin. PAF ¶¶ 57, 59. That evidence, at minimum, raises a genuine dispute over the motivation question *Norwich I* never resolved.

## III. QUESTION 3: CLAIM PRECLUSION DOES NOT APPLY, AND *SIMPLEAIR* DOES NOT ALTER THE ISSUE PRECLUSION TEST

Defendants concede claim preclusion is not at issue. Defs. Suppl. Br. at 16. Salix only cited *SimpleAir* to rebut Defendants' terminal disclaimer argument. Opp. 22-24. *SimpleAir* requires comparison of actual claim scope and accused activity. Shared specifications, continuation relationships, and terminal disclaimers do not establish the same cause of action. *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1166-68 (Fed. Cir. 2018). A terminal disclaimer is neither an admission nor a presumption of patentable indistinctness. *Id.*

Claim preclusion precedent thus has limited relevance: it confirms the Court should compare the actual claims and should not infer identity from patent ancestry or terminal disclaimers. But claim preclusion precedent cannot displace issue preclusion's separate requirements that the particular issue be identical, actually litigated, and necessary to the prior judgment. *Jean Alexander*, 458 F.3d at 249.

## IV. QUESTION 4: THE COURT SHOULD CONSTRUE THE 7 DAYS LIMITATION TO REFER TO THE INTRODUCTION OF RIFAXIMIN TO THE FEMALE SUBJECT

The Court should not construe "achieved following 7 days after the administration of rifaximin" to mean after the completed 14-day regimen. Read in light of the claim language and the specification, "administration" means introducing rifaximin to the patient. The reduction of bloating is achieved 7 days after rifaximin administration begins—by the first week of dosing—not seven days after the entire 14-day course has concluded.

### A. The Claim Language Supports Salix's Interpretation

Claim 1 recites "a method of treating bloating associated with diarrhea-predominant irritable bowel syndrome (dIBS) in a female subject, said method comprising administering[] 550 mg of rifaximin TID **for 14 days** to the female subject, thereby treating bloating." '571 patent, cl.

1 (emphasis added). Dependent claim 3 adds the requirement "the reduction of bloating is achieved following 7 days after the administration of rifaximin." '571 patent, cl. 3. The inventors thus knew exactly how to tie a limitation to the full course, as they wrote "for 14 days" into claim 1, and they did not repeat that phrase, or add "after completion of," in claim 3. Claim 3 recites only "following 7 days after the administration of rifaximin." That deliberate difference in language must have effect. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (explaining how "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms") (citation omitted); *Lab'y Corp. of Am. Holdings v. Qiagen Scis., LLC*, 148 F.4th 1350, 1358 (Fed. Cir. 2025) ("[W]here two claim terms differ by a matter of degree, perhaps by use of a modifier for one term and not the other, a proper construction should give effect to that difference.") (citation omitted).

Claim 3 also depends from claim 2, which requires "the treating of bloating comprises a reduction of bloating from baseline symptoms established prior to treatment." '571 patent, cl. 2. "Comprises" means "includes." *See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1370 (Fed. Cir. 2005) (recognizing "comprising" is often synonymous with "including.") (citation omitted). The 14-day "treating" therefore **includes** the claimed reduction, so the reduction occurs within the course of treatment, not only after it ends. A construction that would require the reduction to appear only 7 days after the entire regimen concludes would conflict with claim 2.

### B. The Specification Defines "Administration" as Introducing the Drug

The specification—the "single best guide" for understanding the meaning of a patent claim term, *Phillips*, 415 F.3d at 1315—defines "administration" or "administering" as "includ[ing] routes of introducing a GI specific antibiotic to a subject to perform their intended function." '571 patent at 12:37-40. Applying that definition, "following 7 days after the administration of

rifaximin" means following 7 days after introducing rifaximin. This is a period measured from when rifaximin is first given, not from the close of a 14-day course.

The figures support this interpretation. Figure 13 plots the daily IBS symptom change from baseline across "weeks 1 through 12," and Figures 4-6 and 11 report adequate relief and a change from the baseline in bloating beginning in the first week of dosing.













'571 patent, Figs. 4-6, 11, 13; *see also* Ex. 3, Johnson Op. Rpt. (Norwich) ¶¶ 94-95 (discussing specification's disclosure of results after one week of administration).

Construing "7 days after the administration" to mean 7 days after the 14-day course concludes would improperly read these embodiments out of the claims. *See SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1378-79 (Fed. Cir. 2013) (a construction "exclud[ing] the

preferred embodiment is rarely, if ever, correct and would require highly persuasive evidentiary support.") (internal citation and quotation omitted).

### C. Defendants' Inconsistent Position Relies on Faulty Logic and Is Litigation-Driven

Defendants' contrary reading rests on antecedent basis: because "the administration" refers back to the "administering" step of claim 1, Defendants contend the reduction must be measured from the end of the 14-day course. Defs.' Suppl. Mem. at 6-7. But the antecedent of "the administration" is the first act of **administering** rifaximin, not its completion. To reach their reading, Defendants insert the words "completion of" into claim 3—a limitation the inventors omitted.

Defendants need that rewrite for a reason. Only by measuring the reduction from the end of the course can they argue the "durability of response" limitation of the invalidated '569 patent "necessarily subsumes" the 7 Days Limitation, and thus issue preclusion applies. Defs.' Suppl. Mem. at 7-8. But the two limitations measure different things over different periods. The durability of response limitation gauges continuous relief across a 12-week post-treatment period, whereas the 7 Days Limitation asks only whether a reduction is "achieved following 7 days after" rifaximin is introduced. PAF ¶ 45; JA0106 at ¶ 129 (Johnson Report); Dkt. 121-2 at ¶¶ 20-31 (Johnson Declaration). Neither subsumes the other. *Id.*

Defendants' position also cannot be squared with their prior arguments. In their opening motion, they argued the recited reduction "may occur 'following 7 days after' any of the 14 days on which rifaximin is administered." Mem. at 14. Now, to fit their issue preclusion theory, they argue the reduction is measured only after the full course is "completed." Defs.' Suppl. Mem. at 6-7. Defendants make no attempt to reconcile these inconsistent constructions. It is Defendants—

not Salix—whose claim construction argument is "litigation-inspired." *Cf. id.* at 7. The Court should reject it.

* * *

The claim language and specification establish "the administration of rifaximin" refers to the introducing, or administering, of the drug—not the completion of the 14-day regimen. The Court should construe claim 3 so the recited reduction of bloating is achieved following 7 days after rifaximin administration begins. It should decline Defendants' invitation to read "completion of the 14-day regime" into the claim.

## V. QUESTION 5: THE NEW LIMITATIONS AFFECT THE INFRINGEMENT ANALYSIS

The new limitations also materially affect infringement, further demonstrating why summary judgment is inappropriate. Because each imposes a substantive claim requirement, infringement cannot be resolved by referring to the conduct found to infringe the claims in *Norwich I*. Infringement instead turns on new, claim-specific factual questions—including whether Defendants' proposed labels actively encourage the specific conduct required by the asserted IBS-D claims and whether Amneal's ANDA product contains the particular polymorphs required by the asserted polymorph claims. Those questions are genuinely disputed and must be resolved at trial.

Those infringement disputes also underscore why the new limitations are material to invalidity. The same limitations that define what Salix must prove to establish infringement define the claimed inventions whose obviousness is at issue. Defendants therefore cannot rely on those limitations to argue noninfringement while simultaneously disregarding them as immaterial to obviousness. Their own infringement arguments confirm that the asserted claims present claim-

specific issues not resolved in *Norwich I*—and provide an additional reason issue preclusion cannot dispose of this case.

### A. The New Limitations in the IBS-D Claims Make Inducement a Disputed Factual Question

The IBS-D claims require treating bloating associated with IBS-D, in a female subject, achieving a reduction from baseline symptoms, within the timeframe recited by the 7 Days Limitation. Whether Defendants' proposed labels actively encourage that specific conduct is a disputed fact question.

Salix' expert Dr. Johnson identifies affirmative statements in the ANDA labeling directed to each limitation: the label's "instructions apply to treating female IBS-D patients"; it encourages treating IBS-D and "bloating associated with dIBS"; "certain patients would achieve reductions in baseline IBS symptoms following 7 days after the administration of rifaximin"; and the label "encourages seeking affirmative responses from patients in assessing symptom improvements." Ex. 3, Johnson Op. Rpt. (Norwich) ¶¶ 61-62, 85-87, 94-95, 103-105, 123-124; Ex. 4, Johnson Op. Rpt. (Amneal) ¶¶ 57-58, 81-83, 90-91, 99-101, 119-120 (same).

Defendants respond that their "proposed drug labels do not contain any affirmative instruction for a third party to administer rifaximin to treat 'bloating associated with dIBS,'" citing *Hikma Pharms. USA, Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580 (2026). Defs. Suppl. Mem. 18. But *Hikma* confirms why summary judgment is improper here, not why it is warranted. *Hikma* holds that inducement "cannot be based only on vague language combined with speculation about how [others] may act," and that the key question is whether a defendant actively encouraged infringement through its statements. 608 U.S. at 590 & n.3, 592 (alteration in original). Salix's infringement case does not rest on vague language and speculation; it rests on specific, affirmative label statements that Dr. Johnson ties to each claimed limitation. *See* Ex. 3; Ex. 4. Whether those

statements "actively encourage" the claimed conduct is a factual question that cannot be decided at summary judgment.

### B. The New Limitations in the Polymorph Claims Make Direct Infringement a Disputed Factual Question

Amneal's arguments confirm that infringement of the new limitations in the polymorph claims is contested. *See* Defs. Suppl. Mem. 18-19. The polymorph claims require a therapeutically effective amount of rifaximin δ (and/or ε) exhibiting specified XRPD peaks. Amneal asserts that its ANDA product does not contain rifaximin δ, and that repeated synchrotron testing produced no sample exhibiting all four recited peaks. *Id.* But Salix will present contrary evidence, including that the recited XRPD peaks are inherent characteristics of the polymorph here, and circumstantial proof that Defendants' product contains rifaximin δ in a therapeutically effective amount. *See* Ex. 5, Chyall Op. Rpt. (Amneal) ¶¶ 56-61, 69, 74, 94-109; *see also* JA0436 (Chyall Dep.) at 65:13-66:11; *In re Selenious Acid Litig.*, No. 24-cv-07791 (BRM) (CLW), 2025 WL 1900949, at *15 (D.N.J. July 8, 2025) ("[C]ircumstantial evidence is admissible to demonstrate infringement at all stages of litigation.") (citations omitted)). This is a quintessential disputed material fact, turning on competing expert analyses of the product, which cannot be decided at summary judgment.

* * *

Defendants did not move for summary judgment of non-infringement, and Amneal concedes this fact for the polymorph claims. Defs.' Suppl. Mem. at 18. Defendants raise non-infringement arguments for the first time in their supplemental brief, in response to a question that asked only how the new limitations "affect the infringement analysis," not for a new dispositive ground. The Court should decline to rule on summary judgment of non-infringement on a motion that never sought it.

## CONCLUSION

Collateral estoppel cannot dispose of this case. Issue preclusion reaches only those factual issues that are identical, were actually litigated, and were necessary to the prior judgment. *Norwich I* decided a discrete set of subsidiary facts directed to a different, broader set of claims. The asserted IBS-D claims add limitations—treating bloating associated with IBS-D in a female subject, a reduction from baseline symptoms, achievement of that reduction within the period recited by the 7 Days Limitation, and an affirmative-response assessment—that *Norwich I* never adjudicated. And the asserted polymorph claims concern rifaximin forms δ and ε rather than the ß form on which *Norwich I* turned. Those differences materially alter the obviousness inquiry, leaving the questions of motivation, reasonable expectation of success, and the secondary considerations open for trial. The *Norwich I* footnote confirms the controlling motivation question was never litigated. The 7 Days Limitation should be construed to run from the introduction of rifaximin, and the new limitations independently raise genuine, claim-specific infringement disputes.

Because material facts remain genuinely disputed, the Court should deny Defendants' motion for summary judgment in all respects.

Dated: September 30, 2026

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Harvey Bartle IV*

Harvey Bartle IV (NJ Bar 028792003)
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, NJ 08540-6241
Phone: (609) 919-6600

OF COUNSEL
Michael J. Abernathy
Wan-Shon Lo
Maria Doukas
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive
Chicago, IL 60606-1511
Phone: (312) 324-1000

Julie S. Goldemberg
Margaret A. McGreal
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5000

*Attorneys for Plaintiffs Salix Pharmaceuticals, Inc., Salix Pharmaceuticals, Ltd., Alfasigma S.p.A., and Bausch Health Ireland Ltd.*

## CERTIFICATE OF SERVICE

I, Harvey Bartle, hereby certify that on September 30, 2026, this document was served all counsel of record via the Court's ECF system.

*/s/ Harvey Bartle*
Harvey Bartle